UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

CHARLOTTE FREEMAN, et al.,

      Plaintiffs,

  -against-        14-CV-6601 (DLI/CLP)

HSBC HOLDINGS PLC, et al.,

      Defendants.

**MEMORANDUM OF LAW OF DEFENDANT CREDIT SUISSE AG
IN SUPPORT OF MOTION TO DISMISS**

Richard W. Clary
Michael T. Reynolds
John D. Buretta
CRAVATH, SWAINE & MOORE LLP
 Worldwide Plaza
  825 Eighth Avenue
   New York, NY 10019-7475
    (212) 474-1000
    rclary@cravath.com
    mreynolds@cravath.com
    jburetta@cravath.com

*Attorneys for Defendant Credit Suisse AG*

March 16, 2015

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION ...........................................................................................................................1

FACTUAL STATEMENT ..............................................................................................................2

ARGUMENT ...................................................................................................................................5

I.      The Complaint Fails Plausibly To Allege Causation As To Credit Suisse ..........................5

II.     The Two Claims Against Credit Suisse Rely On A Conspiracy Theory of Liability
That Is Not Cognizable ........................................................................................................7

CONCLUSION ................................................................................................................................8

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahmad v. Christian Friends of Israeli Cmtys.*, No. 13 Civ. 3376 (JMF), 2014 WL
    1796322 (S.D.N.Y. May 5, 2014) .................................................................................5, 6

*First Nationwide Bank v. Gelt Funding Corp.*,
    27 F.3d 763 (2d Cir. 1994) ................................................................................................5

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ......................................................................................................5, 6, 7

*Holmes v. Secs. Investor Prot. Corp.*,
    503 U.S. 258 (1992) ..........................................................................................................5

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) ........................................................................................passim

*In re Terrorist Attacks on Sept. 11, 2001*,
    714 F.3d 118 (2d Cir. 2013) .........................................................................................5, 6

*UFCW Local 1776 v. Eli Lilly & Co.*,
    620 F.3d 121 (2d Cir. 2010) .............................................................................................5

**Statutes & Rules**

18 U.S.C. § 2332(a) .....................................................................................................................2

18 U.S.C. § 2332(b) .....................................................................................................................2

18 U.S.C. § 2332(c) .....................................................................................................................2

18 U.S.C. § 2332(f) ......................................................................................................................2

18 U.S.C. § 2339A .......................................................................................................................2

18 U.S.C. § 2339B .......................................................................................................................2

International Emergency Economic Powers Act, 50 U.S.C. § 1705 ....................................3, 4, 5

# INTRODUCTION

As demonstrated in the Joint Memorandum, the two Claims for Relief in which Credit Suisse is named as a defendant in the Complaint (the First and Second Claims) fail to state claims as a matter of law.[1] Credit Suisse respectfully submits this short, separate memorandum of law to highlight further the deficiencies in those two claims as they pertain specifically to Credit Suisse. In short, as to Credit Suisse, both claims fail to satisfy the causation pleading requirements set out in *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), and other controlling authorities, and both claims also hinge on a conspiracy theory of liability that *Rothstein* and its progeny foreclose. Based on these two independent grounds, each claim against Credit Suisse must be dismissed.

---

[1] The following abbreviations are used in this memorandum of law: "Credit Suisse" for Defendant Credit Suisse AG; "Joint Memorandum" for the Joint Memorandum in Support of Motion to Dismiss; "Compl." to refer to the Complaint filed on November 11, 2014 (Doc. 1); and "ATA" for the Anti-Terrorism Act.

**FACTUAL STATEMENT**

The Complaint's First and Second Claims for Relief are both predicated on a conspiracy theory of liability.[2] The Complaint asserts that, between 1995 and November 2006, Credit Suisse participated in the alleged conspiracy by acting as a correspondent bank for U.S. dollar-denominated transactions as to two Iranian commercial banks allegedly owned and controlled by the Government of Iran: Bank Melli and Bank Saderat. *See* Compl. ¶¶ 810, 1244, 1278, 1295; *see also id.* ¶ 1015. The Complaint concedes that, during the time period when Credit Suisse allegedly acted as a correspondent bank, processing U.S. dollar-denominated transactions was lawful when completed under the criteria in the Office of Foreign Assets Control ("OFAC")'s "U-Turn" exemption. *See id.* ¶¶ 770, 775. OFAC did not revoke the U-Turn exemption as to Bank Saderat until September 2006 and, as to other Iranian commercial banks, the exemption was not revoked until November 2008. *See id.* ¶¶ 748, 1012, 1281-82. The Complaint alleges that, by January 2006, Credit Suisse had decided to terminate its U.S.

