UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

CHARLOTTE FREEMAN, et al.,

                Plaintiffs,

    -against-                        14-CV-6601 (DLI/CLP)

HSBC HOLDINGS PLC, et al.,

                Defendants.

# MEMORANDUM OF LAW OF DEFENDANT CREDIT SUISSE AG IN SUPPORT OF MOTION TO DISMISS

                                  Richard W. Clary
                                  Michael T. Reynolds
                                  John D. Buretta
                                  CRAVATH, SWAINE & MOORE LLP
                                     Worldwide Plaza
                                        825 Eighth Avenue
                                            New York, NY 10019-7475
                                              (212) 474-1000
                                              rclary@cravath.com
                                          mreynolds@cravath.com
                                            jburetta@cravath.com

                                *Attorneys for Defendant Credit Suisse AG*

May 29, 2015

**TABLE OF CONTENTS**

                                                                                                          **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

FACTUAL STATEMENT .......................................................................................................1

ARGUMENT ...........................................................................................................................6

I.      THE TWO CLAIMS AGAINST CREDIT SUISSE RELY ENTIRELY ON A CONSPIRACY THEORY OF LIABILITY FORECLOSED BY ROTHSTEIN AND ITS PROGENY ................................................................................................6

II.     THE COMPLAINT FAILS PLAUSIBLY TO ALLEGE PROXIMATE CAUSATION AS TO CREDIT SUISSE .....................................................................6

CONCLUSION ........................................................................................................................9

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Linde v. Arab Bank, PLC*,
   944 F. Supp. 2d 215 (E.D.N.Y. 2013) .......................................................................................6

*O'Neill v. Al Rajhi Bank*
   *(In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 118 (2d Cir. 2013) ............................7, 8

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013)..............................................................................................1, 6, 7

**Statutes & Rules**

18 U.S.C. § 2339A ....................................................................................................................1, 6

18 U.S.C. § 2339B ........................................................................................................................6

## INTRODUCTION

As demonstrated in the Joint Memorandum, the two Claims for Relief in which Credit Suisse is named as a defendant in the Amended Complaint (the First and Second Claims) each fail to state a claim as a matter of law.[1]  Credit Suisse respectfully submits this short, separate memorandum of law to highlight the deficiencies in those two claims as they pertain specifically to Credit Suisse.  First, both claims hinge on a conspiracy-based theory of liability that *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), and its progeny foreclose.  Second, both claims fail as a matter of law plausibly to plead proximate cause as to Credit Suisse.  Based on these two independent grounds, each claim against Credit Suisse must be dismissed.

## FACTUAL STATEMENT

The Complaint's First and Second Claims for Relief are both expressly predicated on each defendant's alleged participation in a criminal conspiracy to violate certain of the ATA's criminal law provisions.  The First Claim for Relief alleges that "each Defendant violated § 2339A's express prohibition against conspiring to provide material support within the meaning of § 2339A, and committed and completed overt acts in furtherance of the Conspiracy".  *Id.* ¶ 1466.  Similarly, the Second Claim for Relief alleges that "each Defendant violated § 2339B's express prohibition against conspiring to provide material support within the meaning of § 2339B, and committed and completed overt acts in furtherance of the Conspiracy".  *Id.* ¶ 1487; *see also id.* ¶¶ 554-609 ("V. M. Defendant Credit Suisse's Agreement To, And Participation In The Conspiracy").[2]

---

[1] The following abbreviations are used in this memorandum of law:  "Credit Suisse" for Defendant Credit Suisse AG; "Joint Memorandum" for the Joint Memorandum in Support of Motion to Dismiss; "Compl." to refer to the Amended Complaint filed on April 2, 2015 (Doc. 77); and "ATA" for the Anti-Terrorism Act.

