UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CHARLOTTE FREEMAN, et al.,

                Plaintiffs,

-against-

HSBC HOLDINGS PLC, et al.,

                Defendants.

14-CV-6601 (DLI/CLP)

**Oral Argument Requested**

### DEFENDANT COMMERZBANK AG'S SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York 10006
(212) 225-2000

Attorneys for Defendant Commerzbank AG

May 29, 2015

**TABLE OF CONTENTS**

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | ii |
| PRELIMINARY STATEMENT | 1 |
| SUMMARY OF RELEVANT ALLEGATIONS | 3 |
|     A.   Commerzbank | 4 |
|     B.   IRISL | 4 |
|     C.   Commerzbank's Alleged Material Support To IRISL | 6 |
|     D.   Allegations Relating To Personal Jurisdiction | 7 |
| ARGUMENT | 7 |
| I.   THE COURT SHOULD DISMISS THE IRISL CLAIM FOR FAILURE TO STATE A CLAIM | 7 |
|     A.   The IRISL Claim Fails To Plead Proximate Cause | 7 |
|     B.   To The Extent That The IRISL Claim Rests On The Alleged Conspiracy, The Court Should Dismiss It For That Reason Too | 10 |
| II.   THE COURT CAN ONLY EXERCISE PERSONAL JURISDICTION OVER COMMERZBANK TO THE EXTENT THAT PLAINTIFFS' CLAIMS ARISE FROM COMMERZBANK'S CONTACTS WITH THE UNITED STATES | 11 |
| CONCLUSION | 12 |

## Table of Authorities

**Page(s)**

**Rules and Statutes**

18 U.S.C. § 2333(a) ............................................................................................... 1

CPLR § 302(a)(1) ................................................................................................ 12

CPLR § 302(a)(2) ................................................................................................ 12

CPLR § 302(a)(3) ................................................................................................ 12

**Cases**

*Burger King Corp. v. Rudzewicz,*
471 U.S. 462 (1985) ............................................................................................ 11

*Daimler AG v. Bauman,*
134 S. Ct. 746 (2014) .......................................................................................... 11

*Gucci Am., Inc. v. Bank of China,*
768 F.3d 122 (2d Cir. 2014) ............................................................................... 11

*In re Terrorist Attacks on Sept. 11, 2001,*
349 F. Supp. 2d 765 (S.D.N.Y. 2005) ................................................................. 12

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,*
732 F.3d 161 (2d Cir. 2013) ............................................................................... 12

*O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on September 11, 2001),*
714 F.3d 118 (2d Cir. 2013) ..................................................................... 2, 8, 9, 10

*O'Neill v. Asat Trust Reg. (In re Terrorist Attacks on September 11, 2001),*
714 F.3d 659 (2d Cir. 2013) ............................................................................. 9-10

*Porcello v. Brackett,*
446 N.Y.S.2d 780 (4th Dep't 1981) .................................................................... 12

*Rothstein v. UBS AG,*
708 F.3d 82 (2d Cir. 2013) ................................................................................... 8

*Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,*
450 F.3d 100 (2d Cir. 2006) ............................................................................... 11

*Strauss v. Credit Lyonnais, S.A.,*
925 F. Supp. 2d 414 (E.D.N.Y. 2013) (Irizarry, J.) ........................................... 8, 9

*Sunward Elecs., Inc. v. McDonald*,
362 F.3d 17 (2d Cir. 2004).................................................................................................. 12

*Vaichunas v. Tonyes*,
877 N.Y.S.2d 204 (2d Dep't 2009)...................................................................................... 12

**Other Authorities**

S.C. Res. 1929, U.N. Doc. S/Res/1929 (June 9, 2010)........................................................ 6

U.S. Dep't. of State, *Foreign Terrorist Orgs.*, *available at*
http://www.state.gov/j/ct/rls/other/des/123085.htm............................................................. 5

U.S. Dep't. of the Treasury, *What You Need to Know About Treasury Restrictions*,
*available at* http://www.treasury.gov/resource-
center/sanctions/Programs/Documents/wmd.pdf................................................................ 5

Defendant Commerzbank AG ("Commerzbank") fully joins Defendants' Joint Memorandum in Support of Motion to Dismiss (the "Joint Memorandum"), which demonstrates why the Court should dismiss Claims One through Four of the Amended Complaint (the "Complaint").  Commerzbank respectfully submits this supplemental memorandum in support of its motions to dismiss (1) Plaintiffs' Fifth Claim for Relief, which is asserted only against Commerzbank; and (2) all of the Complaint's claims against Commerzbank for lack of personal jurisdiction over Commerzbank, to the extent that Plaintiffs are purporting to assert those claims based on any transactions that did not touch the United States.[1]

