IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------

CHARLOTTE FREEMAN, et al.,                       X
                                                 :
                                   Plaintiffs,   :        Case No. 14-cv-6601 (DLI)(CLP)
                                                 :
                        v.                       :
                                                 :        Oral Argument Requested
HSBC HOLDINGS PLC, et al.,                        :
                                                 :        Served: August 7, 2015
                                   Defendants.   :
                                                 X

--------------------------------------------------------

---

**REPLY MEMORANDUM OF LAW OF DEFENDANT BANK SADERAT PLC
IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

---

Jeremy D. Frey
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel:  (212) 808-2700

Attorneys for Defendant Bank Saderat PLC

On the Brief:

Jeremy D. Frey
Adam B. Michaels
Megan L. Traversari
Matthew D. Foster

Dated:  August 7, 2015

## TABLE OF CONTENTS

Page

I.      SUMMARY ......................................................................................................... 1

II.     ACT OF WAR EXCLUSION BARS PLAINTIFFS' CLAIMS ........................................ 3

        A.      Act of War is Jurisdictional and Not an Affirmative Defense or Element ............ 3

        B.      Complaint Establishes the AOW's Applicability to the Claimed Injuries ............. 4

III.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED CAUSATION ...................... 10

IV.     NO CONSPIRACY-BASED LIABILITY UNDER § 2333 ........................................... 13

V.      NO ADEQUATE ALLEGATION OF SCIENTER ...................................................... 14

VI.     NO PERSONAL JURISDICTION OVER BSPLC ..................................................... 16

        A.      BSPLC is Not Subject to Long-Arm Jurisdiction Under CPLR § 302 ................ 16

                1.      CPLR § 302(a)(1) – Transaction of Business in New York .................... 16

                2.      CPLR § 302(a)(2) – Tortious Act in New York ...................................... 18

        B.      No Personal Jurisdiction under Rule 4(k) ........................................................ 20

VII.    CONCLUSION ...................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ahmad v. Christian Friends of Israeli Communities et al.*, 2014 U.S. Dist. LEXIS 62053
(S.D.N.Y. May 5, 2014)...............................................................1, 2, 11, 12, 13, 15

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006).......................................................10

*Best Cellars Inc. v. Grape Finds at DuPont, Inc.*, 90 F. Supp. 2d 431 (S.D.N.Y. 2000)..............20

*Biton v. Palestinian Interim Self-Government Auth.*, 510 F. Supp. 2d 144 (D.D.C. 2007)..........20

*Burnett v. Al Baraka Inv. & Dev. Corp.*, 349 F. Supp. 2d 765 (S.D.N.Y. 2005)........................18

*Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260 (S.D.N.Y. 1991).........19, 20

*Devore v. Pfizer, Inc.*, 867 N.Y.S.2d 425 (1st Dept. 2008), *lv denied* 12 N.Y.3d 703
(2009)...................................................................................................................18

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) ..............................................11

*Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)................................................18

*Kaplan v. Central Bank of Islamic Republic of Iran*, 961 F. Supp.2d 185
(D.D.C. 2013) .................................................................................7, 8, 10, 12

*Estate of Klieman v. Palestinian Authority*, 424 F. Supp. 2d 153 (D.D.C. 2006) ........................8

*Lasala v. Lloyds TSB Bank*, 514 F. Supp. 2d 447 (S.D.N.Y. 2007) ......................................18

*Lawati v. Montague Morgan Slade Ltd.*, 961 N.Y.S.2d 5 (1st Dept. 2013) .................................19

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,732, F.3d 161 (2d Cir. 2013).................3, 16

*Marx v. General Revenue Corp*, No. 11-1175, 2013 U.S. LEXIS 1859 (Feb. 3, 2013).................4

*Morris v. Khadr*, 415 F. Supp. 2d 1323 (D. Utah 2006)...............................................7, 9

*O'Neill v. Al-Rajhi Bank*, 714 F.3d 118 (2d Cir. 2013)...........................................1, 2, 11, 12, 13

*Ram v. Wachovia Mortg.*, 2011 U.S. Dist. LEXIS 32392 (E.D. Cal. Mar. 25, 2011) .................17

*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008)....................................................17

*Rothstein v. UBS AG*, 647 F. Supp. 2d 292 (S.D.N.Y 2009) ..........................1, 2, 10, 11, 13, 15

*Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189 (N.Y. 1985)...............................................18

*In re Sept. 11 Litig.*, 751 F.3d 86 (2d Cir. 2014) ........................................................4

*Simon v. Philip Morris Inc.*, 124 F. Supp. 2d 46 (E.D.N.Y. 2000)................................18

*Sokolow v. Palestine Liberation Organization*, 60 F. Supp. 3d 509 (S.D.N.Y. 2014) .............7, 10

*Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414 (E.D.N.Y. 2013) ......................14

*Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156 (E.D.N.Y. 2006) ........................9, 10

*Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720 (S.D.N.Y. 2010)................................16

*Tatone v. Suntrust Mortg., Inc.*, 2012 U.S. Dist. LEXIS 31413 (D. Minn. Feb. 13, 2012)...........17

*In re Terrorists Attacks on Sept. 11, 2001*, 740 F. Supp. 2d 494 (S.D.N.Y. 2010) ......................15

*Trans World Airlines, Inc. v. 47th Street Photo, Inc.*, 1990 U.S. Dist. LEXIS 4227 (S.D.N.Y. Apr. 13, 1990)................................................................17

*Weiss v. National Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014) ................................2, 15

*Yates v. United States*, No. 13-7451, 2015 U.S. LEXIS 1503 (Feb. 25, 2015) ............................4

**STATUTES**

*18 U.S.C. §§ 2, 371* ....................................................................................................12

