UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---

CHARLOTTE FREEMAN, *et al.*,

Plaintiffs,

-against-

HSBC HOLDINGS PLC, *et al.*,

Defendants.

14-CV-6601 (DLI/CLP)

---

**DEFENDANTS' JOINT REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION TO DISMISS**

August 7, 2015

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ...........................................................................................................1

ARGUMENT ...................................................................................................................2

I.    THE COMPLAINT FAILS PLAUSIBLY TO ALLEGE PROXIMATE
      CAUSE ..................................................................................................................2

      A.    Plaintiffs Do Not Allege a Plausible Causal Connection Between
            the Moving Defendants' Conduct and the Terrorist Organizations
            or Acts Alleged ...........................................................................................4

      B.    Plaintiffs' Argument That the Moving Defendants Allegedly
            Violated U.S. Sanctions Does Not Plausibly Allege Proximate
            Cause Under *Rothstein*................................................................................6

      C.    Plaintiffs' Arguments Regarding Foreseeability and But-For
            Causation Ignore the Second Circuit's Reasoning in *Rothstein* and
            Mischaracterize the Moving Defendants' Arguments .................................8

II.   SECTION 2333 DOES NOT PERMIT CONSPIRACY-BASED CIVIL
      LIABILITY..........................................................................................................11

III.  NON-U.S. DEFENDANTS ARE NOT "UNITED STATES PERSON[S]"
      AND DID NOT ENGAGE IN "A FINANCIAL TRANSACTION WITH
      THE GOVERNMENT" OF IRAN UNDER SECTION 2332D...........................17

CONCLUSION...............................................................................................................20

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abecassis v. Wyatt*,
    785 F. Supp. 2d 615 (S.D. Tex. 2011) ...................................................................18, 19

*Ahmad v. Christian Friends of Israeli Comtys.*,
    No. 13 Civ. 3376 (JMF), 2014 WL 1796322 (S.D.N.Y. May 5, 2014).......................10

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006).......................................................................................................9, 10

*Bailey v. United States*,
    516 U.S. 137 (1995)............................................................................................................20

*Boim v. Holy Land Found. for Relief and Dev. (Boim III)*,
    549 F.3d 685 (7th Cir. 2008) (en banc) ..............................................................14, 17

*Central Bank of Denver v. First Interstate Bank of Denver*,
    511 U.S. 164 (1994)............................................................................................................12

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*,
    135 F.3d 837 (2d Cir. 1998).............................................................................12, 13, 16, 17

*Gill v. Arab Bank, PLC*,
    893 F. Supp. 2d 474 (E.D.N.Y. 2012) ........................................................................11

*Gill v. Arab Bank, PLC*,
    893 F. Supp. 2d 542 (E.D.N.Y. 2012) ........................................................................16

*Holmes v. Secs. Investor Prot. Corp.*,
    503 U.S. 258 (1992)............................................................................................................9

*JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure, Ltd.*,
    536 U.S. 88 (2002).............................................................................................................19

*Linde v. Arab Bank, PLC*,
    No. 04 Civ. 02799, 2015 WL 1565479 (E.D.N.Y. Apr. 8, 2015)..........................9, 10

*Linde v. Arab Bank, PLC*,
    No. 04 Civ. 02799 (E.D.N.Y. May 10, 2013) ECF No. 943,
    Tr. of Mot. Hr'g ...............................................................................................11, 14, 15

*Linde v. Arab Bank, PLC*,
    944 F. Supp. 2d 215 (E.D.N.Y. 2013) ................................................................ passim

Page(s)

*Mobil Oil Corp. v. Commissioner of Taxes of Vt.*,
    445 U.S. 425 (1980)......................................................................................19

*O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*,
    714 F.3d 118 (2d Cir. 2013)................................................................... passim

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013)..................................................................... passim

*Strauss v. Credit Lyonnais, S.A.*,
    925 F. Supp. 2d 414 (E.D.N.Y. 2013) ...................................................7, 10

*Stutts v. De Dietrich Grp.*,
    No. 03 Civ. 4059, 2006 WL 1867060 (E.D.N.Y. June 30, 2006)...........................5, 16

*United States v. Chalmers*,
    474 F. Supp. 2d 555 (S.D.N.Y. 2007)..................................................18, 19

*United States v. Coplan*,
    703 F.3d 46 (2d Cir. 2012)....................................................................17

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)................................................................................20

*Wright-Upshaw v. Nelson*,
    No. 13 Civ. 3367, 2014 WL 692870 (E.D.N.Y. Feb. 19, 2014) ...............................18

**Statutes & Rules**

18 U.S.C. § 2331(3) ...............................................................................20

18 U.S.C. § 2332d...............................................................................2, 18

18 U.S.C. § 2332d(a) ...............................................................................20

18 U.S.C. § 2332d(b)(2) ......................................................................18, 20

18 U.S.C. § 2332d(b)(2)(C) ..................................................................18, 19

18 U.S.C. § 2332d(b)(2)(D)..................................................................19, 20

iii

Page(s)

**Other Authorities**

https://goo.gl/s1aJnq ...........................................................................................................18

https://goo.gl/ZvvIC0...........................................................................................................18

https://goo.gl/bA7kcC..........................................................................................................18

https://goo.gl/BOZcWQ.......................................................................................................18

## INTRODUCTION

As demonstrated in the Moving Defendants' opening brief, the Complaint fails to state a claim as a matter of law under clear Second Circuit authority.[1]  Plaintiffs' Opposition attempts to elide this controlling law based on inaccurate characterizations, hyperbole, emotional appeals and even populist allusions that the Moving Defendants should be punished by means of this civil action because they are "too big to jail".  Pls.' Opp'n at 4.  Putting Plaintiffs' rhetoric to the side, *Rothstein*, *Al Rajhi* and other controlling authorities in this Circuit do not permit the farfetched claims asserted here to proceed.  The Complaint should be dismissed in its entirety with prejudice.

First, the Complaint fails plausibly to allege that the Moving Defendants proximately caused Plaintiffs' injuries.  *Rothstein* and its progeny have held that mere provision of financial services to Iran (or to its alleged instrumentality banks), even when in violation of U.S. law, is too remote to support civil liability under Section 2333 for injuries caused by terrorist entities separately funded by Iran.  *See* Jt. Mem. at 10-20.  Plaintiffs do not distinguish these authorities but instead make unsupported assertions about the Moving Defendants' conduct, Pls.' Opp'n at 3-5, 37-38, and misstate the governing proximate cause standard, *id.* at 38-42.  In the end, Plaintiffs' indirect causal theory fails to state a claim for the same reasons that the Second Circuit dismissed the causal allegations in *Rothstein* and *Al Rajhi*.  *See* Jt. Mem. at 15-20; *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013); *O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 118, 124 (2d Cir. 2013).

