UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

CHARLOTTE FREEMAN, *et al.*,

                Plaintiffs,

    -against-

HSBC HOLDINGS PLC, *et al.*,

                Defendants.

14-CV-6601 (DLI/CLP)

**REPLY MEMORANDUM OF LAW OF DEFENDANT CREDIT SUISSE AG
IN FURTHER SUPPORT OF MOTION TO DISMISS**

        Richard W. Clary
        Michael T. Reynolds
        John D. Buretta
        CRAVATH, SWAINE & MOORE LLP
           Worldwide Plaza
              825 Eighth Avenue
                 New York, NY 10019-7475
                   (212) 474-1000
                   rclary@cravath.com
                   mreynolds@cravath.com
                   jburetta@cravath.com

        *Attorneys for Defendant Credit Suisse AG*

August 7, 2015

## TABLE OF CONTENTS

                                                                                                               **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .....................................................................................................................1

ARGUMENT .............................................................................................................................1

I.      THE TWO CLAIMS AGAINST CREDIT SUISSE ARE PREDICATED ON A CONSPIRACY THEORY OF CIVIL LIABILITY FORECLOSED BY *ROTHSTEIN*, *DINSMORE* AND *LINDE* ..............................................................................1

II.     PLAINTIFFS FAIL PLAUSIBLY TO ALLEGE PROXIMATE CAUSE AS TO CREDIT SUISSE ...........................................................................................................2

CONCLUSION ..........................................................................................................................5

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*,
　135 F.3d 837 (2d Cir. 1998) ................................................................................................... 1

*Linde v. Arab Bank, PLC*,
　944 F. Supp. 2d 215 (E.D.N.Y. 2013) ................................................................................ 1, 2

*Linde v. Arab Bank, PLC*,
　No. 04 Civ. 02799 (E.D.N.Y. May 10, 2013) ECF No. 943,
　Transcript of Motion Hearing ................................................................................................ 3

*O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*,
　714 F.3d 118 (2d Cir. 2013) ............................................................................................... 2, 3

*Rothstein v. UBS AG*,
　708 F.3d 82 (2d Cir. 2013) ............................................................................................ passim

*Strauss v. Credit Lyonnais, S.A.*,
　925 F. Supp. 2d 414 (E.D.N.Y. 2013) ................................................................................... 3

## INTRODUCTION

As demonstrated in the Joint Reply Memorandum and in Credit Suisse's and the Moving Defendants' opening briefs, the two Claims for Relief asserted against Credit Suisse—the First and Second Claims for Relief—fail to state a claim as a matter of law.[1]  First, both claims against Credit Suisse rely on a conspiracy theory of civil liability that is not cognizable under Section 2333.  Second, Plaintiffs fail plausibly to allege proximate cause as to Credit Suisse.  Credit Suisse respectfully submits this short, separate reply memorandum of law to address Plaintiffs' specific arguments pertaining to Credit Suisse.

## ARGUMENT

**I.  THE TWO CLAIMS AGAINST CREDIT SUISSE ARE PREDICATED ON A CONSPIRACY THEORY OF CIVIL LIABILITY FORECLOSED BY *ROTHSTEIN*, *DINSMORE* AND *LINDE***

Plaintiffs concede that the two Claims for Relief asserted against Credit Suisse rely entirely on a conspiracy theory of civil liability.  See Pls.' Opp'n at 11-18, 28-29.  As demonstrated in the opening briefs and the Joint Reply Memorandum, Section 2333 does not permit civil recovery for any conspiracy claims, including criminal conspiracy claims under Sections 2339A and 2339B based on a purported "chain of incorporations by reference" theory asserted here (Pls.' Opp'n at 21).  See Jt. Mem. at 20-24; CS Mem. at 6; Jt. Reply Mem. at 11-17; *see also Rothstein v. UBS AG*, 708 F.3d 82, 97-98 (2d Cir. 2013); *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837, 841 (2d Cir. 1998); *Linde v. Arab Bank,*

---

[1] The following abbreviations are used in this memorandum of law:  "Credit Suisse" for Defendant Credit Suisse AG; "Joint Reply Memorandum" or "Jt. Reply Mem." for "Joint Reply Memorandum of Law in Further Support of Motion to Dismiss"; "Credit Suisse opening brief" or "CS Mem." for "Memorandum of Law of Defendant Credit Suisse AG in Support of Motion to Dismiss"; "Moving Defendants' Opening Brief" or "Jt. Mem." for "Defendants' Joint Memorandum in Support of Motion to Dismiss"; "Complaint" or "Am. Compl." for Amended Complaint; and "Opposition" or "Pls.' Opp'n" for "Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Amended Complaint".

