UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

CHARLOTTE FREEMAN, et al.

                              Plaintiffs,

            v.

                                                14-CV-6601 (DLI/CLP)

HSBC HOLDINGS PLC, et al.

                              Defendants.

---------------------------------------------------------------x

**SUPPLEMENTAL REPLY MEMORANDUM OF LAW OF
HSBC HOLDINGS PLC, HSBC BANK PLC,
HSBC BANK MIDDLE EAST LIMITED, HSBC BANK USA, N.A.,
AND THE ROYAL BANK OF SCOTLAND N.V.
IN SUPPORT OF MOTION TO DISMISS**

August 7, 2015

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Kaplan v. Jazeera*,
   2011 WL 2314783 (S.D.N.Y. 2011) .................................................................................... 4

*Linde v. Arab Bank, PLC*,
   2015 WL 1565479 (E.D.N.Y. 2015) ................................................................................ 1, 3

*Pinkerton v. United States*,
   328 U.S. 640 (1946) ............................................................................................................ 5

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013) .............................................................................................. 1, 5

*Stansell v. BGP, Inc.*,
   2011 WL 1296881 (M.D. Fla. 2011) ................................................................................... 4

*Stutts v. De Dietrich Group*,
   2006 WL 1867060 (E.D.N.Y. 2006) ................................................................................... 4

*In re Terrorist Bombings of U.S. Embassies in E. Africa*,
   552 F.3d 93 (2d Cir. 2008) .................................................................................................. 5

*United States v. Berger*,
   224 F.3d 107 (2d Cir. 2000) ................................................................................................ 5

*United States v. Coplan*,
   703 F.3d 46 (2d Cir. 2012) .................................................................................................. 5

*United States v. Jordan*,
   927 F.2d 53 (2d Cir. 1991) .................................................................................................. 5

*Weiss v. Nat'l Westminster Bank PLC*,
   768 F.3d 202 (2d Cir. 2014) ........................................................................................ 1, 2, 3

**Statutes**

18 U.S.C. § 2331(1)(A) ............................................................................................................ 2

18 U.S.C. § 2331(1)(B) ............................................................................................................ 1

18 U.S.C. § 2333(a) .................................................................................................................. 1

**Other Authorities**

Samuel Rubenfeld, *US Treasury Expands IRISL Sanctions; Manhattan DA Indicts*, The Wall Street Journal (June 20, 2011)..........................................................................5

Congress expressly defined the "act of international terrorism" that gives rise to civil liability under the ATA (18 U.S.C. § 2333(a)) to require proof that the defendant's alleged wrongful conduct objectively "appear to be intended" to accomplish one of three specifically-delineated terroristic purposes: (i) "intimidate or coerce a civilian population," (ii) "influence the policy of a government by intimidation or coercion," or (iii) "affect the conduct of a government by mass destruction, assassination, or kidnapping." *Id*. § 2331(1)(B). The Second Circuit recently confirmed that proof that each defendant engaged in an act that "appears to be intended" to accomplish one of these terroristic purposes is a "definitional requirement" for the imposition of civil liability. *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 207 n.6 (2d Cir. 2014).

Plaintiffs' opposition (Pls. Opp. 29-31) points to no alleged facts that would plausibly satisfy this element as to HSBC and RBS N.V. Instead, plaintiffs rely on a paragraph in Judge Cogan's decision in *Linde v. Arab Bank, PLC*, 2015 WL 1565479, at *25 (E.D.N.Y. 2015), and assert that *every* violation of Sections 2339A, 2339B, or 2332d categorically satisfies the "appear[s] to be intended" requirement of Section 2331(1)(B) and that the absence of allegations separately establishing that requirement is not grounds for dismissal. Pls. Opp. 30. That argument is wrong for several reasons.[1]

*First*, plaintiffs baldly assert that we "misstate *Weiss*'s holding" (Pls. Opp. 30), but ignore what the Second Circuit actually said. The plaintiffs in *Weiss* alleged that the defendant violated Section 2339B, and the Court found a "triable issue of fact" as to whether the defendant fulfilled § 2339B's scienter requirement. 768 F.3d at 205 & 207 n.6. The Second Circuit went on to make

