# Exhibit J

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/2/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x
ALEXANDER LELCHOOK, ESTER LELCHOOK,
THE ESTATE OF DAVID MARTIN LELCHOOK,
MICHAL LELCHOOK, YAEL LELCHOOK, AND
DORIS LELCHOOK,

        Plaintiffs,

 -against-

COMMERZBANK AG,

        Defendant.
---------------------------------------------------------------- x

**ORDER DENYING MOTION TO DISMISS ON STANDING GROUNDS**

10 Civ. 5795 (AKH)

ALVIN K. HELLERSTEIN, U.S.D.J.:

  On July 18, 2011, the parties appeared before me for oral argument on Defendant Commerzbank's motion to dismiss Plaintiffs' three-count Complaint, which generally alleged claims under the Antiterrorism Act ("ATA"), 18 U.S.C. § 2331 et seq. I assume the parties' familiarity with the facts alleged in the Complaint. After argument, I granted the motion to dismiss Count 1, but denied the motion to dismiss Count 2 and Count 3. But, I also raised the question whether Plaintiffs Alexander Lelchook, Michal Lelchook, Yael Lelchook, and Doris Lelchook have standing under the ATA to bring this case. I directed the parties to submit supplemental briefing on the issue. With the benefit of that briefing, I am now prepared to rule. For the following reasons, the motion is denied.

### I.  Plaintiffs Possess Article III Standing

  As a threshold matter, Commerzbank reraises an issue that went unaddressed at oral argument, whether any Plaintiff has standing under Article III of the Constitution. Commerzbank contends that Plaintiffs do not, because their alleged injury is not "fairly traceable" to any of its conduct. See Allen v. Wright, 468 U.S. 737, 750 (1984) (standing

1

requires the injury to be "fairly traceable" to a defendant's conduct). Because the question of constitutional standing goes to the core of the federal judicial power, I consider it here. Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999). I find that the "fairly traceable" requirement is satisfied.

Commerzbank contends that the act of maintaining a bank account for a group alleged to be affiliated with a terrorist organization, Hezbollah, is too weak a series of connections to create liability for Hezbollah's acts. Commerzbank relies on Rothstein v. UBS AG, 647 F. Supp. 2d 292 (S.D.N.Y. 2009), where the district court dismissed ATA claims against a bank, UBS, that had transferred U.S. currency to Iran.[1] In Rothstein, the plaintiffs had argued that because Iran is a recognized sponsor of terrorism, any currency transfers to its government could be construed as an act of supporting terrorism under the ATA. Judge Rakoff rejected that theory, noting that "cash dollars have multiple legitimate uses" and are not necessarily devoted to supporting terrorism just because they are transferred to a government that is linked to terrorism. 647 F. Supp. 2d at 294.

In this case, Plaintiffs allege that Commerzbank maintained a bank account for a Hezbollah front; this distinction takes the case outside the rule of Rothstein, for a terrorist front organization has no legitimate function that the United States recognizes. In fact, this case is far more similar to Goldberg v. UBS AG, 660 F. Supp. 2d 410 (E.D.N.Y. 2009), where plaintiffs alleged that UBS was liable under the ATA because it maintained accounts for Hamas. Denying the motion to dismiss, the court held that the "fairly traceable" test was met where the bank maintained accounts for a terrorist organization. Id. at 417. And Goldberg has the support of

---

[1] I am aware that the Second Circuit reversed Rothstein and remanded for further consideration in light of Holder v. Humanitarian Law Project, 130 S.Ct. 2705 (2010). But, Judge Rakoff found that Humanitarian Law Project had no impact on his original decision, and expressly reaffirmed the dismissal for lack of constitutional standing. Rothstein v. UBS AG, 772 F. Supp. 2d 511 (S.D.N.Y. 2011). I therefore consider the analysis as provided in the first Rothstein decision.

2

several other decisions. See Strauss v. Credit Lyonnais, S.A., 06 Civ. 702, 2006 WL 2862704 (E.D.N.Y. Oct. 5, 2006); see also Stansell v. BGP, Inc., 09 Civ. 2501, 2011 WL 1296881 (M.D. Fla. March 31, 2011); Wultz v. Islamic Republic of Iran, 755 F. Supp. 2d 1, 22-23 (D.D.C. 2010). In view of the weight of authority and the persuasiveness of Goldberg, I find the "fairly traceable" element satisfied.

