# Exhibit K



NOT FOR REPRINT

🖨   Click to Print or Select **'Print'** in your browser menu to print this document.

Page printed from: *National Law Journal*

# Will JASTA Yield More Lawsuits Over Terror?

OPINION: Civil liability for those who aid terrorism is now law. But there may be unintended consequences.

Jeremy D. Frey, The National Law Journal

October 3, 2016

Foreign nations are now open to civil lawsuits by U.S. nationals injured in terrorist attacks anywhere in the world under new amendments to an existing law.

At this moment, it remains to be seen whether these amendments will promote the justice so earnestly sought by terror victims or only produce discord in U.S. international relations.

The Justice Against Sponsors of Terrorism Act (JASTA) is now U.S. law after surviving a veto by President Barack Obama on Sept. 23. The law amends the Antiterrorism Act of 1990 (ATA) (18 U.S.C. 2331, et seq.), and promises to usher in a new era of civil lawsuits against foreign governments by U.S. victims for defined acts of "international or domestic terrorism."

## TWO IMPORTANT CHANGES

JASTA makes two important changes to the ATA. First, it makes clear that under the ATA's treble damages remedy, there can now be civil liability for those who aid and abet an act of terrorism, as well as those who conspire to do so.

Previously, the ATA was silent as to whether such persons had potential civil liability for their actions. The law's silence produced a split in lower federal courts over whether there was secondary liability under the ATA.

JASTA's new embrace of secondary liability applies to all defendants sued under the ATA. Businesses and financial institutions, for example, have been sued under the ATA for allegedly providing goods and services to individuals or entities somehow associated with terrorism.

The defense that the statute does not provide civil liability for persons who do not actually commit an act of terror will likely no longer be available to any organization or individual sued in an ATA case.

Second, JASTA provides that foreign governments can also be sued civilly under the ATA for acts of the foreign state, or those of any official, employee or agent for conduct within the scope of their duties.

This provision has been portrayed as being directed at Saudi Arabia in connection with allegations that some Saudi government officials supported the 9/11 attacks, a claim that has been generally denied by the Saudi government.

JASTA does not provide that individual government officials, employees or agents can be sued. JASTA also explicitly denies any cause of action against a foreign government "on the basis of an omission" or for "mere negligence."

## NO LIMITS TO LIABILITY?

In light of JASTA, we can expect that U.S. nationals and their U.S. relatives physically injured by acts of terror occurring anywhere in the world may seek recovery from a wide category of potential defendants, which now include not only businesses which can be alleged to somehow have supported terrorist organizations, but also foreign governments.

Some critics of the ATA have complained plaintiffs and their lawyers have sought to extend the ATA's civil lability beyond all recognizable constraints, and that the ATA and JASTA have no appropriate limiting conditions to liability. They point out that JASTA itself applies both retroactively and to any injury occurring on or after Sept. 11, 2001.

## OBAMA AMONG JASTA'S CRITICS

One of JASTA's chief critics has been the president. In his veto message to Congress, Obama cautioned that JASTA's provisions invite retorsion by foreign governments that may establish similar causes of action in their countries against the U.S., its officials, soldiers and U.S. businesses.

However, the president isn't the only one who has voiced worry about JASTA. Several members of Congress, including U.S. Senate Majority Leader Mitch McConnell, appeared to show regret about this decision last week.

In fact, on the same day JASTA passed the Senate, 28 senators, including Sen. Dianne Feinstein and Sen. John McCain, issued a bipartisan letter expressing concern for "potential unintended consequences that may result [from JASTA] for the national security and foreign policy of the United States."

The authors seemed to leave open the possibility of re-visiting JASTA to "appropriately mitigate" the law if necessary. According to some news reports, the possibility for reconsideration of JASTA may be substantial indeed.

JASTA is something new. Whether it will provide U.S. terror victims a pathway to justice is at best an open question.

Whatever the outcome, for now new civil lawsuits across the nation seem likely against any number of foreign governments, as well as U.S. and foreign businesses. When Saudi Arabia or Israel, for example, is sued in a U.S. court for allegedly supporting or committing an act of terrorism against a U.S. national, it is wholly unclear what will the outcome will be.

## COOPERATION NOT LIKELY

It is difficult to imagine such a sovereign member of the family of nations submitting to any of this, including being called to appear before a U.S. judge, participating in discovery demanded by U.S. plaintiffs, or acceding to the judgment of a handful of U.S. jurors.

If a foreign nation's U.S. assets were to be seized by order of a federal judge to satisfy such a court judgment, there seems little reason not to expect them to simply do the same to the U.S.

These are perhaps among the reasons that the White House press secretary is reported to have said on Sept. 28 that JASTA is the "single most embarrassing thing the Senate has done" in two decades. That might be over the top. Regardless, here we go.

*Jeremy D. Frey is a partner in the white-collar litigation and investigations practice group of Pepper Hamilton, resident in the firm's Philadelphia and Princeton, New Jersey, offices.*

Copyright 2016. ALM Media Properties, LLC. All rights reserved.