IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------

CHARLOTTE FREEMAN, et al.,

                            Plaintiffs,

                   v.

HSBC HOLDINGS PLC, et al.,

                         Defendants.

----------------------------------------------------------

X
:
:
:
:
:
:
:
:
:
:
:
X

Case No. 14-cv-6601 (DLI)(CLP)

Oral Argument Requested

Served and Filed : November 10, 2016

---

## REPLY MEMORANDUM OF LAW OF DEFENDANT BANK SADERAT PLC IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

---

Jeremy D. Frey
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel:  (212) 808-2700

Attorneys for Defendant Bank Saderat PLC

On the Brief:

Jeremy D. Frey
Adam B. Michaels
Megan L. Traversari
Matthew D. Foster

Dated:  November 10, 2016

## TABLE OF CONTENTS

Page

I.     SUMMARY ........................................................................................................... 1

II.    ACT OF WAR EXCLUSION BARS PLAINTIFFS' CLAIMS ........................................ 2
       A.     Act of War is Jurisdictional and Not an Affirmative Defense or Element ............. 2
       B.     Complaint Establishes AOW's Applicability to Claimed Injuries ........................ 3

III.   NO PERSONAL JURISDICTION OVER BSPLC .................................................... 9
       A.     BSPLC is Not Subject to Long-Arm Jurisdiction Under CPLR § 302.................. 9
              1.     CPLR § 302(a)(1) – Transaction of Business in New York ...................... 9
              2.     CPLR § 302(a)(2) – Tortious Act in New York ..................................... 10
       B.     No Personal Jurisdiction under Rule 4(k)(2) ...................................... 11

IV.    PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED CAUSATION ...................... 13

V.     NO ADEQUATE ALLEGATION OF SCIENTER ......................................... 15

VI.    CONCLUSION ............................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Ahmad v. Christian Friends of Israeli Communities et al.*, 2014 U.S. Dist. LEXIS 62053
(S.D.N.Y. May 5, 2014)..................................................................................... passim

*Bell Atlantic Corp. v. Twombly*, 550 US 544 (2007)...............................................2, 15

*Biton v. Palestinian Interim Self-Government Auth.*, 510 F. Supp. 2d 144 (D.D.C. 2007).........6, 9

*Gill v. Arab Bank, PLC,* 891 F. Supp. 2d 335 (E.D.N.Y. 2012)....................................5

*Gill v. Arab Bank, PLC,* 893 F. Supp. 2d 474 (E.D.N.Y. 2012)....................................5

*Gucci America, Inc., v. Weixing Li,* 135 F. Supp. 3d 87, 98 (S.D.N.Y. 2015) ..............12

*Kaplan v. Central Bank of Islamic Republic of Iran*, 961 F. Supp. 2d 185
(D.D.C. 2013) ...................................................................................................... passim

*Estate of Klieman v. Palestinian Authority*, 424 F. Supp. 2d 153 (D.D.C. 2006) ..........7

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL,* 732 F.3d 161 (2d Cir. 2013)..............1, 9, 11

*Linde v. Arab Bank, PLC*, 944 F. Supp. 2d 215 (E.D.N.Y. 2013)................................13

*Marx v. General Revenue Corp*, No. 11-1175, 2013 U.S. LEXIS 1859 (Feb. 3, 2013).................3

*Morris v. Khadr*, 415 F. Supp. 2d 1323 (D. Utah 2006)........................................6, 8

*O'Neill v. Al-Rajhi Bank*, 714 F.3d 118 (2d Cir. 2013) ........................................1, 14

*Rothstein v. UBS AG*, 647 F. Supp. 2d 292 (S.D.N.Y 2009) ................................. passim

*Sokolow v. Palestine Liberation Organization*, 60 F. Supp. 3d 509 (S.D.N.Y. 2014) ..............6, 9

*Strauss v. Credit Lyonnais, S.A.*, 925 F. Supp. 2d 414 (E.D.N.Y. 2013) ................11, 15

*Stutts v. De Dietrich Group*, 465 F. Supp. 2d 156 (E.D.N.Y. 2006) ................7, 8, 9, 14

*United States v. Klein*, 80 U.S. 128, 145-48 (1871).........................................12

*United States v. Lindh*, 212 F. Supp. 2d 541 (E.D. Va. 2002).........................................5

*Weiss v. National Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014) .................2, 11

*Yates v. United States*, No. 13-7451, 2015 U.S. LEXIS 1503 (Feb. 25, 2015) .............3

**STATUTES**

18 U.S.C. §§ 2331 .................................................................................................2, 5, 7

28 U.S.C. § 1603 .........................................................................................................4

