UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

CHARLOTTE FREEMAN, *et al.*,

                Plaintiffs,

      -against-

HSBC HOLDINGS PLC, *et al.*,

                Defendants.

14-CV-6601 (DLI/CLP)

# DEFENDANTS' JOINT REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS

November 10, 2016

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I.   THE COMPLAINT FAILS PLAUSIBLY TO ALLEGE PROXIMATE CAUSE ............ 3

    A.   *Rothstein* and Its Progeny Foreclose Plaintiffs' Causal Theory Here..................... 3

    B.   The Proximate Cause Requirement of *Rothstein* Still Controls. ........................... 5

II.  THE LIMITED CIVIL CONSPIRACY LIABILITY CREATED BY 18 U.S.C.
    § 2333(d) DOES NOT APPLY TO THIS CASE ............................................................ 8

III. THERE IS NO CIVIL CONSPIRACY LIABILITY UNDER 18 U.S.C. § 2333
    BEYOND THAT NEWLY ENACTED BY JASTA. .................................................... 10

IV.  THE COMPLAINT FAILS PLAUSIBLY TO PLEAD A CONSPIRACY ................... 12

V.   NON-US DEFENDANTS ARE NOT "UNITED STATES PERSON[S]" AND DID
    NOT ENGAGE IN "A FINANCIAL TRANSACTION WITH THE
    GOVERNMENT" OF IRAN UNDER SECTION 2332d ............................................... 14

CONCLUSION ......................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abecassis v. Wyatt*,
    785 F. Supp. 2d 615 (S.D. Tex. 2011)..................................................................15

*Am. Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc.*,
    42 F.3d 725 (2d Cir. 1994) .........................................................................5, 12

*Boim v. Holy Land Found. for Relief*,
    291 F.3d 1000 (7th Cir. 2002) ..................................................................15

*Boim v. Holy Land Found. for Relief*,
    549 F.3d 685 (7th Cir. 2008) .................................................................11, 12

*Gill v. Arab Bank, PLC*,
    893 F. Supp. 2d 542 (E.D.N.Y. 2012)...........................................................13

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) ...........................................................5, 6, 7, 14

*JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure, Ltd.*,
    536 U.S. 88 (2002) .............................................................................14

*Linde v. Arab Bank, PLC*,
    97 F. Supp. 3d 287 (E.D.N.Y. 2015)...............................................................7

*Linde v. Arab Bank, PLC*,
    944 F. Supp. 2d 215 (E.D.N.Y. 2013)....................................................2, 4, 11

*Lorillard v. Pons*,
    434 U.S. 575 (1978) .............................................................................5

*Mobil Oil Corp. v. Comm'r of Taxes of Vt.*,
    445 U.S. 425 (1980) ............................................................................14

*O'Neill v. Al Rajhi Bank (In re Terrorist Attacks of Sept. 11, 2001)*,
    714 F.3d 118 (2d Cir. 2013) ..................................................................1, 4, 5

*Rothstein v. UBS AG*,
    708 F.3d 82 (2d Cir. 2013) ...............................................................passim

*Samuels v. District of Columbia*,
    650 F. Supp. 482 (D.D.C. 1986) .................................................................6

*United States v. Chalmers*,
474 F. Supp. 2d 555 (S.D.N.Y. 2007) ...................................................................14

**Statutes & Rules**

18 U.S.C. § 2331 ...................................................................................................12

18 U.S.C. § 2332d ..................................................................................... 2, 3, 14, 15

18 U.S.C. § 2333 .............................................................................................. passim

18 U.S.C. § 2339 ................................................................................... 10, 11, 12

**Other Authorities**

Transcript of Motion Hearing, *Linde v. Arab Bank, PLC*, No. 04 Civ. 02799
(E.D.N.Y. Apr. 24, 2013) ....................................................................................11

## ABBREVIATIONS

The following abbreviations are used in this brief: "Complaint" or "SAC" for the Second Amended Complaint filed on August 17, 2016 (Dkt. No. 115); "Claims for Relief" for the seven claims asserted in the Second Amended Complaint; "Joint Memorandum" or "Jt. Mem." for the Moving Defendants' Joint Memorandum in Support of Motion to Dismiss; "Opposition" or "Opp'n" for Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Amended Complaint; "ATA" for the Anti-Terrorism Act; and "JASTA" for the Justice Against Sponsors of Terrorism Act.

