# CRAVATH, SWAINE & MOORE LLP

| | | | |
|---|---|---|---|
| JOHN W. WHITE | PHILIP J. BOECKMAN | ERIC W. HILFERS | D. SCOTT BENNETT |
| EVAN R. CHESLER | WILLIAM V. FOGG | GEORGE F. SCHOEN | TING S. CHEN |
| PHILIP A. GELSTON | FAIZA J. SAEED | ERIK R. TAVZEL | CHRISTOPHER K. FARGO |
| RICHARD W. CLARY | RICHARD J. STARK | CRAIG F. ARCELLA | KENNETH C. HALCOM |
| JAMES D. COOPER | THOMAS E. DUNN | DAMIEN R. ZOUBEK | DAVID M. STUART |
| STEPHEN L. GORDON | MARK I. GREENE | LAUREN ANGELILLI | AARON M. GRUBER |
| DANIEL L. MOSLEY | DAVID R. MARRIOTT | TATIANA LAPUSHCHIK | O. KEITH HALLAM, III |
| ROBERT H. BARON | MICHAEL A. PASKIN | ERIC L. SCHIELE | OMID H. NASAB |
| DAVID MERCADO | ANDREW J. PITTS | ALYSSA K. CAPLES | DAMARIS HERNÁNDEZ |
| CHRISTINE A. VARNEY | MICHAEL T. REYNOLDS | JENNIFER S. CONWAY | JONATHAN J. KATZ |
| PETER T. BARBUR | ANTONY L. RYAN | MINH VAN NGO | MARGARET SEGALL D'AMICO |
| SANDRA C. GOLDSTEIN | GEORGE E. ZOBITZ | KEVIN J. ORSINI | RORY A. LERARIS |
| THOMAS G. RAFFERTY | GEORGE A. STEPHANAKIS | MATTHEW MORREALE | KARA L. MUNGOVAN |
| MICHAEL S. GOLDMAN | DARIN P. MCATEE | JOHN D. BURETTA | |
| RICHARD HALL | GARY A. BORNSTEIN | J. WESLEY EARNHARDT | |
| JULIE A. NORTH | TIMOTHY G. CAMERON | YONATAN EVEN | |
| ANDREW W. NEEDHAM | KARIN A. DEMASI | BENJAMIN GRUENSTEIN | SPECIAL COUNSEL |
| STEPHEN L. BURNS | LIZABETHANN R. EISEN | JOSEPH D. ZAVAGLIA | SAMUEL C. BUTLER |
| KEITH R. HUMMEL | DAVID S. FINKELSTEIN | STEPHEN M. KESSING | |
| DAVID J. KAPPOS | DAVID GREENWALD | LAUREN A. MOSKOWITZ | |
| DANIEL SLIFKIN | RACHEL G. SKAISTIS | DAVID J. PERKINS | |
| ROBERT I. TOWNSEND, III | PAUL H. ZUMBRO | JOHNNY G. SKUMPIJA | OF COUNSEL |
| WILLIAM J. WHELAN, III | JOEL F. HEROLD | J. LEONARD TETI, II | MICHAEL L. SCHLER |

WORLDWIDE PLAZA
825 EIGHTH AVENUE
NEW YORK, NY 10019-7475

TELEPHONE: +1-212-474-1000
FACSIMILE: +1-212-474-3700

———

CITYPOINT
ONE ROPEMAKER STREET
LONDON EC2Y 9HR
TELEPHONE: +44-20-7453-1000
FACSIMILE: +44-20-7860-1150

WRITER'S DIRECT DIAL NUMBER
+1-212-474-1260
WRITER'S EMAIL ADDRESS
jburetta@cravath.com

December 19, 2017

*Freeman, et al. v. HSBC Holdings plc, et al.*,
14-cv-6601(DLI)(CLP)

Dear Magistrate Judge Pollak:

       We represent Credit Suisse AG in the above-captioned matter. With consent of Moving Defendants,[1] we respectfully write in response to Plaintiffs' December 18, 2017 letter, Dkt. No. 149 (the "Letter"), advising the Court of the recent decision in *Shaffer v. Deutsche Bank AG*, 16-CV-497-MJR-SCW, Mem. & Order, Dkt. No. 69 (S.D. Ill. Dec. 7, 2017) ("*Shaffer*") (attached hereto as Appendix A). We agree that *Shaffer* is new authority relevant to the pending motions to dismiss, but not for the reasons suggested by Plaintiffs. Instead, *Shaffer* directly supports Moving Defendants' motion to dismiss the Corrected Second Amended Complaint, Dkt. No. 115 ("Complaint"), for failure plausibly to allege proximate cause under *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013), for failure plausibly to plead a conspiracy, and because, contrary to Plaintiffs' argument in the Letter, there is no conspiracy-based liability under Section 2333(a) of the ATA. *See* Defs.' Joint Mem. in Supp. of Mot. to Dismiss, Dkt. No. 120 ("Joint Mem.") at 12-27 & n.11; Defs.' Joint Reply in Further Supp. of Mot. to Dismiss, Dkt. No. 126 ("Joint Reply") at 3-7, 10-13.

