# CLEARY GOTTLIEB STEEN & HAMILTON LLP

WASHINGTON, D.C.

PARIS

BRUSSELS

LONDON

FRANKFURT

COLOGNE

MOSCOW

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com


D: +1 212 225 2490
jblackman@cgsh.com

ROME

MILAN

HONG KONG

BEIJING

BUENOS AIRES

SÃO PAULO

ABU DHABI

SEOUL

January 16, 2018

BY ECF

The Honorable Cheryl L. Pollak
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Freeman, et al. v. HSBC Holdings plc, et al.*, 14-cv-6601(DLI)(CLP)

Dear Magistrate Judge Pollak:

The Moving Defendants[1] respectfully write to bring to the Court's attention another recent decision by the United States District Court for the District of Columbia in *Ofisi, et al. v. BNP Paribas, S.A., et al.*, 1:15-cv-02010-JDB (D.D.C. Jan. 11, 2018) ("*Ofisi II*"), which further supports the Moving Defendants' motions to dismiss that are pending before Your Honor. As we earlier advised this Court, the court in *Ofisi* previously dismissed Anti-Terrorism Act ("ATA") claims against BNP Paribas, S.A. ("BNPP") that are similar to the claims pending against the Moving Defendants in *Freeman*. *See* ECF Nos. 146 and 148. *Ofisi II* denied the plaintiffs' motion to reconsider that dismissal based on several of the same grounds advanced in the Moving Defendants' pending dismissal motions here.

*First*, the court in *Ofisi II* reaffirmed its previous ruling—adopting the Second Circuit's reasoning in *Rothstein v. UBS AG*, 708 F.3d 82 (2d Cir. 2013)—that the complaint failed to satisfy the ATA's proximate cause requirement because it contained no well-pled allegations (i) that BNPP "provided money directly to any terrorist group," (ii) "that any transaction BNPP processed for Sudan [a designated State Sponsor of Terrorism] or Sudanese banks was transferred to al Qaeda prior to the attacks," or (iii) "that Sudan would have been unable to assist

---

[1] The "Moving Defendants" are HSBC Holdings PLC ("HSBC"), HSBC Bank PLC ("HSBC-Europe"), HSBC Bank Middle East Limited ("HSBC Middle East"), HSBC Bank USA, N.A. ("HSBC-US"), Barclays Bank PLC ("Barclays"), Standard Chartered Bank, The Royal Bank of Scotland N.V. ("RBS N.V."), Commerzbank AG ("Commerzbank") and Credit Suisse AG.

The Honorable Cheryl L. Pollak, p. 2

al Qaeda without the funds that BNPP processed." *Ofisi II*, slip op. at 6.  The *Freeman* complaint suffers from similar and additional deficiencies.  *See* Defendants' Joint Memorandum in Support of Motion to Dismiss, ECF No. 120 ("Jt. Mem.") at 17-19.  *Ofisi II* also rejected the plaintiffs' reliance on admissions by BNPP that it "illegally circumvented U.S. sanctions for Sudan and Sudanese banks," as well as conclusory allegations that "BNPP knew that it was facilitating terrorist activity by processing transactions with Sudan and Sudanese banks."  Slip op. at 6.  Plaintiffs' similar allegations here also fail to satisfy the ATA's proximate cause requirement.  *See* Jt. Mem. at 22-23.

  *Second*, the court in *Ofisi II* reaffirmed its previous holding—contrary to the plaintiffs' repeated argument in our case—that the ATA "does not provide for secondary liability," including civil conspiracy claims, except in the narrow circumstances permitted by the Justice Against Sponsors of Terrorism Act ("JASTA"), which are not present here.[2]  *Ofisi II*, slip op. at 4.  The court noted that this holding is consistent with the rulings of both federal appellate courts to have considered the issue (including *Rothstein*, 708 F.3d at 98), "as well as a recent tide of district court decisions."  *Ofisi II*, slip op. at 4.  *Ofisi II* is yet another decision supporting Moving Defendants' argument that plaintiffs' conspiracy-based claims should be dismissed.  *See* Jt. Mem. at 24-27; Jt. Reply at 10-12.

