**OSEN LLC**
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 402, HACKENSACK, NJ 07601   420 LEXINGTON AVENUE, SUITE 1648, NEW YORK, NY 10170
T. 201.265.6400   F. 201.265.0303                                                            T.212.354.0111

January 25, 2018

**VIA ECF**

Honorable Cheryl L. Pollak
United States Magistrate Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: *Freeman, et al. v. HSBC Holdings plc, et al.*, 14-cv-6601 (DLI)(CLP)

Dear Judge Pollak:

  Plaintiffs write in response to Defendants' January 16, 2018 letter attaching the recent decision in *Ofisi v. BNP Paribas, S.A. ("Ofisi II")*, No. 15-cv-2010 (JDB) (D.D.C. Jan. 11, 2018) denying reconsideration of the court's dismissal of the *Ofisi* complaint. Because the court found that the *Ofisi* plaintiffs cited no new law or evidence, and merely repeated the allegations and authorities they had previously argued to the Court, the Court denied reconsideration of its prior ruling. That denial adds nothing new to its prior reasoning in *Ofisi v. BNP Paribas, S.A. ("Ofisi I")*, No. CV 15-2010 (JDB), 2017 WL 4355922 (D.D.C. Sept. 29, 2017).

  As shown below, Defendants mischaracterize Judge Bates's *Ofisi* opinions, just as they did his January 27, 2017 decision in *Ofisi*'s companion case, *Owens v. BNP Paribas, S.A.*, No. 15-cv-1945 (JDB) (D.D.C.) (now on appeal to the District of Columbia Circuit Court of Appeals) in their letter to the Court dated February 28, 2017 (ECF No. 136). *See also* Plaintiffs' Letter dated February 21, 2017 (ECF No. 134) (alerting this Court to *Owens*).

  *First*, Defendants again argue that Judge Bates rejected the availability of *statutory* conspiracy as a basis for civil liability under the ATA, just as they did in their February 28, 2017 letter regarding *Owens*. But nothing in Judge Bates's refusal to reconsider changes his prior conclusion that:

> It is important to recognize that the concept of aiding and abetting under the ATA is distinct from any secondary liability that may be incorporated into § 2333 by virtue of a predicate criminal violation that qualifies as an 'act of international terrorism.' The material support statutes, §§ 2339A–C, for example, already criminalize the provision of aid to terrorists, and provide for both attempt and conspiracy liability.

*Owens v. BNP Paribas S.A*, 235 F. Supp. 3d 85, 91–92 (D.D.C. 2017). The dismissal in *Ofisi I* specifically "incorporate[s] that portion of *Owens*," *Ofisi I*, 2017 WL 4355922, at *5, as does the *Ofisi II* reconsideration opinion in rejecting the common law claim. Slip Op. at 4 (citing *Owens*).

*Second*, Defendants again claim, without support, that the allegations underlying *Owens*/*Ofisi* and *Rothstein*, described as similarly "conclusory" in *Ofisi*, Slip Op. at 6 & 6 n.5, somehow resemble the well-pleaded allegations in *Freeman*. The *Ofisi* court, much like the *Owens* court, found that plaintiffs made only conclusory allegations as to proximate cause and scienter. Examples include:

- Most of Plaintiffs' allegations, including, "[c]ritically, the detailed allegations concerning BNPP's violations of U.S. sanctions," took place *years after the attack injuring plaintiffs occurred*. *Ofisi I*, 2017 WL 4355922, at *7.
- Plaintiffs failed to allege that BNPP "knew the ultimate beneficiaries of the financial services would be a terrorist organization or terrorist." *Id.*, quoting *Owens*, 235 F. Supp. 3d at 98–99.
- Despite plaintiffs' unsupported allegations "that Sudan provided al Qaeda access to the U.S. financial system, . . . *[i]t was al Qaeda, on the other hand, that appears to have provided money to Sudan* to fund infrastructure projects." *Id.* at *8 (emphasis added).
- Plaintiffs made the "naked assertion devoid of factual support" that BNPP processed transactions "the proceeds of which were delivered to al Qaeda." *Id.*
- Plaintiffs' "most specific" allegation showing BNPP's knowledge of a connection between Sudan and bin Laden "occurred in 2007, nine years after the embassy attacks" that injured plaintiffs, "[a]nd there are no other similarly detailed factual allegations showing BNPP knew of the connection between Sudan and al Qaeda *prior to* the embassy bombings." *Id.*
- "At bottom, plaintiffs present no facts showing that BNPP knew that 'Sudan was using funds processed by BNPP—or was likely to use such funds—to support al Qaeda' . . . . [or] that any money BNPP processed for Sudan or Sudanese banks was transferred to al Qaeda prior to the attacks, or that Sudan would have been unable to assist al Qaeda without the funds that BNPP processed." *Id.* at *8-9.

