IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CHARLOTTE FREEMAN, et al., | : | |
| Plaintiffs, | : | Case No. 14-cv-6601 (DLI)(CLP) |
| v. | : | Oral Argument Requested |
| HSBC HOLDINGS PLC, et al., | : | Served:  August 31, 2018 |
| Defendants. | : | |

# BANK SADERAT PLC'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

Jeremy D. Frey
Matthew D. Foster
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel:  (212) 808-2700

Attorneys for Defendant Bank Saderat PLC

Dated:  August 31, 2018

#49886012 v8

Magistrate Judge Pollak's Report and Recommendation ("R&R") regarding defendant Bank Saderat PLC's ("BSPLC") motion to dismiss should not be adopted because the Antiterrorism Act's ("ATA") act of war limitation ("AOW") applies to the claimed injuries suffered by servicemen on active duty in combat capacities in a foreign war zone. Additionally, there is no basis for personal jurisdiction over BSPLC. For brevity and efficiency, BSPLC maintains and does not waive all its arguments contained in its filed motion to dismiss and joins in all the arguments of its co-defendants with respect to the R&R and the defenses raised against the First and Second Claims for Relief in the Second Amended Complaint ("SAC").

**I.    ACT OF WAR LIMITATION PRECLUDES THIS ACTION UNDER THE ATA**

BSPLC specifically objects to the recommendation that plaintiff servicemens' claims were not barred by AOW because they did not occur in a declared war between the U.S. and Iran. R&R p. 125. 18 U.S.C. § 2331(4)(A) provides that "any act" in the course of a declared war falls within AOW. § 2331(4)(A) does not require by its terms that the hostilities involve a declared war between two nations. By contrast, § 2331(4)(B) requires an armed conflict "between two or more nations." As a result, § 2331(4)(A) can apply to ensuing hostilities if any nation makes a sufficient declaration. Section 2331(4)(A) makes AOW applicable even in the absence of an opposing "military force" as long as there is a predicate declaration.

The Iraq War Resolution was passed by Congress and signed into law by the President. It authorized the Iraqi invasion and military action in Iraq of U.S. Armed Forces—which continue today. This is within the ATA's definition of a "declared war" under § 2331(4)(A). All of the claimed injuries occurred in Iraq during combat operations after the U.S. invasion. The Court did not take issue that the claimed injuries sufficiently occurred in the course of hostilities as required by § 2331(4). The Court below found, however, that AOW was inapplicable because the U.S. did not declare war against *Iran*. U.S. soldiers were not fighting in Iran, nor was Iran

fighting in the U.S. U.S. soldiers were fighting in Iraq and their injuries were the result of the hostilities in Iraq that were authorized by Congress and the President in the Iraq War Resolution.

This is sufficient for application of AOW to plaintiffs' claims. In *Stutts v. De Dietrich Group*, 2006 U.S. Dist. LEXIS 47638 (E.D.N.Y. 2006), plaintiffs included U.S. servicemen deployed during the 1991 Gulf War, which, like the present case, was permitted by an Authorization for Use of Military Force ("AUMF"). *Id*. at *4-5. Plaintiffs sued under the ATA for injuries sustained from toxic agents in Iraqi chemical weapons. *Id*. at *5. The exposure occurred when weapons were destroyed by Coalition forces. *Id*. Plaintiffs sought relief from (among others) banks that were correspondents under letters of credit issued to the suppliers. *Id*. The Court found AOW applicable to bar the claims even though the (1) injuries occurred *after* the cessation of armed hostilities, (2) injuries arose from "friendly fire," and (3) § 2336(a) does not apply to injuries that "happen to occur during wartime." *Id*. *19. The Court held that plaintiffs' allegations "put this case squarely within" the AOW limitation. *Id*. Just as in *Stutts*, the end of major combat operations has no bearing of AOW's application to the claimed injuries, and an AUMF suffices for purposes of AOW.

