UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CHARLOTTE FREEMAN, *et al.*,

                      Plaintiffs,

        -against-

HSBC HOLDINGS PLC, *et al.*,

                     Defendants.

14-CV-6601 (DLI) (CLP)

---

**MOVING DEFENDANTS' JOINT OBJECTIONS TO THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

August 31, 2018

# TABLE OF CONTENTS

**Page**

LEGAL STANDARD ....................................................................................................... 1

OBJECTIONS .................................................................................................................... 2

BASES OF OBJECTIONS ................................................................................................ 3

I.      THE R&R DISPLACED THE ATA'S AND JASTA'S COMPREHENSIVE
        STATUTORY STRUCTURE SETTING FORTH THE PRECISE EXTENT OF
        CIVIL LIABILITY FOR BANKS ALLEGED TO HAVE ENGAGED IN THE
        FINANCING OF TERRORISM (R&R §§ III, IV.A-B, V.B) ................................. 3

        A.      Primary Liability Under Section 2333(a) of the ATA (R&R §§ III, V.B) .............. 4

        B.      Secondary Liability Under Section 2333(d) of the ATA (R&R §§ IV.A-B,
                V.B) .................................................................................................................. 5

II.     THE R&R FAILED TO APPLY THE EXPRESS STATUTORY LIMITATIONS
        FOR SECONDARY CONSPIRACY LIABILITY SET FORTH IN 18 U.S.C.
        § 2333(d)(2) (R&R §§ IV.A-B, V.B.1-4) ......................................................... 8

        A.      OBJECTION 1:  The R&R Misapplied the First Threshold Requirement in
                Section 2333(d)(2) that the Act of International Terrorism Must Be
                "Committed, Planned, or Authorized" *by an FTO* (R&R §§ IV.A-B,
                V.B.1-4) ............................................................................................................. 8

        B.      OBJECTION 2:  The R&R Did Not Apply the Second Threshold
                Requirement in Section 2333(d)(2) that the Defendant Have "Conspire[d]
                with *the Person Who Committed the Act of International Terrorism*"
                (R&R §§ IV.A-B, V.B.1-4) .............................................................................. 11

        C.      OBJECTION 3:  The R&R Erroneously Applied *Halberstam* To Override
                JASTA's Statutory Requirements (R&R §§ IV.A-B, V.B.1-4) ........................... 18

III.    THE R&R DISREGARDED CONTROLLING SECOND CIRCUIT
        PRECEDENT AND CLEAR STATUTORY LANGUAGE IN ANALYZING
        PLAINTIFFS' PRIMARY LIABILITY CLAIMS (R&R §§ II.B, III, V.B) ................... 22

        A.      OBJECTION 4:  The R&R Failed To Analyze Plaintiffs' Primary Liability
                Claims Under *Rothstein* (Claims I-VII) (R&R § V.B) ..................................... 23

                1.      *Rothstein* Remains Fully Applicable to Plaintiffs' Primary Liability
                        ATA Claims. ....................................................................................... 24

2.   The Causal Gaps in the Complaint Require Dismissal of the First and Second Claims for Relief ........................................................................26

B.   OBJECTION 5:  The R&R Erroneously Failed To Apply the Independent Statutory Requirement Recognized in *Linde* That the Complaint Plausibly Allege That the Moving Defendants Committed Acts of International Terrorism (Claims I-VII) (R&R § V.B) ...............................................................27

C.   OBJECTION 6:  The R&R Erroneously Applied the Definitional Requirements of Section 2332d (Claims III and IV) (R&R § V.B.6) .................29

D.   OBJECTION 7:  The R&R Erroneously Failed To Apply the Second Circuit's Requirements To State a Primary Liability Claim in the Separate Claims Asserted Against Commerzbank (Claims V and VI) (R&R § V.B.5) ...........................................................................................................34

1.   The Complaint Fails To State a Primary Liability Claim for Commerzbank's Transactions with IRISL (Claim V) (the "IRISL Claim") .........................................................................................34

2.   The Complaint Fails To State a Primary Liability Claim for Commerzbank's Transactions with Orphans Project Lebanon (Claim VI) (the "Orphans Project Claim") ..............................................35

E.   OBJECTION 8:  The R&R Failed To Apply *Rothstein* and Incorrectly Applied *Linde* to Plaintiffs' Seventh Claim for Relief Against SCB (Claim VII) (R&R § V.B.4(d)) ..............................................................................37

1.   The R&R Improperly Failed To Apply *Rothstein* to the Seventh Claim for Relief Against SCB .......................................................................37

2.   The R&R Incorrectly Concluded That Whether Plaintiffs Pled That SCB Committed an Act of International Terrorism Is a Question for the Jury ...................................................................................................39

CONCLUSION.............................................................................................................40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abecassis v. Wyatt*,
    785 F. Supp. 2d 614 (S.D. Tex. 2011) ................................................................... 30

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) .............................................................................................. 5, 25

*Aron v. Morgan Stanley Inv. Advisors Inc.*,
    464 F.3d 338 (2d Cir. 2006) ...................................................................................... 11

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................. 9, 11

*Bank of America Corp. v. City of Miami*,
    137 S. Ct. 1296 (2017) ................................................................................................ 25

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 554 (2007) ..................................................................................................... 11

*Boim v. Holy Land Foundation*,
    549 F.3d 685 (7th Cir. 2008) ..................................................................................... 15

*Brill v. Chevron Corp.*,
    No. 15-cv-04916-JD, 2018 WL 3861659 (N.D. Cal. Aug. 14, 2018) .......................... 7, 17, 19

*Burnett v. Al Baraka Inv. & Dev. Corp.*,
    274 F. Supp. 2d 86 (D.D.C. 2003) ............................................................................ 36

*Central Bank of Denver v. First Interstate Bank of Denver, N.A.*,
    511 U.S. 164 (1994) ........................................................................................ 10, 32, 33

*Conn. Nat'l Bank v. Germain*,
    503 U.S. 249 (1992) ............................................................................................. 13, 19

*Corley v. United States*,
    556 U.S. 303 (2009) .................................................................................................... 31

*Crosby v. Nat'l Foreign Trade Council*,
    530 U.S. 363 (2000) .................................................................................................... 31

*Deposit Ins. Agency v. Leontiev*,
    No. 17MC00414GBDSN, 2018 WL 3536083 (S.D.N.Y. July 23, 2018) ..................... 30

*Dodd v. United States*,
    545 U.S. 353 (2005) ..................................................................................................11

*EM Ltd. v. Banco Central de la República Argentina*,
    800 F.3d 78 (2d Cir. 2015) ................................................................................ 32, 33

*Fields v. Twitter*,
    881 F.3d 739 (9th Cir. 2018) ....................................................................................25

*Gill v. Arab Bank, PLC*,
    893 F. Supp. 2d 474 (E.D.N.Y. 2012) ................................................... 10, 14, 15

*Goldberg v. UBS*,
    660 F. Supp. 2d 410 (E.D.N.Y. 2009) ...................................................................35

*Greenbaum v. Handlesbanken*,
    26 F. Supp. 2d 649 (S.D.N.Y. 1998) ......................................................................30

*Halberstam v. Welch*,
    705 F.2d 472 (D.C. Cir. 1983) .......................................................................passim

*Hemi Grp., LLC v. City of New York*,
    559 U.S. 1 (2010) ........................................................................................................5

*Henson v. Santander Consumer USA Inc.*,
    137 S. Ct. 1718 (2017) ...................................................................... 11, 16, 30, 32

*Holmes v. Secs. Investor Prot. Corp.*,
    503 U.S. 258 (1992) ...................................................................................................5

*Hussein v. Dahabshiil Transfer Servs. Ltd.*,
    230 F. Supp. 3d 167 (S.D.N.Y. 2017) ................................................... 10, 14, 25

*J.C. v. Mark Country Day Sch.*,
    No. 03-cv-1414-DLI, 2007 WL 201163 (E.D.N.Y. Jan. 23, 2007) (Irizarry, J.) .....................1

*Jesner v. Arab Bank*,
    138 S. Ct. 1386 (2018) ..............................................................................................3

*JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure, Ltd.*,
    536 U.S. 88 (2002) ...................................................................................................29

*Linde v. Arab Bank, PLC*,
    882 F.3d 314 (2d Cir. 2018) ...........................................................................passim

*Linde v. Arab Bank, PLC*,
    944 F. Supp. 2d 215 (E.D.N.Y. 2013) .......................................................... 15, 23

*Mastafa v. Chevron Corp.*,
   770 F.3d 170 (2d Cir. 2014) ........................................................................28

*Matthew v. Unum Life Ins. Co. of America*,
   639 F.3d 857 (8th Cir. 2011) ......................................................................16

*Morales v. Trans World Airlines, Inc.*,
   504 U.S. 374 (1992) ....................................................................................31

*National Council of Resistance of Iran v. Dep't of State*,
   373 F.3d 152 (D.C. Cir. 2004) ..................................................................9, 33

*Newburger, Loeb & Co. v. Gross*,
   563 F.2d 1057 (2d Cir. 1977) ......................................................................37

*O'Neill v. Al Rajhi Bank (In re Terrorist Attacks on Sept. 11, 2001)*,
   714 F.3d 118 (2d Cir. 2013) ..................................................................passim

*O'Sullivan v. Deutsche Bank AG*,
   17-cv-08709-LTS-GWG, Dkt. No. 118 (S.D.N.Y. April 26, 2018) ..................... 7, 16, 17, 18

*Ofisi v. BNP Paribas S.A.*,
   278 F. Supp. 3d 84 (D.D.C. 2017) .............................................................25, 31

*Owens v. BNP Paribas S.A.*,
   897 F.3d 266 (D.C. Cir. 2018) ................................................................passim

*Owens v. BNP Paribas S.A.*,
   235 F. Supp. 3d 85 (D.D.C. 2017) ................................................................40

*Pa. Dep't of Corr. v. Yeskey*,
   524 U.S. 206 (1998) ....................................................................................18

*Pennie v. Twitter, Inc.*,
   281 F. Supp. 3d 874 (N.D. Cal. 2017) ............................................................19

*Rothstein v. UBS AG*,
   708 F.3d 82 (2d Cir. 2013) ....................................................................passim

*Rothstein v. UBS AG*,
   772 F. Supp. 2d 511 (S.D.N.Y. 2011) .............................................................34

*Samsun Logix Corp. v. Bank of China*,
   740 F. Supp. 2d 484 (S.D.N.Y. 2010) .............................................................29

*Shaffer v. Deutsche Bank AG*,
   No. 16-cr-497, 2017 WL 8786497 S.D. Ill. Dec. 7, 2017) .................................. 16, 20, 23, 25

*Siegel v. HSBC Bank USA, N.A.*,
  No. 17CV6593 (DLC), 2018 WL 3611967 (S.D.N.Y. July 27, 2018) ................... 5, 7, 17, 20

*Stansell v. BGP, Inc.*,
  No. 8:09-cv-2501-T-30AEP, 2011 WL 1296881 (M.D. Fla. Mar. 31, 2011) ........................28

*Stutts v. De Dietrich Grp.*,
  No. 03-CV-4058 (ILG), 2006 WL 1867060 (E.D.N.Y. June 30, 2006) .........................28, 40

*United States v. Chalmers*,
  474 F. Supp. 2d 555 (S.D.N.Y. 2007) ...........................................................................30, 31

*Weiss v. Nat'l Westminster Bank PLC*,
  453 F. Supp. 2d 609 (E.D.N.Y. 2006) ..................................................................................36

*Weiss v. Nat'l Westminster Bank PLC*,
  768 F.3d 202 (2d Cir. 2004) .................................................................................................13

*Wultz v. Islamic Republic of Iran*,
  755 F. Supp. 2d 1 (D.D.C. 2010) .........................................................................................37

**Statutes & Rules**

8 U.S.C. § 1189 .........................................................................................................................5

12 U.S.C. § 632 .......................................................................................................................29

18 U.S.C. § 2331 ..............................................................................................................passim

18 U.S.C. § 2332d ............................................................................................................passim

18 U.S.C. § 2333 ..............................................................................................................passim

28 U.S.C. § 1603(a) .................................................................................................................32

28 U.S.C. § 1605(a) .................................................................................................................32

28 U.S.C. § 1610 .....................................................................................................................32

31 C.F.R. Part 560 ...................................................................................................................33

Fed. R. Civ. P. 72(b) .............................................................................................................1, 2

Pub. L. 114-222 § 7 ...................................................................................................................6

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the undersigned Defendants—global financial institutions (the "Moving Defendants")[1]—respectfully object to the Report and Recommendation (the "R&R") of the Hon. Cheryl L. Pollak, United States Magistrate Judge, dated July 27, 2018.  (Dkt. No. 165.)  The Moving Defendants request that the Court reject the R&R and its recommended disposition and instead dismiss the Second Amended Complaint (the "Complaint" or "Compl.").  As demonstrated below, the R&R is premised on clear legal errors with respect to its application of the Anti-Terrorism Act ("ATA") and the Justice Against Sponsors of Terrorism Act ("JASTA").  Application of the plain language of the ATA and JASTA and relevant precedent from the Supreme Court, Second Circuit and numerous other courts requires dismissal of the Complaint for failure to state a claim.[2]  Because this is the third complaint Plaintiffs have filed, dismissal with prejudice is appropriate.

