# CRAVATH, SWAINE & MOORE LLP

| | | WORLDWIDE PLAZA | | |
|---|---|---|---|---|
| JOHN W. WHITE | RICHARD J. STARK | 825 EIGHTH AVENUE | DAMIEN R. ZOUBEK | AARON M. GRUBER |
| EVAN R. CHESLER | THOMAS E. DUNN | NEW YORK, NY 10019-7475 | LAUREN ANGELILLI | O. KEITH HALLAM, III |
| RICHARD W. CLARY | MARK I. GREENE | | TATIANA LAPUSHCHIK | OMID H. NASAB |
| STEPHEN L. GORDON | DAVID R. MARRIOTT | TELEPHONE: +1-212-474-1000 | ALYSSA K. CAPLES | DAMARIS HERNÁNDEZ |
| ROBERT H. BARON | MICHAEL A. PASKIN | FACSIMILE: +1-212-474-3700 | JENNIFER S. CONWAY | JONATHAN J. KATZ |
| DAVID MERCADO | ANDREW J. PITTS | | MINH VAN NGO | MARGARET SEGALL D'AMICO |
| CHRISTINE A. VARNEY | MICHAEL T. REYNOLDS | | KEVIN J. ORSINI | RORY A. LERARIS |
| PETER T. BARBUR | ANTONY L. RYAN | | MATTHEW MORREALE | KARA L. MUNGOVAN |
| THOMAS G. RAFFERTY | GEORGE E. ZOBITZ | | JOHN D. BURETTA | NICHOLAS A. DORSEY |
| MICHAEL S. GOLDMAN | GEORGE A. STEPHANAKIS | CITYPOINT | J. WESLEY EARNHARDT | ANDREW C. ELKEN |
| RICHARD HALL | DARIN P. MCATEE | ONE ROPEMAKER STREET | YONATAN EVEN | JENNY HOCHENBERG |
| JULIE A. NORTH | GARY A. BORNSTEIN | LONDON EC2Y 9HR | BENJAMIN GRUENSTEIN | VANESSA A. LAVELY |
| ANDREW W. NEEDHAM | TIMOTHY G. CAMERON | TELEPHONE: +44-20-7453-1000 | JOSEPH D. ZAVAGLIA | G.J. LIGELIS JR. |
| STEPHEN L. BURNS | KARIN A. DEMASI | FACSIMILE: +44-20-7860-1150 | STEPHEN M. KESSING | MICHAEL E. MARIANI |
| KATHERINE B. FORREST | LIZABETHANN R. EISEN | | LAUREN A. MOSKOWITZ | |
| KEITH R. HUMMEL | DAVID S. FINKELSTEIN | | DAVID J. PERKINS | |
| DAVID J. KAPPOS | DAVID GREENWALD | | JOHNNY G. SKUMPIJA | SPECIAL COUNSEL |
| DANIEL SLIFKIN | RACHEL G. SKAISTIS | | J. LEONARD TETI, II | SAMUEL C. BUTLER |
| ROBERT I. TOWNSEND, III | PAUL H. ZUMBRO | WRITER'S DIRECT DIAL NUMBER | D. SCOTT BENNETT | |
| WILLIAM J. WHELAN, III | ERIC W. HILFERS | +1 (212) 474-1260 | TING S. CHEN | |
| PHILIP J. BOECKMAN | GEORGE F. SCHOEN | | CHRISTOPHER K. FARGO | |
| WILLIAM V. FOGG | ERIK R. TAVZEL | WRITER'S EMAIL ADDRESS | KENNETH C. HALCOM | OF COUNSEL |
| FAIZA J. SAEED | CRAIG F. ARCELLA | jburetta@cravath.com | DAVID M. STUART | MICHAEL L. SCHLER |

December 19, 2018

*Freeman v. HSBC Holdings plc*,
14-cv-6601(DLI)(CLP)

Dear Chief Judge Irizarry:

    We represent Credit Suisse AG in the above-captioned matter. We respectfully write on behalf of the Moving Defendants[1] to bring to the Court's attention the decision last week in *Kemper v. Deutsche Bank AG*, 18-1031, __ F.3d __, 2018 WL 6521588 (7th Cir. Dec. 12, 2018). In *Kemper*, the U.S. Court of Appeals for the Seventh Circuit reviewed *de novo* the district court's dismissal of Anti-Terrorism Act ("ATA") claims brought against a financial institution substantially similar to those in *Freeman*. In an opinion written by Chief Judge Wood, the panel affirmed, holding that the plaintiff's complaint did not plausibly allege a primary violation of the ATA for reasons directly applicable here. *Kemper* is thus new authority that provides further direct support for the Moving Defendants' objections to the Magistrate Judge's Report and Recommendation ("R&R") and motions to dismiss the Second Corrected Amended Complaint ("*Freeman* Compl.").