---

[2] *See* First Claim for Relief, Compl. ¶ 1301 ("Iran, the Iranian banking co-conspirators, the Defendants . . . and other non-defendant conspirators committed acts of international terrorism by entering into a Conspiracy . . . . In doing so, Defendants were willing to, and did, commit numerous felonies under U.S. law to assist Iran in concealing its financial activities and, in the course of doing so, violated 18 U.S.C. § 2339A"); *id.* ¶ 1309 ("At all relevant times, each Defendant knew of the Conspiracy; knew the aims of the Conspiracy were unlawful; took affirmative acts to further the Conspiracy; knew or were deliberately indifferent to the Conspiracy's purposes and objectives; and knew that Iran, the Iranian Bank co-conspirators, and other conspirators, . . . were engaging in a common plan and design in furtherance of the Conspiracy"); *id.* ¶¶ 1297-99, 1302-05, 1307-08, 1310-13; *see also* Second Claim for Relief, *id.* ¶ 1316 ("Iran, the Iranian banking co-conspirators, the Defendants . . . and other non-defendant conspirators committed acts of international terrorism by entering into the Conspiracy . . . . In doing so, the Defendants were willing to, and did, commit numerous felonies under U.S. law to assist Iran in concealing its financial activities and violated 18 U.S.C. § 2339B"); *id.* ¶ 1325 ("The material support that Defendants, through the Conspiracy, knowingly and/or with deliberate indifference provided to Hezbollah, in concert with Iran (including but not limited to material support Iran's IRGC-QF transmitted to Hezbollah) and the Iranian Bank Co-conspirators . . . provided substantial assistance to Hezbollah, thereby facilitating acts of terrorism in violation of 18 U.S.C. §§ 2332(a), 2332(b), 2332(c), and or 2332(f) that have caused injuries to Plaintiffs"); *id.* ¶¶ 1317-24, 1326, 1328-32.

dollar-denominated transaction processing for all Iranian banks. *See id.* ¶¶ 1280-81. Credit Suisse is alleged to have completed most of that wind-down by September 2006 and ceased all of its transactions by October 27, 2006.[3] *See id.* ¶ 1281. The Complaint further acknowledges that the U.S. Government did not designate either Bank Melli or Bank Saderat as a sanctioned—*i.e.*, entirely prohibited—entity until October 2007, nearly a year after Credit Suisse is alleged to have terminated all Iranian bank U.S. dollar-denominated transactions. *See id.* ¶¶ 3, 801, 1281. The Complaint does not allege that Credit Suisse dealt in any way with the Central Bank of Iran, a financial institution the Complaint alleges is "fully controlled and run by individuals directly appointed by the Government of Iran". *Id.* ¶ 783.

The Complaint also acknowledges that, in March 2007, Credit Suisse initiated an internal investigation of its U.S. dollar-clearing transactions, subsequently cooperated with an investigation of these activities by U.S. authorities, entered a deferred prosecution agreement on a single count of violating the International Emergency Economic Powers Act, 50 U.S.C. § 1705, and agreed to a $536 million civil forfeiture.[4] *See id.* ¶¶ 1282-84. The deferred prosecution agreement entered by Credit Suisse concerned in relevant part its so-called "stripping" conduct in removing, altering or falsifying the identities of Iranian commercial parties in U.S. dollar-denominated transactions, and the Complaint premises its stripping allegations on the deferred prosecution agreement. *See id.* ¶¶ 757, 1283-85. The deferred prosecution agreement does not suggest that Credit Suisse's banking activities involved funds going—directly or indirectly—to any terrorists or terrorist organizations. *See id.* ¶¶ 1283-85.

---

[3] More than two-thirds of the alleged attacks, including the January 20, 2007 attack described in detail in the Complaint, *see id.* ¶¶ 12-71, occurred after Credit Suisse is alleged to have terminated all U.S.-dollar denominated correspondent banking services with Iranian banks. *See id.* ¶¶ 1281, 1278, 12-723.

[4] The civil forfeiture addressed Credit Suisse's banking transactions as to multiple countries, including Iran, Burma, Cuba, Libya, Sudan and Syria. *See id.* ¶¶ 1282-85.