[2] 18 U.S.C. § 2339A criminalizes, *inter alia*, conspiring to "provide[] material support or resources . . . knowing or intending that they are to be used in preparation for, or in carrying out,

The Complaint asserts that, between 1995 and November 2006, Credit Suisse participated in the alleged Conspiracy by providing a banking service, in acting as a correspondent bank for U.S. dollar-denominated transactions as to two Iranian banks: Bank Melli and Bank Saderat. *Id.* ¶¶ 5, 12, 567, 603; *see also id.* ¶¶ 267, 274, 302, 309, 554, 561. The Complaint does not allege that Credit Suisse processed U.S. dollar-denominated transactions for any terrorists or terrorist groups, such as Hezbollah, the Islamic Revolutionary Guards Corps Qods Force ("IRGC-QF") or any of the named or unnamed Iraqi terrorist groups Hezbollah and IRGC-QF allegedly supported. *Id.* ¶¶ 127-62 (Iran's support of Hezbollah and IRGC-QF, not involving Credit Suisse); ¶¶ 554-609 (Credit Suisse's banking transactions, with no reference to terrorism). Nor is Credit Suisse alleged to have dealt with the Government of Iran or any arm of the Government of Iran, such as the Islamic Republic of Iran's Shipping Lines ("IRISL") or Iran's Defense Industries Organization ("DIO"), which in turn allegedly provided support to terrorist groups in Iraq. *See id.* ¶¶ 35-36, 113-26, 160, 633.

As to Credit Suisse's U.S. dollar-denominated banking transactions with Iranian banks (not involving any terrorist groups), the Complaint concedes that, by January 2006, Credit Suisse had decided to terminate all such banking services. *See id.* ¶¶ 603-04. Credit Suisse is alleged to have completed most of that wind-down by September 2006 and ceased all of its transactions with Iranian banks by October 27, 2006. *Id.* ¶ 604. Thus, while none of the funding or support for any of the alleged attacks in Iraq is linked in any way to Credit Suisse, more than two-thirds of those alleged attacks, including the January 20, 2007 attack described in detail in

---

a violation of" one of several substantive terrorism offenses, and 18 U.S.C. § 2339B criminalizes, *inter alia*, conspiring to "knowingly provide[] material support or resources to a foreign terrorist organization".

2

the Complaint, *see id.* ¶¶ 645-734, occurred after Credit Suisse is alleged to have terminated all U.S. dollar-clearing transactions with Iranian banks, *see id.* ¶¶ 554-609.

As the Complaint further acknowledges, during the time period when Credit Suisse allegedly acted as a correspondent bank for Iranian banks, processing U.S. dollar-denominated transactions was lawful when completed under the criteria in the Office of Foreign Assets Control ("OFAC")'s "U-Turn" exemption.  *See id.* ¶ 87.  OFAC did not revoke the U-Turn exemption as to Bank Saderat until September 2006 (by which time Credit Suisse had ceased almost all Iranian banking transactions), *see id.* ¶ 259, and as to Bank Melli until November 2008 (more than two years after Credit Suisse stopped all Iranian banking transactions), *see id.* ¶ 87.  The Complaint further concedes that the U.S. Government did not designate either Bank Melli or Bank Saderat as a sanctioned—*i.e.*, entirely prohibited—entity until October 2007, nearly a year after the Complaint concedes Credit Suisse terminated all U.S. dollar-denominated transactions for Iranian banks.  *Id.* ¶¶ 272, 299, 604.

Plaintiffs allege that when processing U.S. dollar transactions for Iranian banks under the U-Turn exemption, Credit Suisse "altered, falsified, or omitted information from payment messages" (*id.* ¶¶ 34, 37)—a practice that Plaintiffs term "stripping" (*id.* ¶ 238).  The Complaint does not, however, allege that any of these transactions involved any terrorist group. The Complaint also acknowledges that, in March 2007, Credit Suisse initiated an internal investigation of its U.S. dollar-clearing transactions, subsequently cooperated with an investigation of these activities by U.S. authorities, entered a deferred prosecution agreement with the U.S. Government, and agreed to a $536 million civil forfeiture for banking transactions as to multiple countries, including Iran, Burma, Cuba, Libya, Sudan and Syria.  *See id.* ¶¶ 605-08.  The deferred prosecution agreement does not suggest that Credit Suisse processed any U.S.

3

dollar-denominated transactions that supported any terrorist group. *Id.* ¶¶ 605-08. Nor do Plaintiffs allege, beyond the deferred prosecution agreement, any actual connection between Credit Suisse's alleged banking transactions and the terrorist organizations or acts identified in the Complaint. *See id.* ¶¶ 554-609 (Credit Suisse's alleged banking transactions, with no reference to terrorism), ¶¶ 127-225 (Iran's support of terrorism, not involving Credit Suisse).