**PRELIMINARY STATEMENT**

The attacks on U.S. soldiers alleged in the Complaint are abhorrent.  But Commerzbank is not responsible for those attacks, and Plaintiffs have not properly pleaded any claims against Commerzbank based on those attacks.  The Court should therefore dismiss the First, Second and Fourth Claims for Relief against Commerzbank for the reasons shown in the Joint Memorandum.  As shown below, the Court should also dismiss the remaining claim against Commerzbank, the Fifth Claim for Relief (the "IRISL Claim"), because it too impermissibly seeks to stretch the civil provision of the Antiterrorism Act ("ATA"), 18 U.S.C. § 2333(a), beyond its bounds, as construed by the Second Circuit and this Court.

The IRISL claim is based on allegations that (1) Commerzbank provided dollar-clearing services, in violation of U.S. sanctions laws, to IRISL, which has been sanctioned by the United States Treasury's Office of Foreign Assets Control ("OFAC"); (2) IRISL, in turn, provided arms or other support to Iranian-sponsored terrorist organizations, including Hezbollah

---

[1] Capitalized terms, unless otherwise defined herein, have the meaning given to them in the Joint Memorandum.

and the IRGC; and (3) those groups and others, in turn, are responsible for the attacks in Iraq by which Plaintiffs were injured. No allegation is made that Commerzbank provided services to – or had a relationship with – Hezbollah or the IRGC.

Like the other claims addressed in the Joint Memorandum, and because the IRISL Claim contends only that Commerzbank provided <u>indirect</u> support for the attacks at issue, that claim fails to plead facts sufficient to satisfy its indispensable proximate cause element under controlling Second Circuit precedent, including *O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on September 11, 2001)*, 714 F.3d 118 (2d Cir. 2013). The complaint in *Al Rajhi* claimed that the defendants had provided funds to purported charities that were designated by OFAC as Specially Designated Global Terrorists ("SDGTs") because of their alleged support for al Qaeda, the foreign terrorist organization responsible for the September 11, 2001 terrorist attacks in which the plaintiffs were injured. *See infra* 9-10. The Second Circuit dismissed that claim based on the defendants' purported indirect support for al Qaeda, ruling that the plaintiffs had failed to plausibly plead that the defendants proximately caused the plaintiffs' injuries. In particular, the Second Circuit found that the complaint contained no "factual allegations" that the funds provided by the defendants were actually transferred to al Qaeda, or were used in the September 11 attacks and so were a but-for cause of those attacks. *Al Rajhi*, 714 F.3d at 124.

The Complaint here suffers from precisely the same fatal flaw, both in the IRISL Claim and in the first four claims for relief, as shown in the Joint Memorandum. Joint Mem. at 10-26. Specifically, the IRISL Claim alleges at most that Commerzbank cleared dollar transactions for <u>IRISL</u>, <u>not</u> for Hezbollah or any other foreign terrorist organization that allegedly committed the attacks by which Plaintiffs were injured. Further, the Complaint contains no factual allegations that any dollars cleared by Commerzbank on IRISL's behalf were

2

transferred to Hezbollah or any other foreign terrorist organization that committed the attacks at issue, or that Commerzbank's transactions with IRISL were a "but-for" cause of those attacks, as *Al Rajhi* requires where Plaintiffs accuse Commerzbank of indirectly causing the attacks.

Moreover, to the extent that the IRISL Claim attempts to overcome this fatal flaw by relying on the Complaint's broad allegations of a conspiracy involving, among others, the government of Iran, Iranian banks, and western financial institutions including Commerzbank, the IRISL Claim would still fail because, as shown in the Joint Memorandum, the ATA does not provide for civil conspiracy liability. Joint Mem. at 20-24. Accordingly, the Court should dismiss the IRISL Claim.

Finally, if any of Plaintiffs' claims survive dismissal – and they should not – the Court's assertion of personal jurisdiction over Commerzbank is limited to Plaintiffs' claims that arise from transactions that transited through the United States, as Plaintiffs appear to concede. *See* Compl. ¶ 44 (alleging a conspiracy "to effectuate the flow of billions of USD through the United States" that purportedly "resulted in hundreds of billions of dollars illegally passing through the United States."). Under controlling precedent, Plaintiffs cannot pursue claims against Commerzbank to the extent they arise out of book-entry or other transactions that did not involve funds that transited through the United States. Commerzbank thus moves to dismiss the Complaint for lack of personal jurisdiction to the extent Plaintiffs attempt to depart from their jurisdictional allegation in paragraph 44 of the Complaint, and base any claims against Commerzbank on transactions having no nexus to the United States.