*18 U.S.C. § 2332f(d)* ...................................................................................................7

*18 U.S.C. §§ 2339A* ....................................................................................................12

*28 U.S.C. § 1603* ........................................................................................................6

*28 U.S.C. § 1605A* .....................................................................................................6, 7

*42 U.S.C. § 9607(b)* ...................................................................................................3

*CPLR 302* ..............................................................................................................16, 18

I.      SUMMARY

Plaintiffs seek to interpret the ATA's civil cause of action without respect for the limiting principles that sensibly confine it.  Plaintiffs advance a reading of the ATA that would expose businesses and individuals around the world having ordinary dealings with the Islamic Republic of Iran (IRI) to potential civil liability as alleged terrorists.[1]

In arguing that the act of war exclusion (AOW) does not bar the claims of the plaintiff servicemen, they argue for liability beyond the express bounds of the civil cause of action.  Instead of preserving the ATA essentially for claims of targeted civilians, they seek to open the ATA for soldiers injured overseas in military actions in the course of war or armed conflicts.  Plaintiffs make these claims without regard to the AOW to expand the cause of action in the face of direct legislative history to the contrary.

Virtually the same is true of plaintiffs' cramped readings of *Rothstein*, *O'Neill* and *Ahmad* on causation that likewise fail to recognize proper limitations on the ATA's civil cause of action.  It is not sufficient for proximate cause that the complaint contains allegations of the defendants' provision of banking services to IRI for the alleged benefit of terrorist organizations.  Neither is it sufficient to allege only that BSPLC's parent between 2001 and 2006 transferred funds through BSPLC in the U.K. to the parent's "branch in Beirut for the benefit of Hizballah (sic) fronts in Lebanon."  *Rothstein, O'Neill* and *Ahmad* deny such allegations of indirect dealings under the ATA because otherwise tort liability potentially reaches any person in the world having ordinary business with IRI.  The illegality of which the plaintiffs' complain

---

[1] Not surprisingly, expansive views of the ATA have apparently become a subject of some public comment.  *See, e.g.*, Mikey Campbell, *Apple Could be Held Liable for Supporting Terrorism with Strong IOS Encryption*, APPLE INSIDER, (July 30, 2015, 11:07PM), http://appleinsider.com/articles/15/07/30/apple-could-be-held-liable-for-supporting-terrorism-with-strong-ios-encryption-experts-theorize.

respecting alleged "stripping" and cover payments provides no meaningful distinction since it does nothing to support proximate causation.

       *Rothstein* and *O'Neill* do not still leave room for secondary liability under the ATA.  Just as much as plaintiffs' theories about AOW, their position on ATA secondary liability is denied by no less than the U.S. Congress. Recent efforts in Congress to amend the ATA to provide for secondary liability civil claims confirms that the statute restricts civil claims to those for primary liability.

       Contrary to plaintiffs' claims the civil cause of action in the ATA is not the same as the criminal ones, but is more limited in crucial ways plaintiffs try to ignore.  Three iterations of those limitations are found in the AOW, the causation requirement, and the absence of secondary liability, all of which confine only the civil cause of action.

       The rule of *Rothstein, O'Neill* and *Ahmad* against ATA liability for indirect dealings as alleged here is consistent with the ATA's scienter requirements, which must be pled with specificity.  It is not enough, as plaintiffs claim, to merely offer that defendants, including BSPLC, allegedly knew funds were to be ultimately provided to terrorist organizations or were for terrorist acts.  Allegations of indirect support, such as providing financial services to IRI or a corporate parent, supply no adequate inference of scienter, particularly since the alleged "Hizballah (sic) fronts" at issue are neither named nor alleged to be specially designated at the time as in *Weiss v. National Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014).

       That the indirect support alleged in *Freeman* is insufficient under the ATA as a basis for proximate causation or an allegation of scienter, is also true of personal jurisdiction over BSPLC.  The allegations of indirect dealings by BSPLC with foreign correspondent banks is insufficient for long arm jurisdiction over BSPLC in the absence of any U.S. correspondent

account used by BSPLC as in *Licci*.  There is no basis for jurisdiction under plaintiffs' ATA conspiracy theory since there is no ATA liability for conspiracy in the first instance, and the torts at issue did not occur here. There is no sound basis for jurisdictional discovery.  Accordingly, defendants' motions to dismiss the complaint, in which BSPLC joins to the extent applicable (including as to personal jurisdiction), should be granted.[2]

## II.   ACT OF WAR EXCLUSION BARS PLAINTIFFS' CLAIMS

### A.   Act of War is Jurisdictional and Not an Affirmative Defense or Element

Plaintiffs are wrong that AOW is an affirmative defense.  They argue there has been no showing by BSPLC that the matters involved military forces of any origin, or were in the course of an armed conflict.  BSPLC has no burden. That defendant has no burden is shown by the express terms of § 2336 and other Title 18 statutes that include affirmative defenses. Congress knew well how to designate "act of war" as a defense when it wanted to.  *See* 42 U.S.C. § 9607(b) (CERCLA's "act of war" designated a defense in law's text).  Adequately pleading that the AOW exclusion is not triggered is the plaintiffs' burden under both Rules 12(b)(1) and 12(b)(6).  Under Rule 12(b)(1), it is by preponderance, and under Rule 12(b)(6) it is the *Twombly* standard.  They have failed under both.  The new conclusory allegations in ¶¶ 226-232 of the amended complaint are inadequate.