---

[1] The following abbreviations are used in this brief:  "Complaint" or "Am. Compl." for the Amended Complaint; "Claims for Relief" for the four claims asserted in the Amended Complaint; "opening brief" or "Jt. Mem." for the Moving Defendants' Joint Memorandum In Support of Motion To Dismiss; and "Opposition" or "Pls.' Opp'n" for Plaintiffs' Omnibus Memorandum of Law In Opposition To Defendants' Motions To Dismiss The Amended Complaint.

Second, Plaintiffs' Claims for Relief are predicated on a conspiracy theory of civil liability that is not cognizable under Section 2333. *See* Jt. Mem. at 20-24. Numerous decisions in this Circuit—*Rothstein*, *Dinsmore* and *Linde*—dictate that such conspiracy-based civil claims fail as a matter of law because Congress did not provide for such claims in Section 2333. *See id.* Plaintiffs do not dispute—indeed, they emphatically embrace—that they are relying on a conspiracy theory of civil liability. *See* Pls.' Opp'n at 11-18. Plaintiffs' attempted end run around these governing Second Circuit authorities based on a so-called "chain of incorporations by reference" theory, *id.* at 22, was specifically rejected in *Linde* and should be rejected here as well. *See Linde v. Arab Bank, PLC*, 944 F. Supp. 2d 215, 216-17 (E.D.N.Y. 2013).

Finally, Plaintiffs' Third and Fourth Claims for Relief should be dismissed for the additional and independent reason that the Complaint fails plausibly to allege facts that satisfy the elements of 18 U.S.C. § 2332d. The Defendants named in the Fourth Claim are not "United States person[s]" subject to Section 2332d, and the Complaint fails to allege that the Defendants engaged in a "transaction with the government" of Iran, as required by Section 2332d.

## ARGUMENT

## I.    THE COMPLAINT FAILS PLAUSIBLY TO ALLEGE PROXIMATE CAUSE

As demonstrated in the Moving Defendants' opening brief, the Complaint does not plausibly allege proximate cause. *See* Jt. Mem. at 10-20. *Rothstein* and its progeny hold that, to plausibly allege proximate cause, an ATA plaintiff must allege facts that substantiate a proximate causal connection between a defendant's conduct and either the terrorist act that injured the plaintiff or the terrorist organization that funded or perpetrated that act. *See id.* at 10-15. The Complaint here makes no such allegations, instead constructing a farfetched causal

theory with no connection between the Moving Defendants' conduct and the (largely unidentified) terrorist organizations or the terrorist acts alleged.  *See id.* at 17-19.

Plaintiffs do not establish any meaningful distinction between the allegations here and the allegations rejected in *Rothstein*.  In *Rothstein*, the claims were dismissed because the complaint did not allege "that UBS was a participant in the terrorist attacks that injured plaintiffs",  "that UBS provided money to H[e]zbollah or Hamas", "that U.S. currency UBS transferred to Iran was given to H[e]zbollah or Hamas", or "that if UBS had not transferred U.S. currency to Iran, Iran, with its billions of dollars in reserve, would not have funded the attacks in which plaintiffs were injured".  708 F.3d at 97; *see also Al Rajhi*, 714 F.3d at 124 (dismissing allegations as "insufficient for proximate causation purposes for the same reasons the allegations in *Rothstein* fell short").

Likewise, there is no allegation here that the Moving Defendants participated in the alleged terrorist attacks, no allegation that they provided funds or services to any terrorist groups (much less those that allegedly perpetrated the attacks), no allegation that any funds processed by the Moving Defendants were ultimately transferred to any terrorist organizations and no allegation that the attacks would not have occurred absent the Moving Defendants' alleged provision of banking services to entities purportedly affiliated with the Government of Iran.  *See* Jt. Mem. at 3-8, 15-20.  Plaintiffs thus fail to allege a proximate causal connection between any of the Moving Defendants and the terrorist organizations or acts at issue.  *See Rothstein*, 708 F.3d at 97; *see also Al Rajhi*, 714 F.3d at 124.

As demonstrated below, Plaintiffs instead make various assertions in their Opposition that are unsupported by the Complaint, misstate the controlling proximate cause standard, or distort the Moving Defendants' arguments.

3

**A.      Plaintiffs Do Not Allege a Plausible Causal Connection Between the Moving Defendants' Conduct and the Terrorist Organizations or Acts Alleged**

Plaintiffs seek to distinguish *Rothstein* by arguing that, whereas in *Rothstein* the complaint failed to allege that UBS directly provided banking services to a foreign terrorist organization, the Complaint here "*do[es]* allege that Defendants provided services to" a foreign terrorist organization.  Pls.' Opp'n at 35 (emphasis in original); *see also id.* at 4, 40, 41.  In fact, the Complaint does not contain a single allegation that any Moving Defendant provided such services.  While Plaintiffs assert that some "50 million USD" was transferred "for the benefit of Hezbollah" and that "$100 million USD" was transferred "for the benefit of IRGC", *see, e.g.*, Am. Compl. ¶¶ 13, 241; Pls.' Opp'n at 35, neither the Complaint nor the Opposition connects these allegations to any Moving Defendant.  *See* Pls.' Opp'n at 35 (arguing that "Iran used the conspiracy" to make the transfers); *id.* at 47 (attributing the transfers to unspecified "coconspirators"); *id.* at 44 (using a passive voice to explain that money "was provided to Hezbollah").  The Complaint alleges that it was Bank Melli Iran and Melli Bank Plc—not the Moving Defendants—that "transferred approximately $100 million USD to the IRGC-QF".  Am. Compl. ¶ 297.  Plaintiffs likewise allege that "Defendant Bank Saderat Plc"—not the Moving Defendants—"provided" Hezbollah "$50 million" in funds.  *Id.* ¶ 137.  Indeed, none of the citations to the Complaint in Plaintiffs' Opposition actually supports the assertion that the Moving Defendants provided financial services to any terrorist organization.[2]  *See, e.g.*, Pls.' Opp'n at 4, 34-35, 37, 40-43.  Nor does the Complaint as a whole provide any support for Plaintiffs' argument.  *See* Jt. Mem. at 3-8; Am. Compl. ¶¶ 127-62 (Iran's support of Hezbollah

---

[2]  Although Plaintiffs point to the Complaint's allegations that the supposed aim of the alleged conspiracy was to facilitate banking services "for the benefit of" various foreign terrorist organizations, Pls.' Opp'n at 35, the Complaint does not actually allege, as Plaintiffs argue, that the Moving Defendants had any involvement, direct or indirect, with any terrorist organization.

and IRGC-QF, with no reference to the Moving Defendants); ¶¶ 163-182 (Iran's funding or

supply of weapons to terrorists, with no reference to the Moving Defendants); ¶¶ 184-225 (Iran's

support of terrorists in Iraq, with no reference to the Moving Defendants).