*PLC*, 944 F. Supp. 2d 215, 217 (E.D.N.Y. 2013) (dismissing "all conspiracy claims under the ATA" based on *Rothstein* and *Dinsmore*). Because Congress chose not to authorize civil liability under Section 2333 based on a conspiracy claim, each of Plaintiffs' two claims against Credit Suisse must be dismissed for failure to state a claim as a matter of law.[2] *See* Jt. Mem. at 20-24; CS Mem. at 6; Jt. Reply Mem. at 11-17.

## II. PLAINTIFFS FAIL PLAUSIBLY TO ALLEGE PROXIMATE CAUSE AS TO CREDIT SUISSE

The two Claims for Relief asserted against Credit Suisse must also be dismissed on the independent ground that they fail plausibly to allege proximate cause as to Credit Suisse. *See* Jt. Mem. at 10-20; CS Mem. at 6-8; Jt. Reply Mem. at 2-11. *Rothstein* and its progeny require that an ATA plaintiff plausibly allege a direct connection between a defendant and the relevant terrorist organizations or acts. *See* Jt. Mem. at 13-14, 17-18; CS Mem. at 6-8; Jt. Reply Mem. at 8-11; *see also Rothstein*, 708 F.3d at 97 (there is "no nonconclusory allegation in the Complaint that plausibly shows that the moneys UBS transferred to Iran were in fact sent to H[e]zbollah or Hamas or that Iran would have been unable to fund the attacks by H[e]zbollah and Hamas without the cash provided by UBS"); *O'Neill v. Al Rajhi Bank (In re Terrorist*

---

[2] Because Section 2333 does not permit conspiracy-based civil liability, Credit Suisse does not address in detail Plaintiffs' argument that they have plausibly alleged the necessary elements of a criminal conspiracy under Sections 2339A and 2339B. Credit Suisse notes, however, that there is no factual support for Plaintiffs' conspiracy allegations as to Credit Suisse. *See* Pls.' Opp'n at 11-15, 28-29. None of the U.S. Government findings (or Credit Suisse's deferred prosecution agreement)—on which Plaintiffs say they are principally relying to support the plausibility of their claims, *id.* at 3, 37—suggests that Credit Suisse agreed to provide material support for terrorism. Moreover, none of Plaintiffs' allegations otherwise alleges that Credit Suisse entered into a criminal agreement to provide material support to any terrorist organization or terrorist act. Plaintiffs' fallback position of seeking to rely on a purported (and not cognizable) *Pinkerton* theory of liability, *see id.* at 23-28, implicitly concedes Plaintiffs' failure to plead an actual criminal agreement by Credit Suisse to provide material support in violation of Sections 2339A and 2339B. *See* Jt. Reply Mem. at 17 n.7.

2

*Attacks on Sept. 11, 2001)*, 714 F.3d 118, 124 (2d Cir. 2013) (rejecting causal allegations "for the same reasons the allegations in *Rothstein* fell short"); *Linde v. Arab Bank, PLC*, No. 04 Civ. 02799 (E.D.N.Y. May 10, 2013) ECF No. 943, Transcript of Motion Hearing at 72 ("here factually in contrast to *Rothstein* the facts proffered support a direct connection between the bank's provision of services and the terrorist acts that caused injury"). As this Court has observed, provision of banking services to the Government of Iran, which "performs myriad legitimate functions in addition to allegedly funding terrorist organizations", does not plausibly allege proximate cause under *Rothstein* because "Iran did not carry out the attacks at issue". *Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414, 433 (E.D.N.Y. 2013).

No proximate causal connection between Credit Suisse and any terrorist organization or acts is alleged here. Plaintiffs do not allege that Credit Suisse provided banking services to Hezbollah, IRGC-QF or any of the named or unnamed terrorist groups in Iraq, or that the funds processed by Credit Suisse were ultimately transferred to any terrorist entity or in support of any terrorist act. *See* CS Mem. at 1-5. Nor do Plaintiffs allege that Credit Suisse processed any funds for the Islamic Republic of Iran Shipping Lines or Iran's Defense Industries Organization, *see id.* at 2, Am. Compl. ¶¶ 35-36, 113-26, 160-61, 301—in fact, Plaintiffs concede the lack of any weapons-related allegations as to Credit Suisse (Pls.' Opp'n at 15-16, 28).