---

[1] To be held civilly liable, each defendant must *itself* have committed all of the elements of an act of "international terrorism" specified in Section 2331(1). *See Rothstein v. UBS AG*, 708 F.3d 82, 88-89 (2d Cir. 2013) (Section 2333 does not create liability for aiding and abetting "international terrorism" by another). Plaintiffs' contention that certain acts of conspiracy defined in Sections 2339A and 2339B satisfy the separate "international terrorism" element that the conduct qualify as a violation of the criminal laws (Section 2331(1)(A)), does not, even on plaintiffs' view, relieve them of the obligation to meet the objective terroristic purpose requirement as to each defendant (and is, moreover, incorrect for the reasons explained in the Joint Reply at XX-XX).

1

clear that Section 2331(1)(B)'s objective terroristic purpose requirement is a separate element of the civil cause of action—"[t]he requirement to 'appear to be intended ...' does not depend on the actor's beliefs, but imposes on the actor an objective standard to recognize the apparent intentions of actions." *Id*. at 207 n.6. Because the "appear to be intended" issue had not been addressed below, the Second Circuit did not "address whether NatWest fulfilled this *definitional requirement*" of establishing this objective element. *Id*. (emphasis added).

If plaintiffs were correct that allegations satisfying Section 2339B automatically satisfied the objective terroristic intent requirement, the Second Circuit would have concluded that the facts sufficient to allege a Section 2339B violation also satisfied the objective intent element. By recognizing instead that properly stating a Section 2339B violation does *not* obviate the need to address the separate "requirement" of objective terroristic purpose, the Second Circuit in *Weiss* necessarily rejected plaintiffs' theory that pleading the predicate act automatically pleads objective terroristic purpose.

*Second*, plaintiffs' theory of "automatic objective terroristic intent" fails to appreciate the statutory structure. Congress concluded that every criminal offense "involv[ing] violent acts or acts dangerous to human life" (18 U.S.C. § 2331(1)(A)) should not subject a perpetrator to civil liability—the objective terroristic purpose requirement is an important, additional obligation.

Plaintiffs argue that the Section 2339A, 2339B, and 2332d offenses "are not ordinary crimes; they are terrorism crimes." Pls. Opp. 30. But these offenses themselves do not require proof of objective terroristic intent. Indeed, plaintiffs here argue that defendants can be found to violate these statutes based on a broad conspiracy theory that relieves plaintiffs of the obligation of proving that defendants shared Iran's terroristic goals. Pls. Opp. 23. Moreover, the objective terroristic intent requirement applicable to private lawsuits ensures that, regardless of the scope

of criminal liability, where the breadth of liability is moderated by prosecutorial discretion, ATA private claims will be restricted to the class of actual terrorists that Congress targeted.

*Third*, plaintiffs' reliance on Judge Cogan's decision in *Linde v. Arab Bank, PLC,* 2015 WL 1565479, at *25 (E.D.N.Y. 2015), is misplaced. *Linde*—like other direct financing-of-terrorism cases we discussed in the opening brief (*see* HSBC & RBS N.V. Br. 2 n.2)—involved allegations that the defendant financial institution was directly, and knowingly, providing services to an entity engaging in terroristic acts. *Id*. Plaintiffs do not contend otherwise.

Thus, in *Linde*, the plaintiffs alleged that the defendant bank provided financial services *directly* to Hamas-affiliated entities and individuals engaged in terrorist acts. 2015 WL 1565479, at *1. The court relied on that allegation, emphasizing that "the evidence in this case included funds transfers to accounts held directly by senior Hamas leaders." *Id*. at *32. On these facts, Judge Cogan concluded that "providing material support to a terrorist organization is an act" that "'appear[s] to be intended' to intimidate." *Id*. at *26. Indeed, Judge Cogan cited to the discussion in *Boim* that "because donations to Hamas increase Hamas' ability to launch terrorist attacks, 'such donations would 'appear to be intended ... to intimidate or coerce a civilian population' or to 'affect the conduct of a government by ... assassination.'" *Id*.[2]

Here, unlike *Linde*, plaintiffs have made no allegations that HSBC or RBS N.V. provided *direct* financial services to either the entities that actually carried out the terroristic acts—the individual terrorists operating in Iraq—or to the groups that allegedly trained and funded those terrorists, principally Hezbollah or IRGC. *Linde* and similar decisions are entirely inapposite.