## II. All Individual Plaintiffs Have Standing Under the ATA

Commerzbank contends that under the ATA, standing is conferred only on the Estate of David Lelchook and its personal representative, Esther Lelchook. Commerzbank contends that David Lelchook's other family members lack standing because the ATA does not permit them to seek emotional damages, commonly described as "solatium" damages, based on the loss of David. I disagree.

Standing under the ATA is conferred by 18 U.S.C. § 2333(a), which states:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

From the plain meaning of the text, it is apparent that the ATA authorizes "[a]ny national of the United States" to bring suit if the national alleges injury in his "person, property, or business." Id. In the event of such an injury, suit may be brought by the injured national, or his estate, survivors, or heirs. Nothing in the statute limits the ability of these entities to sue; as long as the proximate cause of the injury is alleged to be "by reason of an act of international terrorism," id., the claim may be brought.

Other courts similarly have recognized that § 2333(a) does not require elaboration of the nature of claims that this group of entities may bring, beyond an allegation of injury to a

3

United States national's "person, business or property . . . by reason of an act of international terrorism." In Knox v. Palestine Liberation Organization, 442 F. Supp. 2d 62, 77 (S.D.N.Y. 2006), the court noted that "[s]ection 2333(a) is unclear as to the nature of damages that may be recovered by a covered plaintiff." Knox further recognized that in light of the statutory ambiguity, § 2333(a) is best interpreted in light of its animating purpose, "to subject terrorists to the broadest range of economic damages." Id. Other courts have reached the same conclusion. See Morris v. Khadr, 415 F. Supp. Linde v. Arab Bank, PLC, 384 F. Supp. 2d 571, 589 (E.D.N.Y. 2005); Estates of Ungar ex rel. Strachman v. Palestinian Auth., 304 F. Supp. 2d 232, 267 (D.R.I. 2004). Further, in the portion of a panel decision left untouched in *en banc* review, the Seventh Circuit observed that Congress meant to incorporate the full range of traditional tort principles into the ATA. Boim v. Quaranic Literacy Inst. and Holy Land Found. for Relief and Dev., 291 F.3d 1000, 1010 (7th Cir. 2002), aff'd in part and rev'd in part, 549 F.3d 685 (7th Cir. 2008) (en banc). As noted in Knox, permitting Plaintiffs to pursue claims for solatium damages is consistent with both the purpose of the ATA, and Congress's intention to incorporate traditional tort-law principles into the statute.

Under these principles, I hold, consistent with other courts to have addressed the issue, that each individual Plaintiff in this case may bring claims. First, with regard to David Lelchook's daughters, Michal and Yael, courts have suggested that "it is virtually inconceivable" that direct children of the decedent may not bring claims as heirs or survivors. Ungar, 304 F. Supp. 2d at 261; see also Knox, 442 F. Supp. 2d at 74; Morris, 415 F. Supp. 2d at 1337. Second, as to David Lelchook's mother, Doris, and his brother, Alexander, courts have consistently held that the statutory purpose and legislative history for the ATA evidence an intent to allow siblings and parents of the decedent to bring claims. Knox, 441 F. Supp. 2d at 75. While Doris and

4

Alexander may not be able to prove damages to any meaningful extent, that is not a basis to deny them their cause of action at the pleadings stage.[2]

Commerzbank offers an alternative argument, that the use of the disjunctive article "or" in the text means that only the injured United States national or—if he is deceased—his estate, or his heirs, or his survivors may sue; but not more than one of these. The argument is based on a strained interpretation. The fair meaning is that any national, or that national's estate, heirs or survivors may sue. This fair interpretation implements the congressional intent to interpret the statute broadly.

For the foregoing reasons, and for the reasons embodied in my Summary Order of July 19, 2011, the motion to dismiss Count 2 and Count 3 is denied. The Clerk shall terminate the motion (Doc. No. 20).

SO ORDERED.

Dated: August _1_, 2011
New York, New York

_____
ALVIN K. HELLERSTEIN
United States District Judge

---

[2] Knox and Ungar recognized that certain relatives, traditionally considered outside the immediate zone of relatives who may automatically bring claims as "survivors," have to demonstrate a "special relationship" to the decedent to justify the claim. In Knox, for example, the issue was whether stepchildren could bring claims. 442 F. Supp. 2d at 75-76. In this case, each individual Plaintiff is within the scope of previously recognized "heirs" or "survivors."

5