28 U.S.C. § 1605A ..................................................................................................4, 5

42 U.S.C. § 9607(b) ....................................................................................................2

C.P.L.R. §302 ...................................................................................................9, 10, 11

Justice Against Sponsors of Terrorism Act § 2(a) Public Law No: 114-222 ...............12

Justice Against Sponsors of Terrorism Act § 2(a)(6) Public Law No: 114-222...........12

Justice Against Sponsors of Terrorism Act § 2(a)(7) Public Law No: 114-222...........12

Justice Against Sponsors of Terrorism Act § 3(a) Public Law No: 114-222 ...............12

**OTHER**

136 Cong. Rec. S4593 (April 19, 1990 ........................................................................4

**RULES**

Fed. R. Civ. P. 4(k)(2)..........................................................................................11, 12

Fed. R. Civ. P. 12(b)(1)............................................................................................2, 3

Fed. R. Civ. P. 12(b)(6)............................................................................................2, 3

I.       SUMMARY

Plaintiffs seek to interpret the ATA's civil cause of action without respect for the limiting

principles that sensibly confine it.   In arguing that the act of war exclusion (AOW) does not bar

the claims of plaintiff servicemen and military contractors, they argue for liability beyond the

express bounds of the civil cause of action.   Virtually the same is true of plaintiffs' cramped

readings of *Rothstein*, *O'Neill* and *Ahmad* on causation that likewise fail to recognize proper

limitations on the ATA's civil cause of action.   *Rothstein, O'Neill* and *Ahmad* deny that the

SAC's allegations of indirect dealings by banks are sufficient under the ATA because otherwise

tort liability potentially reaches any person in the world having ordinary business with IRI.   The

civil cause of action in the ATA is not the same as the related criminal ones, and is more limited

in crucial ways plaintiffs try to ignore.   Four iterations of those limitations are found in the AOW

exclusion, the proximate cause requirement, the damages element and the civil jurisdictional

nexus requirement, all of which confine only the civil cause of action.

That the indirect support alleged in *Freeman* is insufficient under the ATA for proximate

cause is also true of personal jurisdiction over BSPLC.   Allegations of indirect dealings by

BSPLC with foreign correspondent banks are insufficient for long arm jurisdiction over BSPLC

in the absence of any correspondent account in the U.S., which was the basis for jurisdiction in

*Licci*.   Further, plaintiffs have not alleged a sufficient nexus between any supposed indirect

forum contact and any alleged indirect transfers by BSPLC to claimed "Hezbollah fronts," much

less to Hezbollah.   None of the DPAs support such relatedness.   There is no sound basis for

jurisdictional discovery.   The rule of *Rothstein, O'Neill* and *Ahmad* against ATA liability for

indirect dealings as alleged here is additionally consistent with the ATA's scienter requirements,

which must be pled with specificity.   Allegations of indirect support, such as providing financial

services to IRI or a corporate parent, supply no adequate basis for scienter, particularly since the

alleged "Hezbollah fronts" at issue are neither named nor alleged to be specially designated at

the time as in *Weiss v. National Westminster Bank PLC*, 768 F.3d 202 (2d Cir. 2014).

Remoteness matters in the jurisprudence of the ATA.  Accordingly, defendants' motions to

dismiss the complaint, in which BSPLC joins to the extent applicable (including as to personal

jurisdiction), should be granted.[1]

## II.     ACT OF WAR EXCLUSION BARS PLAINTIFFS' CLAIMS

### A.     Act of War is Jurisdictional and Not an Affirmative Defense or Element

Plaintiffs are wrong that AOW is a "defense."  Congress knew well how to designate "act

of war" as a defense when it wanted to.  *See* 42 U.S.C. § 9607(b) (CERCLA's "act of war"

designated a defense in law's text).  Adequately pleading that the AOW exclusion is not

triggered is plaintiffs' burden under both Rules 12(b)(1) and 12(b)(6).  Under Rule 12(b)(1), it is

by preponderance, and under Rule 12(b)(6) it is the *Twombly* standard.  They have failed under

both.  The conclusory allegations in ¶¶ 330-336 of the SAC are inadequate.

That AOW is jurisdictional is supported by its improbability as an element. The ATA's

civil cause of action is contained in § 2333(a) and its terms are supplemented by the definitions

of "international terrorism," "domestic terrorism," "person," and "national of the United States"

in § 2331.  § 2333(a) nowhere refers to the AOW, which is found separately in § 2336.  If AOW

were an element, it would have been presented as such in the ATA's  text.