## INTRODUCTION

The Complaint fails to state a claim as a matter of law under clear Second Circuit authority.  As the Moving Defendants demonstrated in their initial Joint Memorandum, *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), *O'Neill v. Al Rajhi Bank (In re Terrorist Attacks of Sept. 11, 2001)*, 714 F.3d 118 (2d Cir. 2013), and other cases in this Circuit squarely foreclose the claims asserted in the Complaint.  Plaintiffs' opposition seeks to avoid the implications of these controlling precedents by inaccurately characterizing case law from this and other circuits, blurring together numerous distinct Iranian entities purportedly involved in the alleged conspiracy, and, ultimately, resorting to ends-justify-the-means rhetoric that the Moving Defendants "must" be punished through this civil action because they are "too big to jail". Opp'n at 91.  Plaintiffs have failed three times to state a cognizable claim.  The Court should dismiss the Complaint in its entirety with prejudice.

First, the Complaint fails plausibly to allege that the Moving Defendants proximately caused Plaintiffs' injuries.  *Rothstein* and its progeny hold that under § 2333, the mere provision of banking services to Iran (or to banks that are alleged "instrumentalities" of Iran) is too remote to support the inference that the bank service provider proximately caused terrorist attacks allegedly subsequently funded by Iran.  *See infra* Section I.A; Jt. Mem. at 11-24. Neither Plaintiffs' description of their claims as "primary liability with the character of secondary liability", Opp'n at 25 (internal quotation marks and emphasis omitted), nor the enactment of JASTA, alters the applicability of *Rothstein*'s proximate cause standard.  *See infra* Section I.B.  Accordingly, the Court should dismiss the Complaint for the same reasons that the Second Circuit affirmed the dismissal of the complaints in *Rothstein* and *Al Rajhi*—it fails to

allege a plausible proximate causal connection between the Moving Defendants' provision of banking services and the terrorist acts that caused Plaintiffs' injuries.  *See* Jt. Mem. at 10-20.

Second, although § 2333(d) now permits a narrow class of civil conspiracy claims, the Complaint fails to state any such claim.  Liability under the newly enacted § 2333(d) applies only where both (1) an act of international terrorism has been "committed, planned, or authorized" by an organization that has been officially designated a foreign terrorist organization ("FTO") as of the date of the attack, and (2) the defendant conspired with the person who actually "committed" the act of international terrorism.  *See* 18 U.S.C. § 2333(d).  Here, not one of the 92 attacks alleged in the Complaint satisfies both of these two required elements.  The Complaint does not allege that a designated FTO committed, planned or authorized each of these attacks.  Nor does it allege that the Moving Defendants conspired with the persons who actually committed each of the attacks.  Thus, the Complaint does not plead a civil conspiracy claim under the plain language of § 2333(d).  *See infra* Section II.  Perhaps recognizing the dispositive limitations of JASTA's new conspiracy liability provision, Plaintiffs revert to arguing that conspiracy liability already existed under the ATA even prior to JASTA—an argument that the *Rothstein* and *Linde* courts have expressly rejected and that the very addition of § 2333(d) itself disproves.  *See Rothstein*, 708 F.3d at 97; *Linde v. Arab Bank*, *PLC*, 944 F. Supp. 2d 215, 216-17 (E.D.N.Y. 2013).  Plaintiffs' attempted end-run around those authorities through a rehashing of the so-called "chain of incorporations by reference" theory of statutory interpretation, Opp'n at 25-31—specifically rejected in *Linde*—fails as a matter of law.  *See infra* Sections III and IV.

Finally, Plaintiffs' Third and Fourth Claims for Relief should be dismissed for the independent reason that the Complaint fails plausibly to allege facts that satisfy 18 U.S.C. § 2332d.  The Moving Defendants named in the Fourth Claim are not "United States person[s]"

2

subject to § 2332d, and the Complaint fails to allege that the Moving Defendants engaged in a "transaction with the government" of Iran, as required by § 2332d.  See *infra* Section V.

**ARGUMENT**

**I.    THE COMPLAINT FAILS PLAUSIBLY TO ALLEGE PROXIMATE CAUSE.**

Under *Rothstein*, Plaintiffs must allege an actual and direct connection between the Moving Defendants' conduct and Plaintiffs' injuries to state a claim under the ATA.  708 F.3d at 91-92, 97.  The Complaint fails to plead any such connection.  Moreover, though JASTA now allows for civil conspiracy liability in certain circumstances not present here, the *Rothstein* proximate cause requirement still applies to this narrow class of claims.  Plaintiffs' assertion that JASTA imposes a new "reasonable foreseeability" standard of causation, Opp'n at 41-42, rests on a fundamental misreading of the statute, and the Complaint does not plausibly allege facts meeting that standard in any event.