       *Shaffer* and *Freeman* both involve claims against financial institutions which fail plausibly to allege proximate cause. The *Shaffer* complaint alleged that a Western bank "conspired with Iranian financial institutions to transfer U.S. currency to Iranian banks in violation of U.S. economic sanctions, giving the Iranian government access to currency necessary to fund terrorist activities in Iraq." *Shaffer* at 1. Here, likewise, plaintiffs allege that Western banks "conspired with Iran and its banking agents

---

[1] "Moving Defendants" are HSBC Holdings PLC, HSBC Bank PLC, HSBC Bank Middle East Limited, HSBC Bank USA, N.A., Barclays Bank PLC, Standard Chartered Bank, The Royal Bank of Scotland N.V., Commerzbank AG and Credit Suisse AG.

. . . to evade U.S. economic sanctions . . . [which] enabled Iran and its agents to provide a combination of funding, weapons, munitions, intelligence, and training to [terrorist organizations] who killed, injured or maimed the plaintiffs and/or their family members in Iraq". Complaint ¶¶ 6-7.

*First*, applying *Rothstein*, *Shaffer* held that plaintiffs had failed plausibly to plead proximate cause. *Shaffer* at 6. *Shaffer* observed that *Rothstein* had "focused on the importance of a plaintiff establishing proximate cause in an action under this fact pattern and warned that the 'plaintiffs' contention that proximate cause is established because they were injured after [a financial institution] violated federal law is a *post hoc, ergo propter hoc* proposition that would mean that any provider of U.S. currency to a state sponsor of terrorism would be strictly liable for injuries subsequently caused by a terrorist organization associated with that state.'" *Id.* at 7 (quoting *Rothstein*, 708 F.3d at 96). Finding the allegations in *Rothstein* to be "strikingly similar to Plaintiffs' complaint", the *Shaffer* court noted that Plaintiffs' claims were "difficult to separate" from *Rothstein*'s "clear statement warning of the importance of separating illegal processing of financial transactions from civil liability for terrorist attacks". *Shaffer* at 6-7; *see also id.* at 10 (holding that "the degree of separation between Deutsche Bank and the attacks cuts against liability"). *Shaffer* concluded that such allegations—the kind of allegations also made here—fail plausibly to plead proximate cause. *Id.* at 6-7; *see also* Joint Mem. at 12-24; Joint Reply at 3-7.

*Second*, the *Shaffer* court held that plaintiffs had failed plausibly to plead a conspiracy because they did not allege facts that "establish that Deutsche Bank participated in any conspiracy other than perhaps to evade economic sanctions". *Shaffer* at 10. Noting that a "conspiracy exists if the 'co-conspirators joined to effectuate a common design or purpose'", *id.* (quoting *United States v. Ceballos*, 302 F.3d 679, 688 (7th Cir. 2002)), the *Shaffer* court found that:

> "When looked at as a whole, Plaintiffs['] complaint does not adequately plead that the actions by Deutsche Bank rise to the level of conspiring to provide material support to terrorism or that the actions by Deutsche Bank proximately caused Plaintiffs' injuries. Processing funds for Iranian financial institutions, even if done to evade U.S. sanctions, is not the same as processing funds for a terrorist organization, and a conclusory allegation that it was foreseeable that Iran might give some of the money to terrorist organizations if the transactions succeeded is insufficient to establish liability. Plaintiffs have not plausibly pleaded that Deutsche Bank conspired to provide financial services or assistance to terrorist organizations or to the perpetrators of the attacks on Shaffer and Schaefer."

*Shaffer* at 10-11. The allegations in *Shaffer*—like those here—fail because they do not "show that a defendant joined the conspiracy with the intent to commit the offenses that are its object". Joint Mem. at 27 n.11 (quotation marks and citation omitted); *see also* Joint Reply at 12-13.

Finally, contrary to Plaintiffs' argument, *Shaffer* further demonstrates that civil conspiracy is not available under Section 2333(a) of the ATA. *See* Joint Mem. at 24-27; Joint Reply at 10-12. Plaintiffs assert, without support, that *Shaffer* held that statutory conspiracy claims for violations of 18 U.S.C. § 2339A can be brought under Section 2333(a) of the ATA. This assertion appears to be based on a misreading of *Shaffer*'s discussion of *Boim v. Holy Land Foundation for Relief and Development*, 549 F.3d 685 (7th Cir. 2008) (en banc) ("*Boim III*"). Neither *Shaffer* nor *Boim III* holds that conspiring to provide material support to a terrorist group could lead to civil liability under Section 2333(a). *See* Joint Reply at 12. Rather, *Boim III* addressed the issue of whether providing material support to a designated FTO that targets Americans abroad in violation of Section 2339A supports primary liability under Section 2333(a). *Boim III* at 691-92. If *Boim III* had addressed the conspiracy liability issue, its language suggests that the Seventh Circuit, like the Second Circuit, would read Section 2333(a) to foreclose civil secondary liability: "Section 2333 does not say that someone who assists in an act of international terrorism is liable; that is, it does not mention 'secondary' liability . . . . statutory silence on the subject of secondary liability means there is none". *Boim III* at 689; *see also* Joint Reply at 12. In any event, *Boim III* is not the law in this Circuit.