  *Third*, *Ofisi II* reaffirmed that "allegations of a conspiracy to evade and defeat sanctions are not sufficient to establish conspiracy liability for terrorist attacks" where "there were no plausible allegations that BNPP acted in furtherance of a common plan with any terrorist organization, or that BNPP, Sudan, and al Qaeda were mutually dependent on one another."  Slip op. at 8-9.[3]  The same is true here, as Moving Defendants have previously argued, and *Ofisi II* further supports dismissing plaintiffs' claims on this ground.  *See* Jt. Reply at 12-13.

---

[2] *See* Defendants' Joint Reply Memorandum in Further Support of Motion to Dismiss, ECF No. 126 ("Jt. Reply") at 8-10.

[3] The court in *Ofisi II* rejected the plaintiffs' argument that the standards articulated in *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), govern ATA claims not covered by JASTA.  *See Ofisi II*, slip op. at 3-4.  This Court should likewise reject the same erroneous argument made by plaintiffs here.  *See* Jt. Reply at 5-6.  *Ofisi II* instead applied *Halberstam* to the plaintiffs' (District of Columbia law-governed) common law civil conspiracy claims.  Slip op. at 8-10.  Moreover, in contrast to plaintiffs' attempt here to analogize this case to *Halberstam*, the court in *Ofisi II* noted that plaintiffs' failure "to plausibly allege that BNPP directly funded any terrorist group, had knowledge of Sudan's use of BNPP-provided funds to sponsor terrorist activities, or knew that BNPP's conduct actually enabled the attacks," rendered *Halberstam* inapposite.  *Id.* at 9.  Even assuming, *arguendo*, that *Halberstam* applies here (and it does not), plaintiffs' allegations would still fail to plead a cognizable civil conspiracy for the same reasons.

The Honorable Cheryl L. Pollak, p. 3

For these reasons and those set forth in the Moving Defendants' prior submissions, the Court should grant the Moving Defendants' motions to dismiss.

Respectfully submitted,

/s/ Jonathan I. Blackman

Attachment

cc:     Chief Judge Dora L. Irizarry (via ECF)
        All counsel of record (via ECF)

# ATTACHMENT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY OFISI, et al.,

      Plaintiffs,

      v.

BNP PARIBAS, S.A., et al.,

      Defendants.

Civil Action No. 15-2010 (JDB)

**MEMORANDUM OPINION**

On September 29, 2017, the Court dismissed plaintiffs' claims against defendant BNP Paribas, S.A. (BNPP) under (1) the civil liability provision of the Anti-Terrorism Act (ATA), 18 U.S.C. § 2333, (2) the Alien Tort Statute (ATS), 28 U.S.C. § 1350, and (3) various common-law tort doctrines, for allegedly conspiring with Sudan, Sudanese banks, and al Qaeda to defeat U.S. sanctions against Sudan. Plaintiffs have now moved for reconsideration or, in the alternative, requested leave to amend their complaint. For the reasons explained below, plaintiffs' motion for reconsideration and their request for leave to amend will be denied.

**DISCUSSION**

**A. Motion for Reconsideration**

Plaintiffs move for reconsideration under Federal Rule of Civil Procedure 59(e), but that rule applies only to the amendment of final judgments. See Cobell v. Jewell, 802 F.3d 12, 19 (D.C. Cir. 2015). Because the September 29 Order was interlocutory in nature, the Court will construe plaintiffs' motion as a request for reconsideration under Rule 54. See Fed. R. Civ. P. 54(b) ("[A]ny order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time

1

before the entry of a judgment . . . .").  The Court has broad discretion to hear a motion for

reconsideration under Rule 54(b).  See Flythe v. District of Columbia, 4 F. Supp. 3d 216, 218

(D.D.C. 2014); see also Pueschel v. Nat'l Air Traffic Controllers' Ass'n, 606 F. Supp. 2d 82, 85

(D.D.C. 2009) ("[I]n order to promote finality, predictability and economy of judicial resources,

'as a rule [a] court should be loathe to [revisit its own prior decisions] in the absence of

extraordinary circumstances such as where the initial decision was clearly erroneous and would

work a manifest injustice.'" (second and third alterations in original) (quoting Lederman v. United

States, 539 F. Supp. 2d 1, 2 (D.D.C. 2008)).  In this jurisdiction, relief under Rule 54(b) may be

granted "as justice requires."  Parker v. John Moriarty & Assocs., 221 F. Supp. 3d 1, 2 (D.D.C.