The *Ofisi* plaintiffs instead alleged that "if BNPP processed transactions for Sudan and Sudanese banks, some of that money *might* end up in the hands of al Qaeda to carry out attacks." *Id.* Plaintiffs here, by contrast, have provided hundreds of detailed allegations that substantiate that Defendants all joined Iran's criminal conspiracy to provide material support to terrorism and took steps in furtherance of the conspiracy. Moreover, Plaintiffs here have also provided extensive allegations detailing how Iran's conspiracy proximately caused hundreds of acts of terrorism in Iraq. For example, the complaint alleges:

- At all relevant times, Iran was the world's most notorious state sponsor of terrorism (particularly through its Islamic Revolutionary Guard), and Hezbollah, its Lebanese proxy, was one of the world's most notorious terrorist groups, and that the State Department, Treasury, and other organizations warned Western banks, including

- Defendants, about the danger of performing illegal transactions on their behalf. *See, e.g.*, Complaint ¶¶ 10-20, 27-45, 102-22, 226-58, 515, 519, 543, 973.
- U.S. Treasury findings that Iranian bank co-conspirators Melli and Saderat transferred *at least* $150 million in dollar-denominated assets to Hezbollah and the IRGC—the entities Iran used to direct terrorist activities in Iraq against U.S. Forces (*see, e.g.*, Complaint ¶¶ 226-336)—that were necessarily cleared through New York by the members of the conspiracy. *See* Complaint ¶¶ 18, 236, 357, 367, 385-87, 419, 422-23.
- The U.S. Treasury's determination that "Iran's access to the international financial system . . . through the use of . . . deceptive techniques" "enables the Iranian regime to facilitate its support for terrorism . . . ." Complaint ¶ 172.
- Defendants knew that they were helping Iran and the Iranian bank co-conspirators circumvent the "U-Turn exemption," which permitted Iran to access dollar-denominated assets for its "legitimate" purposes (no such exemption was available to Sudan). *See, e.g.*, Complaint ¶¶ 140-72.
- Numerous contemporaneous statements by employees of Defendants discussing the transactions at issue, including concerns about "payment[s] which turn[] out to be connected to terrorism," violations of U.S. "anti-Terrorism" rules, "direct evidence against Bank Saderat, particularly in relation to the alleged funding of Hezbollah," "personal reputational damages and/or serious criminal liability," "hid[ing] true beneficiaries (who may or may not be sanctioned individuals or entities)," and "catastrophic reputational damage." *See, e.g.*, Complaint ¶¶ 383, 510, 543, 611, 665, 907-908.
- Defendants' admissions that they removed the names of Bank Melli and other Iranian banks and parties from transaction requests worth hundreds of billions of dollars by "stripping" or "covering" them. *See, e.g.*, Complaint ¶¶ 25, 45, 60, 165, 338, 523, 618, 673, 843, 920, 989, 992. Defendants also illegally processed letters of credit for entities associated with Iran's military/terror apparatus or to acquire prohibited items with military uses. *See, e.g.*, Complaint ¶¶ 173-203, 375-81, 434-42, 468-72, 674-98, 719-838.
- Defendants illegally facilitated transactions for other designated entities associated with the Islamic Revolutionary Guard Corps, including the National Iranian Oil Company, Islamic Republic of Iran Shipping Lines, Ministry of Defense Armed Forces Logistics, Iran Air, Mahan Air, and many others. *See, e.g.*, Complaint ¶¶ 41, 157-59, 197-225, 375-81, 424-25, 434-42, 450-59, 468-72, 685-838, 1012-38. Some dollar-denominated transactions were for goods with military applications, including hydraulic presses that are needed to manufacture EFPs used in the attacks injuring Plaintiffs. *See* Complaint ¶¶ 47 n.9, 825-38, 2285-86.
- A U.S. diplomatic cable explaining that Iran "channel[s] funds to militant groups that target and kill Coalition . . . forces" by using "Bank Melli and other Iranian banks to move funds internationally," and that Bank Melli accomplished this by "requesting that its name be removed from financial transactions when handling financial transactions on behalf of the IRGC." Complaint ¶ 420.

- Defendants' participation in the conspiracy occurred, and Iran's support for terrorism in Iraq and throughout the world was well known, during the relevant period. *See, e.g.*, Complaint ¶¶ 7-9, 430, 476-81, 576, 619, 668, 874, 944, 952, 995, 1013.

Also unlike *Ofisi*, the present case includes one Defendant that has been designated a Specially Designated Global Terrorist and Defendants who have been identified as having conspired to launder money for one or more *additional* Specially Designated Global Terrorists and in several cases, held accounts for them. *See, e.g.*, Complaint ¶¶ 17, 19, 374, 382-87, 614, 677, 699-706, 712, 1039-40.

Finally, Defendants also mischaracterize *Ofisi II* in claiming that it limits the application of *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) to claims brought under JASTA. Defendants simply ignore Congress's clear directive that *Halberstam* "provides the proper legal framework for how such liability should function in the context of *chapter 113B of title 18, United States Code* [constituting the entire Anti-Terrorism Act, including §2333(a)]." Pub. L. 114-222 § 1 (emphasis added).

For the reasons set forth here and in the prior briefing in this case, Defendants' motions should be denied in their entirety.

                                          Respectfully submitted,

                                          /s/ Gary M. Osen

cc:      Chief Judge Irizarry
          All Counsel