Even if the AUMF were not sufficient for a declared war in Iraq, Judge Pollak below erred in not finding that AOW applies under § 2331(4)(B), which requires an armed conflict, whether or not war has been declared, between two or more nations. Plaintiffs' SAC alleges that the claimed designated groups are proxies and agents for Iran, and operating with Iran's support and at its direction.[1] This means that the claimed injuries of plaintiff servicemen in active

---

[1]The complaint alleges: The Badr Corp is "the military wing of the Supreme Council for Islamic Revolution in Iraq." SAC ¶ 282. The Badr Corps "is a major political organization with seats in the Iraqi parliament" playing "a significant role in facilitating Special Group operations." SAC ¶ 292. IRI and IRGC have "coordinated, armed and influenced the Badr Organization," which "has funnel[ed] weapons to Iranian proxies in Iraq from 2004-2011." SAC ¶ 291, 292.

combat capacities in Iraq resulted from armed conflict between two or more nations as required by § 2331(4)(B).  It is not grounds for denial of AOW under § 2331(4)(B) that the combatants at issue were not "military forces of any origin."  Where § 2331(4)(C) requires "military forces," § 2331(4)(B) does not; the claimed Iranian proxies and agents are included.

Even if §§ 2331(4)(A) and (B) do not foreclose plaintiffs' claims, § 2331(4)(C) denies claims involving armed conflict between military forces of any origin.  The Court below erred in applying this provision of AOW and incorrectly interpreted the proper role of AOW in limiting causes of action under the ATA.  Specifically, the Court found that the ATA categorically does not permit an act of international terrorism to be limited by AOW.  R&R p. 126.  But in the ATA, AOW and "international terrorism" are distinct from each other and not mutually exclusive.  AOW and international terrorism are not the obverse of each other.  Section 2331 does not present AOW as an exclusion to, or limitation on, those acts within the definition of "international terrorism."  Instead, § 2331(4) defines AOW separately and without reference to the definition of international terrorism in § 2331(1).  Understanding ATA in this manner is not only indicated by the text of the ATA, it is required to avoid interpreting AOW as mere surplusage in the statute.  In short, the ATA requires a predicate act of international terrorism for liability, which is barred if occurring as an AOW under § 2336.  Properly applied, AOW acts as a limiting principle upon the ATA's expansive liability.  The Court's erroneous determination that an act of international terrorism cannot be AOW does not conform to the text of the ATA.

---

Another Special Group, JAM, is an Iraqi "militia" (SAC ¶ 294) known as the "Mahdi Army." SAC ¶ 294.  The Madhi Army allegedly "led the first major armed confrontation against U.S.-led forces in Iraq."  Id.  A branch is alleged to have received funding, training and weapons from IRGC. and attacked "U.S. military convoys." SAC ¶¶ 299, 301.  KH is "Iran's go-to militia in Iraq," (SAC ¶ 302) and AAH has "conducted [] thousands of IED attacks against U.S. and Iraqi forces," including rocket and mortar attacks.  SAC ¶ 325.  AAH is claimed to have been provided "significant funding" by IRI and is "an Iranian entity."  SAC ¶¶ 326, 329.

Judge Pollak also erroneously relied on the notion that a designated terrorist organization cannot be a "military force" under AOW. R&R p.127. Unlike AOW's § 2331(4)(B), (4)(C) does not require the conflict to be between nations. By these means, the statute can bar claims against irregular forces and paramilitary groups. In this respect, courts have held that the distinguishing factor of a group as a military force of any origin is whether it is acting as such in the context of the armed conflict at issue. *Kaplan v. Central Bank*, 961 F. Supp. 2d 185, 203 (D.D.C. 2013) *reversed on other grounds* 2018 U.S. App. LEXIS 20214 (D.C. Cir. 2018), *Gill v. Arab Bank*, *PLC*, 891 F. Supp. 2d 335, 377 (E.D.N.Y 2012). Similar to *Kaplan*, plaintiffs' allegations are of sustained combat with ordnance directed at armored vehicles and patrols in attacks on an occupying military force.