## LEGAL STANDARD

Following a magistrate judge's submission of a report and recommendation with respect to a dispositive motion, "a party may serve and file specific written objections to the proposed findings and recommendations".  Fed. R. Civ. P. 72(b)(2).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  *Id.* 72(b)(3); *see also J.C. v. Mark Country Day Sch.*, No. 03-cv-1414-DLI, 2007 WL 201163, at *1 (E.D.N.Y. Jan. 23, 2007) (Irizarry, J.).  Rule 72(b)(3) further provides that the

---

[1] The "Moving Defendants" are HSBC Holdings plc, HSBC Bank plc, HSBC Bank Middle East Limited, HSBC Bank USA, N.A. (collectively, "HSBC"), Barclays Bank PLC, Standard Chartered Bank ("SCB"), The Royal Bank of Scotland N.V. (f/k/a ABN AMRO Bank N.V.) ("RBS"), Credit Suisse AG ("Credit Suisse") and Commerzbank AG ("Commerzbank").

[2] The Court's August 6, 2018 Order directed the parties "not to include preliminary statements of their arguments or recite factual and procedural background already contained in the parties' moving papers".  Accordingly, the discussion below incorporates by reference relevant factual and procedural background contained in the Moving Defendants' opening and reply briefs and notices of supplemental authority in support of the motion to dismiss.

"district judge may accept, reject, or modify the recommended disposition; receive further

evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P.

72(b)(3).

## OBJECTIONS

The Moving Defendants respectfully object to Sections II.B, III, IV.A-B, and V.B

of the R&R's Discussion, except for Section V.B.4(a), as well as to its Conclusion.  The Moving

Defendants' specific objections are listed below, followed by a discussion of the bases for the

objections.

1.  The R&R erroneously suggested that entities that were not specifically designated as foreign terrorist organizations ("FTOs") satisfy JASTA's first threshold requirement that an act of international terrorism be committed, planned, or authorized "by an organization that has been designated as a [FTO]", 18 U.S.C. § 2333(d)(2) (*see* R&R §§ IV.A-B, V.B.1-4);

2.  The R&R failed to apply JASTA's second threshold requirement for conspiracy liability that the defendant have "conspire[d] with the person who committed the act of international terrorism", 18 U.S.C. § 2333(d)(2) (*see* R&R §§ IV.A-B, V.B.1-4);

3.  The R&R erroneously used *Halberstam*'s common-law standard of secondary liability to override JASTA's express statutory requirements, including the two threshold requirements set forth above (*see* R&R §§ IV.A-B, V.B.1-4);

4.  The R&R failed to analyze Plaintiffs' primary liability claims under controlling Second Circuit precedent in *Rothstein*, which sets forth a clear standard of proximate cause for ATA actions that Plaintiffs have not met (*see* R&R § V.B);

5.  The R&R failed to apply the ATA's requirement that the complaint plausibly allege that the defendant committed acts of international terrorism (*see* R&R § V.B);

6.  The R&R misinterpreted the definitions of "United States person" and "financial transaction with the government of" Iran under 18 U.S.C. § 2332d (*see* R&R § V.B.6);

7.  The R&R failed to apply the Second Circuit's requirements concerning proximate cause and the commission of "an act of international terrorism" in the separate primary liability claims against Commerzbank.  The R&R also incorrectly concluded that there is pendent jurisdiction over the Orphans Project Claim against Commerzbank even though that claim has no relationship to the conspiracy alleged in the Complaint (*see* R&R V.B.5); and

2

8.     The R&R failed to apply *Rothstein* and incorrectly applied *Linde* to Plaintiffs' Seventh Claim for Relief against SCB, which does not plausibly allege proximate cause or that SCB committed an act of international terrorism (*see* R&R § V.B.4(d)).

## BASES OF OBJECTIONS

I.     **THE R&R DISPLACED THE ATA'S AND JASTA'S COMPREHENSIVE STATUTORY STRUCTURE SETTING FORTH THE PRECISE EXTENT OF CIVIL LIABILITY FOR BANKS ALLEGED TO HAVE ENGAGED IN THE FINANCING OF TERRORISM (R&R §§ III, IV.A-B, V.B)**

As recently as April 2018, the Supreme Court held that the limits of liability under the ATA were carefully drawn by Congress and cautioned against allowing plaintiffs to "bypass Congress' express limitations on liability under the [ATA] simply by bringing" a lawsuit under another law, the Alien Tort Statute:

> "The [ATA] . . . is part of a comprehensive statutory and regulatory regime that prohibits terrorism and terrorism financing. The detailed regulatory structures prescribed by Congress and the federal agencies charged with oversight of financial institutions reflect the careful deliberation of the political branches on when, and how, banks should be held liable for the financing of terrorism. It would be inappropriate for courts to displace this considered statutory and regulatory structure by holding banks subject to common-law liability in actions filed under the [Alien Tort Statute]."

*Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1405 (2018).  Though the R&R acknowledged *Jesner* in passing (*see* R&R at 37 n.35), it in essence did precisely what the Supreme Court warned against—it impermissibly sought to expand liability under the ATA and thereby "displace[d]" the ATA's "considered structure" by overlooking and going well beyond the specific boundaries Congress set out in the statute.  In this section, the Moving Defendants briefly describe the structure of the ATA pre- and post-JASTA before addressing the ways in which the R&R committed legal error, both in its articulation of that structure and in the way it displaced clear statutory requirements and ignored binding precedent (*see* Sections II and III *infra*).

A.      **Primary Liability Under Section 2333(a) of the ATA (R&R §§ III, V.B)**

Although the ATA is largely comprised of criminal prohibitions relating to

terrorism, Section 2333(a) creates a civil cause of action for U.S. nationals "injured . . . by reason

of an act of international terrorism".   Section 2333(a) incorporates the definition of "international

terrorism" in 18 U.S.C. § 2331(1), to wit, activities that:

> "(A) involve violent acts or acts dangerous to human life that are a
> violation of the criminal laws of the United States or of any State,
> or that would be a criminal violation if committed within the
> jurisdiction of the United States or of any State;
>
> (B) appear to be intended—(i) to intimidate or coerce a civilian
> population; (ii) to influence the policy of a government by
> intimidation or coercion; or (iii) to affect the conduct of a
> government by mass destruction, assassination, or kidnapping; and
>
> (C) occur primarily outside the territorial jurisdiction of the United
> States . . . ."

A Section 2333(a) primary liability claim consists of several basic elements.   *First*, the plaintiff

must be a U.S. national.   *Second*, the plaintiff must plausibly allege that the defendant itself

committed an act of international terrorism as defined in Section 2331(1).   *See Linde v. Arab*

*Bank, PLC*, 882 F.3d 314, 325-26, 332 (2d Cir. 2018); *Rothstein v. UBS AG*, 708 F.3d 82, 97

(2d Cir. 2013).   Accordingly, any primary liability ATA claim requires plausible allegations that

the defendant's conduct meets the requirements of Section 2331(1), separate and apart from the

ATA's predicate criminal statutes.   *Linde*, 882 F.3d at 326.

*Third*, to state a primary liability claim, the plaintiff must plausibly allege injury

"by reason of" the defendant's act of international terrorism, 18 U.S.C. § 2333(a), which the

Second Circuit has defined to require plausible allegations that the defendant's act "proximately

caused" the plaintiff's injury.   *See Rothstein*, 708 F.3d at 95; *accord O'Neill v. Al Rajhi Bank (In*

*re Terrorist Attacks on Sept. 11, 2001)*, 714 F.3d 118, 123-24 (2d Cir. 2013); *Owens v. BNP*

4

*Paribas, S.A.*, 897 F.3d 266, 275 (D.C. Cir. 2018); *Siegel v. HSBC Bank USA*, *N.A.*,

No. 17CV6593 (DLC), 2018 WL 3611967, at *3 (S.D.N.Y. July 27, 2018), *appeal docketed*,

No. 18-2540 (2d Cir. Aug. 27, 2018).  As the Supreme Court has held, proximate cause requires

"some direct relation between the injury asserted and the injurious conduct alleged".  *Hemi Grp.,*

*LLC v. City of New York*, 559 U.S. 1, 9 (2010) (quoting *Holmes v. Secs. Investor Prot. Corp.*,

503 U.S. 258, 268 (1992)); *accord Rothstein*, 708 F.3d at 91-92 (observing that "with respect to

'proximate causation, the central question . . . is whether the alleged violation led directly to the

plaintiff's injuries'" (quoting *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006))).

### B. Secondary Liability Under Section 2333(d) of the ATA (R&R §§ IV.A-B, V.B)

Prior to JASTA's enactment in September 2016, it was the law in this Circuit that

the ATA did not provide for secondary civil liability.  *See Linde*, 882 F.3d at 319-20 ("Initially,

the ATA afforded civil relief only against the principals perpetrating acts of international

terrorism.  It provided no civil action against secondary actors who, while not committing

international terrorist acts themselves, facilitated such acts by others.").

JASTA, which is codified at 18 U.S.C. § 2333(d), amended the ATA by adding a

limited cause of action for secondary aiding-and-abetting and conspiracy liability.  Specifically,

JASTA provides:

> "In an action under subsection (a) for an injury arising from *an act of international terrorism committed, planned, or authorized by an organization that had been designated as a foreign terrorist organization* under section 219 of the Immigration and Nationality Act (8 U.S.C. 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to *any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.*"

5

*Id.* § 2333(d)(2) (emphases added).  JASTA applies to civil ATA actions—including the instant one—alleging injuries sustained on or after September 11, 2001 that were pending as of or commenced after the date of the law's enactment.  Pub. L. 114-222 § 7.[3]

   Plaintiffs chose not to seek to amend their Complaint in light of JASTA.  Instead, in their October 2016 response to the Moving Defendants' motion to dismiss, Plaintiffs acknowledged the new, post-JASTA context in which their Complaint would now be assessed and argued that (1) they were now seeking—in addition to their theory that such claims were premised on "*primary liability* with 'the character of secondary liability'" (Dkt. No. 125 at 25 (emphasis in original))—to also rely on JASTA-based conspiracy liability for their First and Second Claims for Relief[4] and (2) as to the remaining claims for relief (the Third through Seventh Claims for Relief), Plaintiffs were exclusively asserting primary liability claims and not relying on JASTA secondary liability for any of those claims.  (*See* Dkt. No. 125 at 26, 44-68.)

   In enacting JASTA, Congress declined to create a general or common-law type of secondary liability under the ATA, but instead limited such liability, whether on a conspiracy or aiding-and-abetting theory, in two ways.  *First*, Section 2333(d)(2) provides that it only applies to injuries arising from acts of international terrorism "committed, planned, or authorized" by an organization that had been officially designated an FTO as of the date on which the act was

---

 [3] The R&R appears to misunderstand the Moving Defendants' argument that "there is no secondary liability under Section 2333(a) for claims to which JASTA does not apply" (R&R at 31) as an argument disputing JASTA's retroactivity, which the Moving Defendants have not argued and do not argue here.  *See Linde*, 882 F.3d at 320.  Instead, the Moving Defendants' argument is that there is no secondary liability under the ATA *other than* as set forth in JASTA, and Plaintiffs' claims do not plausibly allege the elements necessary to state a claim under JASTA.  (*Infra* §§ II.A, II.B.)