*Background*

    *Kemper* was an appeal from the district court's decision in *Shaffer v. Deutsche Bank AG*, 16-CR-497-MJR-SCW, 2017 WL 8786497 (S.D. Ill. Dec. 7, 2017), dismissing the complaint as insufficient to plead a claim of primary liability under the ATA or secondary liability under the Justice Against Sponsors of Terrorism Act ("JASTA"). Because *Shaffer* was decided after the motion to dismiss in *Freeman* was fully briefed, the parties previously brought the decision to the Court's attention via

---

[1] The "Moving Defendants" are HSBC Holdings plc, HSBC Bank plc, HSBC Bank Middle East Limited, HSBC Bank USA, N.A., Barclays Bank PLC, Standard Chartered Bank, The Royal Bank of Scotland N.V., Commerzbank AG and Credit Suisse AG.

notices of supplemental authority (Dkt. Nos. 149-151), and the Moving Defendants cited it most recently in their objections to the R&R (Dkt. No. 174 ("Objections") at 16, 20, 25).  Although the plaintiff in *Kemper* did not appeal the part of Chief Judge Reagan's ruling dismissing her secondary conspiracy liability claims under JASTA, *see* 2018 WL 6521588, at *9; *see also Shaffer*, 2017 WL 8786497 at *5, the Seventh Circuit's discussion of the infirmity of the plaintiff's conspiracy allegations is nonetheless instructive here, as are its other rulings.

The facts alleged in *Kemper* and *Freeman* clearly resemble each other.  In *Kemper*, the plaintiff's ATA claims arose from a 2009 attack in Iraq and were centered on the allegation that Deutsche Bank joined an Iranian terrorist conspiracy by removing the "names of sanctioned or potentially sanctioned parties" from U.S.-dollar-clearing transactions for Iranian financial institutions and other entities in violation of the so-called "U-Turn exemption".  2018 WL 6521588, at *1-*2; *cf. Freeman* Compl. ¶¶ 22, 342.  According to the plaintiff, Deutsche Bank's effort to avoid sanctions "was part of a much larger ongoing conspiracy to further Iran's terrorist goals".  2018 WL 6521588, at *3; *cf. Freeman* Compl. ¶¶ 345-46.  Deutsche Bank's alleged co-conspirators included "Iran; the [Islamic Revolutionary Guard]; Iranian banks . . .; the Islamic Republic of Iran Shipping Lines ['IRISL'] . . .; [and] various Western financial institutions", each of which allegedly "worked to funnel millions of dollars to Hezbollah, a U.S. designated Foreign Terrorist Organization, and enabled certain co-conspirators directly to perpetrate . . . acts of international terrorism".  2018 WL 6521588, at *3; *cf. Freeman* Compl. ¶ 22.  The attack in *Kemper* allegedly bore the "distinctive fingerprint" of Iranian-supplied "Explosively Formed Penetrators" that otherwise would have been "unavailable to Iraqi militias."  2018 WL 6521588, at *1; *cf. Freeman* Compl. ¶¶ 47, 259-77.  And the plaintiff in *Kemper* alleged that Deutsche Bank "knew of or was deliberately indifferent to the terroristic aims of th[e] conspiracy."  2018 WL 6521588, at *3; *cf. Freeman* Compl. ¶ 346.  Just as the allegations in *Kemper* parallel the allegations in *Freeman*, the Seventh Circuit's reasoning is directly applicable here.

*Summary of Decision*

*Kemper* affirmed the district court's dismissal of the complaint on four grounds:  (1) the complaint failed to satisfy two of the ATA's statutory criteria, (2) the complaint failed plausibly to allege proximate causation, (3) the plaintiff's conspiracy allegations were implausible and (4) the ATA does not provide for civil conspiracy liability in circumstances beyond those set forth in Section 2333(d), added to the ATA by JASTA.  Each is discussed below.

*First*, *Kemper* held that the complaint "fails plausibly to allege that Deutsche Bank's actions satisfy the statutory definition of international terrorism and thus fall within the ambit of the ATA".  2018 WL 6521588, at *4.  The court reasoned that the bank's alleged conduct to evade sanctions "was not 'violent' or 'dangerous to human life' as 18 U.S.C. § 2331(1)(A) requires, nor did it display the terroristic intent required by 18 U.S.C. § 2331(1)(B)."  *Id.*  The Seventh Circuit's reasoning applies with equal force in *Freeman*.  *See* Objections at 27-28 ("Objection 5: The R&R Erroneously Failed to Apply the Independent Statutory Requirement . . . That The Moving Defendants

Committed Acts of International Terrorism"); Dkt. No. 122, Suppl. Mem. of Law of HSBC and RBS in Supp. of Mot. To Dismiss at 1-4.