3

Nor does the Complaint go beyond the deferred prosecution agreement to allege any actual connection between Credit Suisse's banking transactions and the Government of Iran's alleged support of terrorist groups. *See id.* ¶¶ 839-975 (Iranian terrorism allegations). The Complaint does not allege facts showing that any of the funds Credit Suisse handled for any Iranian bank ended up being funneled to any of the Government of Iran's alleged terrorist efforts, such as the Iranian Government's alleged support of Hezbollah and the Islamic Revolutionary Guard Corps-Qods Force ("IRGC-QF"). *See id.* ¶¶ 1235-86 (Credit Suisse's alleged banking transactions), 795-819 (Bank Melli), 1287-95 (Bank Saderat), 839-975 (Iranian terrorism allegations). Thus, whatever the alleged interactions were between Iranian banks and the Government of Iran concerning alleged terrorist funding, none of Credit Suisse's banking work is actually alleged to have been part of that funding. *See id.* The Complaint also does not claim any interaction between Credit Suisse and terrorists. *See id.* ¶¶ 895-975. The Complaint further does not allege that, but for Credit Suisse's alleged handling of U.S. dollar-denominated transactions for Iranian banks, those banks would not have provided their alleged assistance to the Iranian Government's terrorism funding, or that the Iranian Government would have otherwise provided lesser support to Hezbollah or IRGC-QF, or that Hezbollah and IRGC-QF, in turn, would have provided any lesser support to terrorists operating in Iraq or that the alleged terrorist attacks in Iraq that injured Plaintiffs would have been avoided. *Id. passim*.

The Complaint contains several wholly conclusory allegations that the broadly framed conspiracy "made it possible for" the Iranian Government to provide material support to various terrorist entities, or "substantially assisted" or "facilitated" Iran in doing so, by providing a "clandestine stream of U.S. dollars" that "flood[ed] the international financial system" and "provided Iran with the means by which it could transfer more than $150 million to the IRGC-

4

QF, Hezbollah and Special Groups". *See, e.g., id.* ¶¶ 756, 762-63, 774, 778-79, 1297-99, 1312. The Complaint does not claim that any of Credit Suisse's banking transactions involved the $150 million of funds the Government of Iran allegedly funneled to these terrorist groups. *Id.* ¶¶ 1235-86 (overviewing Credit Suisse's dollar-clearing transactions but making no reference to any connection with terrorism).

## ARGUMENT

### I. THE COMPLAINT FAILS PLAUSIBLY TO ALLEGE CAUSATION AS TO CREDIT SUISSE

ATA claims must plausibly allege both "but for" and "proximate" causation. *See* Joint Memorandum at 11; *Rothstein*, 708 F.3d at 95 ("by reason of" language in ATA, like other federal statutes such as RICO, requires "'a showing that the defendant's violation not only was a 'but for' cause of his injury, but was the proximate cause as well'") (quoting *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 267-68 (1992)); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 118, 123 (2d Cir. 2013); *see also Ahmad v. Christian Friends of Israeli Cmtys.*, No. 13 Civ. 3376 (JMF), 2014 WL 1796322, at *4 (S.D.N.Y. May 5, 2014) (dismissing ATA complaint on, among other grounds, failure plausibly to allege "but-for causation", let alone "the more demanding standard of proximate causation").[5] Proximate cause, in turn, "requires 'some direct relation between the injury asserted and the injurious conduct alleged'". *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes*, 503 U.S. at 268). The Complaint does not satisfy any of these requirements.

---

[5] *See also UFCW Local 1776 v. Eli Lilly & Co.*, 620 F.3d 121, 132 (2d Cir. 2010) ("To show injury by reason of a RICO violation, a plaintiff must demonstrate that the violation caused his injury in two senses. First, he must show that the RICO violation was the proximate cause of his injury, meaning 'there was a direct relationship between the plaintiff's injury and the defendant's injurious conduct.' . . . . Second, he must show that the RICO violation was the but-for (or transactional) cause of his injury, meaning that but for the RICO violation, he would not have been injured.") (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994)).