The Complaint instead contains several wholly conclusory allegations about the alleged "Conspiracy", which do not connect Credit Suisse's alleged conduct in any way to attacks in Iraq. Plaintiffs broadly claim that the alleged Conspiracy "facilitated", *id.* ¶¶ 34, 274, 1475, 1478, 1488, 1494, or "substantially enhanced", *id.* ¶ 1483, Iran's support for terrorism by allowing Iran to hide its terrorism-related transactions behind the "large volumes of dollar clearing" and by providing Iran "with the means by which it could transfer more than $150 million to the IRGC, Hezbollah and Special Groups", *id.* ¶¶ 98, 254. The Complaint does not allege that any of Credit Suisse's U.S. dollar-denominated transactions involved even one dollar of money being funneled to these terrorist organizations. *Id.* ¶¶127-62 (Iran's support of Hezbollah and IRGC-QF, not involving Credit Suisse), ¶¶ 554-609 (Credit Suisse's dollar-clearing transactions, with no reference to terrorism). In sum, whatever the purported interactions were between the Iranian banks and the Government of Iran concerning alleged funding of terrorism, none of Credit Suisse's banking services is actually alleged to have been part of that funding. *Id*. ¶¶ 554-609.

While Plaintiffs also allege that each defendant "knew or was deliberately indifferent to the fact that Iran . . . would channel . . . hundreds of millions of the dollars [processed by defendants] to the IRGC and Hezbollah as part of the [alleged] Conspiracy" (*id.* ¶ 30; *see also id.* ¶¶ 7, 13, 31, 241, 244, 254, 1471, 1473-75, 1479, 1489-91), no substantiating

4

facts are alleged as to Credit Suisse, *id.* ¶¶ 19-27 (news reports of Iran's terrorism-financing activities after Credit Suisse concededly ceased all Iranian transactions), ¶¶ 34, 274 (Bank Saderat's designation as a Specially Designated Global Terrorist after Credit Suisse concededly ceased all Iranian transactions), ¶¶ 605-08 (Credit Suisse's deferred prosecution agreement and related documents with no reference to terrorism).

Nor does the Complaint allege that, absent Credit Suisse's handling of U.S. dollar-denominated transactions for Iranian banks, the Government of Iran would not have supported Hezbollah or IRGC-QF, that Hezbollah or IRGC-QF would not have trained or sponsored named and unnamed terrorist groups in Iraq, or that the attacks on Plaintiffs would not have otherwise been financed by Iran or its related entities.  *Id.* ¶¶ 127-62 (Iran's support of Hezbollah and IRGC-QF, not involving Credit Suisse), ¶¶ 554-609 (Credit Suisse's dollar-clearing transactions, with no reference to terrorism).

Lastly, the Complaint makes a few limited and conclusory allegations that Credit Suisse facilitated U.S. dollar-denominated transactions on behalf of two Iranian government agencies that are not alleged to have anything whatsoever to do—directly or indirectly—with terrorist attacks in Iraq.  *See id.* ¶ 322 (Credit Suisse "facilitated" transactions for Iran's Aerospace Industries Organization ("AIO")); *id.* ¶ 556 (Credit Suisse "worked closely with . . . Iran's Atomic Energy Organization [("AEOI")] (and other designated Weapons of Mass Destruction proliferators) for many years".  On the face of these allegations, these Iranian agencies participated in Iran's separate (and irrelevant) nuclear development activities.  *Id.*

5

**ARGUMENT**

**I.    THE TWO CLAIMS AGAINST CREDIT SUISSE RELY ENTIRELY ON A CONSPIRACY THEORY OF LIABILITY FORECLOSED BY *ROTHSTEIN* AND ITS PROGENY**

The First and Second Claims for Relief—the only claims in which Credit Suisse is named as a defendant—must be dismissed because both claims are predicated on a conspiracy theory of liability. Both claims explicitly allege that Credit Suisse is liable under Section 2333 because Credit Suisse allegedly participated in a criminal conspiracy to violate 18 U.S.C. § 2339A (First Claim for Relief) and 18 U.S.C. § 2339B (Second Claim for Relief). *See supra* at 2. For the reasons set forth in the Joint Memorandum, Section 2333 civil claims predicated on a criminal conspiracy theory of liability are not cognizable. *See* Joint Memorandum at 20-24; *Rothstein*, 708 F.3d at 97-98 (dismissing aiding-and-abetting claims because civil secondary liability is not available under Section 2333); *Linde v. Arab Bank, PLC*, 944 F. Supp. 2d 215, 216-17 (E.D.N.Y. 2013) (applying *Rothstein* to dismiss all conspiracy-based civil claims under Section 2333).[3]