## SUMMARY OF RELEVANT ALLEGATIONS

The IRISL Claim alleges that Commerzbank is civilly liable under 18 U.S.C. § 2333(a) for injuries Plaintiffs suffered in attacks in Iraq because Commerzbank allegedly provided material support to IRISL, purportedly while Commerzbank either knew or was

3

deliberately indifferent to whether that support would be used in preparation for, or in carrying out, acts of international terrorism, purportedly in violation of 18 U.S.C. § 2339A. *See* Compl. ¶¶ 1539-46.

### A. Commerzbank

Commerzbank is a major financial institution based in Frankfurt, Germany. Compl. ¶ 71. It has over 1,200 branches in Germany and another 23 branches around the world. *Id*. ¶¶ 71-72. Earlier this year, Commerzbank entered into a deferred prosecution agreement with the U.S. Department of Justice in which Commerzbank acknowledged having engaged in transactions with Iranian businesses, including IRISL, that violated U.S. sanctions laws. However, nothing in that agreement, which Plaintiffs concede was the product of "a wide-ranging investigation," links Commerzbank, or alleges that it provided any support, to any terrorists, terrorist organizations or terrorist activity. *Id*. ¶¶ 104, 610.

### B. IRISL

According to the Complaint, IRISL is "Iran's national maritime carrier" and "provides a variety of maritime transport services, including bulk, break-bulk, cargo and containerized shipping." *Id*. ¶ 113. The Complaint also alleges that IRISL was part of a broadly-defined "Conspiracy" among the government of Iran, Iranian financial institutions, and certain western banks. *See id*. ¶ 236; Joint Mem. at 20-24.

The Complaint alleges that IRISL "has a long history of facilitating arms shipments on behalf of the IRGC and the Iranian military." Compl. ¶ 114. However, the

4

Complaint contains no non-conclusory allegation that IRISL provided any arms or other material support that was used in any of the attacks in which Plaintiffs were injured.[2]

On September 10, 2008, OFAC designated IRISL as a Specially Designated National ("SDN"). *Id*. ¶¶ 35, 642. OFAC's SDN designations, including of IRISL, were made pursuant to Executive Order 13882, which is entitled "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters." *See* U.S. Dep't. of the Treasury, *What You Need to Know About Treasury Restrictions*, available at http://www.treasury.gov/resource-center/sanctions/Programs/Documents/wmd.pdf. That is distinct from OFAC's counterterrorism sanctions program, as part of which OFAC designates certain organizations or individuals as SDGTs pursuant to Executive Order 13224. It is also distinct from the designations of Foreign Terrorist Organizations ("FTOs") by the Secretary of State pursuant to Section 219 of the Immigration and Nationality Act. *See* U.S. Dep't. of State, *Foreign Terrorist Orgs.*, available at http://www.state.gov/j/ct/rls/other/des/123085.htm. Moreover, the U.S. Treasury Department has associated IRISL with Iran's nuclear and missile programs, not terrorism or support for the IRGC or Hezbollah. Press Release, U.S. Dep't. of the Treasury, *Major Iranian Shipping Company Designated for Proliferation Activity* (Sept. 10, 2008), *available at* http://www.treasury.gov/press-center/press-releases/Pages/hp1130.aspx.[3]

---

[2] The bases for the allegations that IRISL provided military cargo to Hezbollah and the IRGC appear to be: State Department cables that appear to implicate IRISL-flagged vessels in shipping arms from China to Iran that could be used against U.S. coalition forces in Iraq, *id.* ¶¶ 115-17; OFAC's designation of IRISL as a Specially Designated National, *id.* ¶¶ 118-19, which is discussed below; the discovery of military cargo on ships associated with IRISL destined for Syria and Gaza, *id.* ¶¶ 120-25; and a U.N. resolution freezing certain IRISL assets, *id.* ¶ 126, which is also discussed below. None of these contentions links IRISL, or any military cargo it allegedly facilitated, to any of the attacks by which Plaintiffs were injured.