That AOW is jurisdictional is also supported by its improbability as an element of the cause of action.  The ATA's civil cause of action is contained in § 2333(a) and its terms are supplemented by the definitions of "international terrorism," "domestic terrorism," "person," and

---

[2] Plaintiffs' Opposition occasionally resorts to the gambit that defendants "concede" or "do not dispute" (as if to admit) various matters (including that the claimed injuries resulted from acts of terrorism), when BSPLC does nothing of the kind, or no inference of any admission is warranted.  BSPLC will not further deny such allegations of claimed concessions and admissions.  Perhaps search of advantage, the Opposition also sometimes unfortunately obscures the distinction between BSPLC and its parent, which BSPLC is confident the Court will parse in its consideration of the papers.

"national of the United States" in § 2331. Section 2333(a) nowhere refers to the AOW, which is found separately in § 2336. If AOW were an element, it would have been presented as such in the text of the ATA.

An iteration of this point is that AOW is not the obverse of the element requiring an act of international terrorism as plaintiffs argue. If it were, "act of war" would have been presented in the § 2331(1) and (5) definitions of "terrorism." But "act of war" is not. There is no textual basis in the ATA itself to support the AOW's interpretation as an element.

Plaintiffs argue AOW is the obverse of "terrorism" based on a CERCLA case from the Second Circuit, which noted that an act may not be both an AOW and terrorism under the ATA. *In re Sept. 11 Litig.*, 751 F.3d 86, 93 (2d Cir. 2014). Respectfully, that is dicta, not controlling and not persuasive. To offer AOW as the obverse of terrorism is to read the definition of "terrorism" as including something it does not. Worse for plaintiffs, this reading renders AOW statutory surplusage if no act of terrorism can be an AOW. That cannot be. "The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme." *Marx v. General Revenue Corp*, No. 11-1175, 2013 U.S. LEXIS 1859, at *28 (Feb. 3, 2013); *Yates v. United States*, No. 13-7451, 2015 U.S. LEXIS 1503, at *24 (Feb. 25, 2015). Plaintiffs misinterpret the role of AOW in the text of the ATA. While this is more than idle disputation, it is also not determinative, since under either Rule 12(b)(1) or 12(b)(6) plaintiffs have failed in their burden, just as in *Kaplan v. Central Bank of IRI*.

B.     **Complaint Establishes the AOW's Applicability to the Claimed Injuries**

In arguing for their interpretation of the AOW, plaintiffs seek to abstract the plaintiffs' injuries from the context in which they occurred. They argue that AOW depends solely on the status of the alleged tortfeasors as terrorists, and not the capacity of the plaintiffs or tortfeasors at the time. Not so. Again, the answer is in the text of the ATA, which defines "acts

-4-

of war" as those occurring in the course of declared wars and armed conflicts.  The capacities of the combatants on both sides and the context in which they are found centrally inform the existence of the war or armed conflict at issue for purposes of the AOW.

The complaint itself establishes the contextual applicability of the AOW.  As near as we can tell, the attacks are all alleged to have occurred by unidentified members of the various Iraqi "Special Groups" (and one alleged member of Hizbollah) upon U.S. troops (and the military Contractor[3]) in their capacities as soldiers or as part of operations by the U.S. military in occupying Iraq.  The complaint refers to the "Special Groups" both as proxies of the government of IRI and as "militia."  More specifically, the Badr Corp is described as "the military wing of the Supreme Council for Islamic Revolution in Iraq."  AC ¶ 184.  The complaint alleges that Badr "is a major political organization with seats in the Iraqi parliament" while playing "a significant role in facilitating Special Group operations."  AC ¶ 194.  IRI and IRGC have "coordinated, armed and influenced the Badr Organization," which "has funnel[ed] weapons to Iranian proxies in Iraq from 2004-2011."  AC ¶ 192, 193.  Another Special Group, JAM, is described as an Iraqi "militia" (AC ¶ 199) and commonly also known as the "Mahdi Army."  AC ¶ 196.  JAM, or Madhi Army, is alleged to have "led the first major armed confrontation against U.S.-led forces in Iraq."  *Id*.  For their parts, KH is identified as "Iran's go-to militia in Iraq," (AC ¶ 202) and AAH has "conducted [] thousands of IED attacks against U.S. troops and Iraqi forces."  AC ¶ 221.  AAH is claimed to have been provided "significant funding" by IRI and is identified as "an Iranian entity."  AC ¶¶ 222, 225.  In short, the complaint itself establishes that the attacks involved military forces in the course of armed conflict or war.

---

[3] The complaint provides no detail about the circumstances of the injuries of the Journalist in Iraq, which is plaintiffs' burden.

Plaintiffs argue that its designated conspirators are terrorists, SDNs, FTOs, and criminals, whose acts are claimed to be ineligible for the AOW.  Opp. at 63-64.  But as noted, there is nothing in the ATA's text that would have the AOW apply based on status or designation.  The AOW is not about nomenclature.  By it terms, it is about denying federal jurisdiction over tort claims for injuries occurring in broadly-defined armed conflicts, regardless of whether the result of a declared war, otherwise between governments or those between military forces of "any origin."  The exclusion applies to deny jurisdiction regardless of whether the injured are soldiers in the line of duty or civilians collaterally hurt "in the course of" such hostilities.  There is even direct legislative history that the ATA was designed to address "acts directed at a civilian population not directed against military personnel or installations." [4] Additionally, the ATA must be read with the FSIA, 28 U.S.C. § 1605A. The ATA contrasts starkly with the FSIA.  FSIA provides a private cause of action to U.S. servicemen for designated acts of terrorism, but only against a "foreign state" as determined at the time of the filing of the action.  See 28 U.S.C. § 1603.  The ATA, with the AOW, does not, and there is no basis in the text for its inclusion.