Plaintiffs also emphasize the Complaint's allegations that the Moving Defendants

"facilitat[ed]" or "enabl[ed]" Iran's financing of terrorist organizations or groups, Pls.' Opp'n at

11-12, *see also, e.g.*, Am. Compl. ¶ 13, and "increase[d] Iran's ability to fund terrorists to kill

Americans in Iraq", Pls.' Opp'n at 34.  As explained in the Moving Defendants' opening brief,

however, *Rothstein* held that such allegations are far too attenuated and inchoate to plausibly

allege proximate cause.  *See Rothstein*, 708 F.3d at 84-85 (rejecting causal allegations that UBS

"facilitated" the alleged attacks by "furnishing U.S. currency to Iran"); *id.* at 87 (rejecting causal

allegations that UBS "substantially increased" the ability of terrorist organizations funded by

Iran to carry out the attacks).

While Plaintiffs also argue that the Complaint asserts a causal connection between

Iran and the provision of weapons used in attacks in Iraq, *see* Pls.' Opp'n at 9, 15-16, 32, 41,

these allegations again do not distinguish this case from *Rothstein*, where similar allegations

were made.  *See Rothstein*, 708 F.3d at 86-87.  As in *Rothstein*, these allegations fail to establish

what is essential, but missing, here—the necessary causal connection between the Moving

Defendants and the terrorist organizations or acts alleged.  *See id.* at 97; *see also Stutts v. De

Dietrich Grp.*, No. 03 Civ. 4059, 2006 WL 1867060, at *4 (E.D.N.Y. June 30, 2006) (rejecting

causal allegations as insufficient where the bank defendants are alleged to have issued letters of

credit to suppliers of chemicals to Iraq while being "on notice" of Iraq's use of those chemicals

to build weapons that could injure "U.S. citizens and members of its armed services" in Iraq).

Plaintiffs' related argument that their allegations "come[] close to" identifying the funds that

"were 'used to purchase the bullet that struck the plaintiff'", Pls.' Opp'n at 40 (citation omitted), based on the supposedly known connections between the terrorist organizations alleged and the terrorists in Iraq, *see id.* at 7-11, 40-41, also do not connect the Moving Defendants to any terrorist entities or attacks or to any supposedly identified weapons, *see* Jt. Mem. at 3-8, 15-20. There is simply no allegation in the Complaint that the Moving Defendants provided any services to, or interacted in any way with, Hezbollah, the IRGC or the identified (and many unidentified) groups that allegedly carried out attacks in Iraq.

> **B.     Plaintiffs' Argument That the Moving Defendants Allegedly Violated U.S. Sanctions Does Not Plausibly Allege Proximate Cause Under *Rothstein***

Lacking any plausible allegations of the necessary proximate causal connection between the Moving Defendants' alleged conduct and Plaintiffs' injuries, Plaintiffs emphasize the allegations that the Moving Defendants provided banking services to Iranian banks in violation of U.S. sanctions and that Iran also sought to circumvent those sanctions. *See* Pls.' Opp'n at 11-15, 42-44. But under *Rothstein* these allegations are insufficient as a matter of law to establish the requisite causal connection. *Rothstein* specifically held that a bank's violation of U.S. sanctions by engaging in financial transactions with Iran, a state sponsor of terrorism, is insufficient to hold the bank "liable for injuries subsequently caused by a terrorist organization associated with that state". 708 F.3d at 96. Although in *Rothstein* "[t]he fact that the transfers were made to a state sponsor of terrorism of course made it more likely that the moneys would be used for terrorism than if the transfers were to a state that did not sponsor terrorism", the Second Circuit held that those allegations were insufficient to "meet *Twombly*'s plausibility standard with respect to the need for a proximate causal relationship between the cash transferred by UBS to Iran and the terrorist attacks by H[e]zbollah and Hamas that injured plaintiffs". *Id.* at 97. "[T]he fact remains that Iran is a government, and as such it has many legitimate agencies,

6

operations, and programs to fund." *Id.* Thus, as this Court has observed, there is a "meaningful"

difference between providing funds to the Government of Iran and providing funds "directly" to

a terrorist organization, such as "Hamas front-groups"; under *Rothstein*, providing funds to "a

government that performs myriad legitimate functions in addition to allegedly funding terrorist

organizations" does not plausibly allege proximate cause because "Iran did not carry out the

attacks at issue". *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 433 (E.D.N.Y. 2013).

Plaintiffs' allegations relating to IRISL, *see* Pls.' Opp'n at 36, also fail for similar

reasons. As "Iran's national maritime carrier", IRISL "provides a variety of maritime transport

services, including bulk, break-bulk, cargo and containerized shipping", Am. Compl. ¶ 113, and,

like the government, IRISL necessarily "has many legitimate . . . operations . . . to fund",

*Rothstein*, 708 F.3d at 97. Under *Rothstein*, mere provision of banking services to IRISL does

not establish the necessary causal connection between a bank and terrorist activities by third

parties.

Plaintiffs assert that *Rothstein* is distinguishable from this case because the

Moving Defendants allegedly engaged in a "sustained conspiracy" to violate U.S. sanctions.