Plaintiffs are left with the allegation that Credit Suisse processed U.S. dollar-denominated transactions for Iranian banks, Bank Melli and Bank Saderat, in alleged violation of U.S. sanctions. *See* Pls.' Opp'n at 13-15. But *Rothstein* held that alleged provision of funds directly to the Government of Iran (and its banking instrumentalities), even when in violation of U.S. sanctions, is insufficient to adequately allege proximate cause. 708 F.3d at 97 (while "[t]he

3

fact that the transfers were made to a state sponsor of terrorism of course made it more likely that the moneys would be used for terrorism than if the transfers were to a state that did not sponsor terrorism", such allegations are insufficient to plausibly allege proximate cause). Like *Rothstein*, none of the U.S. dollar-denominated transactions Credit Suisse allegedly processed involved any terrorist group. Plaintiffs' further argument that Credit Suisse allegedly "facilitate[d]", or had "sustained" or "essential" involvement in, Bank Melli's "deceptive banking services", or that the services Credit Suisse provided allegedly were not "routine" (Pls.' Opp'n at 28-29), does nothing to establish a proximate causal connection between Credit Suisse and any act of terrorism. *Rothstein* rejected more substantial allegations asserted against UBS that "[t]he fact that Iran was subject to United States government sanctions made it difficult for Iran to obtain the large sums of cash dollars needed for the H[e]zbollah and Hamas operations", and that "UBS solved this problem for Iran by illegally providing Iran with hundreds of millions of dollars in cash between 1996 and 2004". 708 F.3d at 87.

Plaintiffs' related argument that, in light of "terror-financing controls", Credit Suisse "knew of the illegality of its conduct under U.S. law", or that it "knew of [Bank Saderat's] links to Hezbollah" in conducting its banking work (Pls.' Opp'n at 29, 13, *see also id.* at 16-18), also does not distinguish this case from *Rothstein*. 708 F.3d at 97 (rejecting as insufficient allegations that "UBS knew full well that the cash dollars it was providing to a state-sponsor of terrorism such as Iran would be used to cause and facilitate terrorist attacks by Iranian-sponsored terrorist organizations such as Hamas, H[e]zbollah and PIJ") (emphases omitted). Moreover, there is no factual support for the claim that Credit Suisse knew of Bank Saderat's alleged (unrelated) support of Hezbollah. As Plaintiffs acknowledge, all of Credit Suisse's banking services to Bank Saderat (and also to Bank Melli) ceased well before the U.S.

4

Government named either of those banks a Specially Designated National or a Specially Designated Global Terrorist.[3] See Pls.' Opp'n at 29. Thus, Plaintiffs' misleading claim in the heading on page 28 of their Opposition that Credit Suisse provided banking services to "SDN Bank Melli[]" is incorrect and inconsistent with their own pleadings. In sum, the Complaint cites no support for the proposition that, while Credit Suisse was providing banking services to either bank, it knew that either bank allegedly provided support to any terrorist organization.

Finally, as noted in Credit Suisse's opening brief, the Complaint does not allege that Credit Suisse's alleged banking services for Iran's Aerospace Industries Organization and the Atomic Energy Organization of Iran had anything to do with any terrorist organization or act, much less the terrorist attacks alleged here. See CS Mem. at 5. Nor does Plaintiffs' Opposition explain why these allegations are relevant. See Pls.' Opp'n at 28-29.

## CONCLUSION

For the foregoing reasons, Credit Suisse respectfully submits that the First and Second Claims for Relief in the Complaint should be dismissed with prejudice as to Credit Suisse.

Dated: August 7, 2015

---

[3] As also previously noted, Credit Suisse stopped most of its Iranian transactions before the U-Turn exemption was revoked as to Bank Saderat and ceased all such transactions before the exemption was revoked as to Bank Melli. See CS Mem. at 2-3. While Plaintiffs rhetorically claim that Credit Suisse "can take no comfort" from this (Pls.' Opp'n at 29), the reality is that it is undisputed that Credit Suisse was not processing banking transactions for either of these banks at a time when either was a sanctioned—i.e., prohibited—entity.

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by
     /s/ Richard W. Clary
             Richard W. Clary
             Michael T. Reynolds
             John D. Buretta

          Members of the Firm

Worldwide Plaza
   825 Eighth Avenue
      New York, NY 10019
         (212) 474-1000
         rclary@cravath.com
         mreynolds@cravath.com
         jburetta@cravath.com


*Attorneys for Defendant Credit Suisse AG*

6