*Fourth*, outside of direct terrorist-financing cases, courts regularly find plaintiffs cannot

---

[2]   While Judge Cogan did state broadly that "a violation of 18 U.S.C. § 2339B is itself an act of international terrorism," that sweeping statement was not necessary to the court's holding. *Linde*, 2015 WL 1565479, at *25. With respect, such a broad statement is inconsistent with the plain terms of *Weiss*, which found that the "definitional requirement" in Section 2331(1) is an issue apart from a violation of Section 2339B. 768 F.3d at 207 n.6.

3

satisfy the independent terroristic purpose requirement imposed by Section 2331(1)(B). Plaintiffs do not even attempt to respond to the analysis in *Stansell v. BGP, Inc.*, 2011 WL 1296881, at *9 (M.D. Fla. 2011), *Stutts v. De Dietrich Group*, 2006 WL 1867060, at *2 (E.D.N.Y. 2006), or *Kaplan v. Jazeera*, 2011 WL 2314783 (S.D.N.Y. 2011).

*Stutts* is instructive. There, banks allegedly provided financial services (lines of credit) that enabled Iraq to purchase chemicals and equipment used for the manufacture of chemical weapons. 2006 WL 1867060, at *1. Similar to here, plaintiffs alleged that, because the Iraqi government was a state sponsor of terrorism, "'the Bank Defendants knew or recklessly disregarded acknowledging that the Iraqi government was using goods and services supplied to commit acts of international terrorism.'" *Id*. at *5. The court nonetheless concluded that, "by engaging in commercial banking activity," the actions of the bank defendants were not "designed to coerce civilians or government entities as required under § 2331." *Id*. at *2. In sum, their "conduct does not constitute international terrorism." *Id*.

The same conclusion holds here. Plaintiffs allege that HSBC and RBS N.V. engaged in financial transactions with private Iranian banks that allegedly facilitated Iran's access to the international financial system. And plaintiffs here, like those in *Stutts*, contend that because Iran is a state sponsor of terrorism, banks should know that any indirect assistance to the Iranian government could somehow assist Iran's support of terrorism. But, just as in *Stutts*, plaintiffs have no basis to plausibly assert that, by engaging in financial transactions with Iranian banks, an objective observer would conclude that HSBC and RBS N.V. engaged in activities that "appear to be intended" to have the terroristic purposes enumerated in the statute.[3]

---

[3] Neither do plaintiffs' allegations that HSBC and RBS N.V. were the "conduits" for the Islamic Republic of Iran Shipping Lines ("IRISL"), plead objective terroristic purpose. As plaintiffs themselves recognize, IRISL is an "instrumentality" of the Iranian government (Pls. Opp'n 26), and, as "Iran's national maritime carrier", IRISL "provides a variety of maritime transport services, including bulk, break-bulk, cargo and containerized shipping."

4

While multiple courts have held that the provision of *direct* financial services to terrorists—such as holding the bank accounts *of terrorists*—may satisfy this requirement, no court has ever concluded that a bank acts with "objective terroristic purpose" in circumstances remotely comparable to those alleged here. The Court should reject plaintiffs' invitation to become the first to do so, as such a holding would directly conflict with *Stutts* and would violate the clear limitations Congress placed on the reach of civil liability under the ATA.[4]

## CONCLUSION

For the foregoing reasons, as well as those set out in the Joint Memorandum and Reply and our Supplemental Memorandum, the Court should grant the Moving Defendants' Motion to Dismiss, dismissing all claims asserted against the Moving Defendants.

---

Am. Compl. ¶ 113. IRISL necessarily "has many legitimate . . . operations . . . to fund," *Rothstein*, 708 F.3d at 97. Provision of banking services to IRISL is not materially different than the provision of services to the Iranian government itself discussed in *Rothstein*.