An iteration of this point is that AOW is not the obverse of the element requiring an act

of international terrorism as centrally argued by plaintiffs.  If it were, "act of war" would have

been presented in the § 2331(1) and (5) definitions of "terrorism."  But AOW is not.  There is no

textual basis in the ATA to support the AOW's interpretation as an element.  Plaintiffs argue

---

[1] Plaintiffs' Opposition resorts to the gambit that defendants "concede" or "do not dispute" (as if to admit) various matters (including that the claimed injuries resulted from acts of terrorism) when BSPLC does nothing of the kind, or no inference of any admission or concession is warranted.  BSPLC will not further deny such allegations of claimed concessions and admissions.  Perhaps in search of advantage, the Opposition also often obscures the distinction between BSPLC and its parent, a separate legal entity, which BSPLC is confident the Court will parse in considering the papers.

AOW is the obverse of "terrorism" based on a CERCLA case from the Second Circuit, which noted that an act may not be both an AOW and terrorism under the ATA.   Respectfully, that is dicta, not controlling and not persuasive.   To offer AOW as the obverse of terrorism is to read the definition of "terrorism" as including something it does not.   Worse for plaintiffs, this reading renders AOW statutory surplusage if no act of terrorism can be an AOW.   That cannot be.   "The canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."[2]   Plaintiffs critically misinterpret the role of AOW in the text of the ATA in their effort to expand liability beyond the limitations of the statute.   In any event, under either Rule 12(b)(1) or 12(b)(6) plaintiffs have failed in their burden, just as in *Kaplan v. Central Bank of IRI*, 961 F. Supp. 2d 185.

> B.     Complaint Establishes AOW's Applicability to Claimed Injuries

In arguing for their interpretation of the AOW, plaintiffs seek to abstract plaintiffs' injuries from the context in which they occurred.   They argue that AOW turns on the status of the alleged tortfeasors as terrorists, and not the capacity of the plaintiffs or tortfeasors at the time. Not so.   Again, the answer is in the text of the ATA, which defines "acts of war" as those occurring in the course of declared wars and armed conflicts.   The capacities of combatants on both sides and the context in which they are found centrally inform the existence of the "war or armed conflict" for purposes of the AOW.   The complaint itself establishes the contextual applicability of the AOW.   As near as we can tell, the attacks are all alleged to have occurred by unidentified members of the various Iraqi "Special Groups" (and one alleged member of Hezbollah) upon U.S. troops (and the military Contractors[3]) in their capacities as soldiers or as part of U.S. military operations in Iraq.   The SAC itself describes the Special Groups and

---

[2] *Marx v. General Revenue Corp*, No. 11-1175, 2013 U.S. LEXIS 1859, at *28 (Feb. 3, 2013); *Yates v. United States*, No. 13-7451, 2015 U.S. LEXIS 1503, at *24 (Feb. 25, 2015).

[3] The complaint provides no detail about the circumstances of the injuries of the Journalist in Iraq, which is plaintiffs' burden.

Hezbollah variously as "militia," a "military wing," a " major political organization," Iranian "proxies" and "entities," and even  as an "army" engaged in "armed confrontation[s] against U.S. led forces in Iraq."  SAC, §§ 282-329; BSPLC Memorandum in Support at 8, fn 18. The SAC establishes that the attacks involved military forces in the course of armed conflict or war.

Plaintiffs argue that its designated "conspirators" are terrorists, SDNs, FTOs, and criminals, whose acts are claimed to be ineligible for the AOW.   But there is nothing in the ATA's text that would have the AOW apply based on status or designation.  The AOW is not about nomenclature.  By its terms, it is about denying federal jurisdiction over tort claims for injuries occurring in broadly-defined armed conflicts, regardless of whether the result of a declared war, otherwise between governments or those between military forces of "any origin." The exclusion applies to deny jurisdiction regardless of whether the injured are soldiers in the line of duty or civilians collaterally hurt "in the course of" such hostilities.  There is even direct legislative history that the ATA was designed to address "acts directed at a civilian population not directed against military personnel or installations."[4]  Additionally, the ATA must be read with the FSIA, 28 U.S.C. § 1605A. The ATA contrasts starkly with the FSIA.  FSIA makes clear that a private cause of action exists for U.S. servicemen for designated acts of terrorism, but only against a "foreign state" as determined at the time of the filing of the action.  See 28 U.S.C. §§ 1603, 1605A(c).  The ATA, with the AOW, does not, and there is no basis in the text for its inclusion.  Plaintiffs argue that U.S. servicemen are still U.S. nationals entitled to sue under the ATA.  That argument adds nothing to the issue at hand.  The AOW denies jurisdiction over their tort claims for combat injuries and claims of civilians when the AOW otherwise applies.