**A.    *Rothstein* and Its Progeny Foreclose Plaintiffs' Causal Theory Here.**

The Second Circuit in *Rothstein* held that the "by reason of" language in § 2333(a) has "historically been interpreted [by Congress] as requiring proof of proximate cause" and that "with respect to proximate causation, the central question . . . is whether the alleged violation led directly to the plaintiff's injuries".  708 F.3d at 91-92, 95.  Thus, under *Rothstein*, to state a claim under § 2333(a), the plaintiff must allege facts that plausibly substantiate a proximate causal connection between the defendant's conduct and the act of international terrorism.  *See* Jt. Mem. at 12-17.  The Complaint alleges no such proximate causal connection, relying instead on a tenuous theory of alleged connections that simply assumes, without plausibly pleading factual allegations, causation between the Moving Defendants' conduct and the (largely unidentified) terrorist groups that attacked Plaintiffs.  *See id.* at 17-24.

3

Plaintiffs misread *Rothstein* when they suggest that "Defendants simply decline to address proximate cause in the conspiracy context". Opp'n at 41. Though *Rothstein* did not concern conspiracy liability, it analyzed the "by reason of" language in § 2333(a) in the context of an aiding-and-abetting claim—an analogous theory of secondary liability. *See* 708 F.3d at 94. It defies logic to suggest that *Rothstein*'s causation analysis applies to aiding-and-abetting claims under § 2333(a) but not to conspiracy claims under the same provision, particularly since a court in this district has held that "the Second Circuit would [likely] treat claims for civil conspiracy as akin to civil aiding and abetting claims under § 2333(a)". *Linde*, 944 F. Supp. 2d at 216.

Plaintiffs do not establish any meaningful distinction between the allegations here and the allegations rejected in *Rothstein*, and in fact there is none. In *Rothstein*, the court dismissed the complaint because it did not allege "that UBS was a participant in the terrorist attacks that injured plaintiffs", "that UBS provided money to H[e]zbollah or Hamas", "that U.S. currency UBS transferred to Iran was given to H[e]zbollah or Hamas", or "that if UBS had not transferred U.S. currency to Iran, Iran, with its billions of dollars in reserve, would not have funded the attacks in which plaintiffs were injured". 708 F.3d at 97; *see also Al Rajhi*, 714 F.3d at 124 (dismissing allegations as "insufficient for proximate causation purposes for the same reasons the allegations in *Rothstein* fell short"). Likewise, here, there is no factual allegation that the Moving Defendants participated in the alleged terrorist attacks, that they provided funds or services to *any* terrorist groups or FTOs (much less those that allegedly perpetrated the attacks), that any funds processed by the Moving Defendants were ultimately transferred to any terrorist organizations, or that the attacks would not have occurred absent the Moving Defendants' alleged provision of banking services to entities purportedly affiliated with the Iranian government. *See* Jt. Mem. at 4‑11, 17‑24. Plaintiffs thus fail to allege a proximate causal

connection between any of the Moving Defendants and the terrorist groups and acts at issue.  *See Rothstein*, 708 F.3d at 97; *Al Rajhi*, 714 F.3d at 124-25.

### B.    The Proximate Cause Requirement of *Rothstein* Still Controls.

Perhaps cognizant of their inability to meet *Rothstein*'s proximate cause standard, Plaintiffs maintain that JASTA somehow altered the ATA's explicit causation requirement in the context of conspiracy claims.  But JASTA's new conspiracy liability provision, § 2333(d)—the limited scope of which is addressed in Section II *infra*—makes no mention of proximate cause, much less any change to the "by reason of" language in § 2333(a).  *See* 18 U.S.C. § 2333(d)(2). As noted in Section I.A, *Rothstein* held that "by reason of", which has had a well-established meaning across many statutes enacted by Congress, "requir[es] proof of proximate cause".  708 F.3d at 95.  Of course, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change".  *Lorillard v. Pons*, 434 U.S. 575, 580 (1978); *Am. Cas. Co. of Reading, Pa. v. Nordic Leasing, Inc.*, 42 F.3d 725, 732 n.7 (2d Cir. 1994) ("Where sections of a statute have been amended but certain provisions have been left unchanged, we must generally assume that the legislature intended to leave the untouched provisions' original meaning intact").

Plaintiffs, however, claim that JASTA supplanted the proximate cause standard with a new "reasonable foreseeability" standard of causation because JASTA's preamble cites a case from the D.C. Circuit as providing an appropriate measure of the scope of conspiracy liability (not the separate proximate cause element).  Opp'n at 41-42.  This is a non-sequitur. The language to which Plaintiffs point in JASTA's preamble states:

> "The decision of the United States Court of Appeals for the District of Columbia in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), which has been widely recognized as the leading case regarding Federal civil aiding and abetting and conspiracy liability, including by the Supreme Court of the United States, provides the

proper legal framework for how such liability should function in the context of chapter 113B of title 18, United States Code."