To the extent that *Shaffer* could be read to endorse a theory of secondary liability relying on a chain of incorporation by reference, *Rothstein* and its progeny squarely foreclose such an argument. In *Rothstein*, the Second Circuit held that Section 2333's silence regarding the permissibility of aiding-and-abetting liability, juxtaposed with the explicit authorization of such liability in the ATA's criminal provisions (including Sections 2339A and 2339B), demonstrated that Congress did not intend Section 2333 to authorize civil aiding-and-abetting liability. 806 F.3d at 97-98; *see also* Joint Mem. at 24-25; Joint Reply at 10. *Linde v. Arab Bank, PLC*, applied *Rothstein*'s reasoning and found that Congress's silence regarding civil conspiracy liability in Section 2333 meant that it had not authorized civil conspiracy claims. *See* 944 F. Supp. 2d 215, 216 (E.D.N.Y. 2013); *see also* Joint Mem. at 25-27; Joint Reply at 11. Specifically, *Linde* stated that:

> "Plaintiffs suggested that *Rothstein* is best read as holding only that, in the absence of explicit language, a court should not read into a civil cause of action a 'common law' aiding and abetting theory. Conspiracy liability, according to plaintiffs, is different because §§ 2339A, 2339B, and 2339C specifically refer to criminal conspiracy. This argument ignores the reasoning of *Rothstein*, that inclusion of criminal aiding and abetting liability in the ATA counsels against interpreting silence in the civil statute to include aiding and abetting liability. Put another way, under *Rothstein*, silence regarding civil conspiracy liability in § 2333(a) speaks louder than criminal conspiracy liability set forth in other provisions of the ATA."

944 F. Supp. 2d at 217.

In fact, *Shaffer* demonstrates that civil conspiracy liability is *not* available under Section 2333(a) of the ATA. *See* Joint Mem. at 24-27; Joint Reply at 10-12. The *Shaffer* court rejected plaintiffs' "attempt to plead around *Rothstein* by seizing on language in *Boim III* that opens the possibility for civil conspiracy liability under the ATA", *Shaffer* at 9; *see* also Pls.' Opp'n to Mot. to Dismiss, Dkt. No. 125 at 25-31, holding:

> "The problem for Plaintiffs is that *Boim III* contemplates a co-conspirator who donates money to terrorist organizations, warning that distant links between donor and donee negate liability. Here, the temporal chain between Deutsche Bank and the attacks on Shaffer and Schaefer is lengthy, far greater than the chain in *Boim III*, and Deutsche Bank is not a donor to any organization. Accepting the allegations in the complaint as true, Deutsche Bank illegally stripped essential information from financial transactions involving Iranian financial institutions in order to assist the financial institutions in evading U.S. sanctions and oversight. The transactions helped Iran's government access U.S. currency, which Iran then used in part to manufacture EFPs and to fund terrorist organizations, like Hezbollah and the IRGC. Because of this access to currency, Iran could move money and weapons to terrorist groups in Iraq like the groups that could have been involved in the attacks that injured Shaffer and killed Schaefer. The complaint does not allege which group, if any, actually planned or orchestrated the attacks, however, and the degree of separation between Deutsche Bank and the attacks cuts against liability."

*Shaffer* at 9-10. The *Shaffer* court held that "[t]o allow Plaintiffs' theory of [conspiracy] liability would lead to Deutsche Bank potentially being liable for any Iran-related terrorist act during or after the period during which they were processing transactions for Iranian banks, and that is too broad a reading of ATA civil liability. As Section 2333 does not impose liability for injuries to victims of terrorist attacks on providers of U.S. currency to state sponsors of terrorism, Plaintiffs' claims must be dismissed." *Id.* at 11. That same logic applies here and further demonstrates that Moving Defendants' motions to dismiss should be granted. *See* Joint Mem. at 24-27; Joint Reply at 10-12.

Thank you for your attention to this matter.

Respectfully submitted,

*/s/ John D. Buretta*
John D. Buretta

The Honorable Cheryl L. Pollak
   United States Magistrate Judge
      United States District Court, Eastern District of New York
         225 Cadman Plaza East
            Brooklyn, New York 11201

BY ECF

Copy to:

The Honorable Dora L. Irizarry
   United States Chief District Judge
      United States District Court, Eastern District of New York
         225 Cadman Plaza East
            Brooklyn, New York 11201

BY ECF

Copy to:  All counsel

BY ECF