2016).  Generally, "a court will grant a motion for reconsideration of an interlocutory order only

when the movant demonstrates: (1) an intervening change in the law; (2) the discovery of new

evidence not previously available; or (3) a clear error in the first order."  Id. (internal quotation

marks omitted); accord Bloomgarden v. U.S. Dep't of Justice, No. CV 12-0843 (ESH), 2016 WL

7839115, at *1 (D.D.C. Apr. 13, 2016); Zeigler v. Potter, 555 F.Supp.2d 126, 129 (D.D.C. 2008).

Plaintiffs do not assert that there has been an intervening change in controlling law or that

new evidence has become available.  Instead, they contend that the Court committed two clear

errors when it dismissed their ATA, ATS, and common-law claims:[1]  (1) the Court ignored factual

allegations sufficient to establish a plausible inference of conspiracy to defeat U.S. sanctions

against Sudan; and (2) it failed properly to apply to their claims the law of civil conspiracy liability

set forth in Halberstam v. Welch, 705 F.2d 472 (D.C. Cir. 1983).  See Pls.' Mot. for Recons. [ECF

No. 33] at 12.  Neither argument convinces the Court that relief is appropriate here.

---

[1] Plaintiffs do not seek reconsideration of the Court's dismissal of their claims for fraudulent conveyance
(which they recast as a claim for tortious interference with prospective economic advantage) or punitive damages.
See Sept. 29, 2017 Mem. Op. [ECF No. 31] at 33–34 [hereinafter "Mem. Op."].

## 1. ATA Claims

To bring a claim under the ATA's civil liability provision, a plaintiff must plead: (1) injury to a U.S. national, (2) an act of international terrorism, and (3) causation. Mem. Op. at 8–9 (citing 18 U.S.C. § 2333). Plaintiffs have alleged that BNPP violated three criminal provisions of the ATA, which constitute the requisite "act of international terrorism": 18 U.S.C. §§ 2332d, 2339A, and 2339C. Id. at 9. The Court dismissed plaintiffs' claim predicated on § 2339C because that statute was enacted in 2002, four years after the relevant conduct in this case. Id. at 10. Plaintiffs do not challenge this in their motion. The Court dismissed plaintiffs' claim based on § 2332d because, after considering plaintiffs' arguments to the contrary, it concluded that BNPP, "a French multinational bank, incorporated under the laws of France," does not qualify as a "United States person" under the statute. Mem. Op. at 12 (quoting Compl. [ECF No. 1] ¶ 18). Plaintiffs state that they "respectfully disagree" with this conclusion for reasons previously argued, see Pls.' Mot. for Recons. at 21 n.8, but that is not a valid basis for reconsideration, see McLaughlin v. Holder, 864 F. Supp. 2d 134, 141 (D.D.C. 2012) (alterations in original) (court may deny a motion for reconsideration that "raise[s] . . . arguments for reconsideration the court ha[s] . . . already rejected on the merits").

Plaintiffs' remaining arguments, then, concern BNPP's alleged violation of § 2339A. Plaintiffs first contend that the Court erred when it failed to apply the conspiracy liability standard from Halberstam to their ATA claims, and that under that standard BNPP can be found vicariously liable for the actions of al Qaeda. See Pls.' Mot. for Recons. at 2–3, 12, 18 n.7. But plaintiffs already raised this argument in their opposition to BNPP's motion to dismiss, see Pls.' Opp'n [ECF No. 19] at 3, 23, and the Court considered and rejected it, concluding that the version of the ATA