Nowhere in ATA's text are designated individuals and organizations categorically barred under AOW, and that would make no practical sense. Reducing AOW's application to nomenclature or status cannot be the point. Determination of whether an individual or a group is a military force (or a part thereof) is not about their status but their capacity at the time in question. *Kaplan*, 961 F. Supp. 2d at 203 (D.D.C. 2013) *reversed on other grounds* 2018 U.S. App. LEXIS 20214 (D.C. Cir. 2018). There is no basis in the text of the ATA or in reason that would bar AOW to an individual or an organization simply based on past conduct when the issue is ATA tort liability for a current one. The Court's reliance on a snippet of ATA legislative history does not conform to the statute's final text. See also *Gill*, 891 F. Supp. 2d at 371 (E.D.N.Y 2012) (ATA's legislative history not "coherent").

The SAC establishes the groups in question as "military forces" under the ATA. As such, the court must accept these allegations as true for the purposes of a motion to dismiss. AOW is not determined by allegations of a combatant's lack of an insignia at the time a missile

is launched (as in *Kaplan*) or there is a radio controlled EFP denotation directed against an armored vehicle as here. The international laws of war do not apply. *Kaplan*, 961 F. Supp. 2d at 200-201(D.D.C. 2013) *reversed on other grounds* 2018 U.S. App. LEXIS 20214 (D.C. Cir. 2018)(AOW does not incorporate international law or law of war). *See also Gill*, 891 F. Supp. 2d at 374 (E.D.N.Y. 2012) (Congress did not provide laws of war to be touchstone for AOW).

Crucially, this is not a case about attacks on civilians, but combat with U.S. military personnel in Iraq. The weapons include RPGs, IRAMs and other munitions, but those at issue are principally EFPs. As alleged, these EFPs are specifically designed for use and directed at armored military vehicles. SAC ¶ 259. What makes this case so different for purposes of AOW is that reported cases denying AOW have almost exclusively involved attacks on civilians. *Biton v. Palestinian Interim Self-Gov't Auth.*, 412 F. Supp. 2d 1, 7 (D.D.C. 2005) (civilian bus bombing); *Estate of Klieman v. Palestinian Auth.*, 424 F. Supp. 2d 153, 162-63 (D.D.C. 2006)(civilian bus bombing);*Gill v. Arab Bank, PLC*, 893 F. Supp. 2d 474, 508 (E.D.N.Y. 2012)(sniper shooting of Israeli-led delegation); *Sokolow v. Palestine Liberation Org.*, 583 F. Supp. 2d 451 (S.D.N.Y. 2008)(civilian bombings and shootings); *Kaplan v. Central Bank*, 961 F. Supp. 2d 185, 200-203 (discussing civilian attacks in context of AOW). These cases sharply contrast with the allegations of the SAC brought by soldiers which bring this case squarely within AOW. *See, Stutts*, 2006 U.S. Dist. LEXIS 47638 (E.D.N.Y. 2006). Congress could have allowed soldiers' claims for alleged combat torts under the ATA, but excluded them under AOW. There are no disputed facts at issue for determination. Based on plaintiffs' allegations in the SAC, this Court should not adopt the Report and Recommendation, but instead find AOW applies and dismiss the SAC's ATA claims against BSPLC.

## II. NO PERSONAL JURISDICTION OVER BSPLC UNDER "CONSPIRACY JURISDICTION"

BSPLC specifically object to Judge Pollak's Report and Recommendation regarding personal jurisdiction. BSPLC is not subject to general or specific personal jurisdiction in this District (or the U.S.). BSPLC does not have any presence in the U.S. nor does it conduct any business in the U.S. To find a recommended basis for specific personal jurisdiction, Judge Pollak erroneously adopted and applied "conspiracy jurisdiction." R&R p. 130. Other courts in this District have declined to adopt conspiracy jurisdiction as a basis for the exercise of judicial power over a defendant, which does not survive the Supreme Court's decision in *Walden v. Fiore*, 134 S. Ct. 115 (2014). Specific personal jurisdiction must be based on a defendant's contacts with the forum, not the defendant's contacts with persons who reside there. *In re Dental Supplies Antitrust Litig.*, 2017 U.S. Dist. LEXIS 153265 at *28 (E.D.N.Y. Sept 20, 2017). *See also, Tymoshenko v. Firtash*, 2013 U.S. Dist. LEXIS 43543 at *2-4 (S.D. N.Y. Mar. 27, 2013) (criticizing conspiracy jurisdiction and refusing to find personal jurisdiction over a foreign defendant); *In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (conspiracy jurisdiction alone cannot supply a basis for personal jurisdiction). Specific personal jurisdiction over BSPLC based on conspiratorial agency theory under both CPLR Sections 302(a)(1) and (a)(2) fails for this reason alone.