 [4] Plaintiffs and the R&R do not suggest that Plaintiffs' First or Second Claims for Relief allege the elements of secondary aiding and abetting liability.  (Dkt. No. 125 at 32.)

"committed, planned, or authorized".  *Second*, Section 2333(d)(2) provides that it only applies to

a "'person who aids and abets, by knowingly providing substantial assistance [to], or who

conspires with the person who committed such an act of international terrorism'".  *Linde*, 882

F.3d at 320 (alteration in original) (quoting 18 U.S.C. § 2333(d)(2)).

In *Linde*, the Second Circuit held that there is no secondary liability under the

ATA for claims to which JASTA does not apply—that is, there is no "alternative" common law

theory of secondary liability under the ATA.  882 F.3d at 319-20; *accord Owens*, 897 F.3d at

276, 278 (affirming dismissal of ATA claims alleging secondary liability for injuries arising

before effective date of JASTA, "[i]f anything, JASTA's passage confirms that Congress knew

how to provide for aiding and abetting liability explicitly and that the version of § 2333 in effect

at the time of the embassy bombings [in 1998] did not provide for that liability").

The R&R based its refusal to dismiss Plaintiffs' facially deficient claims, in part,

on the notion that the enactment of JASTA and the Second Circuit's decision in *Linde* "urge[d]

judicial restraint at this preliminary stage in the litigation".  (R&R at 135.)  However, nothing in

JASTA or *Linde* suggests a relaxed pleading standard for ATA claims or constitutes a directive

that lower courts avoid granting dismissal of insufficiently pled ATA claims.  Courts continue

after JASTA, and post-*Linde*, to apply the statute's plain language to dismiss ATA claims.  *See,

e.g.*, *Siegel*, 2018 WL 3611967, at *5 (applying *Linde* to dismiss JASTA aiding-and-abetting

claims alleging bank defendants provided financial services to an intermediary for a terrorist

organization); *Brill v. Chevron Corp.*, No. 15-cv-04916-JD, 2018 WL 3861659, at *3 (N.D. Cal.

Aug. 14, 2018) (applying *Linde* to dismiss aiding-and-abetting JASTA claims alleging that

defendant paid illegal kickbacks to buy Iraqi oil while Saddam Hussein was actively supporting

terrorism); *O'Sullivan*, 17-cv-08709-LTS-GWG Dkt. No. 118 at 14 (applying *Linde* to conclude

that defendants' motion to dismiss secondary liability conspiracy and aiding-and-abetting claims alleging that defendants stripped information from financial services for Iran as part of a conspiracy with Iran's agents was "strong").  The R&R does not cite *any* court that has denied a motion to dismiss secondary liability claims post-JASTA.  (*See also* Dkt. No. 126 at 8-10.)

## II.   THE R&R FAILED TO APPLY THE EXPRESS STATUTORY LIMITATIONS FOR SECONDARY CONSPIRACY LIABILITY SET FORTH IN 18 U.S.C. § 2333(d)(2) (R&R §§ IV.A-B, V.B.1-4)

Plaintiffs purport to assert JASTA-based conspiracy claims as part of their First and Second Claims for Relief.  The Complaint, however, does not plausibly allege Section 2333(d)(2)'s two express statutory conspiracy requirements:  (1) that an act of international terrorism be "committed, planned, or authorized" by an FTO; and (2) that defendants "conspire[d] with the person who committed the act of international terrorism."  In fact, the R&R did not find that Plaintiffs' allegations satisfied those threshold elements.  Instead, the R&R impermissibly read these express and clear requirements out of the statute based on a misinterpretation of JASTA that no other court has adopted.

### A.   OBJECTION 1:  The R&R Misapplied the First Threshold Requirement in Section 2333(d)(2) that the Act of International Terrorism Must Be "Committed, Planned, or Authorized" *by an FTO* (R&R §§ IV.A-B, V.B.1-4)

The first threshold requirement of JASTA is that Plaintiffs' injuries arise from an act of international terrorism that was "committed, planned, or authorized" by an entity designated as an FTO "as of the date on which [the act] . . . was committed, planned, or authorized".  18 U.S.C. § 2333(d)(2).  The Complaint contains no such plausible allegations, yet the R&R erroneously concluded that the Complaint adequately stated a JASTA conspiracy claim.

8

Of the 92 attacks identified in the Complaint, 90 are not alleged to have been "committed, planned or authorized" by an entity designated as an FTO at the time of the alleged act of international terrorism.[5]   (Compl. ¶¶ 1041-2178.)   Accordingly, only two of the attacks—one in 2007 alleged to have been planned by an FTO (Hezbollah) and allegedly committed by a non-FTO (Asa'ib Ahl al-Haq), and a second in 2011 alleged to have been committed by an FTO (Kata'ib Hezbollah)—are alleged to have been planned, committed or authorized by an FTO, as required under JASTA's first element.   (*See* Compl. ¶¶ 1041-80, 2138-62; *see also* Jt. Reply in Supp. of Mot. To Dismiss, Dkt. No. 126 at 8-9.)   As a matter of law, allegations related to the remaining 90 attacks should be dismissed.

To the extent the R&R suggests that allegations that purported aliases of FTOs and non-FTOs "solicited funds" for or otherwise supported FTOs (*see* R&R at 33-37) satisfy JASTA's explicit requirement that plaintiffs allege an injury arising from an act "by an organization that has been designated as a[n FTO] under Section 219 of the Immigration and Nationality Act", 18 U.S.C. § 2333(d)(2), that suggestion is clearly erroneous.   The R&R does not cite any case applying JASTA's clear language in this way and does not identify any recognized rule of statutory interpretation to support that view.   The principal opinion that the R&R cited in support of this novel view (R&R at 36) is inapposite.   In *National Council of Resistance of Iran v. Dep't of State*, the U.S. Court of Appeals for the District of Columbia Circuit approved the State Department's designation of an Iranian organization as an FTO under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") on the basis that it was an "alias" of an already-designated FTO.   373 F.3d 152, 159 (D.C. Cir. 2004).   But not only was

---

[5] Even for those two attacks, the Complaint contains only conclusory allegations that do not meet the pleading requirements.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*National Council* decided "in the very particular context of AEDPA", *id.* at 156, not the ATA, it

dealt only with the authority of the Secretary of State to designate an FTO based on the

Secretary's determination that it was an alias of an already-designated FTO, *id.* at 158.  Nothing

in *National Council* supports the proposition that the phrase "designated as a foreign terrorist

organization", 18 U.S.C. § 2333(d)(2), includes aliases, supporters or other non-FTO sanctions

designations, not identified in the FTO designation.  JASTA is clear that the "act of international

terrorism" must have been "committed, planned, or authorized" by an organization that "had

been designated" as an FTO "as of the date" of the terrorist "act".  18 U.S.C. § 2333(d)(2).  If

Congress had wanted to include liability for terrorist acts committed by "aliases" of FTOs or

non-FTOs, it could have done so.  Expanding JASTA to include non-designated persons runs

afoul of the plain language of the statute and is clear legal error.  *See Cent. Bank of Denver v.*

*First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 184 (1994) ("The fact that Congress chose

to impose some forms of secondary liability, but not others, indicates a deliberate congressional

choice with which the courts should not interfere.").  The two other cases the R&R cites for this

proposition—*Hussein* and *Gill*—are likewise pre-JASTA cases that are inapposite for the same

reasons as *National Council*: neither stands for the proposition that non-FTOs can satisfy

JASTA's explicit requirement that the act of international terrorism be "committed, planned, or

authorized" by a designated FTO "as of the date" the act of international terrorism was

"committed, planned, or authorized", 18 U.S.C. § 2333(d)(2).  *See Hussein v. Dahabshiil*

*Transfer Servs. Ltd.*, 230 F. Supp. 3d 167 (S.D.N.Y. 2017); *Gill v. Arab Bank, PLC*, 893

F. Supp. 2d 474 (E.D.N.Y. 2012).

        The R&R's statement that "discussion of alias status is particularly salient at the

pleading stage, when it is not simple, or necessarily even feasible, to identify exactly which FTO

was behind a given attack" (R&R at 36) misapprehends the legal standard on a motion to

dismiss.  Although that standard requires that all non-conclusory factual allegations be accepted

as true, it does not eliminate the requirement that factual allegations—including those identifying

FTOs as required under the statute—be "sufficient [such that], accepted as true . . . [they] state a

claim to relief that is plausible on its face".  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 554, 570 (2007) (internal quotation marks omitted)); *Amron v. Morgan*

*Stanley Inv. Advisors Inc.*, 464 F.3d 338, 342-43 (2d Cir. 2006) (affirming dismissal of complaint

that relied "on speculation, inference, and generalized observations . . . [where] plaintiffs[]

endeavor[ed] to avoid this shortfall by asserting that specific factual allegations are impossible

without discovery . . . .") (citation omitted)).  The pleading standard is clear, and policy

objectives do not override plain statutory language.  *See Henson v. Santander Consumer USA*

*Inc.*, 137 S. Ct. 1718, 1725 (2017) (holding that courts should not presume "that any result

consistent with their account of [a] statute's overarching goal must be the law but [should]

presume more modestly instead 'that [the] legislature says what it means and means what it

says'" (quoting *Dodd v. United States*, 545 U.S. 353, 357 (2005)).

**B.** **OBJECTION 2:  The R&R Did Not Apply the Second Threshold Requirement in Section 2333(d)(2) that the Defendant Have "Conspire[d] with *the Person Who Committed the Act of International Terrorism*" (R&R §§ IV.A-B, V.B.1-4)**

The second threshold requirement of JASTA for civil conspiracy liability is that

the Moving Defendants "conspire[d] with the person who committed the act of international

terrorism", 18 U.S.C. § 2333(d)(2).  (*See* R&R at 49-123.)  The Complaint contains no such

allegations, yet the R&R erroneously concluded that the Complaint adequately stated a JASTA

conspiracy claim.

The R&R did not find that the Complaint plausibly alleges that the Moving Defendants conspired with "the person" that committed any of the 92 attacks at issue.[6]  Nor did the R&R find that the Moving Defendants conspired with Asa'ib Ahl al-Haq or Kata'ib Hezbollah, the groups that allegedly committed the two attacks in 2007 and 2011 that are alleged to meet JASTA's separate requirement that they were "committed, planned, or authorized by an organization that had been designated as [an FTO]", 18 U.S.C. § 2333(d)(2).  (*See* R&R at 49-123).

Plaintiffs define "the Conspiracy" as "an illegal criminal agreement . . . between Iran, its banking agents and various international financial institutions, by and through which Defendants knowingly participated in a criminal scheme in which they agreed to alter, falsify, or omit information from bank-to-bank payment orders . . . that involved Iran or Iranian parties . . . such as Bank Melli Iran [and] Bank Saderat Iran . . . as well as the Islamic Republic of Iran Shipping Lines ("IRISL") . . . that serve as financial and logistical conduits for the IRGC and its terrorist activities."  (Compl. ¶ 22.)  The R&R did not find—and the Complaint did not plausibly allege—(i) that Iran or any of "its banking agents" "committed" any "act of international terrorism" (much less either of the two attacks that at least attempt to clear JASTA's first statutory hurdle) or (ii) that the Moving Defendants conspired with any person or group beyond Iran and these banking entities.

Rather than apply the explicit terms of JASTA, the R&R instead took a sweeping and impermissible view of the class of persons or entities that could fall within the scope of

---

[6] In total, of the 92 attacks identified in the Complaint, the person or entity alleged to have committed, planned, or authorized the attack is only identified as to nine attacks (and, as shown above, in only two instances is alleged to have been committed, planned, or authorized by an FTO).  (*See* Jt. Reply in Supp. of Mot. to Dismiss, Dkt. No. 126 at 10 & n.5.)