In support of its holding, the Seventh Circuit distinguished its prior decision in *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 692 (7th Cir. 2008) (*en banc*) ("*Boim III*"), pointing out that *Boim III* "dealt with direct donations to a known terrorist organization", Hamas. 2018 WL 6521588, at *4. By contrast, the Seventh Circuit noted that the complaint in *Kemper* involved allegations that the defendant bank engaged in "business with companies and countries that have significant legitimate operations", such as IRISL and Iran itself. *Id*. *Kemper*'s treatment of *Boim III* is directly relevant here because the allegations in *Freeman* on this point are similar to those in *Kemper*, *see* Dkt. No. 120, Joint Mot. To Dismiss at 12-24, and the *Freeman* plaintiffs' opposition to the motion to dismiss and the R&R both rely on *Boim III*, *see, e.g.*, Dkt. No. 125 at 37-38 (quoting *Boim III* and asserting that allegedly "laundering money for a State Sponsor of Terrorism" is an "act dangerous to human life"); Dkt. No. 165 ("R&R") at 28-30 & n.26.

With respect to the ATA's "terroristic intent" requirement, *i.e.*, that the defendant's actions must "appear intended to intimidate or coerce any civilian population or government", 18 U.S.C. § 2331(1)(B)(i), *Kemper* noted that, "[t]o the objective observer, [Deutsche Bank's] interactions with Iranian entities were motivated by economics, not by a desire to 'intimidate or coerce.'" 2018 WL 6521588, at *4. The *Freeman* plaintiffs' allegations as to the Moving Defendants are no different. *See, e.g.*, *Freeman* Compl. ¶ 534 (allegations regarding defendant bank's discussion of "business opportunities" and whether business with sanctioned entity "can be done profitably").

*Second*, addressing the sufficiency of the complaint's allegations with respect to proximate cause,[2] *Kemper* noted that the plaintiff did not allege "that Deutsche Bank ever serviced a terrorist group directly" or that the "various Iranian institutions [alleged to be part of the conspiracy] exist solely to perform terrorist acts". 2018 WL 6521588, at *6. For instance, regarding IRISL, "a global operator with a worldwide network of subsidiaries, branch offices and agent relationships", *Kemper* found that it "strains credulity to suggest that a worldwide network of banks or shipping lines is[, like a terrorist group,] similarly dedicated to terrorism". *Id*. The court also found that there was "an additional hurdle that Kemper had not overcome: the Islamic Republic of Iran". *Id.* at *7.

> The central theory tying all of Kemper's allegations together is that Iran is responsible for the terrorist attack that killed her son, and that Deutsche Bank facilitated that

---

[2] *Kemper* begins its proximate cause analysis by again addressing *Boim III*, stating that the earlier decision should not "be read to suggest that something less than proximate cause might suffice to prove ATA liability", joining the Second, Ninth and D.C. Circuits on the point. 2018 WL 6521588, at *5 (citing *Rothstein v. UBS AG*, 708 F.3d 82, 95-96 (2d Cir. 2013); *Fields v. Twitter, Inc.*, 881 F.3d 739, 744-45 (9th Cir. 2018); *Owens v. BNP Paribas, S.A.*, 897 F.3d 266, 273 (D.C. Cir. 2018)).

> attack by providing services to Iran and state-owned Iranian businesses. But this theory ignores that, as the D.C. and Second Circuits have noted, Iran "is a sovereign state with 'many legitimate agencies, operations, and programs to fund.'" *Owens*, 897 F.3d at 276 (quoting *Rothstein*, 708 F.3d at 97). When one of the links on a causal chain is a sovereign state, the need for facts specifically connecting a defendant's actions to the ultimate terrorist attack is especially acute. *See id.*

*Id.*; *see also* Joint Mot. To Dismiss at 4.

The plaintiff in *Kemper* argued that "Iran is a designated state sponsor of terrorism", that "Iranian entities used Deutsche Bank's non-transparent services even though the U-Turn exemption was available for any legitimate business" and "the Iranian sanctions are anti-terrorism measures and so any attempt to subvert them necessarily furthers Iran's terrorism capabilities." 2018 WL 6521588, at *7. The Seventh Circuit rejected these arguments, reasoning that even if the foregoing "may be true . . . [,] we do not see how these points sufficiently connect Deutsche Bank to terrorism supported by the Iranian state". *Id.* The court further noted:

> [A]lthough the Iran sanctions may have begun because of Iran's support for terrorism, the actual sanctions extend far beyond commerce that could support terroristic endeavors. . . . Without some other fact suggesting either an intent to support terrorism or a direct provision of services to terrorists, the violation of such a broad prohibition does not create a sufficient link to establish liability for terrorism-related torts under any traditional notion of proximate cause.