5

First, the Complaint does not allege that Credit Suisse's conduct was a "but for" cause of Plaintiffs' injuries. Indeed, there is no "but for" allegation as to any of the many steps in the Complaint's elaborate causal chain. Thus, there is no allegation here that, absent Credit Suisse's banking transactions for Iranian commercial banks, those Iranian banks or any others would not have supported, or would have provided lesser alleged support to, the Iranian Government's alleged terrorism efforts; that the Iranian Government would have provided no or lesser alleged support to Hezbollah or the IRGC-Qods Force; that Hezbollah or the IRGC-Qods force would have provided no or lesser alleged support to Iraq-based terrorists; or that the attacks against Plaintiffs by named and unnamed Iraqi terrorists would have been avoided. The Complaint as to Credit Suisse must therefore be dismissed for failure to allege "but for" causation. *See Rothstein*, 708 F.3d at 95; *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 123; *Ahmad*, 2014 WL 1796322, at *4.

Second, the Complaint does not plausibly allege that Credit Suisse's alleged conduct proximately caused Plaintiffs' injuries. As demonstrated in the Joint Memorandum, Plaintiffs' purported causal connection between the Moving Defendants' banking services and Plaintiffs' injuries is even more tenuous than what was presented, and rejected, in *Rothstein*. *See* Joint Memorandum at 10-20. *Rothstein* rejected as insufficient the following causal chain: UBS allegedly provided U.S. cash directly to the Government of Iran, the Government of Iran allegedly gave some or all of the cash dollars to terrorist groups, which the terrorist groups needed to carry out attacks, and those terrorist groups allegedly attacked and injured the plaintiffs. *See* 708 F.3d at 97. The Complaint here alleges more degrees of separation in its causal chain than was alleged in *Rothstein* and also fails logically to connect Credit Suisse's conduct to Plaintiffs' injuries. The Complaint asserts that (1) Credit Suisse "stripped" identifiers

6

out of wire transfers of pre-existing funds on behalf of Iranian commercial banks, and none of these transactions—not even a dollar's worth—are alleged to have involved terrorism funding, *see* Compl. ¶¶ 757, 1283-85; (2) the Government of Iran directed the Iranian commercial banks to send funds to terrorist groups that Iran directly supported, and none of these funds are alleged to have been involved in Credit Suisse's banking transactions, *see id.* ¶¶ 753, 802, 1235-86; (3) the terrorist groups directly supported by the Government of Iran in turn sponsored alleged terrorists in Iraq, some of whom are identified and many of whom are not, and in no case is Credit Suisse alleged to have had any dealings with them or supported them, *see id.* ¶¶ 22, 30, 940, 1235-86; and (4) those terrorists in Iraq injured Plaintiffs, *see id.* ¶¶ 12-723. Under *Rothstein* and other controlling authorities, this is not proximate cause. *See Rothstein*, 78 F.3d at 97 (dismissing complaint in part because it contained "no nonconclusory allegation . . . that plausibly shows that the moneys [defendant] transferred to Iran were in fact sent to H[e]zbollah or Hamas"); *see also Hemi Grp.*, 559 U.S. at 9, 11 (holding that the causal link is far "too remote, purely contingent, or indirect" to satisfy proximate cause "where the defendant's fraud on the third party . . . has made it easier for a *fourth* party . . . to cause harm to the plaintiff") (internal quotation marks and brackets omitted) (emphasis in original).

## II. THE TWO CLAIMS AGAINST CREDIT SUISSE RELY ON A CONSPIRACY THEORY OF LIABILITY THAT IS NOT COGNIZABLE

The two Claims for Relief alleged against Credit Suisse must also be dismissed on the independent ground that both claims are predicated on a conspiracy theory of liability. *See supra* at 2 & n.2. For the reasons set forth in the Joint Memorandum, conspiracy liability is not available under the ATA. *See* Joint Memorandum at 21-23.[6]

---

[6] Because civil conspiracy liability is not available, Credit Suisse does not separately address the Complaint's failure adequately to allege a claim of conspiracy or any other conduct satisfying the requirements of 18 U.S.C. §§ 2339(A), (B) and (C).

## CONCLUSION

For the foregoing reasons, Credit Suisse respectfully submits that the First and Second Claims for Relief in the Complaint should be dismissed as to Credit Suisse.

Dated: March 16, 2015

CRAVATH, SWAINE & MOORE LLP,

by
  /s/ Richard W. Clary
Richard W. Clary
Michael T. Reynolds
John D. Buretta

Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
rclary@cravath.com
mreynolds@cravath.com
jburetta@cravath.com

*Attorneys for Defendant Credit Suisse AG*