**II.   THE COMPLAINT FAILS PLAUSIBLY TO ALLEGE PROXIMATE CAUSATION AS TO CREDIT SUISSE**

The First and Second Claims for Relief must also be dismissed on the independent ground that they fail adequately to plead proximate cause as to Credit Suisse. To state a Section 2333 claim, a plaintiff must plausibly allege that the defendant's act was the proximate cause of the injury. *See* Joint Memorandum at 11. The Complaint does not plausibly allege that Credit Suisse's alleged U.S. dollar-denominated banking transactions with certain Iranian banks proximately caused Plaintiffs' injuries. As demonstrated in the Joint

---

[3] Because conspiracy-based civil liability is not available under Section 2333, Credit Suisse does not address the Complaint's separate failure adequately to allege a claim of conspiracy or any other conduct satisfying the requirements of 18 U.S.C. § 2339A and § 2339B.

Memorandum, the Complaint's purported causal connection between Credit Suisse's banking services and Plaintiffs' injuries is premised on precisely the same kind of indirect causal theory the Second Circuit rejected in *Rothstein*. *See* Joint Memorandum at 10-20.

The Complaint's causal allegations as to Credit Suisse are even more indirect and implausible than was the case in *Rothstein*. There is no allegation that Credit Suisse's processing of electronic wire transfers in U.S. dollar denominations (even if allegedly "stripped" of Iranian identifiers) involved any terrorist group in Iran, in Iraq or elsewhere. *See* Am. Compl. ¶¶ 127, 202, 238, 554-608, 655, 738, 1257, 1270, 1321, 1365. The Complaint also does not allege that Credit Suisse processed transactions for anyone else—including any arm of the Government of Iran—that allegedly used money processed by Credit Suisse to in turn fund Hezbollah, IRGC-QF or any other terrorist group. *See id.* ¶¶ 127-225. As in *Rothstein*, 708 F.3d at 97, and *O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 118, 124 (2d Cir. 2013), there is no plausible connection alleged between Credit Suisse's banking services and any terrorist attack in Iraq that injured Plaintiffs. *See also* Joint Memorandum at 13-15.

In addition, Plaintiffs' conclusory foreseeability allegations are not a substitute for pleading a direct connection between Credit Suisse's conduct and the attacks in Iraq. *See id.* at 17-19. The Complaint's foreseeability allegations are, in any case, entirely unsubstantiated as to Credit Suisse, which the Complaint concedes ceased all of its Iranian U.S. dollar-denominated clearing services well before OFAC designated any of the Iranian banks with which Credit Suisse allegedly dealt. *See* Am. Compl. ¶¶ 87, 259, 272, 299, 604-05; *see also supra* at 5.

For all of the reasons set forth in the Joint Memorandum and stated here, dismissal is required for failure to plead proximate cause. *See* Joint Memorandum at 10-20; *Rothstein*, 708 F.3d at 97 (dismissing complaint because it contained "no nonconclusory

7

allegation . . . that plausibly shows that the moneys [defendant] transferred to Iran were in fact sent to H[e]zbollah or Hamas" which then injured plaintiffs); *Al Rajhi*, 714 F.3d at 124 (dismissing complaint because there were no plausible allegations that defendants "provided money directly to al Qaeda" or that "the money allegedly donated by the . . . defendants to the purported charities actually was transferred to al Qaeda and aided in the September 11, 2001 attacks").

## CONCLUSION

For the foregoing reasons, Credit Suisse respectfully submits that the First and Second Claims for Relief in the Complaint should be dismissed with prejudice as to Credit Suisse.

Respectfully submitted,

Dated: May 29, 2015

CRAVATH, SWAINE & MOORE LLP,

by
   */s/ Richard W. Clary*
Richard W. Clary
Michael T. Reynolds
John D. Buretta

Members of the Firm

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
rclary@cravath.com
mreynolds@cravath.com
jburetta@cravath.com

*Attorneys for Defendant Credit Suisse AG*