[3] The Complaint also notes that United Nations Security Council Resolution 1929, which was adopted on June 9, 2010, "froze certain assets of IRISL and . . . called on the international

[*Continued on Next Page*]

### C. Commerzbank's Alleged Material Support To IRISL

The Complaint alleges that, beginning in 2002, Commerzbank "worked directly with IRISL to facilitate illicit payments through the United States." Compl. ¶ 625. In particular, the Complaint alleges that Commerzbank adopted a process whereby "IRISL initiated USD transfers through the U.S. using the accounts of less conspicuous subsidiaries… but to assist IRISL in its bookkeeping, [Commerzbank] would sweep those accounts daily and zero them out so that IRISL could keep track of which funds belonged to it – as opposed to its subsidiaries." *Id.* ¶ 630. In addition, the Complaint alleges that, during the four months following IRISL's designation as an SDN in September 2008, "Commerzbank illegally transferred almost $40 Million on behalf of IRISL subsidiaries and related entities through Commerzbank's New York branch, or other U.S. financial institutions." *Id.* ¶ 632.

Based on these contentions, the Complaint then leaps to the conclusory allegation that the dollar-clearing services Commerzbank provided to IRISL foreseeably allowed IRISL to provide substantial assistance to the IRGC, Hezbollah and the Special Groups. *Id.* ¶ 1542. But the Complaint does not identify a single banking transaction involving Commerzbank by which IRISL allegedly transferred funds (or any other support) to the IRGC, Hezbollah, Special Groups or any other terrorist organization. Nor is there a single allegation in the Complaint that any of the proceeds of the dollar-clearing transactions between Commerzbank and IRISL were in fact transferred to Hezbollah or any other terrorists who committed the attacks by which Plaintiffs were injured, or that these attacks would not have occurred but for Commerzbank's transactions

---

community to refuse financial and insurance services" to IRISL. Compl. ¶ 126. Like the 2008 OFAC designation, this U.N. resolution concerned measures against Iran in connection with its "enrichment-related and reprocessing activities, including research and development," not concerns about support for terrorism or connections with terrorist groups. *See* S.C. Res. 1929 ¶ 37, U.N. Doc. S/Res/1929 (June 9, 2010).

6

with IRISL. Finally, there is no allegation that any of Commerzbank's dealings with IRISL involved funding or other involvement in any of the attacks by which Plaintiffs were injured.[4] As shown below, the absence of any such allegations in the Complaint precludes Plaintiffs from satisfying the indispensable proximate causation element of the IRISL Claim.

### D. Allegations Relating To Personal Jurisdiction

Plaintiffs allege that this Court may exercise personal jurisdiction over Commerzbank, as well as other Defendants, under 18 U.S.C. § 2334(a), CPLR § 302, and Rule 4(k)(1)-(2) of the Federal Rules of Civil Procedure. *Id.* ¶ 44. Plaintiffs allege that the basis for asserting personal jurisdiction is Defendants' "unlawful conduct . . . purposefully directed at the United States" that was "specifically designed to effectuate the flow of billions of USD through the United States in violation of U.S. laws, and [which] in fact resulted in hundreds of billions of dollars illegally passing through the United States." *Id.* It thus appears from the Complaint that Plaintiffs are not purporting to base their claims on transactions involving Commerzbank that did not contact the United States, and thus with respect to which the Court could not assert personal jurisdiction over Commerzbank.

## ARGUMENT

### I. THE COURT SHOULD DISMISS THE IRISL CLAIM FOR FAILURE TO STATE A CLAIM

#### A. The IRISL Claim Fails To Plead Proximate Cause

As explained in the Joint Memorandum, an indispensable element of any claim under Section 2333(a) is that the defendant proximately caused the plaintiff's injuries. Joint Mem. at 10-15. Moreover, the Second Circuit has ruled that where, as here, a complaint alleges

---

[4] As noted above, the deferred prosecution agreement upon which the Complaint relies does not contain any such findings.

7

only that the defendant at most provided <u>indirect</u> support to the foreign terrorist organization that purportedly committed the attack by which the plaintiff was injured, the proximate cause requirement can be satisfied only by showing that funds provided by the defendant <u>actually were transferred</u> to that foreign terrorist organization <u>or</u> that such funds were otherwise a <u>but-for</u> cause of that attack. *See Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013); *Al Rajhi*, 714 F.3d at 124.