On the issue of whether the Special Groups can be "military forces" for the AOW, plaintiffs argue again that the question is whether the actions are those of terrorists or of "recognized governments," and whether the Special Groups comported themselves in accordance with the laws of war.  Opp. at 68-69.  The ATA's definition answers this too, and quite clearly. Section 2331(4)(C) states that the forces at issue need not be governmental, but can be forces "of any origin."  With respect to "military" then, the requirement is that of an organized, armed force of any origin, and not, for example, an armed mob, a small group or a single actor.

---

[4] 136 Cong. Rec. S4593 (April 19, 1990) (statement of Sen. Grassley, co-sponsor of the ATA).

Plaintiffs and the Court in *Gill* both consider "substantial conformance with the laws of war" as incorporated in the notion of "military,"[5] which asks more than the term might bear. This is because ATA's text does not incorporate the laws of war in the AOW definition. Congress did just that, however, when addressing another AOW provision in the criminal statute of 18 U.S.C. § 2332f(d). That section explicitly incorporates the "law of war." So does the FSIA, 28 U.S.C. § 1605A(h)(7) (incorporating extrajudicial killing defined under international law). That Congress did not do so in the civil ATA through the AOW is compelling since the text, not purposivism, governs its application. *See Kaplan v. Central Bank of Islamic Republic of Iran*, 961 F. Supp. 2d 185, 200 (D.D.C. 2013) (FSIA incorporates laws of war but not ATA). Regardless, the attacks here on soldiers in military capacities cannot form the basis for a claim that the Special Groups were not acting in substantial conformance with the laws of war where related and allegedly targeted civilians injuries are not those asserted. *See id.* (Hizbollah within ATA when acting as an armed force in a war with Israel).

Plaintiffs argue there was no armed conflict in Iraq at the time at issue. For them, major combat operations were concluded in 2003 and the AUMF was about a war with Iraq, not IRI or the Special Forces. But this, as noted, simply tries to rewrite the AOW definition, which requires contextual consideration of the hostilities at issue. *See Morris v. Khadr,* 415 F. Supp. 2d 1323 (D. Utah 2006); *Sokolow v. Palestine Liberation Organization,* 60 F. Supp. 3d 509 (S.D.N.Y. 2014)(consideration if attack in combat zone and capacity of injured). The conclusion of major combat operations in no way reflects on the existence of war or armed conflict existing in Iraq for no less than the succeeding 12 years. The AOW by its terms includes not just wars,

---

[5] *Gill v. Arab Bank, PLC* also notes that "the conduct of organizations not qualifying as nations …will, in appropriate cases, of armed operations primarily directed against a nation's regular armed forces, not serve as a basis for recovery" under the ATA. 893 F. Supp. 2d 474, 516 (E.D.N.Y. 2012).

but the broader term of "armed conflicts."  There is no avoiding that the AUMF is and has provided the legal authority for the invasion of Iraq and the continued presence of U.S. troops there, which informs the lens through which these allegations are assessed.  The complaint itself advances that the Shiite militia Special Groups are proxies for armed combat inspired, funded and promoted by the IRI.  AC ¶¶ 184-225.  The plaintiffs' claim that there was no war or armed conflict cannot be squared with their assertion that the laws of war apply to these events.  In short, plaintiffs' argument that the hostilities in Iraq alleged in the complaint and which have required tens of thousands of U.S. troops in-country under the AUMF over the course of more than a decade is not a "declared war," a conflict between nations, or an "armed conflict between military forces of any origin" is a difficult one to seriously credit.

Plaintiffs claim that *Kaplan*, *supra*, requires a short war under AOW, and Iraq's is a long one with sporadic fighting.  Not so as to *Kaplan*, though the conflict in that case was much shorter than Iraq's, to be sure.  What *Kaplan* does require is that the relevant inquiry for purposes of AOW is the context in which the subject injuries occur.  *Kaplan* denies, as we have argued, that AOW turns on status or the designation of the combatants as terrorists.  Instead, *Kaplan* supports the principle that AOW depends on the capacities of both sets of combatants at the time, while seeking to preserve the ATA for claims essentially of targeted civilians not collaterally injured in the course of war or armed conflict.

Plaintiffs claim under *Estate of Klieman v. Palestinian Authority,* 424 F. Supp. 2d 153, 166 (D.D.C. 2006), that the attacks at issue were not "in the course" of a war or armed conflict because they were war crimes.  But the ATA's AOW does not incorporate the international laws of war for these purposes, and this Court is not a war crimes tribunal.  The murky and complex issues of war crimes, international laws of war and related combatant

-8-

immunity asserted by plaintiffs might arguably pertain to whether the acts at issue meet the definition of § 2331(1)(A) as "crimes" under other U.S. law, though probably not. These things do not, however, govern or determine application of the independently defined AOW exclusion (which is not an element or an affirmative defense) that restricts ATA's civil tort subject matter jurisdiction. Despite some elaborate arguments to the contrary, the "in the course of" requirement of the AOW means exactly what it says: it is a nexus requirement. To illustrate, domestic violence might occur between spouses while a declared war or armed conflict was underway, but it would presumably not be in the course of those armed hostilities without an adequate connection. There can be no serious argument that the "in the course of" requirement is not met by the plaintiffs' own allegations of combat by Iraqi militia, as proxies for IRI, against occupying U.S. troops in Iraq using arms, EFPs, IEDs, RPGs and mortars.

There are really only two cases that directly address the issue presented here of whether soldiers can sue under the ATA (notwithstanding the AOW) for injuries occurring in the context of military service overseas. Those are the default case of *Morris v. Khadr*, *supra*, and *Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156 (E.D.N.Y. 2006). In *Morris*, soldiers were attacked by al Qaeda (AQ) members in Afghanistan with grenades and gun fire. The Court flatly held that AQ was not a "military force" because it was not a nation. 415 F. Supp. 2d at 1334. *Morris* therefore has little persuasive value for two reasons. First, the text of the AOW in § 2231(4)(B) and (C) specifically denies that "military forces of any origin" are required to be forces of a nation. Second, this was a default case and not the result of adversarial proceedings. This is the reason that *Morris*' ruling was explicitly precatory in pointing out its refusal "to be [AQ's] advocate and force the plaintiffs to prove that [AQ's] members are not 'military forces of any origin.'" *Id.* *Morris* is not of much use.