Pls.' Opp'n at 32. But this allegation is no different in kind from the allegations, rejected as

insufficient by *Rothstein*, that the bank in that case "illegally provid[ed] Iran with hundreds of

millions of dollars in cash between 1996 and 2004". 708 F.3d at 87. In fact, here, the causal

allegations are even more attenuated than in *Rothstein*. *See* Jt. Mem. at 15-17; *see also Al Rajhi*,

714 F.3d at 124 (rejecting causal allegations as insufficient where "defendants are alleged to

have provided funding to purported charity organizations known to support terrorism that, in

turn, provided funding to al Qaeda and other terrorist organizations"). Similarly, Plaintiffs'

argument that, given the "U.S. terror-financing regulation", Pls.' Opp'n at 11, *see also id.* at 42,

the Moving Defendants "well understood that Iran was using its banks – Defendants' own customers – to transfer funds to terrorists", *id.* at 10-11, and that "it was highly plausible" that the funds processed by the Moving Defendants would be used "for the benefit of the very designated terrorist entities", *id.* at 43, does not distinguish this case from *Rothstein*.  *See Rothstein*, 708 F.3d at 97 (rejecting as a matter of law causal allegations that "UBS knew full well that *the cash dollars it was providing* to a state-sponsor of terrorism *such as* Iran *would be used to cause and facilitate terrorist attacks* by Iranian-sponsored terrorist organizations, *such as* Hamas H[e]zbollah and PIJ") (emphases in original).

While Plaintiffs turn for support for their implausible causal theory to "findings *by the United States government* that are the result of official investigations", Pls.' Opp'n at 37 (emphasis in original), none of these findings or investigations suggests that the Moving Defendants proximately caused the injuries alleged here.  Nowhere in the myriad government statements relied on by Plaintiffs are the Moving Defendants' banking services alleged to have been used by Iran to support terrorist organizations, much less terrorist acts carried out in Iraq, as is required by *Rothstein* and *Al Rajhi*.  *See id.* at 37-38; *see also id.* at 2, 5, 8-10, 13, 15, 35, 41 (citing and quoting various purported U.S. Government findings).  The U.S. Government statements extensively cited in Plaintiffs' Opposition, "on which almost all of [Plaintiffs'] factual allegations of [the] Complaint directly rest", *id.* at 3, only highlight the absence of plausible proximate causal allegations asserted against the Moving Defendants.

### C.   Plaintiffs' Arguments Regarding Foreseeability and But-For Causation Ignore the Second Circuit's Reasoning in *Rothstein* and Mischaracterize the Moving Defendants' Arguments

Finally, Plaintiffs' assertion that their injuries or Iran's financing of terrorism were "a reasonably foreseeable consequence" of the Moving Defendants' banking services, *id.* at

8

31, 42-44, does not adequately allege proximate cause under *Rothstein* and *Al Rajhi*. Foreseeability is not a substitute for plausible allegations of directness under *Rothstein*.[3]  *See* Jt. Mem. at 17-18.  The *Rothstein* court did not even analyze the causal allegations there under the foreseeability standard because the court found a threshold legal defect—the complaint in *Rothstein*, like the Complaint here, failed plausibly to allege an actual proximate causal connection between the defendant and the terrorist act or the terrorist organization that allegedly funded or perpetrated that act.  *See* 708 F.3d at 97; *see also Al Rajhi*, 714 F.3d at 124.

In ignoring the proximate cause standard under *Rothstein* and relying solely on foreseeability, Plaintiffs misappropriate Judge Cogan's observation in *Linde* that "[n]o one has ever 'directly' been injured by a wire transfer", Pls.' Opp'n at 40, 22, 33 n.25, which only rejected "a requirement to trace specific dollars to specific terrorist attacks", *Linde v. Arab Bank, PLC*, No. 04 Civ. 02799, 2015 WL 1565479, at *31 (E.D.N.Y. Apr. 8, 2015).  The requirement under *Rothstein* and *Al Rajhi* of plausibly alleging, at a minimum, a proximate causal connection between a defendant's conduct and the pertinent terrorist organization—a critical element

---

[3] Plaintiffs claim incorrectly that the parties agree on foreseeability as "the controlling causation standard".  Pls.' Opp'n at 31.  Under *Rothstein* and *Al Rajhi*, a threshold question in the proximate cause inquiry is whether there is a direct connection between the Moving Defendants' alleged conduct and Plaintiffs' injuries, and foreseeability is not a substitute for that requirement.  *See* Jt. Mem. at 13-14, 17-18.  Plaintiffs argue that, while directness may be required to allege proximate cause under RICO, proximate causation under Section 2333 should be treated differently.  This proposed distinction is contrary to clear Second Circuit precedent.  As the Second Circuit observed in *Rothstein*, the phrase "by reason of" in Section 2333, has a "well-understood meaning, as Congress had used it in creating private rights of action under RICO . . . and it had historically been interpreted as requiring proof of proximate cause".  708 F.3d at 95.  *Rothstein* thus relied on RICO cases in discussing causation and quoted the directness requirement under *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006), that "'the central question [in proximate causation] . . . is whether the alleged violation led directly to the plaintiff's injuries'".  *Id.* at 91-92.  *Al Rajhi* likewise relied on proximate cause decisions under RICO.  *See* 714 F.3d at 123-24 (citing *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258 (1992)).

missing here—was satisfied in *Linde* because there was a direct connection alleged between the defendant's conduct (setting up death benefit accounts for suicide bombers) and the terrorist organization that carried out the alleged attacks.  *See Linde*, 2015 WL 1565479, at *31.  Here, by contrast, there is, dispositively, no allegation that the Moving Defendants provided any banking services to any terrorist group.  *See* Jt. Mem. at 3-8, 13-15.

    Plaintiffs further claim that the Moving Defendants seek to supplant the proximate cause standard with a strict "but for" causation standard or a requirement that specific dollars processed by the Moving Defendants be traced to specific materials used for the alleged attacks.[4]  *See* Pls.' Opp'n at 38-44.  Plaintiffs are wrong.  What the Moving Defendants ask, and asked in the opening brief, is that the Court apply the controlling proximate cause analysis prescribed by the Second Circuit in *Rothstein* and *Al Rajhi*.  *See Rothstein*, 708 F.3d at 97; *Al Rajhi*, 714 F.3d at 124; *Ahmad v. Christian Friends of Israeli Comtys.*, No. 13 Civ. 3376 (JMF), 2014 WL 1796322, at *4 (S.D.N.Y. May 5, 2014).