And the Amended Complaint does not allege that HSBC or RBS N.V. ever knew that they were being used as the "conduit" for IRISL or that they undertook acts that "appear to be intended" to support terrorism. Quite the opposite, HSBC and RBS N.V. were *victims* of IRISL's "deception techniques." *See id.* ¶¶ 118-119; Schlanger Decl. Ex. G, at 6 ("[t]hrough the fraudulent use of a web of subsidiary entities and front companies, IRISL and the other defendants were able to deceive U.S. financial institutions and maintain their access to the U.S. financial system"); *see also* Samuel Rubenfeld, *US Treasury Expands IRISL Sanctions; Manhattan DA Indicts*, The Wall Street Journal (June 20, 2011) (executive assistant district attorney Adam Kaufman noted that the banks named in the indictment, (including HSBC and RBS N.V.) "were not complicit in the action" and "were deceived in these wire payments").

[4] This limitation on the reach of liability under the ATA is also consistent with Congress's decision not to impose liability for conspiracy. See Joint Mem. at 20-24. Indeed, even if conspiracy were available, plaintiffs' claim could no proceed because it violates basic limitations on conspiracy liability. In addressing *Pinkerton* (Pls. Opp. 23-28), Plaintiffs do not explain how their allegations satisfy the requirement that the Moving Defendants' acts were "committed '*in furtherance of the conspiracy*.'" *United States v. Jordan*, 927 F.2d 53, 56 (2d Cir. 1991) (emphasis added) (quoting *Pinkerton v. United States*, 328 U.S. 640, 647-48 (1946)). Even if one conspirator's act is foreseeable, a co-conspirator is liable only if the act furthers an objective that the co-conspirator *specifically intended* to achieve. *See*, *e.g.*, *United States v. Coplan*, 703 F.3d 46, 71 (2d Cir. 2012) (defendant not liable for alleged objective of tax evasion when there was no evidence that defendant specifically intended it to occur).

Plaintiffs cite *In re Terrorist Bombings of U.S. Embassies in E. Africa*, 552 F.3d 93, 113 (2d Cir. 2008), for the assertion that a defendant need not agree to all conspiratorial objectives. But that ignores the point that whether there exists one conspiracy (against which multiple objectives may be imputed) or multiple conspiracies turns on whether the coconspirators are "mutually interdependent," "served the same overriding goal," were led by "the same core group" of individuals, "shared common participants," or used "the same distinctive methods and means" in carrying out unlawful acts. *United States v. Berger*, 224 F.3d 107, 115 (2d Cir. 2000). There is no allegation that HSBC or RBS N.V. are themselves part of a conspiracy to commit acts of terrorism in Iraq—the banks are not mutually dependent on those terrorists, they do not share the same goals or participants, they do not involve the same core groups of individuals, and they do not use any of the same methods or means of carrying out unlawful acts. A theory of conspiracy, even if it were cognizable, simply does not permit the vast expansion of liability that plaintiffs here assert.

5

| MAYER BROWN LLP | CLIFFORD CHANCE US LLP |
|---|---|
| /s/ *Mark G. Hanchet*<br>Mark G. Hanchet<br>1221 Avenue of the Americas<br>New York, NY 10020-1001<br>(212) 506-2500<br>MHanchet@mayerbrown.com | /s/ *Steven T. Cottreau*<br>Steven T. Cottreau<br>2001 K Street NW<br>Washington, DC 20006-1001<br>(202) 912-5000<br>Steve.Cottreau@cliffordchance.com |
| Andrew J. Pincus<br>Paul W. Hughes<br>1999 K Street, N.W.<br>Washington, CC 20006-1101<br>(202) 263-3000<br>APincus@mayerbrown.com<br>PHughes@mayerbrown.com | Robert G. Houck<br>Jamie L. Hoxie<br>31 West 52nd Street<br>New York, NY 10019-6131<br>(212) 878-8000<br>Robert.Houck@cliffordchance.com<br>Jamie.Hoxie@cliffordchance.com |
| *Attorneys for Defendants HSBC Holdings PLC, HSBC Bank PLC, HSBC Bank Middle East Limited, HSBC Bank USA, N.A.* | *Attorneys for Defendant The Royal Bank of Scotland N.V.* |

August 7, 2015

**Certificate of Service**

I hereby certify that on August 7, 2015, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants: all counsel of record.

                                    MAYER BROWN LLP

                                    /s/ *Mark G. Hanchet*
                                    Mark G. Hanchet
                                    1221 Avenue of the Americas
                                    New York, NY 10020-1001
                                    (212) 506-2500
                                    MHanchet@mayerbrown.com