As to whether the Special Groups can be "military forces" for the AOW, plaintiffs argue that the question is whether the actions are those of terrorists or of "recognized governments,"

---

[4] 136 Cong. Rec. S4593 (April 19, 1990) (statement of Sen. Grassley, co-sponsor of the ATA).

and whether the Special Groups comported themselves in accordance with the laws of war. The ATA's definition answers this too, and quite clearly. §2331(4)(C) states that the forces at issue need not be governmental, but can be forces "of any origin."  With respect to "military" then, the requirement is that of an organized, armed force of any origin, and not, for example, an armed mob, a small group or a single actor.  As noted, the SAC makes large claims that the violence here is the result of state-sponsored organization.[5]

Plaintiffs and the Court in *Gill* both consider "substantial conformance with the laws of war" as incorporated in the notion of "military,"[6] which asks more than the term might bear. This is because ATA's text does not incorporate the laws of war in the AOW definition. Congress did just that, however, when addressing another AOW provision in the criminal statute of 18 U.S.C. § 2332f(d).  That section explicitly incorporates the "law of war."  So does the FSIA, 28 U.S.C. § 1605A(h)(7) (incorporating extrajudicial killing defined under international law).  That Congress did not do so in the civil ATA through the AOW is compelling since the text, not purposivism, governs its application. *Kaplan v. Central Bank of Islamic Republic of Iran*, 961 F. Supp. 2d 185, 200 (D.D.C. 2013) (FSIA incorporates laws of war but not ATA). Plaintiffs argue that AOW is unavailable unless the requirements of the doctrine of combatant immunity are also met, including open carrying of arms, combatant distinction and the customs of the  laws of war.  See *Lindh*, 212 F. Supp. 2d at 556.  Again, this central argument of plaintiffs repeats their persistent error of conflating the definition of terrorism in § 2331(1) with AOW in § 2331(4).  An act of terrorism requires an act that would violate "criminal laws of the United

---

[5] Plaintiffs' Opposition, fn 81 is grossly inaccurate to the extent it says the cited cases all hold that designation can determine whether combatants within (C). While there is some support for this proposition in the legislative history, it is at odds with the text of the ATA and that history is, in any event,  not "coherent." *Gill,* 891 F. Supp. 2d 335, 374 (E.D.N.Y. 2012).

[6] "[T]he conduct of organizations not qualifying as 'nations' …will, in appropriate cases of armed operations primarily directed against a nation's regular armed forces, not serve as a basis for recovery" under the ATA. *Gill,* 893 F. Supp. 2d 474, 516 (E.D.N.Y. 2012).

States or any State" if committed here.  While it could be argued that combatant immunity is relevant to this element in §2331(1) (since it is a criminal law defense, *id*. at 553), it is not with respect to AOW.  Plaintiffs' claims in this regard are yet another iteration of their mistaken insistence that the AOW is surplusage and redundant in the ATA.  This is yet another demonstration of how plaintiffs seek to apply the ATA without respect for its text or limiting principles, and fail to appreciate that the ATA's civil cause of action is importantly more confined  than related criminal provisions.  Plaintiffs also offer that defendants claim immunity under AOW.  Immunity is typically a criminal law notion.  The AOW is a subject matter jurisdictional limitation of the claimed civil tort and has nothing to do with immunity.  Regardless, the attacks here on soldiers in military capacities (and military support personnel) cannot form the basis for a claim that the Special Groups were not acting in substantial conformance with the laws of war where related and allegedly targeted civilians injuries are not those asserted.  *See Kaplan*, 961 F. Supp. 2d 185, 203-04 (Hezbollah within ATA when acting as an armed force in combat with Israel).

Plaintiffs argue there was no armed conflict in Iraq at the time at issue.  For them, major combat operations were concluded in 2003 and the AUMF was about a war with Iraq, not IRI or the Special Forces.  But this, as noted, simply tries to rewrite the AOW definition, which requires contextual consideration of the hostilities at issue. *See Morris,* 415 F. Supp. 2d 1323; *Sokolow,* 60 F. Supp. 3d 509 (consideration if attack in combat zone and capacity of injured); *Biton*, 412 F. Supp. 2d 1 (same).  The conclusion of major combat operations in 2003 in no way reflects on the existence of war or armed conflict existing in Iraq for no less than the succeeding 12 years.[7]  The end of major combat operations has nothing to do with AOW.  AOW by its terms includes not