JASTA § 2(a)(5).  Nothing in this preamble or in JASTA's actual operative provisions changes § 2333(a) or its "by reason of" language, or alters the ATA's proximate cause requirement.[1]

Moreover, *Halberstam* itself addresses the separate issue of the proper scope of conspiracy and aiding and abetting liability, not causation.  In *Halberstam*, the D.C. Circuit affirmed that a woman could be vicariously liable for the tortious conduct of her boyfriend under a civil conspiracy theory of liability.  *See* 705 F.2d at 487.  In so holding, the Court clarified that a civil conspiracy claim requires the following "separate elements":

> "(1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme".

*Id.* at 477-78.

The fourth element listed above—which is distinct from the third element of causation—operates as a limit on the "extent of liability" that co-conspirators may face.  *Id.* at 481.  Under *Halberstam*, a co-conspirator is only liable for overt acts done "pursuant to and in furtherance of" the conspiracy, just as an aider-and-abettor is only liable for the acts of the principal where such acts are the "natural and foreseeable consequence" of the abettor's assistance.  *Id.* at 488.  In either case, a person who assists a tortious act is only "liable for other reasonably foreseeable acts done in connection with it".  *Id.* at 484.

*Halberstam* makes clear that the "in furtherance of" element of conspiracy liability, including this foreseeability aspect, is distinct from the separate requirement of

---

[1] In any event, a statutory preamble "is merely a general statement of policy which does not mitigate and certainly does not override the specific requirements laid out in the body of the statute".  *See Samuels v. District of Columbia*, 650 F. Supp. 482, 484 (D.D.C. 1986).

causation.  Plaintiffs attempt to muddle this distinction by asserting that the Moving Defendants

"are liable for *all* acts foreseeably committed in furtherance of the conspiracy".  Opp'n at 41.

But *Halberstam* did not address the proper standard for determining whether "an injury [was]

caused by [a conspirator's] unlawful act", 705 F.2d at 477-78; *Rothstein* did, and JASTA does

not change the standard for proximate causation applicable to all civil liability claims under §

2333(a), including those based on a conspiracy theory.[2]

---

[2] Even assuming *arguendo* that JASTA *sub silentio* fundamentally changed the proximate cause standard to eliminate the directness requirement, the Complaint would still fail to state a claim.  In contrast to cases like *Linde v. Arab Bank*, 97 F. Supp. 3d 287 (E.D.N.Y. 2015), any purported connection here between the object of the alleged conspiracy and the terrorist attacks that injured Plaintiffs is far too attenuated for the attacks to have been a reasonably foreseeable result of the purported conspiracy.  The Complaint does not contain a single allegation that the Moving Defendants processed one dollar or provided any other financial services directly for any of the (mostly unnamed) terrorist groups that attacked Plaintiffs.  *See* Jt. Mem. at 8-11.  Moreover, Plaintiffs do not plausibly allege that the attacks that caused Plaintiffs' injuries actually were a consequence—reasonably foreseeable or otherwise—of the alleged conspiracy, as they fail entirely to allege any actual link between the banking transactions in which the Moving Defendants allegedly participated and the terrorist attacks that caused Plaintiffs' injuries.

Furthermore, Plaintiffs' attempts to analogize their claims to those in *Halberstam* fundamentally misread that case.  Plaintiffs characterize the defendant in *Halberstam* as an unknowing individual who did not participate in her boyfriend's decades-long burglary spree, but was nonetheless held liable under a civil conspiracy theory for a murder during one of his robberies because "violence and killing is a foreseeable risk in any of th[o]se enterprises".  Opp'n at 39.  In fact, the *Halberstam* court affirmed the district court's finding that the defendant "knew full well the purpose of [her boyfriend's] evening forays and the means" by which he provided for her, "was a willing partner in his criminal activities," and performed various tasks, including the preparation of tax filings, the keeping of records, and the making of financial transactions, "knowingly to assist [her boyfriend] in his illicit trade"—the very illicit trade that led to the plaintiff's death.  705 F.2d at 486.  In contrast, the Complaint here contains no non-conclusory allegations from which the Court could plausibly infer that the Moving Defendants "knew full well" that the U.S. dollars they allegedly helped Iranian banks acquire would be diverted to the terrorist groups that injured Plaintiffs, or that the Moving Defendants were "willing partners" with, or acted "knowingly to assist", such groups.  The indicia of foreseeability that enabled the *Halberstam* court to find the defendant vicariously liable under a conspiracy theory for her boyfriend's tortious conduct are utterly absent from the Complaint.  Thus, even under a reasonable foreseeability standard of causation, the Complaint would still fail to state a claim.

## II.   THE LIMITED CIVIL CONSPIRACY LIABILITY CREATED BY 18 U.S.C. § 2333(d) DOES NOT APPLY TO THIS CASE.

The Court should dismiss the Complaint on the independent ground that the alleged terrorist attacks cannot form the basis of a civil conspiracy claim under § 2333(d). In enacting JASTA, Congress created civil conspiracy liability only for injuries caused by a specific type of terrorist act by a specific type of person. Section 2333(d) provides that:

> "In an action under subsection (a) for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism."