3

applicable to plaintiffs' claims does not provide for secondary liability under § 2333,[2] Mem. Op. at 11; see Am. Action Network, Inc. v. Cater Am., LLC, No. 12-CV-1972 (RC), 2014 WL 12675253, at *1 (D.D.C. Feb. 12, 2014) ("Rule 54(b) affords no opportunity for the parties to reargue facts and theories upon which a court has already ruled."). The Court's holding in this regard is consistent with both courts of appeals that have considered the issue, see Rothstein v. UBS AG, 708 F.3d 82, 98 (2d Cir. 2013); Boim v. Holy Land Found. for Relief and Dev., 549 F.3d 685, 689 (7th Cir. 2008) (en banc) ("[S]tatutory silence on the subject of secondary liability means there is none . . . ."), as well as a recent tide of district court decisions, see Owens v. BNP Paribas, S.A., 235 F. Supp. 3d 85, 92 (D.D.C. 2017) (collecting cases). The Court's decision to follow these appellate and recent district court decisions finding secondary liability unavailable under the ATA[3] instead of earlier district court decisions cited by plaintiffs, see Pls.' Opp'n at 23 (citing Wultz v. Islamic Rep. of Sudan, 755 F. Supp. 2d 1, 54 (D.D.C. 2010)), does not constitute clear error.

Plaintiffs next maintain that the Court erroneously ignored or rejected factual allegations that satisfy the ATA's scienter standard. See Pls.' Mot. for Recons. at 12–18. As an initial matter, plaintiffs misstate the scienter standard when they claim that BNPP is civilly liable under the ATA because the embassy bombings were a "reasonably foreseeable" result of the conspiracy to defeat U.S. sanctions. Id. at 15. Section 2333 incorporates the scienter standard of the underlying "act of international terrorism," Mem. Op. at 9; thus, plaintiffs must allege that BNPP provided

---

[2] Vicarious liability is a form of secondary liability. See Halberstam, 705 F.2d at 476–77 (describing conspiracy and aiding and abetting as two bases for vicarious liability and distinguishing them from liability for a primary act).

[3] Congress' September 2016 amendments to the ATA—recognizing secondary liability under certain circumstances, see 18 U.S.C. 2333(d)(2)—have no bearing in this case because those amendments only apply to persons injured on or after September 11, 2001, see Mem. Op. at 11 n.3.

financial services "knowing or intending" that the services "are to be used in preparation for, or in carrying out" a terrorist attack, id. at 15 (quoting 18 U.S.C. § 2339A(a)).

Contrary to plaintiffs' argument, the Court did consider their well-pled factual allegations concerning BNPP's conduct prior to the August 1998 terrorist attacks. See id. (accepting that after the sanctions were imposed, BNPP agreed to become the sole correspondent bank for Sudan in Europe; Sudan's central bank directed all major Sudanese commercial banks to use BNPP as their correspondent bank; BNPP established relationships with unaffiliated regional banks; BNPP channeled transactions through these regional banks to circumvent U.S. sanctions; and BNPP processed illegal U.S. dollar transactions for Sudan prior to the attacks). The Court found these allegations insufficient, however, because plaintiffs did not plausibly allege that BNPP knew that Sudan or any Sudanese bank was acting as an agent of al Qaeda or any terrorist, or that the ultimate beneficiaries of any financial services provided would be a terrorist organization. Id. at 15–19; see also Owens, 235 F. Supp. 3d at 99 ("Processing funds for Sudan [or Sudanese banks] is not the same as processing funds for a terrorist organization or a terrorist front."). The allegations that plaintiffs highlight in their motion, which describe Sudan's activities with terrorists throughout the 1990s, see Pls.' Mot. for Recons. at 13–14, do not alter this conclusion.[4] Even accepting that BNPP was fully aware of Sudan's activities as a state sponsor of terrorism prior to 1997, "the fact remains that [Sudan] is a government, and as such it has many legitimate agencies, operations, and programs to fund." Rothstein, 708 F.3d at 97. Plaintiffs simply cannot equate the transfer of money to Sudan with the transfer of money to al Qaeda. Owens, 235 F. Supp. 3d at 99.

---

[4] These allegations do not undermine the Court's finding that "the complaint does not contain any detailed factual allegations that BNPP knew about [Al Shamal's] supposed connections to al Qaeda" prior to the bombings. Pls.' Mot. for Recons. at 13 (quoting Mem. Op. at 16). Indeed, none of these allegations even refer to Al Shamal.