Even if this Court were to accept conspiracy jurisdiction, Judge Pollak erred in relying on the Deferred Prosecution Agreement ("DPA") from a non-party to recommend finding specific personal jurisdiction as to BSPLC. To the extent BSPLC is referenced in the Lloyd's DPA, it is peripheral and mentioned only collectively along with other Iranian banks, their branches and

subsidiaries.² The only factual assertion in the DPA specific to BSPLC is irrelevant for this matter, and notes that BSPLC maintained an unspecified correspondent account at Lloyds somewhere else. Lloyds is not a party to this action and its conduct and dealings with BSPLC are not at issue here. Importantly, the Lloyd's DPA makes no reference that any of the described conduct had any connection with any funds transfers to Hezbollah fronts, Hezbollah, Lebanon, or terrorism at all. To the extent there was any conspiracy (which is disputed), the claimed object would have been directed at U.S. banking regulations and not support of terrorism. The DPAs do not support any plausible nexus between this forum and BSPLC, as they do not demonstrate any element of plaintiffs' claims arising from BSPLC's alleged indirect New York contacts and the torts at issue. Of course, it is no accident that the same is true of the other DPAs as well; no nexus is shown by any of them. Indeed, the DPAs support BSPLC's position on personal jurisdiction as the conduct the DPAs describe has no connection to plaintiffs' claims regarding terrorism in Iraq.³

In contrast to *Licci v. Lebanese Can. Bank, SAL*, 20 N.Y. 3d 327 (2012), there is no allegation BSPLC had any account in New York, but instead correspondent accounts outside the U.S. with other non-U.S. banks. There are no allegations of direct dealing by BSPLC in New York, nor could there be. Allegations that unidentified U.S. dollar transactions, processed in a manner that caused them to pass through New York in transactions involving other foreign

---

² A complaint that lumps actors together and fails to differentiate them, fails to state a claim for relief. *Trans World Airlines, Inc. v. 47th Street Photo, Inc.*, 1990 U.S. Dist. LEXIS 4227, at *18 (S.D.N.Y. Apr. 13, 1990) ("the complaint must also clearly identify the nature of each defendant's alleged participation in the [conduct]. Generalized statements of wrongdoing concerning all defendants will not be sufficient."). Allegations of forum activity that do the same provide no basis for personal jurisdiction.

³ Such is also the case with the allegations concerning LOC transactions, none of which are connected to terrorist activity.

banks, does not satisfy plaintiffs' burden that BSPLC purposefully was doing business in this forum.

As we have argued, any other result here will be something new. It will mean specific jurisdiction may result anytime a non-U.S. financial institution (with no other U.S. contacts) uses a non-U.S. correspondent bank outside the U.S., which in turn fulfills customer orders through New York. Such a rule would be a virtual "big bang" of new U.S. jurisdiction. Without any correspondent account in New York of its own and without proof of purposeful availment of that account by BSPLC (as in *Licci)*, the complaint fails to sufficient show personal jurisdiction over BSPLC in New York (or the U.S.) as a matter of law.

Additionally, as to CPLR § 301(a)(2), personal jurisdiction has been traditionally predicated on physical presence in New York, which is absent here. *DirectTV Latin Am. v. Park,* 691 F. Supp.2d 405,418 (S.D.N.Y. 2010). Not only is the locus of the alleged torts in Iraq and not New York, as BSPLC and its codefendants have asserted conspiracy-based jurisdiction is not available since the ATA does not provide for conspiracy-based liability. The result under the constitutional due process minimum contacts analysis is the same.

### III. CONCLUSION

This Court should not adopt the Report and Recommendation, but instead grant BSPLC's motion to dismiss.

/s/ Jeremy D. Frey
Jeremy D. Frey
Matthew D. Foster
PEPPER HAMILTON LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018
Tel: (212) 808-2700

Attorneys for Defendant Bank Saderat PLC