Section 2333(d)(2) and of the requirement that a defendant conspire with the person or entity that committed the terrorist act.  (R&R at 33-37.)  In advancing a number of different theories, none tethered to the plain language of JASTA, to expand the universe of purported conspirators,[7] the R&R committed additional legal errors:

      *First*, the R&R cited a pre-JASTA case, *Weiss v. Nat'l Westminster Bank PLC*, 768 F.3d 202, 208-09 (2d Cir. 2014), holding that "a defendant may be liable for civil remedies under 2333(a) for providing *material support to an organization that solicits funds for an FTO*", as opposed to providing material support directly to the FTO.  (R&R at 34 (quoting *Weiss*, 768 F.3d at 209) (emphasis in R&R).)  *Weiss* is inapposite.  The case, decided in 2014, is of course silent on the requirements of the later-enacted JASTA statute and Section 2333(d)(2), and does not support the conclusion that Plaintiffs need not allege what JASTA requires—*i.e.*, plausible allegations that the Moving Defendants conspired with the person or entity that committed the attacks.  As the Second Circuit recently held in *Linde*, "in *Weiss* we addressed the 'scienter requirement' of the predicate material support violation, not the definitional requirements of the ATA."[8]  882 F.3d at 328.

---

[7] To the extent the R&R sought to make a "recommendation as to what Congress meant when it provided for" secondary liability in Section 2333(d)(2) by resorting to legislative history, that, too, was legal error.  (R&R at 33.)  Where the statutory text is clear, resort to legislative history is inappropriate.  *See Linde*, 882 F.3d 314 at 326 ("[L]egislative history cannot alter plain text that, as here, expressly defines acts giving rise to liability.") (citing *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.")).

[8] *Weiss* addressed the requirements under Section 2339B for whether, "[t]hrough a series of statutory incorporations . . . [the defendant] must have had knowledge that (or exhibited deliberate indifference to whether)" an intermediary it transferred funds to "provided support to [an FTO]"), 768 F.3d at 207, not Section 2333(d)(2)'s requirement for maintaining "an action under subsection (a) for an injury arising from an act of international terrorism committed,

*[Continued on Next Page]*

*Second*, the R&R erroneously concluded that a defendant may be secondarily liable under the ATA solely on the basis that it purportedly conspired to violate the underlying predicate material support statute.  (*See, e.g.*, R&R at 32-33 & n.30.)  The R&R purported to rely on two cases—*Hussein* and *Gill*—in holding that "JASTA simply memorializes what some courts interpreting the ATA have already concluded—namely, by conspiring to violate the material support provisions of the [ATA], Sections 2339A and 2339B, a person may be held liable for violations of Section 2333(a), if the other elements of 2333(a) are satisfied."  (R&R 32.)  Neither of these cases stands for this proposition.  *Hussein* held that a plausibly-alleged conspiracy to violate predicate criminal statutory sections (Sections 2339A-C) may in appropriate circumstances suffice to allege primary, not secondary liability.  *Hussein*, 230 F. Supp. 3d at 175-76 ("[I]t is not correct to say that a defendant liable for conspiracy under Sections 2339A–C is a 'secondary' violator of Section 2333(a).  By virtue of the statutory incorporation of Sections 2339A–C into the definition of 'international terrorism' in Section 2331, a person who conspires to violate Sections 2339A–C is a primary violator of Section 2333(a).").  *Id.* at 175 n.7.  *Linde*, however, later made clear that violation of a predicate criminal statute, whether as a conspirator or otherwise, does not suffice to establish civil liability under Section 2333(a), 882 F.3d at 327, which requires a showing of, among other things, proximate cause and that the defendant itself committed an act of international terrorism.  And *Hussein* does not address and cannot replace the clear requirements of Section 2333(d)(2) for civil conspiracy liability.

---

planned, or authorized by an organization that had been designated as a foreign terrorist organization . . . ."

The other case cited in the R&R for that same proposition (R&R at 32)—*Gill*—

supports the Moving Defendants' position. *Gill* is a pre-JASTA case and clearly states that

Section 2333(a) "should not be read to provide for secondary liability, since Congress knew how

to provide for liability of that sort if it wanted to do so." 893 F. Supp. 2d at 501. When

Congress later provided for such liability in JASTA, it set forth the clear requirements that a

plaintiff asserting civil secondary liability must satisfy, *see* 18 U.S.C. § 2333(d)(2).[9]

   *Third*, the R&R relied on a Seventh Circuit, pre-JASTA, case, *Boim v. Holy Land

Found.*, 549 F.3d 685 (7th Cir. 2008) ("*Boim III*"), to find "that conspiracy principles could

inform the question of whether a defendant may be liable under a theory of secondary liability".

(R&R at 43-44 (quoting 549 F.3d at 692-99).) In *Boim III*, the court considered whether

providing material support to an FTO that targets Americans abroad in violation of Section

2339A could amount to an act of international terrorism for purposes of civil liability under

Section 2333(a). *See* 549 F.3d at 690. Ultimately, the court found that the material support

provisions in Section 2339A were incorporated in Section 2333(a) through Section 2331(1);

therefore, in the view of the *Boim III* court, providing material support in violation of Section

2339A could lead to primary civil liability under Section 2333(a). *See id.* at 691-92. But again,

this pre-JASTA discussion of whether and when a predicate ATA violation could result in

primary civil liability does not bear on JASTA's clear definition of secondary conspiracy

---

[9] Plaintiffs' attempt to assert their claims as "primary liability with 'the character of
secondary liability'" (*see* Dkt. No. 125 at 25), fails—such liability was not viable pre-JASTA
and remains unviable post-JASTA, *see Linde*, 882 F.3d at 319-20; *Linde v. Arab Bank, PLC*, 944
F. Supp. 2d 215, 216-17 (E.D.N.Y. 2013) (finding that Section 2333(a) did not provide for
conspiracy-based liability, and noting that Congress's choice to include conspiracy liability in
the ATA's criminal provision only reinforces Congress's conscious decision not to include
conspiracy-based liability under Section 2333(a)). Any civil conspiracy liability claim must
satisfy Section 2333(d)(2).

liability.  And in any event, the Second Circuit held in *Linde* that there was no secondary liability under the ATA prior to the enactment of JASTA, 882 F.3d. at 319-20; to the extent *Boim III* can be read to suggest otherwise, it is not good law in this Circuit.

*Finally*, the R&R committed further legal error to the extent that, by broadening the meaning of the type of "person" who committed the terrorist acts (R&R at 35-37) and of the requirement that defendants "conspire" with that person (R&R at 33-34), the R&R sought to interpret JASTA's requirements to reflect what the R&R perceived to be the intent of Congress. Policy goals underlying JASTA or the Iranian sanctions regime, as established by the Treasury Department, do not negate clear statutory language.  *See Henson*, 137 S. Ct. at 1725 ("[I]t is quite mistaken to assume . . . that whatever might appear to further[ ] the statute's primary objective must be the law." (alteration in original) (citation and quotation marks omitted)); *Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 867 (8th Cir. 2011) ("[W]hen statutes are straightforward and clear, . . . policy arguments are at best interesting, at worst distracting and misleading, and in neither case authoritative." (alteration and omission in original) (citation and quotation marks omitted)).

The R&R's improper expansion of JASTA conspiracy liability is at odds with recent decisions holding that plaintiffs must plausibly allege facts that satisfy JASTA's plain language.  In *Shaffer v. Deutsche Bank AG*, the court dismissed the complaint where plaintiffs alleged that Deutsche Bank entered into "a conspiracy with Iran" rather than with an FTO (or any other entity that committed an act of terrorism that was "planned or authorized" by an FTO). No. 16-CR-497-MJR-SCW, 2017 WL 8786497, at *1 n.1 (S.D. Ill. Dec. 7, 2017).  The R&R addressed *Shaffer* in other respects (R&R at 50-51 n.43, 64) but did not address it as to this fundamental legal point.  Likewise, in *O'Sullivan v. Deutsche Bank AG*, Chief Magistrate Judge

16

Gorenstein found that, "[w]ith respect to the conspiracy theory of liability under 18 U.S.C.

§ 2333(d), subsection (d)(2) imposes conspiracy liability on a defendant who 'conspires with the

person who committed [] an act of international terrorism.'"   17-cv-08709-LTS-GWG, Dkt. No.

118 at 13 (S.D.N.Y. April 26, 2018) (Gorenstein, C.M.J.) (alteration in original).   Analyzing

allegations similar to those here, the court granted defendants' motion to stay discovery because

"the defendants have made a strong showing that they are likely to succeed on their motion to

dismiss with respect to liability under 18 U.S.C. § 2333." *Id.* at 14.[10]   Courts faced with JASTA

aiding-and-abetting claims have similarly applied the clear requirements of JASTA's statutory

text. *See Siegel*, 2018 WL 3611967, at *5 (noting that "it is particularly important to focus with

care in cases like this on each of the necessary elements to a finding that JA[ST]A has been

violated"); *Brill*, 2018 WL 3861659, at *3 (relying on "the plain language of JASTA" to reject

plaintiffs' "allegation of recklessness"; holding that the plain language of Section 2333[(d)(2)]

reaches only those "'knowingly providing substantial assistance'" and that "[t]his clear statutory

text controls").

   In sum, the R&R did not point to a single non-conclusory factual allegation that

the Moving Defendants conspired with the persons who committed any of the alleged attacks.

The R&R should have concluded that dismissal was required of all 92 attacks at issue, including

the two that arguably pass the first statutory threshold.   Accordingly, to the extent they purport to

---

[10] The motion to dismiss in *O'Sullivan* is currently pending before the Honorable Laura Taylor Swain.   On April 26, 2018, Chief Magistrate Judge Gorenstein granted the defendants' motion to stay discovery pending resolution of their motion to dismiss, *O'Sullivan*, Dkt. No. 118 at 1, agreeing that defendants have made "a 'strong showing' that they will prevail on their motions to dismiss because plaintiffs have failed to adequately allege that the defendants may be held either primarily or secondarily liable under 18 U.S.C. § 2333". *Id.* at 10.   On August 20, Judge Swain overruled the plaintiffs' objections to that order and affirmed the grant of the motion to stay. *O'Sullivan*, Dkt. No. 154 at 1.

allege JASTA conspiracy liability, the First and Second Claims for Relief should be dismissed for failure to state a JASTA conspiracy claim.

C.   **OBJECTION 3:  The R&R Erroneously Applied *Halberstam* To Override JASTA's Statutory Requirements (R&R §§ IV.A-B, V.B.1-4)**

The R&R relied in significant part on the reference to *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983) in JASTA's Findings and Purpose section to supplant JASTA's express statutory requirements with a less-demanding common-law based standard of secondary liability.  (R&R at 37-41 (citing *Halberstam*, 705 F.2d 472).)  This was legal error.  As the Supreme Court has held, a "findings and purpose" section is "irrelevant" in "the context of an unambiguous statutory text".  *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 211-12 (1998).

In *Linde*, the Second Circuit made clear that, in evaluating a claim under JASTA, courts are to apply "the *Halberstam* elements of civil aiding and abetting", but only after *first* clearing the statutory hurdles of Section 2333(d)(2) and finding that a defendant is plausibly alleged to have "aid[ed] and abet[ted], by knowingly providing substantial assistance, or . . . conspire[d] with the person who committed such an act of international terrorism."  *Linde*, 882 F.3d at 320, 329.  In other words, as in *Linde*, the R&R should have—but did not—first apply Section 2333(d)(2)'s express statutory requirements, including the two statutory thresholds discussed above (*see supra* Sections II.A and II.B), and, if those thresholds were satisfied, *only then* should it have applied the traditional conspiracy elements in *Halberstam*.[11]  Nothing in the plain text of JASTA, or in *Linde*, supports the R&R's use of *Halberstam* to override JASTA's explicit terms.  (R&R at 30-37, 30-123.)

---

[11] In *O'Sullivan*, Chief Magistrate Judge Gorenstein applied the plain terms of JASTA to conclude that a motion to dismiss similar ATA claims also premised on a conspiracy to evade economic sanctions was strong—without reaching the *Halberstam* elements.  17-cv-08709-LTS-GWG, Dkt. No. 118 at 13-14.