*Id.* at *8. Similarly here, the *Freeman* plaintiffs have made "no allegation that . . . the Moving Defendants processed even one dollar for any segment of the Iranian Government that allegedly funded terrorist organizations or groups, much less that the Moving Defendants processed transactions directly for any terrorist entity." Joint Mot. To Dismiss at 7; *see also* Objections at 23-27 ("Objection 4: The R&R Failed to Analyze Plaintiffs' Primary Liability Claims Under *Rothstein*").

*Third*, *Kemper* held that the plaintiff's conspiracy allegations were "factually implausible" and the "legal theory underlying [them] problematic" because she "has not alleged facts that give rise to a plausible inference that Deutsche Bank agreed to provide material support for *terrorism*", and "[n]one of the allegations suggest that Deutsche Bank cared how its Iranian customers obtained or spent the funds that it processed for them." 2018 WL 6521588, at *8 (emphasis in original). The Seventh Circuit stated that it "thus agree[d] with the district court's reading of the complaint to allege, *at most,* that Deutsche Bank joined a conspiracy to avoid sanctions." *Id.* (emphasis added). The Moving Defendants similarly cited *Shaffer*, the decision affirmed

in *Kemper*, to make the same argument in their objections to the R&R. *See* Objections at 19-20 ("[T]he R&R erroneously conflated Plaintiffs' allegations that the Moving Defendants entered a conspiracy to evade economic sanctions with allegations . . . that the Moving Defendants entered a conspiracy to commit acts of international terrorism. . . . Just as in *Shaffer*, such allegations fail to state a claim under the ATA because they do not show that a defendant joined the conspiracy with the intent to commit the offenses that are its object . . . .") (internal citations omitted). Plaintiffs' characterization of *Shaffer* as "misstat[ing] the relevant ATA law" in their notice of supplemental authority filed with the Court after *Shaffer* was decided last December thus must be rejected. *See* Dkt. No. 151, Dec. 26, 2017 Ltr. at 2-3 ("*Shaffer* misstates the relevant ATA law. . . . All that matters is that Plaintiffs have adequately pled that Defendants entered into a conspiracy and that *a* foreseeable goal of the conspiracy . . . not the subjective goal of the *Defendants*—was to provide material support to terrorism or to conceal or disguise a source or ownership.") (emphasis in original).

*Finally*, *Kemper* considered and rejected arguments concerning conspiracy liability that mirror those advanced by the *Freeman* plaintiffs. Relying on *Boim III*, the plaintiff in *Kemper*—as Plaintiffs do here—argued that primary liability under the ATA encompasses claims with the "character" of secondary liability. 2018 WL 6521588, at *9. The Seventh Circuit rejected this, holding that the ATA does not provide for civil conspiracy liability outside of what has been added to the statute by JASTA in Section 2333(d), and thus that so-called primary liability claims with the character of secondary liability cannot be sustained under Section 2333(a). *Id.*; *see also, e.g.*, Joint Mot. To Dismiss. at 27 n.11; Objections at 14 ("[T]he R&R erroneously concluded that a defendant may be secondarily liable under the ATA solely on the basis that it purportedly conspired to violate the underlying predicate material support statute."). The Seventh Circuit reasoned that because JASTA "explicitly added a textual basis for secondary liability to the ATA" after it had issued its decision in *Boim III*, "the theory of conspiracy liability advanced by [the plaintiff] under section 2333(a) would render section 2333(d)'s express allowance for conspiracy liability superfluous. . . . That result is one we must avoid." *Kemper*, 2018 WL 6521588, at *9; *see also* Objections at 15 & n.9 ("Any civil conspiracy liability claim must satisfy Section 2333(d)(2)."). *Kemper* thus supports the Moving Defendants' showing that Plaintiffs' attempt to assert some kind of hybrid primary conspiracy liability claim with the "character" of secondary liability is neither "recognized in this Circuit" nor "grounded in the law". Objections at 23 & n.14.

*Conclusion*

In sum, the Seventh Circuit in *Kemper* analyzed allegations substantially similar to the *Freeman* plaintiffs' allegations and found multiple independent reasons to affirm dismissal of the plaintiff's claims. We respectfully submit that the reasoning of the Court of Appeals is equally applicable here and provides further support for the Moving Defendants' objections to the R&R and for dismissal of all claims in the Second Corrected Amended Complaint.

Thank you for your attention to this matter.

Respectfully submitted,

*/s/ John D. Buretta*

John D. Buretta

The Honorable Dora L. Irizarry
   Chief United States District Judge
      United States District Court, Eastern District of New York
         225 Cadman Plaza East
           Brooklyn, New York 11201

BY ECF

Copies to:

All counsel

BY ECF