The IRSL Claim is a claim for <u>indirect</u> support of terrorist acts, like those in *Rothstein* and *Al Rajhi*, because it alleges only that (1) Commerzbank provided support in the form of dollar-clearing services to IRISL; (2) IRISL in turn provided material support to Hezbollah; and (3) Hezbollah, among others, was allegedly responsible for the attacks by which Plaintiffs were injured. *See* Compl. ¶¶ 36, 626. As noted above, IRISL is not alleged to have participated in any of the attacks. Nor does the Complaint allege that Commerzbank itself entered into any transactions with any organization that <u>did</u> participate in those attacks, whether Hezbollah or any other foreign terrorist organization, much less that <u>Commerzbank</u> was involved in perpetrating any of those attacks.

The fact that IRISL, the entity with which Commerzbank transacted, is an OFAC-sanctioned entity does not make this a direct causation case and is insufficient to satisfy the proximate cause requirement. As a preliminary matter, unlike Hezbollah, IRISL has <u>not</u> been designated by the Secretary of State as an FTO. *Compare* Compl. ¶ 118 *with id.* ¶ 9. As this Court has previously noted, FTO designations are "separate [and made] under different regulations" than the OFAC sanctions programs. *See Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 451 (E.D.N.Y. 2013) (Irizarry, J.) (noting that although the ATA expressly proscribes transacting with FTOs, it is not a *per se* violation of the ATA to transact with

8

SDGTs). Moreover, the distinction between FTO designations and other sanctions programs is "meaningful" in the proximate cause analysis because Congress's finding that FTOs "are so tainted by their criminal conduct that any contribution to such an organization facilitates that conduct" is specific to FTOs and does not apply to other entities, even though they are involved in funding terrorism. *See Strauss*, 925 F. Supp. 2d at 433. Nor does the Complaint contain any allegations, much less non-conclusory allegations, that IRISL is an *alter ego* of, or controlled by, Hezbollah or any other FTO such that it can be said to be part of such FTO. *Compare Strauss* 925 F. Supp. 2d at 434 ("A jury could find that Defendant sent the money to organizations that were controlled by Hamas, which is no different from sending the money directly to Hamas for purposes of the ATA.").

The Second Circuit has squarely ruled in *Al Rajhi* that a defendant's alleged funding of an entity that has been sanctioned by OFAC for its alleged support of an FTO is insufficient to satisfy the proximate cause element of an ATA claim, in the absence of factual allegations that the funds provided by the defendant actually were transferred to the FTO or were a "but-for" cause of plaintiffs' injuries in an attack perpetrated by that FTO.[5] In *Al Rajhi*, the complaint alleged that the defendants, including Al Rajhi Bank, were civilly liable for plaintiffs' injuries in the September 11, 2001 terrorist attacks because the defendants knowingly provided financial support and banking services "to purported charities that supported al Qaeda." 714 F.3d at 122, 123. For example, the complaint alleged that Al Rajhi Bank provided financial services to, among others, Al-Haramain Islamic Foundation ("Al-Haramain"), which had been designated by OFAC as an SDGT for its alleged support of al Qaeda. *O'Neill v. Asat Trust Reg.*

---

[5] As noted above, OFAC did not sanction IRISL as an SDGT pursuant to its counterterrorism sanctions program, but as an SDN pursuant to OFAC's separate anti-nuclear proliferation sanctions.

9

*(In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 659, 668 (2d Cir. 2013).[6] *See also id.* at 667 (noting that the complaint alleged that Al-Haramain "exploited its non-profit status for the benefit of Osama bin Laden and his terrorist network al Qaeda, in the furtherance of international terrorism"). Nonetheless, the Second Circuit held that this allegation did not suffice to plausibly plead proximate cause because there were no "factual allegations" that the funds provided by defendants to Al-Haramain *actually were transferred* to al Qaeda *or* that such funds were a *but-for* cause of the September 11, 2001 attacks. *See Al Rajhi*, 714 F.3d at 124.

*Al Rajhi* is dispositive here. The Complaint contains no allegations that proceeds of the dollar-clearing transactions between Commerzbank and IRISL actually were transferred to Hezbollah or to any other foreign terrorist organization that committed the attacks by which Plaintiffs were injured, or that such transactions were a but-for cause of those attacks.