*Stutts,* by contrast, was not a default case, but tested in adversarial proceedings. In *Stutts*, the claims of soldiers injured by chemical weapons allegedly financed by bank defendants were denied under the AOW.  Even though some of the injuries occurred shortly after the end of the Gulf War I (authorized by an AUMF), the claims of the soldiers were barred under AOW as acts occurring by reason of a declared war or armed conflict.  *Stutts* then, principally with *Kaplan* and *Sokolow*, support BSPLC's motion to dismiss the plaintiffs' complaint under AOW as directed by the text of the ATA and shown by the complaint.

## III.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED CAUSATION

"The sympathy one feels for the plaintiffs in this case cannot disguise the fact that their counsel has attempted to stretch the law beyond all recognizable limits."[6]  The same is true here, and more so.  Not only does this case involve injuries to U.S. servicemen in the line of duty, but plaintiffs also want to impose ATA liability on banks for injuries they neither committed nor caused.  The central question for proximate causation is "whether the alleged violation *led directly* to the plaintiff's injuries."  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)(emphasis added).  In three separate opinions, the Second Circuit has already held that the remote chain of causation offered here is too attenuated to plausibly support causation.  We incorporate the arguments of our co-defendants that the bank defendants' liability is simply foreclosed by Second Circuit precedent.

Plaintiffs' claim that the provision of financial services to IRI (a nation and not an FTO) through dollar denominated U-turn transactions materially supported terrorism since IRI in turn allegedly supported Hezbollah and the Special Groups, members of which in turn supported, promoted or committed acts resulting in the plaintiffs injuries.  This argument simply proves too

---

[6] *Rothstein v. UBS AG*, 647 F. Supp. 2d 292, 293 (S.D.N.Y 2009) (Hon. J. Rakoff).

much and seeks to expand the cause of action beyond proper bounds.  For plaintiffs, anyone in the world engaging in dollar-denominated transactions of sufficient size or duration in conducting ordinary business with IRI are likewise terrorists and limitlessly liable under the ATA for post-Hussein combat injuries to virtually all U.S. soldiers in Iraq.  Apple too could be liable for use by terrorists of its IOS encrypted phones in planning and carrying out undetectable attacks.[7]  Judge Rakoff is right that the ATA cannot be stretched beyond "recognizable limits" as plaintiffs do in refusing to submit to the proper limits of causation.  The claimed illegality in the manner of the transactions under OFAC regulations, which otherwise generally licensed U-turns for the benefit of IRI, is of no use in making any distinction as plaintiffs try to do.  That has no analytical bearing on the issue of proximate causation.

         As we have noted, and plaintiffs cannot refute, the financial services as allegedly supplied to IRI and "Hizballah (sic) fronts" are too attenuated to provide the necessary causation as required by three controlling Second Circuit cases, *Rothstein*, *supra*, *O'Neill v. Al-Rajhi Bank,* 714 F.3d 118 (2d Cir. 2013) and *Ahmad v. Christian Friends of Israeli Communities et al.,* 2014 U.S. Dist. LEXIS 62053 (S.D.N.Y. May 5, 2014) *upheld* 2015 U.S. App. LEXIS 6640 (2d Cir. April 22, 2015)(summary order).  At points in their Opposition, plaintiffs object to BSPLC's claim that the ATA's civil causation limitation includes "but-for" causation.  Opp. at 31.  They also assert that whatever else may be, the civil and criminal causes of action are coterminous. Opp. at 39.  Not so on both issues.  But-for causation is required by *Rothstein*, *O'Neill* and *Ahmad* because they each say it is, and it is the law of this Circuit.  Plaintiffs argue that this cannot be since it might require "tracing" in the context of financial services, which is not required by § 2339B in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010).  But, as noted,

---

[7] *See* footnote 1, *supra*.

the civil cause of action in § 2333(a) is not the same as the criminal ones under the ATA, and is

more confined as it must be.  In the first instance, no physical injury is necessarily required for a

crime under either 18 U.S.C. §§ 2339A or 2339B.  Obviously, no causation for any injury is

required by the crimes to be shown either.  No damages need be proved to commit a criminal

offense, but they surely do for torts.  Further, secondary liability applies to the crimes (*see* 18

U.S.C. §§ 2, 371), but not to the private civil cause of action.  The ATA's statutory AOW subject

matter jurisdiction constraint does not apply to a criminal case.  So it is no answer that § 2339B

requires no tracing for a criminal case, when the issue arises in the context of § 2333(a).  The

causation required by Section 2333(a) is as explicitly stated in *Rothstein, O'Neill* and *Ahmad*.[8]

These cases could not be clearer, and this causation limitation is needed to confine the ATA's

civil liability within proper bounds.

> Plaintiffs argue that as to BSPLC their allegations are sufficient and rely on a U.S.

press release which provides:

> ....from 2001 to 2006, Bank Saderat [BSI] transferred $50 million
> from the Central Bank of Iran through its subsidiary in London
> [BSPLC] to its [BSI's] branch in Beirut for the benefit of
> Hizballah fronts in Lebanon.....[9]

This allegation of indirect financial services is expressly inadequate under both *O'Neill* and

*Ahmad* as to BSI and BSPLC.  The "front" organizations are not named, and there is no

indication that they were then designated, or that any of the funds were actually supplied to

"Hizballah (sic) fronts."  Nor is there any indication that such "fronts" supplied funds to

Hezbollah, when, how much, or that the provision of such funds in Lebanon could plausibly be

---

[8] Regardless of whether "but-for" causation is required, proximate causation is absent in *Freeman*.