*    *    *

    *Rothstein* and its progeny require an actual proximate causal connection between the defendant and the terrorist act or the relevant terrorist organization that funded or perpetrated that act—that is, those entities that "Congress has specifically found . . . [to be] so tainted by their criminal conduct that any contribution to such an organization facilitates [terrorist] conduct".  *Strauss*, 925 F. Supp. 2d at 433; *see* Jt. Mem. at 13-14; *Rothstein*, 708 F.3d at 91-92 ("with respect to 'proximate causation, the central question . . . is whether the alleged violation led directly to the plaintiff's injuries'") (quoting *Anza*, 547 U.S. at 461).  No such connection

---

[4] In partially quoting the Moving Defendants' opening brief in this regard, *see* Pls.' Opp'n at 38, Plaintiffs cherry pick one part of the Moving Defendants' listing of all of the missing pieces in the causal claims addressed in *Rothstein*.  *Compare* Jt. Mem. at 20 *with* Pls.' Opp'n at 38.

between the Moving Defendants and any terrorist organization or act is alleged here, unlike other ATA cases where Section 2333 claims were found to have adequately alleged proximate cause. *See* Jt. Mem. at 13-14; *Linde*, No. 04 Civ. 02799 (E.D.N.Y. May 10, 2013) ECF No. 943, Tr. of Mot. Hr'g at 72 ("here factually in contrast to *Rothstein* the facts proffered support a direct connection between the bank's provision of services and the terrorist acts that caused injury"); *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474, 479-80 (E.D.N.Y. 2012) (the defendant bank "alleged to have maintained accounts for and provided financial services to Hamas, its leaders, and its affiliates"); *see also* Pls.' Opp'n at 39 n.29 (describing cases involving alleged provision of direct support to a terrorist or terrorist organization for Section 2333 liability).

For the same reasons that the Second Circuit found the allegations in *Rothstein* and its progeny to be legally insufficient to allege proximate cause, Plaintiffs' indirect causal allegations here fail to state a claim as a matter of law.

## II.    SECTION 2333 DOES NOT PERMIT CONSPIRACY-BASED CIVIL LIABILITY

Plaintiffs do not dispute that each Claim for Relief in the Complaint is predicated on a conspiracy theory of liability. *See* Pls.' Opp'n at 11-18 ("The Criminal Conspiracy"); *see also* Am. Compl. ¶ 12 (definition of the "Conspiracy"); ¶¶ 1465-85 (First Claim for Relief); ¶¶ 1486-1502 (Second Claim for Relief); ¶¶ 1503-25 (Third Claim for Relief); ¶¶ 1526-37 (Fourth Claim for Relief). As demonstrated in the Moving Defendants' opening brief, clear and consistent precedent in this Circuit—*Rothstein, Dinsmore* and *Linde*—dictates that such conspiracy-based civil claims are not cognizable under Section 2333. *See* Jt. Mem. at 20-24.

In *Rothstein*, the Second Circuit affirmed dismissal of aiding and abetting claims because "§ 2333 is silent as to the permissibility of aiding and abetting liability", even though "there are sections of the ATA's criminal provisions . . . that do refer to aiding and abetting

11

liability".  708 F.3d at 97-98; *see also Al Rajhi*, 714 F.3d at 123.  The court concluded, "[w]e

doubt that Congress, having included in the ATA several express provisions with respect to

aiding and abetting in connection with the criminal provisions, can have intended § 2333 to

authorize civil liability for aiding and abetting through its silence."  *Id.*  In *Dinsmore v.*

*Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 841 (2d Cir. 1998)—a case

Plaintiffs completely ignore in their Opposition—the Second Circuit held that the Supreme

Court's reasoning in *Central Bank of Denver v. First Interstate Bank of Denver*, 511 U.S. 164,

185 (1994), about not inferring congressional intent to include secondary liability in the face of

statutory silence "applies not only to aiding and abetting claims, but to conspiracy claims as

well".  And in *Linde*, the court dismissed "all conspiracy claims under the ATA" based on

*Rothstein* and *Dinsmore*.  944 F. Supp. 2d 215, 217.

       Plaintiffs' primary response in their Opposition is to rehash arguments already

made and rejected in *Linde*.  Plaintiffs claim that conspiracy liability should be treated differently

under Section 2333 from aiding and abetting liability because, while the criminal provisions of

Sections 2339A and 2339B explicitly reference conspiracy, neither Section 2339A nor Section

2339B "expressly delineates aiding and abetting as criminal conduct".  Pls.' Opp'n at 20-21.

The premise of Plaintiffs' argument is wrong.  As the *Rothstein* court observed, "there are

sections of the ATA's criminal provisions—providing jurisdiction over, *inter alia*, United States

nationals and habitual residents—that do refer to aiding and abetting liability".  708 F.3d at 97;

*see also id.* at 97-98 ("[Section] 2339B, which prohibits 'knowingly provid[ing] material support

or resources to a foreign terrorist organization,' . . . provides that there is jurisdiction over an

offense under subsection (a) if, *inter alia*, 'an offender aids or abets any person over whom

jurisdiction exists under this paragraph in committing an offense under subsection (a)")

(alterations in original).  It was precisely because Congress "included in the ATA several express provisions with respect to aiding and abetting in connection with criminal provisions" that the *Rothstein* court concluded that Congress did not "intend[] § 2333 to authorize civil liability for aiding and abetting through its silence".  *Rothstein*, 708 F.3d at 98.

Moreover, Judge Gershon has already rejected the same argument that Plaintiffs assert here—that *Rothstein*'s reasoning as to aiding and abetting liability does not apply to conspiracy liability "because §§ 2339A, 2339B, and 2339C specifically refer to criminal conspiracy".  *Linde*, 944 F. Supp. 2d 215, 217.  As Judge Gershon held, under "the reasoning of *Rothstein*", the fact that " §§ 2339A, 2339B, and 2339C specifically refer to criminal conspiracy", when Section 2333 does not even mention "conspiracy", compels the conclusion that Congress chose not to authorize civil recovery under Section 2333 based on a conspiracy theory of liability.  *Id.*; *see also* Jt. Mem. at 23-24; *Dinsmore*, 135 F.3d at 842 ("[j]ust as Congress clearly knew how to impose aiding and abetting liability when it chose to do so . . . the existence of [criminal] statutes expressly providing for conspiracy liability . . . warrants the same conclusion" with respect to civil liability based on a conspiracy).