---

[7] The initial phase of hostilities in Iraq, Operation Iraqi Freedom (renamed Operation New Dawn in 2010) did not formally end until December 18, 2011 with the withdrawal of  U.S. combat troops. "Last U.S. Troops Cross Iraqi Border into Kuwait," *The Washington Post*, 12-19-2011.

just wars, but the broader term of "armed conflicts."  And there is no avoiding that the AUMF is
and has provided the legal authority for the invasion of Iraq and the continued presence of U.S.
troops, which informs the lens through which these allegations are assessed.  Further, the SAC
advances that the Shiite militia Special Groups were proxies for armed combat promoted by the
IRI.  SAC ¶¶ 282-329.  Plaintiffs' claim that there was no war or armed conflict cannot be
squared with their assertion that the laws of war apply.  Plaintiffs' argument that the alleged
hostilities in Iraq, which have required hundreds of thousands of U.S. troops in-country under an
AUMF for more than a decade, is not a "declared war,"[8] a conflict between nations, or an "armed
conflict between military forces of any origin" is difficult to seriously credit.

Plaintiffs assert that *Kaplan*, *supra*, requires a short war under AOW, and Iraq's is a long
one with sporadic fighting.  Not so as to *Kaplan*, though the conflict in that case was much
shorter than Iraq's, to be sure.  What *Kaplan* does require is that the relevant inquiry for purposes
of AOW is the context in which the subject injuries occur.  *Kaplan* denies, as we have argued,
that AOW turns on status or designation of the combatants as terrorists.  Instead, *Kaplan*
supports the principle that AOW depends on the capacities of all the belligerents at the time,
while seeking to preserve the ATA for claims essentially of targeted civilians not collaterally
injured in the course of war or armed conflict.

Plaintiffs claim under *Estate of Klieman,* 424 F. Supp. 2d 153, that the attacks at issue
were not "in the course" of a war or armed conflict because they were war crimes.  But the
ATA's AOW does not incorporate the international laws of war for these purposes, and this
Court is not a war crimes tribunal.  The murky and complex issues of war crimes, international
laws of war and related combatant immunity asserted by plaintiffs might arguably pertain to

---

[8] Plaintiff start their AOW argument  asserting that there was no declared war since there was no
Congressional declaration of  war.  *Stutts v. De Dietrich Group*, 2006 WL 18607060 *5 (E.D.N.Y. 2006), found the
1991 Gulf War, authorized under an AUMF, to be a "declared war or armed conflict."

whether the acts at issue meet the definition of § 2331(1)(A) as "crimes" under other U.S. law. These things do not, however, govern or determine application of the independently defined AOW exclusion (which is not an element or an affirmative defense) that restricts ATA's civil tort subject matter jurisdiction. Despite some elaborate arguments to the contrary, the "in the course of" requirement of the AOW means exactly what it says:  it is a nexus requirement. To illustrate, domestic violence might occur between spouses while a declared war or armed conflict was underway, but it would presumably not be in the course of those armed hostilities without an adequate connection. There can be no serious argument that the "in the course of" requirement is not met by the plaintiffs' own allegations of line-of-duty injuries from combat with Iraqi militia, as proxies for IRI, against occupying U.S. troops in Iraq using arms, EFPs, IEDs, IRAMs, RPGs and mortars.

There are only two cases that directly address the issue of whether soldiers can sue under the ATA (notwithstanding the AOW) for injuries occurring in the context of military service overseas. Those are the default case of *Morris* and *Stutts*. In *Morris*, soldiers were attacked by al Qaeda (AQ) members in Afghanistan. The Court flatly held that AQ was not a "military force" because it was not a nation. 415 F. Supp. 2d at 1334. *Morris* therefore has little persuasive value for two reasons. First, the text of the AOW in § 2231(4)(B) and (C) specifically denies that "military forces of any origin" are required to be forces of a nation. Second, this was a default case and not the result of adversarial proceedings. This is the reason that *Morris*' ruling was explicitly precatory in refusing "to be [AQ's] advocate and force the plaintiffs to prove that [AQ's] members are not 'military forces of any origin.'" *Id. Morris* is not of much use.

*Stutts,* 2006 WL 18607060 *5*, by contrast, was not a default case, but tested in adversarial proceedings. In *Stutts*, the claims of soldiers injured by chemical weapons allegedly financed by bank defendants were denied under the AOW. Even though some of the injuries occurred shortly after the end of the Gulf War I (authorized by an AUMF), the claims of the

soldiers were barred under AOW as occurring in the course of a "declared war or armed conflict." *Stutts*, *Kaplan*, *Sokolow* and *Biton* support BSPLC's motion to dismiss the SAC under AOW as directed by the text of the ATA.