The plain language of § 2333(d) thus cabins civil conspiracy liability in two ways: (1) a plaintiff's injuries must arise from an act of international terrorism that has been "committed, planned, or authorized" by an organization that has been officially designated an FTO *as of the date* on which the act was "committed, planned, or authorized", *and* (2) the defendant must conspire with the person who "*committed* such an act of international terrorism". *Id.* (emphasis added). Section 2333(d) therefore restricts secondary liability to persons who conspire with the persons who actually commit—not plan or authorize—acts of terrorism that harm the plaintiffs.[3] The Complaint does not plausibly allege facts that establish either statutory prerequisite for asserting a civil conspiracy claim under § 2333(d).

---

[3] Plaintiffs concede this point in their Opposition: "Section 2333(d) gives ATA plaintiffs the option ('liability may be asserted') to allege conspiracy with the person (including associations, societies, and individuals) who commits an act of international terrorism committed, planned, or authorized by an FTO." Opp'n at 31-32.

First, 90 of the 92 attacks identified in the Complaint are not alleged to have been "committed, planned or authorized" by an organization that was designated as an FTO at the time.  SAC ¶¶ 1041-2178.  Although the Complaint refers to a litany of state actors and non-state actors with a variety of designations, only five of the entities mentioned in the Complaint are designated FTOs:  (i) Hamas, designated on October 8, 1997, (ii) Hezbollah, designated on October 8, 1997, (iii) Palestinian Islamic Jihad, designated on October 8, 1997, (iv) Al Qaeda, designated on October 8, 1999, and (v) Kata'ib Hezbollah, designated on July 2, 2009.  Of those five, the Complaint identifies only Hezbollah and Kata'ib Hezbollah as designated FTOs that "committed, planned, or authorized" attacks—namely, the attacks on January 20, 2007 (allegedly planned by Hezbollah and committed by non-FTO Asa'ib Ahl al-Haq) and June 29, 2011 (allegedly committed by Kata'ib Hezbollah).  SAC ¶¶ 1041-80, 2138-49.  Thus, of the 92 attacks alleged in the Complaint, the January 20, 2007 and June 29, 2011 attacks are the only two for which Plaintiffs even attempt to satisfy the first prong of § 2333(d).[4]

Second, the Complaint does not allege that the Moving Defendants "conspire[d] with" any of the terrorist groups that "committed" the attacks on Plaintiffs, *see* 18 U.S.C. § 2333(d)—including the sole attack that is alleged to have been "committed" by a terrorist group designated as an FTO at the time of the attack (*i.e.*, the June 29, 2011 attack by Kata'ib Hezbollah).  SAC ¶¶ 2138-49.  Instead, the Complaint conflates the entities with which the Moving Defendants are specifically alleged to have conspired—"Iran, the IRGC, IRISL, Defendant Bank Saderat Plc, [and] the other Iranian Bank Co-conspirators", SAC ¶ 340—with

---

[4] Although the Complaint also alleges that various "Special Groups" planned and committed attacks on March 30, 2008, April 28, 2008 and October 16, 2008, *see* SAC ¶¶ 1880-87, 1960-67, 2025-32, the only "Special Groups" entity that has ever been designated an FTO is Kata'ib Hezbollah, and it was not so designated until July 2, 2009, nearly a year after the last attack attributed to a "Special Groups" entity.

9

the "instruments of Iranian state-sponsored terrorism", like the Special Groups, SAC ¶ 338, that are alleged to have committed the attacks for which Plaintiffs identify a perpetrator.  The Complaint identifies the entity that allegedly "committed" the terror attack for only nine attacks,[5] and never once alleges that any of the Moving Defendants conspired with those entities or even with any of the so-called "Special Groups".  Thus the Complaint does not allege that the Moving Defendants conspired directly with any group that "committed . . . act[s] of international terrorism", and it therefore also fails to state a claim under the second prong of § 2333(d).

**III.   THERE IS NO CIVIL CONSPIRACY LIABILITY UNDER 18 U.S.C. § 2333 BEYOND THAT NEWLY ENACTED BY JASTA.**

Perhaps recognizing their uphill climb under the new § 2333(d), Plaintiffs repeat their argument that, even before the enactment of JASTA, the ATA created civil conspiracy liability under § 2333(a) based on a "chain of incorporations by reference".  Opp'n at 25. According to this theory—which has already been rejected in this circuit—a conspiracy action may be pursued under § 2333(a) because two criminal provisions of the ATA (§§ 2339A and 2339B) expressly create criminal conspiracy liability, and conspiring in violation of those statutes may serve as the predicate "act of international terrorism" required to assert a civil claim under § 2333(a).  In *Rothstein*, the Second Circuit held that § 2333's silence regarding the permissibility of aiding-and-abetting liability, juxtaposed with the explicit authorization of such liability in the ATA's criminal provisions, demonstrates that Congress did *not* intend § 2333 to authorize civil aiding-and-abetting liability.  806 F.3d at 97-98; *see also* Jt. Mem. at 24-25.