Finally, plaintiffs attempt to relitigate their argument that they sufficiently pled causation. See Pls.' Mot. for Recons. at 3 n.3 (stating BNPP is liable for the "foreseeable conduct" undertaken in furtherance of the conspiracy to defeat sanctions); Opp'n at 22–23 (same). In considering this argument, the Court found that § 2333's "by reason of" language requires a showing of proximate cause as that "term is typically defined." Mem. Op. at 12 (citing Siegel v. SEC, 592 F.3d 147, 159 (D.C. Cir. 2010); Burnett v. Al Baraka Inv. & Dev. Corp., 274 F. Supp. 2d 86, 105 (D.D.C. 2003)). The Court found plaintiffs' allegations wanting because, as was true in Rothstein and Owens, the complaint here contained no well-pled allegations that BNPP provided money directly to any terrorist group, that any transaction BNPP processed for Sudan or Sudanese banks was transferred to al Qaeda prior to the attacks, or that Sudan would have been unable to assist al Qaeda without the funds that BNPP processed. Id. at 19. Plaintiffs fail to show that this ruling was clear error. Instead, they largely repeat the same allegations that the Court has already considered. See Pls.' Mot. for Recons. at 4–11. These include admissions from the June 2014 Consent Order between New York State and BNPP, which provides that BNPP illegally circumvented U.S. sanctions for Sudan and Sudanese banks, as well as conclusory allegations that BNPP knew that it was facilitating terrorist activity by processing transactions with Sudan and Sudanese banks.[5] Repackaged here, these allegations nonetheless remain insufficient. In sum, plaintiffs have failed to convince the Court that dismissal of their ATA claims was erroneous.

---

[5] Compare, e.g., Compl. ¶ 272 ("BNPP knew or should have known that the millions of dollars in illegal transfers to Al Shamal and Sudan were used to support, encourage, entice and make possible terrorist attacks including but not limited to the 1998 East African Embassy Attacks."), with Rothstein, 708 F.3d at 97 (allegations that defendant "knew full well that the cash dollars it was providing to a state-sponsor of terrorism such as Iran would be used to cause and facilitate terrorist attacks" were "conclusory allegations that do not meet Twombly's plausibility standard with respect to the need for a proximate causal relationship between the cash transferred by [defendant] to Iran and the terrorist attacks by Hizbollah and Hamas that injured plaintiffs").

## 2. ATS Claims

Plaintiffs next claim that the Court's failure to apply <u>Halberstam</u> to their ATS claims warrants reconsideration. <u>See</u> Pls.' Mot. for Recons. at 3 n.2, 18 n.7. This argument fails for two reasons. First, plaintiffs agreed in their opposition to BNPP's motion to dismiss that international law, not <u>Halberstam</u>,[6] provides the applicable legal standards for their ATS claims. <u>See</u> Pls.' Opp'n at 45–46. A motion for reconsideration is not "an opportunity for a party to relitigate an issue that was or should have been raised at an earlier stage in the litigation." <u>Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. De C.V.</u>, 79 F. Supp. 3d 60, 72 (D.D.C. 2015); <u>Singh v. George Washington Univ.</u>, 383 F. Supp. 2d 99, 101 (D.D.C. 2005).

Moreover, plaintiffs are incorrect that the Court should have applied <u>Halberstam</u> to their ATS claims. In this Circuit, secondary liability claims under the ATS are evaluated under international law, not common law. <u>See</u> Mem. Op. at 27 (citing <u>Doe v. Exxon Mobil Corp.</u>, 654 F.3d 11, 33 (D.C. Cir. 2011) (holding that for ATS claims, "[t]he court . . . looks to customary international law to determine the standard for assessing aiding and abetting liability"), <u>vacated on other grounds</u>, 527 F. App'x 7 (mem.)).[7] This Court relied on the same authoritative international law sources identified by the D.C. Circuit, <u>see</u> <u>Exxon Mobil Corp.</u>, 654 F.3d at 33–34, to define the elements of aiding and abetting liability. <u>See</u> Mem. Op. at 27–29 (finding an aider and abettor must knowingly and substantially assist in the principal violation of the law of nations).[8] The

---

[6] <u>Halberstam</u>, which concerned claims brought under the common law of the District of Columbia, does not invoke or refer to customary international law. 705 F.2d at 478–79.