The R&R focused on the fact that, in JASTA's Findings and Purpose section, "Congress explained that the purpose in enacting JASTA . . . was to provide civil litigants with the broadest possible basis . . . to seek relief". (R&R at 32.) But as the Second Circuit and other courts have held, the Findings and Purpose section of JASTA does not—and cannot—eliminate the law's explicit and unambiguous requirements. *See Linde*, 882 F.3d at 326 ("[L]egislative history [contained in the Findings and Purpose section of JASTA] cannot alter plain text that, as here, expressly defines the acts giving rise to liability[.]"); *id.* ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there.") (quoting *Conn. Nat'l Bank*, 503 U.S. at 253-54); *Brill*, 2018 WL 3861659, at *3 ("Congress referred in its statement of findings and purpose to those who 'knowingly *or recklessly* contribute material support or resources' to terrorists, [but] the plain language of Section 2333 [relating to aiding-and-abetting] reaches only those 'knowingly providing substantial assistance'", and this "clear statutory text controls" (emphasis in original)); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 889 (N.D. Cal. 2017) (holding that JASTA's Findings and Purpose section "do[es] not change the plain meaning of the statute's operative clause") (quotation marks omitted), *appeal docketed*, No. 17-17536 (9th Cir. Dec. 12, 2017) .

In addition to failing to apply JASTA's threshold statutory requirements, which effectively serve as conditions precedent to whether the *Halberstam* analysis is even necessary, the R&R's analysis of *Halberstam* was also defective. For example:

*First*, in analyzing the "object of the conspiracy", the R&R erroneously conflated Plaintiffs' allegations that the Moving Defendants entered a conspiracy to evade economic sanctions with allegations—which appear nowhere in the Complaint—that the Moving Defendants entered a conspiracy to commit acts of international terrorism. (R&R at 52-53.)

19

Plaintiffs merely allege that the Moving Defendants "conspired with Iran and its banking agents
. . . to evade U.S. economic sanctions . . . and disguise financial payments".  (Compl. ¶ 6).  Just
as in *Shaffer*, such allegations fail to state a claim under the ATA because they do not show that
a defendant joined the conspiracy with the intent to commit the offenses that are its object, that
is, to commit an act of international terrorism.  (*See* Dkt. No. 150 at 2); *Shaffer*, 2017 WL
8786497, at *5 (dismissing ATA complaint; observing that "the complaint does not establish that
[the bank] participated in any conspiracy other than perhaps to evade economic sanctions").
Multiple courts have rejected the argument that an alleged conspiracy to evade economic
sanctions is a conspiracy to commit an act of international terrorism.  *See, e.g.*, *Rothstein*, 708
F.3d at 96 (holding that Congress did not intend for "any provider of U.S. currency to a state
sponsor of terrorism [to] be strictly liable for injuries subsequently caused by a terrorist
organization associated with that state"); *Siegel*, 2018 WL 3611967, at *1 (dismissing secondary
liability claims that alleged defendants "falsified or omitted information from payment messages
that involved 'prohibited' countries and institutions for the express purpose of concealing
financial activities and transactions from detection or monitoring by the United States
authorities").

       *Second*, the R&R found that "precise awareness of who one's co-conspirators are
is not a required element", and thus by allegedly transacting with Bank Saderat, the Moving
Defendants were engaging with "a State Sponsor of Terrorism and its agent, including FTO
Hezbollah".[12]  (R&R at 54-55.)  As *Rothstein* held, however, Iran "has many legitimate agencies,

---

[12] According to the R&R, (i) it "is alleged" that RBS "cooperated with, and provided
financial assistance to Bank Saderat" in the purported conspiracy and (ii) "plaintiffs assert" that
RBS was "either aware of, or deliberately indifferent to, Bank Saderat's connections with
Hezbollah as comprising the hub of this terror apparatus."  (*See* R&R at 55 (citing Compl.

*[Continued on Next Page]*

20

operations, and programs to fund", 708 F.3d at 97, and thus allegedly transacting with an Iranian bank does not establish support for terrorism. Moreover, the R&R does not address whether the alleged agents of Iran with which the Moving Defendants allegedly engaged in financial transactions were the persons or entities who committed any specific acts of international terrorism, as the ATA requires, *see* 18 U.S.C. § 2333(d)(2) (nor does the Complaint contain any plausible allegations to that effect).

       *Third*, in addressing the additional elements of a *Halberstam* conspiracy— "unlawful acts", "an overt act" and "injury"—the R&R errs repeatedly because it does not also address the elements of Section 2333(d)(2). For example, as to "unlawful acts", the R&R concluded, without explanation, that the financial transactions executed by the Moving Defendants were "all in an effort to provide material support either explicitly to FTO Hezbollah . . . or to other entities who would commit criminal acts". (R&R at 56.) Even if that were

---

¶¶ 863, 874).) In fact, Plaintiffs do not "allege" or "assert" such facts (let alone in a plausible fashion). Paragraph 863 does not allege anything regarding RBS, and paragraph 874 merely alleges that RBS "conspired with [Bank Saderat and others] to conceal evidence of [RBS]'s financial transactions from the U.S. government, law enforcement, and intelligence agencies, as well as U.S. financial institutions charged with detecting and blocking certain Iranian transactions". Nor do the five pages of the Complaint devoted to Bank Saderat's role in the purported conspiracy (Compl. ¶¶ 364-390) refer to RBS. The only other way in which the R&R purports to tie RBS to the "central hub" of the alleged terror conspiracy—through a supposed connection between RBS and the IRGC—is also unsupported by the Complaint. The R&R states that the Complaint "explicitly alleges" that RBS "knowingly laundered funds for an agent of the IRGC". (R&R at 93.) The R&R provides no citation for this statement, but is likely referring to paragraph 400 of the Complaint, which refers to the CBI, SCB, RBS, HSBC, the IRGC, and the NIOC (which is presumably the "agent of the IRGC" referenced in the R&R). As to RBS, paragraph 400 can—at most—be read to allege that CBI "maintained Eurodollar accounts" at RBS through which CBI made transfers that were allegedly "unlawful". Plaintiffs have not pleaded any knowledge on the part of RBS of any dealings between the CBI and the IRGC or the NIOC. The Complaint elsewhere contains details of the role and activities of the NIOC in the alleged conspiracy, but, again, Plaintiffs do not tie any of those allegations to RBS. Thus, there is no basis for the R&R's conclusion that RBS served as a spoke to the central conspiracy hub of Bank Saderat/Iran/Hezbollah. (R&R at 54-55.) The R&R's conclusion tying RBS to that hub rests solely on supposed allegations that do not, in fact, exist in the Complaint.

supported by non-conclusory allegations—and it is not—it does not address Section 2333(d)(2)'s requirement that the defendant conspire with the entities who committed acts that injured or killed plaintiffs.[13]

   *Finally*, the R&R appears to suggest that the Second Circuit, through *Linde*, created ambiguity in its primary liability analysis.  (*See, e.g.*, R&R at 103 (noting that "the state of the law in terms of primary liability is still unclear")).  Relying on this purported ambiguity, the R&R seems to erroneously conclude that, after *Linde*, ATA claims should not be dismissed at the pleading stage.  As noted above, however, courts continue post-JASTA, and after *Linde*, to dismiss ATA claims where plaintiffs fail to plausibly plead the elements of those claims.  (*See supra* § I.B.)

## III. THE R&R DISREGARDED CONTROLLING SECOND CIRCUIT PRECEDENT AND CLEAR STATUTORY LANGUAGE IN ANALYZING PLAINTIFFS' PRIMARY LIABILITY CLAIMS (R&R §§ II.B, III, V.B)

   The R&R did not apply the Second Circuit's clear holdings on how primary liability claims under the ATA should be evaluated.  *First*, the R&R did not apply *Rothstein*'s requirement that a plaintiff plausibly allege that a defendant proximately caused plaintiff's

---

[13] The R&R's subsequent discussion of the allegations against Credit Suisse further demonstrates the error in its overall approach to assessing the plausibility of the allegations. (R&R at 93-97.)  The R&R summarizes the allegations about the type of banking services Credit Suisse is alleged to have performed, for whom and over what period of time (R&R at 94-96), but nowhere does it find that Credit Suisse "conspire[d] with" any specific person or entity that "committed . . . an act of international terrorism" that had been "committed, planned or authorized" by an FTO, as Section 2333(d)(2) requires.  Nor could it.  Plaintiffs concede that Credit Suisse had "ceased U.S. dollar clearing transactions for Iran in November 2006" (Compl. ¶ 982), which is prior to the date of the alleged commission of the only two attacks in the Complaint that are alleged to satisfy the first threshold requirement of Section 2333(d)(2) (*id.* ¶ 1041-80, 2138-62; *see also supra* Section II.A).  The Complaint fails plausibly to allege either of JASTA's two required conspiracy elements as to Credit Suisse.

injuries.[14]  (*See infra* Sections III.A, III.D & III.E.)  *Second*, the R&R misapplied *Linde* by failing to analyze independently whether Plaintiffs plausibly alleged that the Moving Defendants committed an act of international terrorism.  (*See infra* Section III.B.)  *Third*, the R&R failed properly to apply the definitions of "United States persons" and "financial transaction with the government of [Iran]" as required under Section 2332d.  (*See infra* Section III.C.)

A.   <u>OBJECTION 4</u>:  **The R&R Failed To Analyze Plaintiffs' Primary Liability Claims Under *Rothstein* (Claims I-VII) (R&R § V.B)**

All of Plaintiffs' Claims for Relief were plead as *primary* liability claims.[15]  The R&R did not analyze the First and Second Claims for Relief as asserting primary liability, instead concluding that, on a motion to dismiss, "the Court need not make a determination as to whether plaintiffs can establish primary liability . . . because of the availability of JASTA-based conspiracy."  (R&R at 49 n.40.)  To the extent Plaintiffs purport to allege JASTA-based conspiracy, they fail to state a claim, *see supra* Section II.A, and to the extent Plaintiffs assert that these claims are pled as "*primary liability* 'with the character of secondary liability'" (*see* Dkt. No. 125 at 25), such claims fail because they are not recognized in this Circuit, *see, e.g.*, *Rothstein*, 708 F.3d at 97.  The Third and Fourth Claims for Relief—brought against HSBC, SCB, RBS and Commerzbank—premised on alleged violations of Section 2332d, were also brought as primary liability claims.  However, the R&R did not address the application of

---

[14]  As noted in Section I.B *supra*, Plaintiffs' attempt to assert a "primary liability [claim] with 'the character of secondary liability'" is not grounded in the law.  *See, e.g.*, *Rothstein*, 708 F.3d at 97; *Linde*, 882 F.3d at 319-20; *Linde*, 944 F. Supp. 2d at 216-17.  Even if it were, such a claim would still be deficient for the independent reason that it fails to satisfy the *Rothstein* proximate cause standard for primary liability.

[15]  As noted above, while Plaintiffs originally asserted that the First and Second Claims for Relief were primary liability claims (*see* Dkt. No. 125 at 25), following the enactment of JASTA, Plaintiffs asserted that they also sought to pursue the same claims on a theory of secondary liability under Section 2333(d)(2) (*see id.* at 26.)

*Rothstein* to such primary liability claims.  (*See* R&R at 105-23.)  Finally, although the R&R expressly acknowledged that the Fifth, Sixth and Seventh Claims for Relief [16] are based on "a theory of primary liability" (R&R at 87, 101), the R&R failed to apply *Rothstein* to assess the sufficiency of Plaintiffs' proximate cause allegations with respect to each of those claims.  The Moving Defendants are entitled to a ruling on the insufficiency of those claims as primary liability claims under *Rothstein* and *Linde*.  As set forth below and in the Moving Defendants' prior submissions, the absence of any plausible proximate cause allegations here requires dismissal of *all* of Plaintiffs' primary liability claims.