### B. To The Extent That The IRISL Claim Rests On The Alleged Conspiracy, The Court Should Dismiss It For That Reason Too

The Complaint contains conclusory allegations that IRISL was part of the Conspiracy, *see supra* Summary of Relevant Allegations, Section B, but the IRISL Claim does not appear to rest on a civil conspiracy theory of liability, as do the other four counts in the Complaint. *See* Compl. ¶¶ 1538-46. In any event, to the extent that Plaintiffs try to overcome their failure to allege proximate cause in the IRISL Claim by relying on their conspiracy allegations, the Court would still need to dismiss the IRISL Claim because, as the Joint

---

[6] The *Asat Trust* decision was issued by the same panel of the Second Circuit on the same day and in the same multi-district litigation as the *Al Rajhi* decision, which noted that "[t]he background of the case is discussed in detail in the two [other] opinions issued today . . . . We need not elaborate further here, and we assume the parties['] familiarity with the facts and procedural history of this sprawling multi-district litigation." *Al Rajhi*, 714 F.3d at 122.

Memorandum demonstrates, there is no civil conspiracy liability under the ATA. *See* Joint Mem. at 20-24. Accordingly, the Court should dismiss the IRISL Claim.

II. **THE COURT CAN ONLY EXERCISE PERSONAL JURISDICTION OVER COMMERZBANK TO THE EXTENT THAT PLAINTIFFS' CLAIMS ARISE FROM COMMERZBANK'S CONTACTS WITH THE UNITED STATES**

Plaintiffs do not – and cannot – allege that Commerzbank, a German corporation with its principal place of business in Germany, is subject to this Court's <u>general</u> personal jurisdiction. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 760-62 & n.19 (2014) (holding that a corporate defendant is subject to general jurisdiction only in its "place of incorporation and principal place of business," absent "exceptional" circumstances); *see also Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014) (holding that *Daimler* "expressly cast[s] doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum").

Instead, plaintiffs allege that <u>specific</u> personal jurisdiction over Commerzbank is appropriate based on Commerzbank's transactions that transited through the United States. *See* Compl. ¶ 44. However, the Court can assert specific jurisdiction over Commerzbank consistent with due process only to the extent that Commerzbank "has purposefully directed [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal citations and quotations omitted). The CPLR and Rule 4(k) impose essentially the same requirement. *See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006) (the subsection of New York's long-arm statute that provides specific jurisdiction over non-domiciliaries who "transact[] business within the state," CPLR § 302(a)(1), requires that "the claim asserted must arise from that business activity"); *In re Terrorist Attacks on Sept.*

11

*11, 2001*, 349 F. Supp. 2d 765, 806 (S.D.N.Y. 2005) (under Rule 4(k)(1), plaintiffs must also show that their claims arise from the defendant's forum contacts).[7]

Thus, this Court's assertion of personal jurisdiction over Commerzbank is limited to Plaintiffs' claims that are "premised on" Commerzbank's transfers that transited through the United States. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171-74 (2d Cir. 2013). Plaintiffs cannot pursue claims that "arise from" book-entry or other transactions that did not actually involve funds transiting through the United States.

Accordingly, to the extent Plaintiffs attempt to depart from their jurisdictional allegations in paragraph 44 of the Complaint and base any claims against Commerzbank on transactions having no nexus to the United States, the Court should dismiss the Complaint as against Commerzbank for lack of personal jurisdiction. *See Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (holding that "plaintiff must establish the court's jurisdiction with respect to *each* claim asserted") (emphasis in original).

## CONCLUSION

For all of the foregoing reasons and those stated in the Joint Memorandum, the Court should dismiss the Complaint in its entirety as against Commerzbank.

---

[7] The other potentially relevant subsections of the New York long-arm statute – CPLR §§ 302(a)(2) and (3) – do not provide an alternative basis for specific personal jurisdiction over Commerzbank. First, Commerzbank's routing of transfers through New York does not constitute "a tortious act within the state" under Section 302(a)(2). Similarly, plaintiffs cannot show an "injury to person or property within the state" under Section 302(a)(3) because all of the relevant injuries occurred in Iraq. *See Vaichunas v. Tonyes*, 877 N.Y.S.2d 204, 205 (2d Dep't 2009) (holding that Section 302(a)(3) does not reach claims based on a plaintiff's subsequent emotional or physical damages in New York resulting from an injury that occurred outside New York); *Porcello v. Brackett*, 446 N.Y.S.2d 780, 782 (4th Dep't 1981) (holding that the situs of the injury in a wrongful death action is where the death occurred).

Dated: May 29, 2015
      New York, New York

                              Respectfully submitted,

                              CLEARY GOTTLIEB STEEN & HAMILTON LLP

                        By: _/s/ Lawrence B. Friedman_____
                              Lawrence B. Friedman
                              Lewis J. Liman
                              Avram E. Luft
                          One Liberty Plaza
                          New York, New York 10006
                          (212) 225-2000

                          Attorneys for Defendant Commerzbank AG