[9] This is precisely the same allegation already employed in *Kaplan* to argue that BSI and BSPLC were liable for injuries in Israel arising from the Second Lebanese War.  Judge Lamberth held that plaintiffs' ATA claims were barred by AOW.  *Kaplan v. Central Bank of Islamic Republic of Iran*, 961 F. Supp. 2d 185 (D.D.C. 2013).

the but-for and proximate cause of any of plaintiffs' injuries in Iraq during the Iraqi War between 2004 and 2011.  There is no plausible allegation that but-for BSPLC's alleged conduct, the injuries would not have occurred.  Plaintiffs' claims against BSPLC are foreclosed by *Rothstein*, *O'Neill* and *Ahmad*.

## IV.    NO CONSPIRACY-BASED LIABILITY UNDER § 2333

Plaintiffs offer no adequate explanation how this conspiracy case can proceed given the Second Circuit's ruling in *Rothstein*, which confines the ATA's private civil right of action to claims of primary liability.  Plaintiffs argue that all *Rothstein* does is put common law aiding and abetting claims outside the ambit of the ATA, but this is not a fair reading of the case and not the law of the Second Circuit.  *See O'Neill*, 714 F.3d at 123 ("[A] defendant cannot be liable under the ATA on an aiding-and-abetting theory of liability") (*citing Rothstein*, 708 F.3d at 97).

The plaintiffs in *Rothstein* were not seeking to hold UBS liable at common law, they were seeking to hold UBS liable under § 2333(a) of the ATA for facilitating U.S. currency transactions with IRI, which, in turn, allegedly funded Hezbollah and others– the same as here.[10] In declining to construe the ATA's private right of action to encompass claims of secondary liability, the Second Circuit observed that, given Congress's express provision for secondary liability in other areas of the law, the civil provision's silence on the issue must have been intentional.  The Court also noted that otherwise Congress could take action to provide for secondary liability if it chose.[11]

---

[10] There is no question that this is an allegation of secondary liability.  *See* AC ¶ 1468.

[11] *Rothstein*, 708 F.3d at 98.  Plaintiffs cite to *Boim III*, 549 F.3d 685 (7th Cir. 2008), for the proposition that the prohibition against secondary liability claims under the ATA is not absolute and that the Seventh Circuit has left the door open for material support claims.  While *Boim III* may be the latest iteration of the Seventh Circuit's view on the ATA's private cause of action, *Rothstein* and *O'Neill* govern this case.

This is precisely what Congress has considered changing.  The Justice Against Sponsors of Terrorism Act (JASTA) confirms that the ATA's civil cause of action currently does not provide for secondary liability, including conspiracy.  JASTA in part would provide for a private ATA civil cause of action for secondary liability by amending § 2333 to provide: "In an action arising under subsection (a), liability may be asserted as to the person or persons who committed such act of terrorism or any person or entity that aided, abetted, or conspired with the person or person who committed such an act of international terrorism." [12]

JASTA was passed by the U.S. Senate in December 2014 and sent to the U.S. House.[13]  Accordingly, no less than the U.S. Senate regards the ATA as denying any private cause of action based on secondary liability.  For this Court to accept plaintiffs' argument would produce a strange decree if considered from the Senate Chamber, since it would announce that a measure brought through Committee, to the Senate floor and passed by the Senate was actually a mistake and wholly superfluous.

## V.    NO ADEQUATE ALLEGATION OF SCIENTER

Plaintiffs must plausibly plead that BSPLC provided material support, knowingly or with deliberate indifference, to a foreign terrorist organization, or knowing or intending that such support would be used to carry out a specified terrorist act.  *See, e.g., Strauss v. Credit Lyonnais, S.A.,* 925 F. Supp. 2d 414 (E.D.N.Y. 2013).  Plaintiffs' conclusory allegations do not establish, or even describe, BSPLC's alleged knowledge.  Allegations of inferred knowledge based on claims of indirect support are inadequate.

---

[12] *See* H.R. 3143, 113th Cong. (2013), available at https://www.congress.gov/bill/113th-congress/house-bill/3143/all-actions.

[13] *See* S. 1535, 113th Cong. (2013), available at https://www.congress.gov/bill/113th-congress/senate-bill/1535/actions.

In an attempt to support scienter, plaintiffs misstate both the Lloyds DPA and the government press release.  Compare AC ¶¶ 266-267, and Plaintiffs' Opposition at 13 with Plaintiffs' Exhibit A at page 11. A summary of a meeting with U.K. Iranian banks and what those banks may have then done with payment messages fails to convey anything about BSPLC's knowledge or intent as to material support of a terrorist organization or for terrorist activity.[14]  Such attenuated claims lacking in any detail or specificity satisfy neither *Twombly* nor the ATA's scienter requirement.  *Ahmad,* 2014 U.S. LEXIS 62053 at *6 (allegation that defendants supported hundreds of terrorist attacks against Palestinians were too attenuated and conclusory to support scienter*); see also Rothstein,* 708 F.3d at 95 (it was conclusory to allege that UBS knew funds provided to IRI would be used to cause and facilitate terrorist attacks by IRI-sponsored terrorist organizations).