To try to salvage their non-cognizable civil conspiracy claims, Plaintiffs ignore the clear precedent in the Second Circuit and instead rely on dictum from the Seventh Circuit.  Citing *Boim v. Holy Land Found. for Relief and Dev. (Boim III)*, 549 F.3d 685 (7th Cir. 2008) (en banc), Plaintiffs recycle the argument, also made and rejected in *Linde*, that, "through a chain of statutory incorporation by reference", "Congress enacted a form of 'statutory' secondary liability as primary liability".  Pls.' Opp'n at 19.[5]  *Linde* correctly rejected this argument,

---

[5] Plaintiffs' reliance on *Boim III*'s dictum, *see* Pls.' Opp'n at 20, is, in any case, misplaced. The Seventh Circuit suggested in *Boim III* that, while the "statutory silence" in Section 2333 on secondary liability "means there is none", 549 F.3d at 689, a direct donor "to a terrorist group

13

applying the controlling precedent of *Rothstein* and *Dinsmore*.  Just as here, plaintiffs in *Linde*

argued that the defendant conspired to violate Section 2332(b), a criminal provision of the ATA,

and thus should be held civilly liable under Section 2333.  *See Linde*, No. 04 Civ. 02799

(E.D.N.Y. Aug. 10, 2004) ECF No. 4, Am. Compl. ¶¶ 384-90 (Second Claim for Relief).  And

just as here, the *Linde* plaintiffs argued that *Rothstein* "[did not] eliminate conspiracy within the

primary violation of [Sections] 2339A, B or C" because *Rothstein* purportedly dealt only with

"common-law" secondary liability, not conspiracy claims that are "imported from the [ATA's

statutory] criminal law" through "the chain of incorporations by reference", *Linde*, No. 04 Civ.

02799 (E.D.N.Y. May 10, 2013) ECF No. 943, Tr. of Mot. Hr'g at 9-11.  The *Linde* plaintiffs

dubbed this theory "[civil] primary liability with characteristics of secondary liability".  *Id.* at 9;

*see also* Pls.' Opp'n at 19 (referring to the same concept as "'statutory' secondary liability as

primary liability").  Judge Gershon correctly rejected this conspiracy theory of civil liability on

the ground that it is precluded by *Rothstein*.  *Linde*, 944 F. Supp. 2d 215, 217.

      Plaintiffs try to obfuscate *Linde*'s holding as to conspiracy claims by citing a

different portion of the hearing transcript where the *Linde* plaintiffs discussed "*the first claim for*

*relief*" predicated on aiding and abetting liability.  Pls.' Opp'n at 21 n.18 (emphasis in original).

---

that targets Americans outside the United States" may nonetheless be sued under Section 2333
insofar as a direct donation itself satisfies the elements of primary liability.  *Id.* at 690-92; *see id.*
at 690 ("[b]y this chain of incorporations by reference (section 2333(a) to section 2331(1) to
section 2339A to section 2332), we see that a donation to a terrorist group [under
Section 2339A]" may be "an act dangerous to human life" under Section 2331 and thus provide
the basis for Section 2333 liability).  The Seventh Circuit did not suggest, as Plaintiffs contend
here, that "the chain of incorporations" from Section 2333 to Section 2331 to criminal provisions
of the ATA permits "incorporating" criminal liability with solely secondary characteristics—
such as Plaintiffs' conspiracy-based *Pinkerton* theory of liability purportedly alleged under
Sections 2339A and 2339B.  Moreover, even if *Boim III* were to be interpreted differently,
*Rothstein* and other controlling authorities in this Circuit foreclose Plaintiffs' conspiracy theory
of liability.  *See Rothstein*, 708 F.3d at 98.

After this discussion, however, the court "turn[ed] to conspiracy claims" and heard the argument asserted here, that a "criminal" conspiracy, under *Boim III*, should be treated as "primary liability with characteristics of secondary liability". *Linde*, No. 04 Civ. 02799 (E.D.N.Y. May 10, 2013) ECF No. 943, Tr. of Mot. Hr'g at 8-9. Judge Gershon rejected this argument and dismissed "*all* conspiracy claims under the ATA". *Linde*, 944 F. Supp. 2d 215, 217 (emphasis added).

Plaintiffs further try to limit *Linde*'s conspiracy holding to "common law secondary liability", claiming that "[h]ad Judge Gershon read *Rothstein* to preclude claims based on primary liability for incorporated secondary liability by way of material support to terrorism (i.e. predicated, on criminal violations of §§ 2339A and 2339B), she would have granted summary judgment to the defendant *on all the claims* in that case." Pls.' Opp'n at 21-22 (emphasis in original). But Judge Gershon in fact dismissed "all conspiracy claims under the ATA", 944 F. Supp. 2d 215, 217, after hearing the same "chain of incorporations by reference" argument Plaintiffs make here, *Linde*, No. 04 Civ. 02799 (E.D.N.Y. May 10, 2013) ECF No. 943, Tr. of Mot. Hr'g at 9-11. *See also Linde*, 944 F. Supp. 2d 215, 217 ("[a]t oral argument, plaintiffs suggested that *Rothstein* is best read as holding only that, in the absence of explicit language, a court should not read into a civil cause of action a 'common law' aiding and abetting theory . . . . This argument ignores the reasoning of *Rothstein*"). Judge Gershon thus allowed only "direct" ATA claims to proceed, *Linde*, No. 04 Civ. 02799 (E.D.N.Y. May 10, 2013) ECF No. 943, Tr. of Mot. Hr'g at 67-68, which Plaintiffs here have not alleged.

Similarly, Plaintiffs' claim that *Linde* is distinguishable because it involved a "civil conspiracy", as opposed to the criminal conspiracy alleged here, is neither a difference nor a distinction. Pls.' Opp'n at 21. It is not a difference because the *Linde* complaint, like the Complaint here, referred to the conspiracy at issue in the Second Claim for Relief as a "criminal

15

conspiracy" and a "murderous conspiracy", and alleged that "the purpose of the conspiracy" was to "encourage others to engage in terrorist activities, and to support the continued commission of terrorist activities". *Linde*, No. 04 Civ. 02799 (E.D.N.Y. Aug. 10, 2004) ECF No. 4, Am. Compl. ¶¶ 339, 372, 316.[6]  It is not a distinction because, whether called a criminal conspiracy or a civil conspiracy, the holdings in *Rothstein*, *Dinsmore* and *Linde* apply to and preclude "*all* conspiracy claims under the ATA". *Linde*, 944 F. Supp. 215, 217 (emphasis added).

   Lastly, Plaintiffs resort to arguing that denying "statutory secondary liability" under Section 2333 would "extinguish accessorial liability in all cases brought under § 2333(a), and foreclose civil liability for all acts that merely 'involve,' but don't actually take the form of, 'violent acts' that would be criminal under U.S. law". Pls.' Opp'n at 22.  But the Second Circuit's holdings in *Rothstein* and *Dinsmore* (as well as *Linde*) clearly preclude conspiracy liability under Section 2333. *See Rothstein*, 708 F.3d at 97-98; *Dinsmore*, 135 F.3d at 841-42. Moreover, even without "statutory secondary liability", the ATA provides for civil recovery based on "acts dangerous to human life", such as the direct "provision of financial services to Hamas". *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 553, 562 (E.D.N.Y. 2012); *see also Stutts*, 2006 WL 1867060, at *2-4 (noting that "commercial banking activity", combined with a direct causal link to terrorist activities, may constitute an "act[] dangerous to human life").  Here, there is no allegation that the Moving Defendants provided banking services to any terrorist organization.  *See* Jt. Mem. at 3-8.