III.     NO PERSONAL JURISDICTION OVER BSPLC

A.       BSPLC is Not Subject to Long-Arm Jurisdiction Under CPLR § 302

1.       CPLR § 302(a)(1) – Transaction of Business in New York

Plaintiffs fall short of meeting their burden that BSPLC transacted business in New York and that this New York activity gives rise to their claims.  This case cannot be equated with *Licci*, where the Court of Appeals held that allegations of a foreign bank's repeated use of its own correspondent account in New York sufficiently pled a basis for personal jurisdiction. BSPLC's alleged connection to the forum is far more attenuated and remote than that of Lebanese Canadian Bank in *Licci*.  *Licci* involved both direct forum contact through defendant's own correspondent account in New York, and use of that account to directly provide funds from the U.S. to a claimed Hezbollah financial arm.  *Licci*, 732 F.3d at 165.  *Freeman* involves no allegation of direct forum contact by BSPLC in maintaining a correspondent account, but only alleges correspondent accounts with non-U.S. banks outside of the U.S., which, in turn, had correspondent banking relations in New York.  Allegations that unidentified U.S. dollar transactions initiated by unidentified BSPLC customers were processed by foreign correspondents banks that caused them to pass through New York does not satisfy plaintiffs' burden.  Plaintiffs assertion that non-U.S. banks served as BSPLC's agents in New York is insufficient to establish jurisdiction.

Plaintiffs claim the Lloyd's DPA as illustrative of BSPLC's directing supposed agents in New York, but the DPA specifies conduct of Lloyds, not BSPLC.  To the extent BSPLC is referenced, it is peripheral and mentioned only collectively along with other Iranian banks, their branches and subsidiaries.  The only factual assertion in the DPA specific to BSPLC is irrelevant

-9-

for this matter, and notes that BSPLC maintained an unspecified correspondent account at Lloyds somewhere else.  Even if plaintiffs could glean some New York business activity on behalf of BSPLC from the Lloyds DPA (which would require a showing that Lloyds' U.S. correspondent bank is not only Lloyd's agent, but the agent of Lloyds' customer BSPLC), they must show that their claims arise from that activity.  Lloyds is not a party to this action and its conduct and dealings with BSPLC are not at issue here.  Importantly, the Lloyd's DPA makes no reference that any of the described conduct had any connection with any funds transfers to Hezbollah fronts, Hezbollah, Lebanon, BSI or terrorism at all.  The same is true of all the DPAs cited by plaintiffs.  And to the extent the Lloyds DPA can be construed to describe a conspiracy (which is not accepted), it is a conspiracy to evade U.S. banking regulations and not a conspiracy to support terrorism.  The DPAs do not support a plausible nexus, as they does not demonstrate any element of plaintiffs' claims arising from BSPLC's alleged indirect New York contacts and the torts at issue. Of course, it is no accident that the same is true of all the DPAs; no nexus is shown by any of them.  Indeed, the DPAs support BSPLC's position on personal jurisdiction, not plaintiffs', as the conduct the DPAs describe has no connection to the plaintiffs' claims in this case, all of which concern terrorism and Hezbollah.[9]

> 2.      CPLR § 302(a)(2) – Tortious Act in New York

Even if the Court were to accept that plaintiffs may impute the New York presence of the other co-defendants to BSPLC on an agency theory, plaintiffs have not made a *prima facie* showing of conspiracy.  Allegations that BSPLC maintained accounts at some of the co-defendant banks and engaged in various LOC transactions are not "specific facts warranting the inference that the defendant was a member of the conspiracy" and cannot serve as the basis for personal jurisdiction. Certainly the United States never made a finding of conspiracy.  Moreover,

---

[9] Such is also the case with the allegations concerning LOC transactions, none of which connect to terrorist activity.

plaintiffs fail to show any tortious act in New York.  Under New York law, the locus of the tort is where the last event necessary to make the actor liable occurred, and is generally the place of injury.  The tortious activity plaintiffs allege is the funding of overseas terrorists and injury to defendant servicemen during military duty in Iraq.  Plaintiffs protest that the rule for determining the locus of a tort arises in choice of law jurisprudence, yet offer no rationale why the rule's provenance renders it inapplicable here.