---

[5] Plaintiffs allege that Asa'ib Ahl al-Haq committed the attacks on January 20, 2007 and October 2006, SAC ¶¶ 1041-80, 1388-1400, that Jaysh al Mahdi committed the attack on April 6, 2008, SAC ¶¶ 1907-20, that the Mahdi Army committed the attacks on April 4, 2004 and April 6, 2008, SAC ¶¶ 1159-72, 1895-1906, that "the Mahdi Army/Special Groups" committed the attacks on March 30, 2008, April 28, 2008 and October 16, 2008, SAC ¶¶ 1880-87, 1960-67, 2025-32, and that Kata'ib Hezbollah committed the attack on June 29, 2011, SAC ¶¶ 2138-49.

*Linde* then applied *Rothstein*'s reasoning to civil conspiracy claims and found that Congress's silence regarding civil conspiracy liability in § 2333 meant that it had *not* authorized civil conspiracy claims. *See* 944 F. Supp. 2d at 216 (dismissing "all conspiracy claims under the ATA"); *see also* Jt. Mem. at 25-27.

Plaintiffs contend that *Linde* did not actually foreclose civil conspiracy liability under § 2333(a) and that it cited *Rothstein* only to reject "*common law* claims based on conspiracy". Opp'n at 29 (emphasis in original). This is patently incorrect; *Linde* rejected outright this reading of *Rothstein*:

> "[P]laintiffs suggested that *Rothstein* is best read as holding only that, in the absence of explicit language, a court should not read into a civil cause of action a 'common law' aiding and abetting theory. Conspiracy liability, according to plaintiffs, is different because §§ 2339A, 2339B, and 2339C specifically refer to criminal conspiracy. This argument ignores the reasoning of *Rothstein*, 708 F.3d at 98, that inclusion of criminal aiding and abetting liability in the ATA counsels against interpreting silence in the civil statute to include aiding and abetting liability. Put another way, under *Rothstein*, silence regarding civil conspiracy liability in § 2333(a) speaks louder than criminal conspiracy liability set forth in other provisions of the ATA."

*Linde*, 944 F. Supp. 2d at 217. Indeed, as the *Linde* court noted during oral argument, "the criminal statutes refer to aiding and abetting", just as §§ 2339, 2339B and 2339C refer to conspiracy, yet *Rothstein* nevertheless refused to read into § 2333(a) an implicit intent to authorize civil aiding-and-abetting claims. Transcript of Motion Hearing at 11, *Linde*, No. 04 Civ. 02799 (E.D.N.Y. Apr. 24, 2013). Plaintiffs thus ask this Court to read *Linde* as endorsing the very reasoning the *Linde* court explicitly rejected.

With nowhere to turn in the Second Circuit, Plaintiffs attempt to hang their "incorporation theory" of civil conspiracy on a non-controlling case, *Boim v. Holy Land Found. for Relief* ("*Boim III*"), 549 F.3d 685, 690 (7th Cir. 2008). *See* Opp'n at 25-27. Here, too,

11

Plaintiffs' reliance is misplaced.  In *Boim III*, the Seventh Circuit considered whether providing material support to a designated FTO that targets Americans abroad in violation of § 2339A amounts to a violation of § 2333.  *See* 549 F.3d at 690.  Ultimately, the court found that the material support provisions in § 2339A were incorporated in § 2333(a) through § 2331(1); therefore, providing material support in violation of § 2339A could lead to civil liability under § 2333(a).  *See id.* at 691-92.  But *Boim III* never addressed whether *conspiring* to provide material support to a terrorist group could lead to civil liability under § 2333(a).  That issue was not before the court.  If it had been, *Boim III* suggests that the Seventh Circuit, like the Second Circuit, would read § 2333(a) to foreclose civil secondary liability: "Section 2333 does not say that someone who assists in an act of international terrorism is liable; that is, it does not mention 'secondary' liability . . . . statutory silence on the subject of secondary liability means there is none".  *Id.* at 689.  In any event, *Rothstein* and *Linde* did not embrace *Boim III*'s reasoning.

Furthermore, the fact that Congress created secondary liability in JASTA— covering circumstances that, again, are not present here—confirms that such liability did not previously exist under § 2333(a).  *See, e.g.*, *Am. Cas. Co. of Reading*, 42 F.3d at 732 n.7.

Thus, to the extent Plaintiffs assert conspiracy claims under § 2333(a), these claims should be dismissed because § 2333(a) does not permit civil conspiracy claims.