[7] As a practical matter, the standards for aiding and abetting under common law and international law overlap. <u>See</u> <u>Exxon Mobil Corp.</u>, 654 F.3d at 39 ("For all practical purposes, we agree with appellants that the standard under federal common law applies inasmuch as the parties suggest no differences between it and the standard under customary international law."); <u>Halberstam</u>, 705 F.2d at 477 (requiring, <u>inter alia</u>, that the defendant "knowingly and substantially assist the principal violation"). Here, of course, the Court found plaintiffs' claims also failed to establish aiding and abetting liability under the <u>Halberstam</u> standard. Mem. Op. at 32.

[8] Plaintiffs state that the Court erred by relying on the Second Circuit's standard for aiding and abetting liability under the ATS that was expressed in <u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 582 F.3d 244, 258–59 (2d Cir. 2009), instead of the standard adopted by the D.C. Circuit in <u>Exxon Mobil</u>. Pls.' Mot. for Recons. at 3 n.4. Not so. The D.C. Circuit disagreed with the Second Circuit's inclusion of a "purpose" element (i.e., requiring

Court then applied that standard and found plaintiffs had not sufficiently pled that BNPP aided and abetted the terrorist attacks on the U.S. embassies. Id. 29–30. Plaintiffs' oft-repeated contention that BNPP should have known or that the attacks were "reasonably foreseeable" is simply inadequate to satisfy this standard. See Mastafa v. Austl. Wheat Bd. Ltd., No. 07 CIV. 7955 (GEL), 2008 WL 4378443, at *5 (S.D.N.Y. Sept. 25, 2008) ("The knowledge element of aiding and abetting requires that a defendant have 'actual knowledge' that it is assisting in the tortious conduct," and "allegations . . . that a bank 'should have known[]' will not suffice").[9] Hence, the Court applied the correct law when it dismissed the ATS claims and there was no clear error.[10]

### 3. Common Law Claims

Finally, plaintiffs contend that the Court ignored or misapplied Halberstam in dismissing their common law claims. See Pls.' Mot. for Recons. at 12, 18–25. Plaintiffs are incorrect that "[t]he Court rejected Halberstam as the governing standard in this case." Id. at 22. The Court relied on Halberstam for the relevant common law standards for conspiracy and aiding and abetting liability, but ultimately concluded that plaintiffs had failed to plausibly allege those theories. See Mem. Op. at 31–32. The Court found that plaintiffs' conspiracy claim failed because allegations of a conspiracy to evade and defeat sanctions are not sufficient to establish conspiracy liability for

---

the aider and abettor to share the same purpose as the principal) for aiding and abetting liability. Exxon Mobil Corp., 654 F.3d at 35–39. This Court did not apply a "purpose" standard; instead, it applied the knowledge standard recognized by the D.C. Circuit in Exxon Mobil. See Mem. Op. at 29 ("Defendants must 'know that their acts assist the commission of the principal offense.'" (quoting Doe v. Exxon Mobil Corp., No. CV 01-1357(RCL), 2015 WL 5042118, at *10 (D.D.C. July 6, 2015)).

[9] See also Doe v. Drummond Co., No. 7:09-CV-01041-RDP, 2009 WL 9056091, at *11 (N.D. Ala. Nov. 9, 2009) ("[T]he Pinkerton doctrine—pursuant to which conspirators may be held liable for acts of co-conspirators that they did not intend, but which were reasonably foreseeable—is not universally recognized under international law, and therefore it may not be a basis for liability under the ATS." (citation and internal quotation marks omitted)).

[10] Plaintiffs take issue with the Court's finding that they failed to plead a violation of the law of nations for extrajudicial killing. Pls.' Mot. for Recons. at 21 n.9. But it is beyond dispute that plaintiffs only pled two violations in the complaint, see Compl. ¶¶ 252–292 (alleging the attacks constituted a crime against humanity and infringed the rights of ambassadors), and failed to include a violation for extrajudicial killing. Because "a party cannot amend its pleadings by its briefs in opposition to a dispositive motion," Hajjar-Nejad v. George Washington Univ., 873 F. Supp. 2d 1, 11 (D.D.C. 2012), the Court did not err when it did not consider this argument. See Mem. Op. at 27.

terrorist attacks, and there were no plausible allegations that BNPP acted in furtherance of a common plan with any terrorist organization, or that BNPP, Sudan, and al Qaeda were mutually dependent on one another. Id. Plaintiffs' aiding and abetting claim was deficient because the complaint failed to plausibly allege that BNPP had the requisite knowledge or provided substantial assistance to the terrorist attacks on the U.S. embassies.[11] Id. at 32.