> 1.    <u>*Rothstein* Remains Fully Applicable to Plaintiffs' Primary Liability ATA Claims.</u>

Despite *Rothstein*, the R&R found that "the state of the law in terms of primary liability is still unclear".  (R&R at 89.)  That is simply wrong:  there is no lack of clarity as to how *Rothstein*'s proximate cause requirements apply to primary liability claims under the ATA. *Rothstein* squarely held that, in order to state a claim under Section 2333(a), a plaintiff must plausibly allege that the defendant's conduct was the "proximate cause" of the plaintiff's injury. 708 F.3d at 95.  This holding rested on the requirement that persons seeking recovery have been injured "*by reason of* an act of international terrorism".  18 U.S.C. § 2333(a) (emphasis added). The Second Circuit held in *Rothstein* that the phrase "by reason of" has a "well-understood meaning" in other statutes and has "historically been interpreted as requiring proof of proximate cause".  708 F.3d at 95.  JASTA's insertion of a narrowly defined class of secondary liability claims in Section 2333(d) does nothing to alter the "by reason of" language in Section 2333(a). No Second Circuit precedent—including *Linde*, decided in 2018—has overruled or in any way

---

[16] The Fifth and Sixth Claims for Relief are brought against Commerzbank, the Seventh Claim for Relief is brought against SCB.

altered the proximate cause standard set by *Rothstein*.  *Rothstein*'s proximate cause requirement

thus remains fully applicable to primary liability claims.

   The R&R's failure to apply *Rothstein* to Plaintiffs' primary liability claims is

legal error and contrary to decisions in ATA cases within the Second Circuit.  *See, e.g.*, *Al Rajhi*,

714 F.3d at 124 (relying on *Rothstein* to conclude that proximate cause is required to state a

claim under Section 2333); *Hussein*, 230 F. Supp. 3d at 171 (citing *Rothstein* for the proposition

that Section 2333 "requires a showing of proximate cause"); *Gill*, 893 F. Supp. 2d at 555 ("Proof

of proximate causation must be established for liability to be found under the ATA.").

   Other courts have also continued to embrace *Rothstein* when evaluating post-

JASTA primary liability ATA claims.  *E.g.*, *Owens*, 897 F.3d at 275-276; *Shaffer*, 2017 WL

8786497, at *3-*4; *Ofisi v. BNP Paribas S.A.*, 278 F. Supp. 3d 84, 102-03 (D.D.C. 2017), *order

vacated in part on other grounds*, 285 F. Supp. 3d 240 (D.D.C. 2018).  As the Supreme Court

recently held in *Bank of America Corp. v. City of Miami*, "to establish proximate cause" under

statutes like the ATA that are analogous to tort actions, "a plaintiff must do more than show that

its injuries foreseeably flowed from the alleged statutory violation".  137 S. Ct. 1296, 1301

(2017).  In a subsequent decision, the Ninth Circuit applied *Bank of America* and concluded that

"for purposes of the ATA, it is a direct relationship, rather than foreseeability, that is required".

*Fields* v. *Twitter*, 881 F.3d 739, 748 (9th Cir. 2018); *see also Rothstein*, 708 F.3d at 96-97

("[W]ith respect to 'proximate causation, the central question . . . is whether the alleged violation

led directly to the plaintiff's injuries" (alteration in original) (quoting *Anza*, 547 U.S. at 461)).

Thus, any argument that Plaintiffs' injuries "foreseeably" flow from the Moving Defendants'

financial services (*see* R&R at 58-60, 77, 86-87), cannot make up for the lack of directness under

prevailing law.

In *Owens*, issued the same day as the R&R, the U.S. Court of Appeals for the District of Columbia Circuit affirmed the dismissal of primary liability claims under the ATA that were based almost entirely on the defendant bank's guilty plea to violation of U.S. sanctions against Sudan—which, like Iran, had been designated a state sponsor of terrorism.  897 F.3d at 273.  While *Owens* did not directly apply JASTA because the attacks at issue predated JASTA's retroactivity period, the D.C. Circuit held, consistent with the Second Circuit's pre-JASTA decision in *Rothstein*, that the *Owens* plaintiffs failed to establish proximate causation because, as here with respect to the Moving Defendants' transactions involving Iranian counterparties, there were no non-conclusory allegations that the funds that went to Sudan were in fact sent to al Qaeda or were necessary for Sudan to fund the attacks that injured the plaintiffs.  *Id.* at 275-76.  The absence of any plausible proximate cause allegations here likewise requires dismissal of Plaintiffs' primary liability claims.  (*See* Dkt. No. 120 at 17-24; Dkt. No. 126 at 3-7.)

2.      *The Causal Gaps in the Complaint Require Dismissal of the First and Second Claims for Relief*

As discussed above, the secondary liability claims created by JASTA have narrow statutory requirements, which Plaintiffs have failed to meet.  (*See supra* Section II.)  Plaintiffs' primary liability claims—including the First and Second Claims for Relief (and all other Claims for Relief)—fail due to the same causal gaps in the Complaint that were dispositive in *Rothstein*:

- The Moving Defendants did not participate in the attacks;

- The Moving Defendants did not provide banking services directly to terrorists;

- The Moving Defendants' alleged actions were not necessary to any alleged terrorism funding by Iran; and

- Iran has legitimate uses for financial services.

26

(*See also* Dkt. No. 120 at 17-24; Dkt. No. 126 at 3-8.)  In light of *Rothstein* and its progeny, Plaintiffs have not, as a matter of law, pleaded a proximate causal relationship between the Moving Defendants' alleged conduct and the attacks that killed or injured Plaintiffs. Accordingly, all of Plaintiffs' primary liability claims should be dismissed.

 **B.** **OBJECTION 5**:  **The R&R Erroneously Failed To Apply the Independent Statutory Requirement Recognized in *Linde* That the Complaint Plausibly Allege That the Moving Defendants Committed Acts of International Terrorism (Claims I-VII) (R&R § V.B)**

 The Second Circuit held in *Linde* that a plaintiff asserting a primary liability claim under the ATA must plead and prove each of "the definitional requirements of § 2331(1)" as to each defendant.  882 F.3d at 326.  This requires plausible allegations that each defendant's acts were "dangerous to human life" *and* that those acts "appear to be intended" to intimidate or coerce a civilian population or to influence or affect a government.  18 U.S.C. § 2331(1).  *Linde* confirmed that these elements must be pleaded and proven separate and apart from the defendant's commission of a predicate criminal offense, and that it was reversible error to instruct the jury otherwise.  *See* 882 F.3d at 326-28.  This requirement of primary liability, which the R&R acknowledges,[17] precludes Plaintiffs' claims.

 As the Moving Defendants showed in their moving papers (*see* Suppl. Mem. of Law of HSBC and RBS in Supp. of Mot. To Dismiss (Dkt. No. 122); Suppl. Reply of HSBC and RBS in Supp. of Their Mot. To Dismiss Second Am. Compl. (Dkt. No 129); Dkt. No. 155; Dkt. No. 157), the Complaint does not and cannot plausibly allege that the Moving Defendants' conduct satisfies these requirements of Section 2331(1).  In particular, Plaintiffs cannot plausibly

---

[17] *See* R&R at 46 ("[I]t now seems clear from the *Linde* decision that in the Second Circuit, plaintiffs seeking to pursue claims of primary liability must prove more than simply a violation of the material support provisions of the ATA; there must be proof of the other elements necessary to prove an 'act of international terrorism' as defined by 18 U.S.C. § 2331.").

assert that an objective observer would conclude that the Moving Defendants' provision of banking services "appear[ed] to be intended" "to intimidate or coerce a civilian population", "influence the policy of a government by intimidation or coercion", or "affect the conduct of a government by mass destruction, assassination, or kidnapping" under Section 2331(1)(B). Plaintiffs also fail plausibly to allege that the Moving Defendants committed violent acts or acts dangerous to human life, as required by Section 2331(1)(A).  (*See* Dkt. No. 129 at 2-6); *see Linde*, 882 F.3d at 325-36.  Other courts have held that claims of this nature fail to satisfy these necessary elements.  *See Stansell v. BGP, Inc.*, No. 8:09-cv-2501-T-30AEP, 2011 WL 1296881, at *9 (M.D. Fla. Mar. 31, 2011) (payment of protection money to Colombian terrorists to allow defendants to conduct oil exploration "would not lead an objective observer to conclude Defendants intended to achieve any one of the results listed in § 2331(1)(B)"); *see also Mastafa v. Chevron Corp.*, 770 F.3d 170, 194 (2d Cir. 2014) (rejecting, in the context of the Alien Tort Statute, "the plausibility of a large international corporation intending . . . [to assist] the Saddam Hussein regime's torture and abuse of Iraqi persons"); *Stutts v. De Dietrich Grp.*, No. 03-CV-4058 (ILG), 2006 WL 1867060, at *2-*3 (E.D.N.Y. June 30, 2006) (finding that "engaging in commercial banking activity" with suppliers of chemicals to Iraq was not "designed to coerce civilians or government entities as required under § 2331").[18]

---

[18] The R&R attempts to distinguish *Stutts*, reasoning that the provision of letters of credit to entities that were supplying chemical weapons to the Hussein regime could be considered "routine"—unlike, in the R&R's view, this case.  (R&R at 88-89.)  But there is no plausible basis to distinguish the provision of letters of credit to chemical weapon suppliers from the sort of banking transactions at issue here.

C.     **OBJECTION 6**:  The R&R Erroneously Applied the Definitional
Requirements of Section 2332d (Claims III and IV) (R&R § V.B.6)

In addition to erroneously (i) not applying *Rothstein* and (ii) not applying *Linde*'s

requirement that Plaintiffs plead the definitional requirements of Section 2331(1) to Claims III

and IV, the R&R erred in concluding that Section 2332d—which prohibits certain financial

transactions by "United States person[s]" with "the government" of a designated state sponsor of

terrorism—applies to HSBC, SCB, RBS and Commerzbank.  (*See* R&R at 105.)

Neither SCB, RBS nor Commerzbank (the "non-U.S. banks") are "United States

persons" under the clear terms of Section 2332d.  As defined in Section 2332d, a "United States

person" includes any:  "(A) United States citizen or national; (B) permanent resident alien;

(C) juridical person organized under the laws of the United States; or (D) any person in the

United States."  18 U.S.C. § 2332d(b)(2).  The R&R erred as a matter of law in concluding that

the non-U.S. banks qualify as "United States persons" under both subparagraphs C and D.

*Subparagraph C*.  The non-U.S. banks are not "organized under the laws of the

United States" because the term "organized under the laws of" is well-understood to refer to an

entity's legal jurisdiction of incorporation—which for the non-U.S. banks is indisputably not the

United States.  *See, e.g.*, *JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure, Ltd.*, 536

U.S. 88, 90 (2002) (a corporation "organized under the laws of" a foreign country is a "citizen[n]

or subjec[t] of" that country for purposes of alienage jurisdiction) (alterations in original));

*Samsun Logix Corp. v. Bank of China*, 740 F. Supp. 2d 484, 489 (S.D.N.Y. 2010) (removal

provision of the Edge Act, 12 U.S.C. § 632, does not apply to Chinese banks with New York

branches licensed under New York state law because statute applies only to "corporation[s]

organized under the laws of the United States").

The R&R strayed from the plain text of subparagraph C by invoking the bank regulatory and Office of Foreign Assets Control ("OFAC") sanctions regimes that apply to the New York branches of the non-U.S. banks.  (R&R at 106-10, 118-21.)  This conflation of other legal regimes with the clear statutory definition of Section 2332d was erroneous:  no one denies that these other regulations apply to the New York branches of banks incorporated in foreign nations, but those regulatory regimes are separate bodies of rules, with distinct purposes and scopes, that do not and cannot supplant the language of the ATA.  The R&R's use of a concept of "hybrid" entities to characterize the New York branches for purposes of bank regulation (R&R at 112), was thus both misplaced, and wrong as a matter of law:  it is "well-settled" that "the domestic branch of a foreign bank is not a separate legal entity under either New York or federal law," *Greenbaum v. Handelsbanken*, 26 F. Supp. 2d 649, 652-54 (S.D.N.Y. 1998); *see also Deposit Ins. Agency v. Leontiev*, No. 17-MC-00414 (GBD)(SN), 2018 WL 3536083, at *7 (S.D.N.Y. July 23, 2018) ("[A]bsent explicit statutory direction, courts have been reluctant to expand the definition of United States person to a foreign corporation with an American owner or *a foreign corporation with branches within the United States*.") (emphasis added).  Because subparagraph C unambiguously excludes non-U.S. banks from its scope, the R&R improperly "replace[d] the actual text with speculation as to Congress' intent."  *Henson*, 137 S. Ct. at 1725 (citation omitted).