Plaintiffs do the same thing with the government press release.  Compare AC ¶ 272 and Opp. 3, 11, 13, 23, 28, 32, 35, 36-37, 38 and 40 with the actual language of the press release cited above.[15]  The press release does not state that the funds BSPLC allegedly transferred were to a Hezbollah account, or even to accounts of  "Hizbollah [sic] fronts."  Nor is there any reference that the unknown "fronts" were designated SDNs at the time.  Nor is there any supported claim that the funds were actually paid to Hizbollah.  This case is far from *Weiss v. National Westminster Bank PLC,* 768 F.3d 202, 208 (2d Cir. 2014); *see also In re Terrorists Attacks on Sept. 11, 2001,* 740 F. Supp. 2d 494, 517 (S.D.N.Y. 2010).  Plaintiffs have not adequately alleged scienter.

---

[14] Notably, the DPA makes no conclusions about the legality of the payments at issue.  *See* Lloyds' DPA Factual Statement at ¶ 20.  Nor does it provide any facts as to BPLC's conduct.

[15] http://www.treasury.gov/press-center/press-releases/pages/hp644.aspx.

-15-

## VI.    NO PERSONAL JURISDICTION OVER BSPLC

### A.    BSPLC is Not Subject to Long-Arm Jurisdiction Under CPLR § 302

#### 1.    CPLR § 302(a)(1) – Transaction of Business in New York

Plaintiffs fall short of meeting their burden that BSPLC transacted business in New York and that this New York activity gives rise to their claims.  Plaintiffs fail to adequately allege the existence of any BSPLC bank account in New York, any BSPLC correspondent account in New York, any direct dealing by BSPLC in New York, or any specific U-turn transaction involving BSPLC directly or indirectly routed through New York.  Allegations that unidentified U.S. dollar transactions initiated by unidentified BSPLC customers, processed in a manner that caused them to pass through New York in transactions involving other foreign banks, does not satisfy plaintiffs' burden to establish that BSPLC purposefully availed itself of the privilege of doing business in the forum.  Moreover, plaintiffs have not shown a plausible nexus between alleged forum activity and the claims in this lawsuit.  Unlike the plaintiffs in *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161 (2d Cir. 2013), who identified specific accounts with alleged ties to terrorism and specific dollar transactions to those accounts, plaintiffs here have not identified any BSPLC account holder, BSPLC account, or actual money transfer involving BSPLC and an account associated with terrorism purposely routed through banks in New York.  Plaintiffs must, at a minimum, specify adequate facts to connect BSPLC's purported transactions in New York to terrorist banking activity to establish a nexus between New York activity and the claims they assert.  *Tamam v. Fransabank SAL*, 677 F. Supp. 2d 720 (S.D.N.Y. 2010).[16]

---

[16] *Licci* specifically did not overrule *Tamam v. Fransabank SAL* as plaintiffs contend.  Consistent with the outcome of *Licci*, the *Tamam* court held that "the processing of … funds through [U.S.] correspondent banks may indicate that [the Lebanese banks] purposefully availed themselves of business opportunities in New York." *Tamam*, 677 F. Supp. 2d at 727.

Instead, plaintiffs stake their personal jurisdiction case on the 2009 deferred prosecution agreement ("DPA") between the U.S. and Lloyds TSB Bank as proof of BSPLC's purported business activity in the forum.  The DPA, however, describes action taken by Lloyds, not BSPLC.  To the extent BSPLC is referenced, it is peripheral and mentioned only collectively along with other Iranian banks, their branches and corporate subsidiaries.  The only factual assertion in the DPA specific to BSPLC is irrelevant for this matter, and notes that BSPLC maintained an unspecified correspondent account at Lloyds somewhere else.

This is inadequate.  A complaint that lumps actors together and fails to differentiate among them, fails to state a claim for relief.[17]  Allegations of forum activity that do the same as here are equally deficient and provide no basis for the exercise of personal jurisdiction.  Further, even if Plaintiffs could glean some New York business activity on behalf of BSPLC from the Lloyds DPA, they must show that their claims arise from that activity.  Lloyds is not a party to this action and its conduct and dealings with BSPLC are not at issue here.  Plaintiffs allude to DPAs involving actual defendants in this case, but these DPAs are not otherwise cited by plaintiffs in their personal jurisdiction arguments involving  BSPLC, presumably because they do not support plaintiffs' allegations.[18]

---

[17] *Robbins v. Oklahoma*, 519 F.3d 1242, 1249-1250 (10th Cir. 2008) (Rule 8 not satisfied where "no distinction as to what acts are attributable to whom" was provided); *Tatone v. Suntrust Mortg., Inc.*, 2012 U.S. Dist. LEXIS 31413, at *25 (D. Minn. Feb. 13, 2012) ("A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant."); *Ram v. Wachovia Mortg.*, 2011 U.S. Dist. LEXIS 32392, at *36 (E.D. Cal. Mar. 25, 2011) ("[When a plaintiff ] for the most part, fails to distinguish between the defendants but rather levels their conclusory allegations against the 'defendants' collectively… plaintiffs' complaint should be dismissed in its entirety."); *Trans World Airlines, Inc. v. 47th Street Photo, Inc.*, 1990 U.S. Dist. LEXIS 4227, at *18 (S.D.N.Y. Apr. 13, 1990) ("the complaint must also clearly identify the nature of each defendant's alleged participation in the fraud.  Generalized statements of wrongdoing concerning all defendants will not be sufficient.").

[18] Given that plaintiffs' allegations lack any factual specificity, they are not entitled to jurisdictional discovery.  *See, e.g.*, *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (refusing jurisdictional discovery where plaintiffs' allegations lacked factual specificity to confer jurisdiction); *Burnett v. Al Baraka Inv. & Dev.*

(continued...)