---

[6] Plaintiffs' claim that the Moving Defendants "erroneously cite[d]" ¶ 316 of the Amended Complaint in *Linde*, when the Second Claim for Relief was at issue in the argument before Judge Gershon, is thus misleading.  Pls.' Opp'n at 21 n.16.  The Moving Defendants never disputed that the Second Claim for Relief was at issue. *See* Jt. Mem. at 22.  Instead, ¶ 316 of the *Linde* Amended Complaint—which was "repeat[ed] and re-allege[d]" in the Second Claim for Relief, *Linde*, No. 04 Civ. 02799 (E.D.N.Y. Aug. 10, 2004) ECF No. 4, Am. Compl. ¶ 384—was quoted to show the scope and the nature of the conspiracy in question. *See id.*

*Rothstein*, *Central Bank of Denver*, *Dinsmore* and *Linde* all foreclose civil recovery under Section 2333 based on an alleged conspiracy.  To hold otherwise "would largely undo the effect of [*Rothstein*] itself, inasmuch as many aiding and abetting claims would simply be repleaded as conspiracy claims".  *Dinsmore*, 135 F.3d at 843.  Because all of Plaintiffs' Claims for Relief are explicitly premised on an alleged conspiracy, they must all be dismissed.[7]

## III.   NON-U.S. DEFENDANTS ARE NOT "UNITED STATES PERSON[S]" AND DID NOT ENGAGE IN "A FINANCIAL TRANSACTION WITH THE GOVERNMENT" OF IRAN UNDER SECTION 2332D

The Third and Fourth Claims for Relief must also be dismissed on the independent ground that the Defendants named in the Fourth Claim for Relief are not "United

---

[7] Because civil liability based on a conspiracy theory is not available under Section 2333, the Moving Defendants do not address here in detail Plaintiffs' arguments that they have sufficiently pled a criminal conspiracy under Sections 2339A and 2339B applying *Pinkerton*. Pls.' Opp'n at 23-28.  The holdings in *Rothstein*, *Dinsmore* and *Linde* plainly preclude this derivative theory of conspiracy liability.  The only ATA case Plaintiffs cite in support of their *Pinkerton* theory—a district court decision in *Boim*, Pls.' Opp'n at 24—was decided before the Seventh Circuit held that secondary liability claims are not allowed under Section 2333, *see Boim III*, 549 F.3d at 689-90.  While there is no reason to even reach assessment of the plausibility of Plaintiffs' conspiracy allegations, it is also clear that such allegations are not plausible.  For example, Plaintiffs claim that "[t]he existence of the Conspiracy and the Defendants' role in [it] . . . is not in dispute" because the Moving Defendants "entered into a DPA with U.S. prosecutors (often accompanied by consent orders with federal, and, in some cases, state regulators) and *admitted* to concealing Iranian financial activities and transactions from detection, scrutiny, or monitoring by U.S. regulators, law enforcement and/or depository institutions".  Pls.' Opp'n at 12 (emphasis in original).  None of the Moving Defendants' DPAs (or the Complaint), however, supports the allegation that the Moving Defendants entered into an agreement to provide support to terrorism, much less connects any of the Moving Defendants to Iran's financing of terrorism or to any terrorist or terrorist organization.  *See* Am. Compl. ¶¶ 372-73 (HSBC-US); ¶¶ 446-47 (Barclays); ¶¶ 497-499 (SCB); ¶¶ 543-44 (RBS N.V.); ¶¶ 606-609 (Credit Suisse AG); ¶ 610 (Commerzbank AG); *see also* Jt. Mem. at 24-25 n.9.  In addition, Plaintiffs do not plausibly allege that the acts of terrorism were "in furtherance of" the purported agreement among the Moving Defendants to circumvent U.S. sanctions.  *See United States v. Coplan*, 703 F.3d 46, 71 (2d Cir. 2012) (applying the "in furtherance of" requirement under *Pinkerton*); *see also* Pls.' Opp'n at 26-28 (ignoring the "in furtherance of" requirement).

17

States persons", and the Complaint fails plausibly to allege that those claims involve a "financial transaction with the government" of Iran, as required under Section 2332d.

As shown in the Moving Defendants' opening brief, the only case law that addresses this subject compels the conclusion that the relevant Defendants for the Fourth Claim for Relief—Standard Chartered Bank, RBS N.V. and Commerzbank AG (the "Non-U.S. Defendants")—are not "United States person[s]" within the meaning of Section 2332d.  *See Abecassis v. Wyatt*, 785 F. Supp. 2d 615, 648 (S.D. Tex. 2011); *United States v. Chalmers*, 474 F. Supp. 2d 555, 565 (S.D.N.Y. 2007).  Section 2332d(b)(2) defines "United States person" as any "(A) United States citizen or national; (B) permanent resident alien; (C) juridical person organized under the laws of the United States; or (D) any person in the United States".

None of the Non-U.S. Defendants is a "juridical person organized under the laws of the United States".  18 U.S.C. § 2332d(b)(2)(C).  Plaintiffs do not allege, because they cannot, that the Non-U.S. Defendants are incorporated in the United States.  *See* Am. Compl. ¶¶ 57-63, 71-74.  Indeed, each is a *foreign* entity organized under the laws of a *foreign* country.[8]  Plaintiffs nonetheless contend, without citing a single supporting authority, that the Non-U.S. Defendants are somehow "juridical person[s] organized under the laws of the United States", and thus "United States person[s]", because they have branches that are licensed to do business in the United States.  Pls.' Opp'n at 46, 50.  But the phrase "organized under the laws of" refers to an