      B.      No Personal Jurisdiction under Rule 4(k)(2)

      Just as plaintiffs do not meet their burden under CPLR 302(a)(1) to demonstrate BSPLC's alleged transaction of business in New York had a substantial connection to the claims in this lawsuit, plaintiffs also have failed to satisfy their burden under Rule 4(k)(2) that exercise of personal jurisdiction based on BSPLC's alleged contacts with the U.S. satisfies due process. Plaintiffs rely on *Licci*, which (unlike *Freeman*) involved a defendant who did business in the U.S. both by maintaining and by using correspondent accounts here.[10]  Also, *Licci* involved defendant's use of that correspondent account to *directly* provide funds from the U.S. to a claimed Hezbollah financial arm.  *Licci*, 732 F.3d at 165.  *Freeman* involves no allegations of direct forum contact by BSPLC in maintaining its own correspondent account, any related direct use of that account, or direct provision of funds by BSPLC to Hezbollah or a Hezbollah "front" via that account.  Moreover, plaintiffs do not identify any BSPLC account holder, BSPLC account, BSPLC correspondent account, or actual money transfer involving BSPLC and an account associated with terrorism routed through banks in New York.[11]  Based on such

---

[10] *See also Strauss v. Credit Lyonnais, S.A.*, 2016 U.S. Dist. LEXIS 45030 (E.D.N.Y. Mar. 31, 2016) (defendant had New York branch and used U.S. accounts for direct transfers); *Weiss v. Nat'l Westminster Bank*, 2016 U.S. Dist. LEXIS 45029  (E.D.N.Y. Mar. 31, 2016) (same).

[11] Plaintiffs ask the court to presume that any and every dollar denominated transaction involving BSPLC must have passed through New York, which is an unsupportable presumption.

allegations, there is no adequate relatedness of the allegations of forum contact and the cause of action for purposes of personal jurisdiction.

This is supported by the fact that the due process analysis for personal jurisdiction purposes is a sliding scale test. "When an entity has only limited contacts with a forum, relatedness requires that the plaintiff's injury was proximately caused by those contacts." *Gucci America, Inc., v. Weixing Li,* 135 F. Supp. 3d 87, 98 (S.D.N.Y. 2015). But plaintiffs have not and cannot plausibly allege proximate causation for their injuries in this case, much less causation based on BSPLC's alleged indirect forum contacts. (See Section III *infra* and *Rothstein, Al-Rajhi Bank,* and *Ahmad).*

Plaintiffs cite to the "Findings" section of newly-enacted Justice Against Sponsors of Terrorism Act (JASTA) (§ 2(a)), which prefaces the actual JASTA amendments and indicates that those who materially support terrorism should "anticipate being brought to court in the United States." JASTA, § 2(a)(6). Consistent with JASTA § 3(a), § 2(a)(7) goes on to state that the U.S. has a vital interest in providing such full access to the courts for "persons and entities injured as a result of terrorist attacks *committed within the United States*" (emphasis added). Plaintiffs are not persons injured in any terrorist attack committed within the United States. In any event, Congressional findings are not part of the ATA's text. Even more important, the subject issue is a matter of constitutional due process. In accordance with separation of powers principles, the personal jurisdiction question presented here is constitutionally assigned to Article III courts and not the Congress. *See United States v. Klein*, 80 U.S. 128, 145-48 (1871). JASTA adds nothing to the analysis of personal jurisdiction under Fed. R. Civ. P. 4(k)(2), which extends the issue to constitutional limits in the first instance. Fed. R. Civ. P. 4(k)(2) (providing for jurisdiction if "consistent with the U.S. Constitution and laws").

IV.     PLAINTIFFS HAVE NOT ADEQUATELY ALLEGED CAUSATION

In three rulings, the Second Circuit has already held that the plaintiffs' remote chain of causation offered here is too attenuated to plausibly support causation.[12]  Plaintiffs' claim that the provision of financial services to IRI (a nation and not an FTO) through dollar denominated U-turn transactions materially supported terrorism since IRI in turn allegedly supported Hezbollah and the Special Groups, members of which in turn supported, promoted or committed acts resulting in plaintiffs' injuries.  This conspiracy argument simply proves too much and through a huge chain of inference seeks to expand the cause of action beyond proper bounds.  For plaintiffs, anyone in the world engaging in dollar-denominated transactions of sufficient size in conducting ordinary business with IRI are likewise terrorists and limitlessly liable under the ATA for post-Hussein combat injuries to injured U.S. soldiers in Iraq.

Plaintiffs cannot refute that the financial services allegedly supplied to IRI and "Hezbollah fronts" are too attenuated to provide the necessary causation required by three controlling Second Circuit cases, *Rothstein*, *Al-Rajhi Bank,* and *Ahmad.*  Plaintiffs do not even attempt to distinguish these cases.  Plaintiffs' reliance on *Linde*, a post-trial lower court ruling now on appeal, for the proposition that but-for causation is not required is hardly persuasive.[13]  These cases could not be clearer, and this causation limitation is needed to confine the ATA's civil liability within proper bounds.