## IV.    THE COMPLAINT FAILS PLAUSIBLY TO PLEAD A CONSPIRACY.

Because Plaintiffs fail adequately to plead proximate cause, fail to state a civil conspiracy claim under § 2333(d) and cannot as a matter of law state a separate civil conspiracy claim under § 2333(a), a detailed discussion of the Complaint's failure to allege plausibly the elements of a conspiracy is unnecessary.  *See* Jt. Mem. at 27 n.11.  Plaintiffs incorrectly assert that the Moving Defendants "concede the sufficiency of the Complaint's conspiracy allegations by their failure to challenge them in their motions"; to the contrary, the Moving Defendants

12

addressed the inadequacy of Plaintiffs' conspiracy claims in their motion to dismiss.  *See id.*
(arguing Plaintiffs failed to allege properly that the Moving Defendants "joined the conspiracy
with the intent to commit the offenses that are its object" or shared a "common goal" as part of
the alleged conspiracy).  The Complaint's failure to allege plausibly the "essence of the
[conspiracy's] underlying illegal objective", *Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 542, 554
(E.D.N.Y. 2012), is fully apparent in Plaintiffs' opposition brief.  In one place, Plaintiffs assert
that the Moving Defendants engaged in an "unlawful agreement to secretly launder hundreds of
billions of Iran's money through the United States in a manner intended to evade counter-
terrorist and counter-proliferation sanctions and to assist Iran in financing the acquisition of
blacklisted goods and materials".  Opp'n at 33.  In another, the purpose of the purported
conspiracy morphs from supplying Iran with illicit dollars for black market goods to assisting
Iran in supporting known terrorist groups.  *See id.* at 36 ("[T]he Moving Defendants joined the
Conspiracy *knowing or consciously avoiding knowing* that it was intended to, and did, enable
Iran to successfully transfer millions of dollars to fund its known terrorist proxies").  But this
alleged objective, too, becomes a moving target; Plaintiffs argue shortly thereafter that it
"matter[s] not whether or not a particular Defendant had a purpose of supporting terrorism"
because the "overall object of the conspiracy" was "to conceal the funding of a State Sponsor of
Terrorism's illegitimate activities".  *Id.* at 39.  Quite simply, where Plaintiffs themselves cannot
consistently articulate the essence of the alleged conspiracy, the Court should find that the
Complaint has not adequately pleaded that the Moving Defendants joined the conspiracy with
the intent to achieve a mutually agreed-upon unlawful end.  *See Halberstam*, 705 F.2d at 481
(stating that plaintiffs must allege that "the alleged joint tortfeasors are pursuing the same goal").

13

## V.   NON-US DEFENDANTS ARE NOT "UNITED STATES PERSON[S]" AND DID NOT ENGAGE IN "A FINANCIAL TRANSACTION WITH THE GOVERNMENT" OF IRAN UNDER SECTION 2332d.

The Third and Fourth Claims for Relief should also be dismissed on the independent ground that the Moving Defendants named in the Fourth Claim for Relief are not "United States person[s]", and the Complaint fails to allege plausibly that those claims involve a "financial transaction with the government" of Iran, as required under Section 2332d.

Plaintiffs claim that because Standard Chartered Bank, RBS and Commerzbank (the "Non-U.S. Defendants") have branches that are licensed to do business in the U.S., they qualify as U.S. persons under 18 U.S.C. § 2332d(b)(2).[6]  Opp'n at 61-65.  However, none of the Non-U.S. Defendants is a "juridical person organized under the laws of the United States".  18 U.S.C. § 2332d(b)(2)(C).  Each is a *foreign* entity organized under the laws of a *foreign* country.[7]

Nor are the Non-U.S. Defendants "any person in the United States".  As shown in the Moving Defendants' opening brief, courts interpreting that provision have uniformly held that it does not apply to corporate entities organized under foreign law, such as the Non-U.S. Defendants.  *See United States v. Chalmers*, 474 F. Supp. 2d 555, 565 (S.D.N.Y. 2007); *see also Abecassis v. Wyatt*, 785 F. Supp. 2d 615, 648 (S.D. Tex. 2011).  Moreover, accepting Plaintiffs' argument that § 2332d(b)(2)(D) applies to both natural and juridical persons would render

---

[6] Section 2332d(b)(2) defines "United States person" as any "(A) United States citizen or national; (B) permanent resident alien; (C) juridical person organized under the laws of the United States; or (D) any person in the United States".

[7] The phrase "organized under the laws of" refers to an entity's place of incorporation, not all of the locations where it is licensed to do business.  *See, e.g., JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure, Ltd.*, 536 U.S. 88, 90 (2002) (holding that a corporation "organized under the laws of" a foreign country is a "citizen or subject of" that foreign country for purposes of alienage diversity jurisdiction); *Mobil Oil Corp. v. Comm'r of Taxes of Vt.*, 445 U.S. 425, 428 (1980) (noting that many of appellant's subsidiaries were "organized under the laws of foreign nations" while others were "domestically incorporated").