Plaintiffs disagree with the Court's application of Halberstam. In Halberstam, the court found the live-in partner of a burglar civilly liable, as a co-conspirator and an aider and abettor, for a murder which occurred during the course of a burglary. 705 F.2d at 474. The partner had actual knowledge of the ongoing tortious activity of her companion and she provided substantial assistance to directly further the continued success of the illicit burglary scheme. Id. at 486 (the partner "knew full well the purpose of the [burglar's] evening forays"; she "was a willing partner in his criminal activities" and "knowingly" facilitated the sale of stolen goods). The court inferred an agreement between the two, as necessary to impose conspiracy liability, based on their direct contact, "symbiotic" activities, and performance of "parts of the illegal operation together at the same location," and because the partner's "continuous participation reflected her intent and desire to make the [criminal] venture succeed." Id. at 481, 486–88. In contrast, here plaintiffs failed to plausibly allege that BNPP directly funded any terrorist group, had knowledge of Sudan's use of BNPP-provided funds to sponsor terrorist activities, or knew that BNPP's conduct actually enabled the attacks. For those reasons, the Court found the comparison to Halberstam flawed. Mem. Op. at 32. Plaintiffs' mere disagreement with the Court's conclusion that Halberstam does not present

---

[11] Plaintiffs fail to address the Court's dismissal of the aiding and abetting theory in their motion. Instead, for the first time in their reply brief, they cite Bassi v. Patten, 2008 WL 4876326 (D.D.C. Nov. 12, 2008)—a case involving the question whether an individual could be held liable as an aider and abettor for a skirmish outside of a bar—and restate many of the same arguments that they raised in earlier submissions. Pls.' Reply Pls.' Reply [ECF No. 36] at 16–18. That approach does not convince the Court that it erred when it rejected plaintiffs' aiding and abetting theory.

facts analogous to those here ultimately does not warrant reconsideration.[12]  See <u>Singh</u>, 383 F. Supp. 2d at 102.

### B. Request to Amend the Complaint

In the alternative, plaintiffs request leave to amend their complaint.  Pls.' Mot. for Recons. at 2, 26.  Federal Rule of Civil Procedure 15(a) provides that a district court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  However, to receive the benefit of this standard in this Circuit, one must file a motion for leave to amend a complaint accompanied by a copy of the proposed amended complaint.  <u>Rollins v. Wackenhut Servs., Inc.</u>, 703 F.3d 122, 130 (D.C. Cir. 2012); L. Civ. R. 15.1 ("A motion for leave to file an amended pleading shall be accompanied by a copy of the proposed pleading as amended."); L. Civ. R. 7(i) (same).  Plaintiffs' request here neither included a proposed amended complaint nor otherwise indicated that they would be able to plausibly allege facts that would state a claim for relief. Plaintiffs' cursory request to amend—consisting of a single sentence repeated at the beginning and end of their motion—does not constitute a motion to amend within the contemplation of Rule 15(a).  See <u>Rollins</u>, 703 F.3d at 130 ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)."); <u>Mouzon v. Radiancy, Inc.</u>, 309 F.R.D. 60, 64 (D.D.C. 2015) (denying plaintiffs' request to amend because it "was limited to a single sentence in the conclusion" of plaintiffs' opposition to the motion to dismiss).  Plaintiffs' deficient request for leave to amend will therefore be denied.

---

[12] Plaintiffs' request for oral argument, <u>see</u> Pls.' Mot. for Recons. at 2, will be denied as moot.

## CONCLUSION

For the foregoing reasons, plaintiffs have failed to convince the Court that it committed clear error when it dismissed their ATA, ATS, and common law claims. Plaintiffs' motion for reconsideration is therefore denied. Because plaintiffs have failed to follow the law of this Circuit in requesting leave to amend, that request will also be denied.


                                        /s/
                                JOHN D. BATES
                                United States District Judge

Dated: January 11, 2018

11