   *Subparagraph D*.  The non-U.S. banks are also not "any person in the United States" because subparagraph D reaches only natural persons—as every other court to interpret the statute in this context has held.  *See Ofisi*, 278 F. Supp. 3d at 99-100; *Abecassis v. Wyatt*, 785 F. Supp. 2d 614, 648 (S.D. Tex. 2011); *United States v. Chalmers*, 474 F. Supp. 2d 555, 565 (S.D.N.Y. 2007).  The R&R's interpretation of subparagraph D as also applying to juridical

persons "would render subparagraph (C) superfluous because companies organized under the laws of the U.S. are by definition located in the U.S., as that is their place of incorporation." *Ofisi*, 2017 WL 4355922, at *6 (citing *Corley v. United States*, 556 U.S. 303, 314 (2009) (a "statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous")).  Nor does the general definition of "person" in 18 U.S.C. § 2331—which includes both individuals and entities—change the meaning of subparagraph D.  (*See* R&R at 110-11.)  It is a fundamental principle of statutory construction that "the specific governs the general".  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384-85 (1992).  Thus, the specific language and context of Section 2332d displaces the general definitions in Section 2331.[19]  Congress would not have crafted Section 2332d's detailed definition of "United States person" if it had intended Section 2331's general definition of "person" to apply.

The R&R relied on the policies underlying the Iranian sanctions regime to justify its expansion of the statutory definition of "United States person" (R&R at 118-21), but policy

---

[19] The R&R incorrectly adopted Plaintiffs' flawed readings of other decisions interpreting Section 2332d.  The R&R dismissed other courts' reliance on the Supreme Court's construction of the term "United States person" in a federal statute imposing sanctions on Burma as not applying to "foreign companies", *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 379 (2000), based on the purportedly different legislative intents behind the Iranian and Burmese sanctions regimes (R&R at 115).  However, the congressional intent behind the law in *Crosby* had no bearing on the Supreme Court's textual interpretation of "United States person".  *See* 530 U.S. at 379-80 (discussing purpose of statute only in context of preemption analysis).  The R&R rejected the *Ofisi* court's interpretation of Section 2332d on the ground that the court there failed to consider the "hybrid nature" of the New York branches and the definition of "person" in Section 2331, (R&R at 112); in fact, the *Ofisi* plaintiffs raised both of those arguments, *see* Pls.' Mem. of Law in Opp. to Mot. to Dismiss, No. 15 Civ. 2010 (JDB), at 25-27 (Mar. 2, 2016), Dkt. No. 19, and the court considered and properly rejected them, 278 F. Supp. 3d at 99-100.  The R&R's distinction of *United States v. Chalmers*, 474 F. Supp. 2d 555 (S.D.N.Y. 2007), based on the purported difference between corporations and banks and the language of the Cuban Asset Control Regulations (R&R at 116), was also flawed:  the court in *Chalmers* cited these provisions as an example of language that—in contrast to the plain text of Section 2332d—*is* explicitly crafted to reach certain foreign entities.  *See* 474 F. Supp. 2d at 565.

goals do not supersede statutory language:  "it is quite mistaken to assume . . . that whatever might appear to further[ ] the statute's primary objective must be the law."  *Henson*, 137 S. Ct. at 1725 (alteration in original) (citation omitted).

        The R&R also erred in failing to apply the further statutory requirement that any of HSBC, SCB, RBS or Commerzbank engaged in a "financial transaction with the government of" Iran.  18 U.S.C. § 2332d(a).  The R&R concluded that allegations of transactions with Iranian banks and other entities are sufficient to allege transactions with the Iranian government.  (*See* R&R at 121-23.)  This was clear legal error for two reasons.

        *First*, agents and instrumentalities of Iran are not the government of Iran for purposes of Section 2332d.  *See EM Ltd. v. Banco Central de la República Argentina*, 800 F.3d 78, 89 (2d Cir. 2015) ("[G]overnment instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such.") (citation omitted).  Congress understands this distinction; the Foreign Sovereign Immunities Act, for example, defines "foreign state", except for service of process purposes, to "include[] a political subdivision . . . or an agency or instrumentality" of that state, *see* 28 U.S.C. § 1603(a), and then applies that definition to immunity from suit, *see* 28 U.S.C. § 1605(a), while distinguishing between the state itself and its agencies and instrumentalities for purposes of execution, *compare* 28 U.S.C. § 1610(a), *with* 28 U.S.C. § 1610(b).  The text of Section 2332d, by contrast, refers only to the "government" of a state sponsor of terrorism, and does not contain language expanding that definition to separate agents and instrumentalities of that government.  Given the plain meaning of the statute, it is not for the Court to extend liability beyond the terms that Congress chose.  *See Cent. Bank of Denver*, 511 U.S. at 184 ("The fact that Congress chose to

impose some forms of . . . liability, but not others, indicates a deliberate congressional choice with which the courts should not interfere.").

*Second*, Plaintiffs' conclusory alter ego allegations, which elide the distinction between the government of Iran and its agencies or instrumentalities, do not change this conclusion.  Plaintiffs, for example, allege that the Central Bank of Iran is the Government of Iran's alter ego.  (Compl. ¶ 393.)  Even at the pleading stage, however, the Second Circuit has made clear that, given the separate juridical identity of agencies or instrumentalities of such foreign states, such conclusory allegations are insufficient.  *See EM Ltd.*, 800 F.3d at 92-95 (conclusory allegations of Argentina's "extensive control" over its central bank were insufficient to show central bank was Argentina's alter ego).  The R&R disregarded this well-settled law.[20]

*Finally*, the Iranian Transactions and Sanctions Regulations ("ITSR"), 31 C.F.R. Part 560, do not support the R&R's conclusion, *see* R&R at 121-23, because the definitions in the ITSR have no bearing on the meaning of the term "government" as used in Section 2332d.  The ITSR defines the "Government of Iran" to include persons and entities that are patently not the government of Iran, including, *inter alia*, any person owned or controlled, directly or indirectly, by the government or its instrumentalities.  *See* 31 C.F.R. § 560.304.  Here again, the R&R mixed and matched different definitions from separate statutes and regulations in an attempt to further the broad goal of deterring terrorism, but improperly failed to apply the definitions as Congress wrote them.

---

[20] *National Council*, on which the R&R relied, does not support the proposition that Congress intended to provide courts with the authority to expand the term "government" in Section 2332d to reach entities that it deliberately did not include in the scope of the statute, *see Cent. Bank of Denver*, 511 U.S. at 184, nor does it support the use of an alter ego analysis in such circumstances, *see supra* Section II.A.

D.   **OBJECTION 7:**  **The R&R Erroneously Failed To Apply the Second Circuit's Requirements To State a Primary Liability Claim in the Separate Claims Asserted Against Commerzbank (Claims V and VI) (R&R § V.B.5)**

1.   *The Complaint Fails To State a Primary Liability Claim for Commerzbank's Transactions with IRISL (Claim V) (the "IRISL Claim")*

*Proximate Causation.*  The R&R failed to apply Second Circuit law on causation to the IRISL claim.  This claim alleges only that (1) Commerzbank provided support in the form of dollar clearing services to IRISL (a Specially Designated National); (2) IRISL in turn provided material support to the IRGC and Hezbollah (an FTO); and (3) Hezbollah and the IRGC, among others, were somehow "responsible" for the attacks by which Plaintiffs were injured.  *See* Compl. ¶¶ 50-51.  The Second Circuit squarely ruled in *Rothstein* and *Al Rajhi* that such allegations of at best *indirect* support for terrorist attacks are insufficient to satisfy the proximate cause element of an ATA claim absent factual allegations that the funds provided by the defendant actually were transferred to a terrorist organization or were used in carrying out an attack perpetrated by that organization.  *Rothstein*, 708 F.3d at 96-97; *Al Rajhi*, 714 F.3d at 123-24.

The R&R acknowledged this pleading deficiency but conflated the causation requirement with the "material support" element of Plaintiffs' claim, stating that "plaintiffs need not show that the dollar-clearing 'were in fact transferred to Hezbollah'" because a Section 2339A claim requires "only 'knowledge' that the banks' actions may be funding transactions used in support of [violations of] several criminal statutes."  (R&R at 102 (citation omitted).)  However, Section 2339A's scienter requirement is a separate element that cannot substitute for proximate causation.  *See Al Rajhi*, 714 F.3d at 123 (allegations that defendants "*knowingly* provided[ed] financial support to purported charities that supported al Qaeda" insufficient to establish causation) (emphasis added); *Rothstein v. UBS AG*, 772 F. Supp. 2d 511,

34

516 (S.D.N.Y. 2011) ("[E]stablishing a proximate causal relationship between the defendant's conduct and the plaintiff's injuries is an indispensable element of a Section 2333(a) civil damages claim.  By contrast, Section 2339 is a purely criminal measure that has no causation element . . . ."), *aff'd*, 708 F.3d 82 (2d Cir. 2013).  *Linde* did not alter the Second Circuit's precedent on causation.

        *Act of International Terrorism.*  The R&R also erred in concluding that a question of fact exists regarding whether Commerzbank's transactions on behalf of IRISL were "acts of international terrorism" as defined in 18 U.S.C. § 2331(1).  (*See* R&R at 103.)  Plaintiffs' allegations against Commerzbank are plainly distinct from the facts at issue in the *Linde* trial, which included evidence that the defendant bank may have knowingly processed "payments for suicide bombings," *Linde*, 882 F.3d. at 330.  (*See* Compl. ¶¶ 2254-63.)

        2.    *The Complaint Fails To State a Primary Liability Claim for Commerzbank's Transactions with Orphans Project Lebanon (Claim VI) (the "Orphans Project Claim")*

        *Proximate Causation.*  The Orphans Project Claim fails to allege causation for the same reasons as the IRISL Claim—there are no non-conclusory allegations that any funds provided by Commerzbank on behalf of Orphans Project to the Martyrs Foundation actually were transferred to Hezbollah or to any other terrorist group responsible for Plaintiffs' injuries, nor that Commerzbank's provision of banking services to Orphans Project Lebanon otherwise caused Plaintiffs' injuries.  (*See* Compl. ¶¶ 1039-40, 2264-73.)

        The R&R also erred in several respects in concluding that the Complaint plausibly alleges that "Commerzbank held accounts for known Hezbollah operatives."  (R&R at 103.) There are *no* allegations that Orphans Project or the Martyrs Foundation are alter egos of, or controlled by, Hezbollah.  The R&R's reliance on *Goldberg v. UBS*, 660 F. Supp. 2d 410, 433

(E.D.N.Y. 2009), to conclude that Plaintiffs need not allege *alter ego* status if they allege

Commerzbank knew an FTO was the "ultimate beneficiary" of its transfers (R&R at 103), is

clearly erroneous in light of the Second Circuit's later ruling in *Al Rajhi* that allegations of the

knowing provision of funds to an organization known to support the FTO that carried out the

attacks at issue are insufficient for alleging causation, 714 F.3d at 123-24. [21]  The Complaint's

conclusory allegations that Orphans Project is a "Hezbollah fundraising organization" (Compl.

¶ 1040 & n.65; *see* R&R at 104) are in any event insufficient to plead *alter ego* status because an

organization's provision of "financial support and supporting the terrorist objective of an FTO

do[] not suffice to show that an organization is so dominated and controlled so as to have lost its

independent identity." *Weiss v. Nat'l Westminster Bank PLC*, 453 F. Supp. 2d 609, 623

(E.D.N.Y. 2006).  Moreover, the R&R also failed to consider that even if *alter ego* status could

be established, the Complaint still has not alleged, and cannot plausibly allege, that Hezbollah

carried out the attacks that injured Plaintiffs—which involve almost a hundred incidents that

occurred during a war involving random violence perpetrated by various actors.