## 2.        CPLR § 302(a)(2) – Tortious Act in New York

Alternatively, plaintiffs claim personal jurisdiction over BSPLC under CPLR

§ 302(a)(2), which permits the exercise of personal jurisdiction over a defendant who "commits a

tortious act within the state."  Conceding that § 302(a)(2) requires a defendant to be physically

present in New York, which BSPLC is not, Plaintiffs seek to impute the New York presence of

the other co-defendants to BSPLC on an conspiratorial agency theory.  CPLR § 302(a)(2) does

not provide any basis for personal jurisdiction over BSPLC for at least three reasons.

First, there is no civil liability for conspiracy under the ATA.  Conspiracy to

violate the ATA, even if true, can supply no basis for specific personal jurisdiction since it is not

a cognizable tort.  There is no civil secondary liability under §2333(a).  An ATA conspiracy by

definition is not the commission of a tortious act in New York.

Additionally, even if that were not so, the alleged conduct plaintiffs attribute to

BSPLC is not otherwise the commission of a tort in New York.  Under New York law, the locus

of the tort is where the "last event necessary to make the actor liable occurred," *Lasala v. Lloyds

TSB Bank*, 514 F. Supp. 2d 447, 464 (S.D.N.Y. 2007) (quoting *Simon v. Philip Morris Inc.*, 124

F. Supp. 2d 46, 58 (E.D.N.Y. 2000)).  This is generally the place of injury.  *Devore v. Pfizer,

Inc.*, 867 N.Y.S.2d 425, 428 (1st Dept. 2008), *appeal denied* 12 N.Y.3d 703 (2009) (*citing

Schultz v. Boy Scouts of Am.*, 65 N.Y.2d 189, 195 (N.Y. 1985)).  Here, plaintiffs allege a scheme

originating with IRI, purportedly agreed to by foreign financial institutions in various countries,

intended to launder U.S. dollars for IRI's benefit to support terrorism, resulting in the funding of

_____

(continued...)

*Corp.*, 349 F. Supp. 2d 765, 783 (S.D.N.Y. 2005) ("Plaintiffs must allege sufficient facts to warrant jurisdictional
discovery.").

terrorist organizations and terrorist, who then commit alleged torts to defendant servicemen on military duty in Iraq.  This globe-spanning account terminating in combat zones in Iraq therefore does not involve a tortious act in New York.[19]

Third, although a person may be subject to jurisdiction under CPLR § 302(a)(2) if a co-conspirator carries out activity in New York sufficiently connected to the conspiracy, there must be "a prima facie factual showing of a conspiracy" and allegations of "specific facts warranting the inference that the defendant was a member of the conspiracy." *Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991); *see generally Lawati v. Montague Morgan Slade Ltd.*, 961 N.Y.S.2d 5 (1st Dept. 2013).  A cause of action for civil conspiracy under New York law requires allegations of a primary tort and four additional elements: "(a) a corrupt agreement between two or more persons, (b) an overt act in furtherance of the agreement, (c) the parties' intentional participation in the furtherance of a plan or purpose, and (d) the resulting damage or injury." *Chrysler*, 778 F. Supp. at 1267.  Once plaintiffs make a prima facie factual showing of conspiracy, plaintiffs must also show that "(a) the defendant had an awareness of the effects in New York of its activity; (b) the activity of the co-conspirators in New York was to the benefit of the out-of-state conspirators; and (c) the co-conspirators acting in New York acted at the direction or under the control, or at the request of or on behalf of the out-of-state defendant." *Lawati*, 961 N.Y.S.2d at 7 (internal quotation marks omitted), *quoting Best Cellars Inc. v. Grape Finds at DuPont, Inc.*, 90 F. Supp. 2d 431, 446 (S.D.N.Y. 2000); *Chrysler*, 778 F. Supp. at 1269 (same).

---

[19] This would also be the case for the plaintiffs asserting consortium claims who happen to be New York residents.  Their claims are derivative of the claims of their family members injured in Iraq and consequently defeated by any defense that would prevent recovery by the injured party.  There can be no personal jurisdiction for these plaintiffs based on the effects of BSPLC's alleged conduct in the state.

Plaintiffs have not satisfied this burden since the allegations in the complaint of BSPLC's involvement in a conspiracy are entirely conclusory and devoid of any meaningful factual content.  Indeed, the only non-conclusory allegations in the complaint regarding BSPLC's activity is that BSPLC opened and had accounts outside the U.S. in 2004 at Standard Chartered Bank (AC at ¶ 269), HSBC at an unspecified time (AC at ¶ 270), and, prior to 2008, at Barclays (AC at ¶ 273).  Every other allegation referencing BSPLC's alleged participation in the conspiracy is conclusory.  Allegations that BSPLC maintained accounts at co-defendant banks are not "specific facts warranting the inference that the defendant was a member of the conspiracy" and cannot serve as the basis for personal jurisdiction.

### B.    No Personal Jurisdiction under Rule 4(k)

Citing to *Biton v. Palestinian Interim Self-Government Auth.*, 510 F. Supp. 2d 144 (D.D.C. 2007), plaintiffs argue for the extension of personal jurisdiction over BSPLC under Rule 4(k) for alleged minimum contacts with the U.S. by virtue of injuries sustained by Americans overseas.  In fact, *Biton* expressly rejected this argument and declined to equate injuries to American nationals with minimum contact with the U.S. for purposes of ATA claims against non-state actors.  *Biton*, 310 F. Supp. 2d at 178.  Accordingly, there is no adequate allegation of personal jurisdiction over BSPLC in this case, and no jurisdictional discovery is warranted.[20]

## VII.   CONCLUSION

BSPLC's motion to dismiss the complaint should be granted.

---

[20] *See* footnote 16, *supra*.

/s/ Jeremy D. Frey
Jeremy D. Frey
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel:  (212) 808-2700

Attorneys for Defendant Bank Saderat PLC