---

[8] The Court should take judicial notice of this fact, which Plaintiffs do not dispute, based on filings with the U.S. Securities and Exchange Commission.  *See Wright-Upshaw v. Nelson*, No. 13 Civ. 3367, 2014 WL 692870, at *1 n.1 (E.D.N.Y. Feb. 19, 2014) ("[t]he Court takes judicial notice of Avis's state of incorporation and headquarters based on Securities and Exchange Commission filings."); *see also* Commerzbank AG, Registration Statement (Form F-6) (Sept. 2 2011), https://goo.gl/s1aJnq; RBS N.V., Registration Statement (Amendment No. 1 to Form F-3) (Mar. 22, 2012), https://goo.gl/ZvvIC0; ABN AMRO Holding N.V. & ABN AMRO Bank N.V., Report of Foreign Issuer (Form 6-K) (Jan. 28, 2005), https://goo.gl/bA7kcC; Standard Chartered PLC, Notice of Sale of Securities (Form D) (Jan. 28, 2005), https://goo.gl/BOZcWQ.

entity's place of incorporation—where it was *organized*—not all of the locations where it is licensed to do business. *See, e.g.*, *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure, Ltd.*, 536 U.S. 88, 90 (2002) (holding that a corporation "organized under the laws of" a foreign country—that is, a corporation incorporated under the laws of that foreign country—is a "citizen or subject of" that foreign state for purposes of alienage diversity jurisdiction); *Mobil Oil Corp. v. Commissioner of Taxes of Vt.*, 445 U.S. 425, 428 (1980) (noting that many of appellant's subsidiaries were "*organized under the laws of* foreign nations" while others were "domestically *incorporated*") (emphasis added).  Plaintiffs' contrary argument fails to give meaning to the language of "organized under the laws of".  Thus, the Non-U.S. Defendants are not "juridical person[s] organized under the laws of the United States".

   Nor are the Non-U.S. Defendants "person[s] in the United States", and thus "United States Person[s]" under Section 2332d(b)(2)(D).  The only courts to have interpreted that provision have uniformly held that it does not apply to corporate entities organized under foreign law, such as the Non-U.S. Defendants.  *See Abecassis*, 785 F. Supp. 2d at 648; *Chalmers*, 474 F. Supp. 2d at 565.  Plaintiffs struggle to distinguish *Chalmers*, pointing out several distinctions without a difference, and simply ignore *Abacassis.*  Pls.' Opp'n at 48-49.  But Plaintiffs cite no authority for their contention that, notwithstanding the fact that subsection (C) applies to "juridical person[s] organized under the laws of the United States", subsection (D)'s reference to "any person in the United States" covers both natural *and* juridical persons.  As the Moving Defendants have shown, such a reading would render Section 2332d(b)(2)(D) superfluous; if "any person in the United States" were to include corporate entities, there would be no need for Section 2332d(b)(2)(C), which covers "juridical person[s] organized under the laws of the United States".  *See* Jt. Mem. at 26.  Plaintiffs' grasping resort to the general

definition of "person" under Section 2331(3) to argue that Section 2332d(b)(2)(D) applies to more than natural persons, Pls.' Opp'n at 47, contradicts elementary principles of statutory construction, under which the more specific provision governs the more general provision. *See Varity Corp. v. Howe*, 516 U.S. 489, 511 (1996) (explaining that "the specific governs the general" principle serves "as a warning against applying a general provision when doing so would undermine limitations created by a more specific provision"). The precise language in Section 2332d(b)(2) demonstrates that Congress distinguished between "juridical" and natural persons. *See Bailey v. United States*, 516 U.S. 137, 145-46 (1995), *superseded by statute on other grounds*.

Finally, both the Third and Fourth Claims for Relief should be dismissed because Plaintiffs have not pleaded a "transaction with the government" of Iran under the plain meaning of the statutory text of Section 2332d(a). *See* Jt. Mem. at 27.

## CONCLUSION

The Complaint fails to state a claim and, accordingly, should be dismissed with prejudice in its entirety as a matter of law as to each of the Moving Defendants.


Date:  August 7, 2015

20

Respectfully submitted,

MAYER BROWN LLP,                    CRAVATH, SWAINE & MOORE LLP,

by                                 by

*/s/ Mark G. Hanchet*                  */s/ Richard W. Clary*
_____          _____
Mark G. Hanchet                       Richard W. Clary
                                      Michael T. Reynolds
                                      John D. Buretta
1221 Avenue of the Americas           Members of the Firm
New York, NY 10020-1001
(212) 506-2500
mhanchet@mayerbrown.com            Worldwide Plaza
                                   825 Eighth Avenue
                                   New York, NY 10019
Andrew J. Pincus                   (212) 474-1000
Paul W. Hughes                        rclary@cravath.com
                                      mreynolds@cravath.com
1999 K Street, N.W.                   jburetta@cravath.com
Washington, DC 20006-1101
(202) 263-3000                     *Attorneys for Defendant Credit Suisse*
apincus@mayerbrown.com             *AG*
phughes@mayerbrown.com

*Attorneys for Defendant HSBC Holdings*
*PLC, HSBC Bank PLC, HSBC Bank*
*Middle East Limited and HSBC Bank*
*USA, N.A.*

21

SULLIVAN & CROMWELL LLP,

by
_/s/ Michael T. Tomaino, Jr._
Michael T. Tomaino, Jr.
Jeffrey T. Scott
Jonathan M. Sedlak

125 Broad Street
New York, NY 10004
(212) 558-4000
tomainom@sullcrom.com
scottj@sullcrom.com
sedlakj@sullcrom.com

*Attorneys for Defendant Barclays Bank PLC*

CLIFFORD CHANCE US LLP,

By
_/s/ Steven T. Cottreau_
Steven T. Cottreau

2001 K Street NW
Washington, DC 20006-1001
(202) 912-5000
steve.cottreau@cliffordchance.com

Robert G. Houck
Jamie L. Hoxie

31 West 52nd Street
New York, NY  10019-6131
robert.houck@cliffordchance.com
jamie.hoxie@cliffordchance.com

*Attorneys for Defendant The Royal Bank of Scotland N.V.*

22

SULLIVAN & CROMWELL LLP,

by

*/s/ Sharon L. Nelles*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Sharon L. Nelles
Bradley P. Smith

125 Broad Street
New York, NY 10004
(212) 558-4000
nelless@sullcrom.com
smithbr@sullcrom.com

*Attorneys for Defendant Standard*
*Chartered Bank*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP,

by

*/s/ Lawrence B. Friedman*
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Lawrence B. Friedman
Lewis J. Liman
Avram E. Luft

One Liberty Plaza
New York, NY 10006
(212) 225-2000
lfriedman@cgsh.com
lliman@cgsh.com
aluft@cgsh.com

*Attorneys for Defendant Commerzbank*
*AG*

23