As to BSPLC, plaintiffs rely on a U.S. press release which alleges:

> … from 2001 to 2006, Bank Saderat [BSI] transferred $50 million
> from the Central Bank of Iran through its subsidiary in London

---

[12] BSPLC incorporates and adopts, as applicable, the arguments of all the co-defendants.

[13] Regardless of whether "but-for" causation is required, proximate causation is absent in *Freeman*.

BSPLC] to its [BSI's] branch in Beirut for the benefit of Hizballah
(sic) fronts in Lebanon ....[14]

This allegation of indirect financial services is inadequate under *O'Neill, Al Rajhi* and *Ahmad* as to BSPLC.  The "front" organizations are not named, and there is no indication that they were then designated, or that any of the funds were actually supplied to "Hezbollah fronts."  Nor is there any indication that such "fronts" supplied funds to Hezbollah, when, how much, or that such funds in Lebanon could plausibly be the but-for and proximate cause of plaintiffs' injuries in Iraq during the Iraqi War between 2004 and 2011.  There is no plausible allegation that but-for BSPLC's alleged conduct, the injuries would not have occurred.  Remoteness matters in the jurisprudence of the ATA as to personal jurisdiction, proximate causation and scienter.[15]

Plaintiffs complain that this analysis fails to account for its conspiracy theory.  But *Rothstein* and *Al-Rajhi Bank* involved the same kinds of secondary liability claims (the complaints pled conspiracy in *Rothstein* and aiding and abetting in *Al-Rajhi*), with those plaintiffs also asserting that their injuries were foreseeable products of defendants' provision of financial services. Plaintiffs' claimed conspiracy theory adds nothing to meet the requirement of plausibly alleging proximate cause between the alleged financial services at issue and the injuries of plaintiffs during the Iraqi War.  The SAC's allegations of letters of credit involving an entity that was not designated, also add nothing.  Similar allegations against banks providing letters of credit have failed to sufficiently allege proximate cause.  *See Stutts*, 2006 U.S. Dist. LEXIS 47638, **4-5.  The indirectness shown is fatal to plaintiffs' claim that there is adequate allegation of ATA causation.

---

[14] This is precisely the same allegation already employed in *Kaplan* to argue that BSI and BSPLC were liable for injuries in Israel arising from the Second Lebanese War.  Judge Lamberth held that plaintiffs' ATA claims were barred by AOW.  *Kaplan v. Central Bank of IRI*, 961 F. Supp. 2d 185 (D.D.C. 2013).

[15]To elide these facts, plaintiffs persistently conflate BSPLC with others (including BSI, not even a party to the case) and try to eradicate the distinction between alleged Hezbollah "fronts" and Hezbollah.

V.      NO ADEQUATE ALLEGATION OF SCIENTER

Plaintiffs' claim they have sufficiently alleged scienter.  Opp. at 37-38.  They state they "almost exclusively rely on U.S. government findings."  *Id*.  However plaintiffs' cite to government statements regarding BSI and not exclusively to BSPLC.  In fact, the SAC does nothing more than provide conclusory allegations of BSPLC's alleged knowledge.  Plaintiffs must plausibly plead BSPLC provided material support, knowingly or with deliberate indifference, to a foreign terrorist organization, or knowing or intending that such support would be used to carry out a specified terrorist act.  *See, e.g., Strauss,* 925 F. Supp. 2d 414.  Allegations of inferred knowledge based on claims of indirect support are inadequate.  Plaintiffs' point to SAC ¶¶ 365 and 518.  However, those paragraphs refer to BSI, not BSPLC, and say nothing about BSPLC's state of mind.  Further, plaintiffs claim that BSPLC's SDN status implies scienter.  But this is a conjectural claim based only on plaintiffs' assertion and not supported anywhere in the Opposition.

Plaintiffs' attenuated claims lacking in detail and specificity satisfy neither *Twombly* nor the ATA's scienter requirement.  *Ahmad,* 2014 U.S. LEXIS 62053 at *6 (allegation that defendants supported hundreds of terrorist attacks against Palestinians were too attenuated and conclusory to support scienter*); see also Rothstein,* 708 F.3d at 95 (conclusory to allege that UBS knew funds provided to IRI would be used to cause and facilitate terrorist attacks by IRI-sponsored terrorist organizations).  Plaintiffs have not adequately pled scienter under the requirements of *Twombly* or the ATA.

VI.     CONCLUSION

BSPLC's motion to dismiss the SAC should be granted.

/s/ Jeremy D. Frey
Jeremy D. Frey
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel:  (212) 808-2700

Attorneys for Defendant Bank Saderat PLC