14

§ 2332d(b)(2)(C) superfluous; if "any person in the United States" were to include corporate entities, there would be no need for § 2332d(b)(2)(C), which covers "juridical person[s] organized under the laws of the United States". *See* Jt. Mem. at 29.

In addition, both the Third (as against HSBC Bank USA, N.A.) and Fourth Claims for Relief should be dismissed because Plaintiffs have not pleaded a "transaction with the government" of Iran under the plain meaning of the statutory text of § 2332d(a). *See* Jt. Mem. at 27. Plaintiffs acknowledge this failure, but argue that § 2332d(a) still applies because the entities alleged to have executed transactions were "instrumentalities" of the Iranian government. Opp'n at 65-67. Plaintiffs rely on *Abecassis*, in which § 2332d claims were sustained based on allegations that defendants paid kickbacks to Saddam Hussein through front companies in exchange for allocations of Iraqi oil. *See* 785 F. Supp. 2d at 619. Here, there is no allegation that the Moving Defendants transacted with the Iranian government or with any "front company" on its behalf. Allegations of transactions with Iranian banks are insufficient under § 2332d(a).[8] *See Boim v. Holy Land Found. for Relief*, 291 F.3d 1000, 1014 n.13 (7th Cir. 2002) (holding that § 2332d applies "to the person directly engaged in the prohibited activity, as opposed to persons providing material support to those directly engaged in the prohibited activity").

## CONCLUSION

For the reasons set forth above and in the Moving Defendants' Joint Memorandum, the Complaint fails to state a claim and should be dismissed with prejudice in its entirety as to each of the Moving Defendants.

---

[8] This is particularly true for HSBC Bank USA, N.A, a U.S. clearing bank not even alleged to have dealt directly with any "instrumentality" of the Iranian government.

15

Respectfully submitted,

MAYER BROWN LLP,

by

*/s/ Mark G. Hanchet*
          Mark G. Hanchet
1221 Avenue of the Americas
New York, NY 10020-1001
(212) 506-2500
mhanchet@mayerbrown.com

          Andrew J. Pincus
          Marc R. Cohen
          Alex C. Lakatos
1999 K Street, N.W.
Washington, DC 20006-1101
(202) 263-3000
apincus@mayerbrown.com
mcohen@mayerbrown.com
alakatos@mayerbrown.com

*Attorneys for Defendants HSBC
Holdings PLC, HSBC Bank PLC,
HSBC Bank Middle East Limited and
HSBC Bank USA, N.A.*

CRAVATH, SWAINE & MOORE LLP,

by

*/s/ Richard W. Clary*
          Richard W. Clary
          Michael T. Reynolds
          John D. Buretta
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
rclary@cravath.com
mreynolds@cravath.com
jburetta@cravath.com

*Attorneys for Defendant Credit Suisse AG*

16

SULLIVAN & CROMWELL LLP,

by

   /s/ Michael T. Tomaino, Jr.
      Michael T. Tomaino, Jr.
      Jeffrey T. Scott
      Jonathan M. Sedlak
125 Broad Street
New York, NY 10004
(212) 558-4000
tomainom@sullcrom.com
scottj@sullcrom.com
sedlakj@sullcrom.com

*Attorneys for Defendant Barclays Bank PLC*

CLIFFORD CHANCE US LLP,

by

   /s/ Steven T. Cottreau
      Steven T. Cottreau
2001 K Street NW
Washington, DC 20006-1001
(202) 912-5000
steve.cottreau@cliffordchance.com

      Robert G. Houck
31 West 52nd Street
New York, NY  10019-6131
robert.houck@cliffordchance.com

*Attorneys for Defendant The Royal Bank of Scotland N.V.*

SULLIVAN & CROMWELL LLP,

by

   /s/ Sharon L. Nelles
      Sharon L. Nelles
      Bradley P. Smith
      John C. Quinn
125 Broad Street
New York, NY 10004
(212) 558-4000
nelless@sullcrom.com
smithbr@sullcrom.com
quinnjc@sullcrom.com

*Attorneys for Defendant Standard Chartered Bank*

CLEARY GOTTLIEB STEEN & HAMILTON LLP,

by

   /s/ Lawrence B. Friedman
      Lawrence B. Friedman
      Lewis J. Liman
      Avram E. Luft
One Liberty Plaza
New York, NY 10006
(212) 225-2000
lfriedman@cgsh.com
lliman@cgsh.com
aluft@cgsh.com

*Attorneys for Defendant Commerzbank AG*

17