> *Act of International Terrorism.*  The R&R did not address this requirement for the

Orphans Project Claim at all, and this claim in any event fails to satisfy this requirement.  *See*

*supra* Section III.B.

> *Personal Jurisdiction.*  Even though the Orphan's Project Claim has nothing to do

with sanctions violations or any other conduct by Commerzbank in the United States, the R&R

---

[21] The *Al Rajhi* plaintiffs alleged that the charity was a front organization for al Qaeda, provided al Qaeda with "recruits, weapons, and money", had senior al Qaeda operatives as employees, was designated as a Specially Designated Global Terrorist ("SDGT") because it had offices that were designated terrorist entities by the United States Department of State.  *See Burnett v. Al Baraka Inv. & Dev. Corp.*, 274 F. Supp. 2d 86, 104 (D.D.C. 2003).  This was held to be insufficient as a matter of law to satisfy the requirements of proximate causation.

erroneously concluded that there is pendent personal jurisdiction over the claim because it is based on the same "nucleus of fact" as the conspiracy claims (R&R at 104 n.69).  The Orphans Project Claim has *no* relationship to the conspiracy alleged in the Complaint, which is defined by its objectives to facilitate and conceal dollar transactions *through the United States on behalf of Iran and its agents*.  There are no allegations that any of the Orphans Project transactions involved the United States or that Orphans Project was an agent or *alter ego* of Iran, and the claim is "dependent on proof of facts that [a]re entirely irrelevant to the" conspiracy claims. *Newburger, Loeb & Co. v. Gross*, 563 F.2d 1057, 1073 (2d Cir. 1977) (allegations "of a larger conspiracy" encompassing distinct claims insufficient to establish pendent jurisdiction).  If a simple allegation of material support were sufficient to constitute a "common nucleus of fact" for any other unrelated material support claim anywhere else in the world, plaintiffs could avoid the limits of due process and hale into court any entity in the world with no connection with the United States.[22]

E.     **OBJECTION 8:  The R&R Failed To Apply *Rothstein* and Incorrectly Applied *Linde* to Plaintiffs' Seventh Claim for Relief Against SCB (Claim VII) (R&R § V.B.4(d))**

1.     *The R&R Improperly Failed To Apply* <u>Rothstein</u> *to the Seventh Claim for Relief Against SCB*

The R&R also erred in failing to address Plaintiffs' theory of proximate causation in the Seventh Claim for Relief, despite acknowledging that the claim was brought against SCB "based on a theory of primary liability".  (R&R at 87.)  Indeed, nowhere in the three pages on

---

[22] The claims in *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 36 (D.D.C. 2010), were, unlike here, derived from the same nucleus of fact because they arose from the *same* transfers (some of which were executed through the defendant's U.S. branches) to the *same* agent of the *same* terrorist organization that carried out the *same* single attack at issue, *id.* at 33. (*See* R&R at 104 n.69.)

which the merits of the Seventh Claim for Relief were addressed did the R&R even mention the words "proximate cause".  As shown above, *Rothstein* is controlling with respect to primary liability claims and the R&R erred in failing to assess the sufficiency of Plaintiffs' proximate cause allegations with respect to the Seventh Claim for Relief.  (*See supra* § III.A.)

As outlined in SCB's Supplemental Memorandum of Law in Support of its Motion To Dismiss (Dkt. No. 123 at 5-9) ("SCB's Brief"), the Complaint does not allege that SCB directly participated in any terrorist attacks.  (Compl. ¶¶ 673-838.)  The Complaint also does not identify a single letter of credit ("LC") transaction involving SCB that allegedly resulted in the provision of support or transfer of funds or goods to any FTO or group that allegedly committed the attacks.  (SCB's Brief at 5.)  Nor does it allege facts suggesting that any of the purchasers or sellers in the LC transactions or that any of the goods that were purchased in connection with the LCs were used in—or were in any way tied to—the attacks that injured Plaintiffs.  (*Id.*)

The Complaint's allegations with respect to particular purchasers, sellers and goods only confirm the shortcomings of Plaintiffs' theory of causation.  (*Id.* at 6-9.)  Plaintiffs allege that certain of the purchasers and sellers of goods underlying the LCs were designated by OFAC as SDGTs or weapons of mass destruction proliferators, but these allegations do not establish any causal link between SCB's conduct and Plaintiffs' injuries because the designated entities allegedly involved in the LC transactions were designated years after the LCs were issued.  (*Compare* Compl. ¶ 686 (2011 Mahan Air designation), *with id.* ¶ 685 (LCs involving Mahan Air between 2000 and 2006); *compare id.* ¶ 713 (2007 Ministry of Defense Armed Forces Logistics ("MODAFL") designation), *with id.* ¶¶ 719-726 (LCs involving MODAFL subsidiaries between 1998 and 2005); *compare id.* ¶ 714 (2005 Aerospace Industries

38

Organization ("AIO") designation), *with id.* ¶ 715 (LC involving AIO in 2002).)  Plaintiffs

acknowledge some of these temporal inconsistencies, but assert that SCB's own conduct of

assisting entities in evading sanctions through the use of stripping and cover payments was

illegal (*see id.* ¶ 673), and that the commission of terrorist acts against Americans was somehow

a foreseeable consequence of this conduct (*id.* ¶ 683).  But this precise argument—that a

defendant's violation of U.S. laws restricting trade with Iran is sufficient to establish proximate

cause—was flatly rejected in *Rothstein*, 708 F.3d at 96-97, and *Al Rajhi*, 714 F.3d at 123-24.  For

these reasons, as well as those outlined in SCB's Brief, Plaintiffs have failed to allege that SCB's

conduct was a proximate cause of Plaintiffs' injuries, and Plaintiffs' claims against SCB

therefore must be dismissed.

> 2.   *The R&R Incorrectly Concluded That Whether Plaintiffs Pled That SCB
>       Committed an Act of International Terrorism Is a Question for the Jury*

The R&R also erred in stating that whether certain LC transactions involving SCB

were "definitively, 'acts of international terrorism' is a question for the jury".  (R&R at 88-89.)

Although in *Linde*, the question of whether the defendant engaged in an act of international

terrorism was decided in the context of a post-trial challenge to jury instructions, *Linde* held that

"to qualify as international terrorism, a defendant's act must . . . involve violence or endanger

human life" and "must appear to be intended to intimidate or coerce a civilian population or to

influence or affect a government."  882 F.3d at 326.  These requirements must be pled in the

Complaint to state a claim under the ATA.

Plaintiffs do not allege that SCB committed violent or dangerous acts.  At most,

Plaintiffs allege that SCB stripped information when providing banking and financing services to

entities in Iran (*see, e.g.*, Compl. ¶¶ 404, 675, 692, 812, 826), and entities associated with entities

in Iran (*see, e.g.*, *id.* ¶¶ 719, 728-730, 750, 775), but the Complaint does not allege that such

banking services or LC transactions themselves were violent or dangerous to human life, *see Linde*, 882 F.3d at 326. Additionally, Plaintiffs fail to allege in a non-conclusory manner that SCB possessed the requisite intent—*i.e.*, that SCB intended to intimidate or coerce civilians or a government. Indeed, the Complaint makes clear that SCB's alleged "aims and objectives were . . . keeping U.S. depository institutions, law enforcement and counter-terrorism agencies blind to Iran's movement of U.S. dollars through the international financial system." (Compl. ¶¶ 2193; 2209.)[23] This type of activity is not "designed to coerce civilians or government entities as required under § 2331". *See Stutts*, 2006 WL 1867060, at *2-*3. The Seventh Claim for Relief thus fails for the independent reason that Plaintiffs do not allege that SCB committed an "act of international terrorism" as required under the ATA. *See* 18 U.S.C. §§ 2331(1), 2333(a).

## CONCLUSION

For the foregoing reasons, the Moving Defendants respectfully object to Sections II.B, III, IV.A-B, and V.B of the R&R's Discussion, except for Section V.B.4(a), as well as to its Conclusion, and request that the Court reject the disposition set forth in the R&R and grant the motion to dismiss in its entirety.

---

[23] The Seventh Claim for Relief must be dismissed for the additional reason that it fails to allege that SCB acted with the knowledge required to state a violation of Section 2339A. Plaintiffs allege that SCB knowingly assisted various Iranian entities *in evading U.S. sanctions* and that the "foreseeable consequence of that assistance was to enable Iran, the IRGC and Hezbollah to kill or wound . . . more Americans in Iraq". (Compl. ¶ 683.) These allegations, however, do not amount to the requisite scienter under Section 2339A. *See Owens v. BNP Paribas S.A.*, 235 F. Supp. 3d 85, 98-99 (D.D.C. 2017) (granting motion to dismiss where plaintiffs did not plausibly allege that the defendant banks knew that Sudan or any Sudanese bank was acting as an agent of any terrorist, or that the ultimate beneficiaries of any financial services provided would be a terrorist organization).

Dated: August 31, 2018

Respectfully submitted,

MAYER BROWN LLP,                          SULLIVAN & CROMWELL LLP,

by                                         by

  */s/ Mark G. Hanchet*                          */s/ Michael T. Tomaino, Jr.*        
     (with permission)                               (with permission)
     Mark G. Hanchet
     Robert W. Hamburg                               Michael T. Tomaino, Jr.
1221 Avenue of the Americas                     Jeffrey T. Scott
New York, NY 10020-1001                         Jonathan M. Sedlak
(212) 506-2500                             125 Broad Street
mhanchet@mayerbrown.com                    New York, NY 10004
rhamburg@mayerbrown.com                    (212) 558-4000
                                           tomainom@sullcrom.com
     Andrew J. Pincus                           scottj@sullcrom.com
     Marc R. Cohen                              sedlakj@sullcrom.com
     Alex C. Lakatos
1999 K Street, N.W.                         *Attorneys for Defendant Barclays*
Washington, DC 20006-1101                   *Bank PLC*
(202) 263-3000
apincus@mayerbrown.com
mcohen@mayerbrown.com
alakatos@mayerbrown.com

*Attorneys for Defendants HSBC Holdings*
*plc, HSBC Bank plc, HSBC Bank Middle*
*East Limited, HSBC Bank USA, N.A.*

CLEARY GOTTLIEB STEEN &
HAMILTON LLP,

by

   */s/ Jonathan I. Blackman*
     (with permission)

     Jonathan I. Blackman
     Carmine D. Boccuzzi, Jr.
     Avram E. Luft
One Liberty Plaza
New York, NY 10006
(212) 225-2000
jblackman@cgsh.com
cboccuzzi@cgsh.com
aluft@cgsh.com

*Attorneys for Defendant Commerzbank AG*

SULLIVAN & CROMWELL LLP,

by

   */s/ Sharon L. Nelles*
     (with permission)

     Sharon L. Nelles
     Bradley P. Smith
     Alyssa A. Hill
125 Broad Street
New York, NY 10004
(212) 558-4000
nelless@sullcrom.com
smithbr@sullcrom.com
hilla@sullcrom.com

*Attorneys for Defendant Standard Chartered Bank*

CLIFFORD CHANCE US LLP,                    CRAVATH, SWAINE & MOORE LLP,

by                                          by

   */s/ Robert G. Houck*                         */s/ John D. Buretta*
     (with permission)

    Robert G. Houck                            Richard W. Clary
    Michael G. Lightfoot                       John D. Buretta
31 West 52nd Street                         Worldwide Plaza
New York, NY 10019-6131                     825 Eighth Avenue
(212) 878-8000                              New York, NY 10019
robert.houck@cliffordchance.com             (212) 474-1000
michael.lightfoot@cliffordchance.com        rclary@cravath.com
                                            jburetta@cravath.com
    Katie L. Barlow
2001 K Street KW                            *Attorneys for Defendant Credit Suisse AG*
Washington, DC 2006-1001
(202) 912-5000
katie.barlow@cliffordchance.com

*Attorneys for Defendant The Royal Bank of
Scotland N.V. (formerly known as ABN
AMRO Bank N.V.)*