OSEN LLC
ATTORNEYS AT LAW
WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 402, HACKENSACK, NJ 07601          1441 BROADWAY, SUITE 6022, NEW YORK, NY 10018
T. 201.265.6400   F. 201.265.0303                             T.212.354.0111

January 3, 2019

**VIA ECF**

Hon. Dora L. Irizarry
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:      *Freeman, et al. v. HSBC Holdings plc, et al.*, **14-cv-6601 (DLI) (CLP)**

Dear Chief Judge Irizarry:

        Plaintiffs write in response to Defendants' December 19, 2018 letter regarding the recent Seventh Circuit decision in *Kemper v. Deutsche Bank AG*, No. 18-1031, __ F.3d __, 2018 WL 6521588 (7th Cir. Dec. 12, 2018). *Kemper*'s holdings conflict with the law of this Circuit, and its concluding "note" has little to say about the 18 U.S.C. § 2333(d) ("JASTA") claims at issue here (but deemed "waived" by the panel, *Kemper* at *9). It also conflicts with the Seventh Circuit's *en banc* decision in *Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 693-94 (7th Cir. 2008) ("*Boim III*") (the *Kemper* panel included the two authors of dissenting opinions in *Boim III*).

        *First*, JASTA—central to Judge Pollak's Report and Recommendation, ECF No. 165 ("R&R")—was not at issue in *Kemper*. It was mentioned briefly in a footnote to the lower court's decision which was fully considered and rightly rejected by Judge Pollak. *See* R&R at 50 n.43. Moreover, the panel did not assess whether the plaintiff's allegations in *Kemper* met the JASTA elements, nor did it adopt the lower court's reasoning.

        Instead, the *Kemper* panel "noted" that, "assuming" that the district court's interpretation of JASTA was correct (a question the panel did not reach), plaintiff's claim *should have been* made under § 2333(d), as Congress had *sub silentio* replaced *Boim III* with JASTA as the exclusive avenue of material support claims. "If section 2333(a)'s allowance for primary liability with the 'character' of conspiracy liability can support a conspiracy including a state sponsor of terror, a designated terrorist organization, or anyone else (perhaps a lone wolf), then litigants would never need to use the more limited conspiracy liability authorized by section 2333(d). That result is one we must avoid." *Kemper*, at *9.

This analysis directly conflicts with the law of this Circuit. In *Linde*, the Second Circuit declined to dismiss plaintiffs' allegations that Arab Bank violated § 2333(a) by participating in terror financing—i.e., "primary liability with the character of secondary liability"—*and* "agree[d] that plaintiffs are entitled to the benefits of JASTA's expansion of ATA liability to aiders and abettors on this appeal." *Linde v. Arab Bank PLC*, 882 F.3d 314, 328 (2d Cir. 2018).[1] Thus, as Judge Pollak correctly found, "[a]t trial, plaintiffs, of course, may rely on either theory of the case that they can prove." R&R at 49 n.40. The *Kemper* panel's rejection of primary liability under § 2333(a) after JASTA is wrong.

The panel's holding is also at odds with JASTA itself. JASTA was enacted to ensure the ATA "provide[d] civil litigants *with the broadest possible basis* . . . to seek relief against persons, entities, and foreign countries, wherever acting and wherever they may be found, that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities against the United States." JASTA § 2(b) (emphasis added).[2] In enacting JASTA, Congress was presumptively aware of *Boim III*, by any measure the leading case interpreting § 2333(a) liability. *See Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 184–85 (1988) (courts must "generally presume that Congress is knowledgeable about existing law pertinent to the legislation it enacts"). Clearly, Congress was not seeking to "*narrow*" *Boim III* liability, as Defendants urge here (an effort Judge Pollak already rejected: "Despite Congress's clear language about seeking to impose the 'broadest possible basis' of civil liability, defendants still seek to limit JASTA's scope . . . ." R&R at 32 n.29 (citation omitted)). Just as the Court of Appeals has found in construing the terrorist exception in the Foreign Sovereign Immunities Act, so here, "[t]he text, history, and purpose of the statute make clear that the statute does not counsel a narrow reading." *Doe v. Bin Laden*, 663 F.3d 64, 70 (2d Cir. 2011). Indeed, JASTA is just the latest of multiple amendments to the Anti-Terrorism Act and the material support statutes that have *consistently broadened* liability and terror victims' access to relief.

Section 2333(d) is also not "rendered superfluous" by § 2333(a)—it *broadens* liability by permitting liability without the need "to prove that the bank's own acts constitute international terrorism satisfying all the definitional requirements of § 2331(1)," as is required for primary liability. *Linde*, 882 F.3d at 328. However, § 2333(d) only applies to attacks committed, planned, or authorized by a designated Foreign Terrorist Organization. Therefore, an attack committed, planned, and authorized entirely by non-FTOs like the Taliban or Fatah would, in the *Kemper* panel's reading, be written out of the ATA entirely—the antithesis of the "broadest possible basis" Congress intended. In reality, as Judge Pollak correctly found, "JASTA simply memorializes what some courts interpreting the ATA have already concluded – namely, by conspiring to violate the material support provisions of the Act, Sections 2339A and 2339B, a person may be held liable for violations of Section 2333(a), if the other elements of 2333(a) are satisfied." R&R at 32 (citing cases). As *Linde* held, some claims may fall under *both* § 2333(a) and § 2333(d).

---

[1]   Although the JASTA claim in *Linde* would be an aiding and abetting claim, nothing about the *Kemper*'s JASTA holding is limited to conspiracies.

[2]   The phrase "foreign organizations *or persons*" makes clear that the ATA is not limited to FTOs.

*Second*, the panel's conclusions (evidently in dicta, given its view that JASTA supersedes the rest of the ATA) that Ms. Kemper's allegations of Deutsche Bank's conduct—the illegal deception of the U.S. counter-terror finance authorities on behalf of Iran, designated IRGC-agent NIOC, and IRISL—failed *as a matter of law* to meet the § 2331(1) definitional standards conflicts with binding precedent in this Circuit. The *Kemper* panel reasoned that Deutsche Bank's conduct was "not *necessarily*" dangerous to human life. *Kemper*, at *4 (emphasis added). (Defendants excise the word "necessarily" in their letter). Of course, at the pleading stage, Plaintiffs need not show that Defendants' conduct "*necessarily*" involved acts dangerous to human life, only that it *plausibly* did so. The Second Circuit, moreover, held that whether "providing routine financial services to members and associates of terrorist organizations" meets the § 2331(1) standards, or whether such transactions can even "be viewed as routine," "raises questions of fact for a jury to decide." *Linde*, 882 F.3d at 327.[3] Furthermore, the *Kemper* panel also omitted the full statutory language—correctly identified in *Linde*—that defendant's "activities … ***involve*** violent acts or acts dangerous to human life," and not that they themselves are violent or dangerous. 18 U.S.C. § 2331(1) (emphasis added). *Kemper*'s ellipsis of the full statutory requirement (and of the degree of separation Congress thereby introduced) not only makes the words "activities that involve" superfluous but also insulates nearly all forms of material support from primary liability because they are not themselves violent or inherently dangerous.

The *Kemper* panel's conclusion that a defendant's stated, subjective economic motives establish, as a matter of law, that it lacked the requisite appearance of intent set forth in § 2331(1)(B), also conflicts with this Circuit's holdings in *Weiss*. "The requirement to 'appear to be intended ...' does not depend on the actor's beliefs but imposes on the actor an objective standard to recognize the apparent intentions of actions." *Weiss v. Nat'l Westminster Bank Plc*, 768 F.3d 202, 207 (2d Cir. 2014). It also conflicts with *Boim III*, which held that where a donor knows "the aims and activities of the organization," such that it can foresee that "augmenting [the organization's] resources" would enable the organization (there, Hamas) to engage in more terrorism, the donor meets the appearance of intent standard, because "it is not a state-of-mind requirement; it is a matter of external appearance rather than subjective intent, which is internal to the intender." 549 F.3d at 693-94. The defendant in *Boim III* argued that it was motivated by humanitarian concerns (an argument supported in the dissents)—but subjective motivation is not controlling under the statute.

*Third*, the panel's introduction of a "motivation" element into conspiracy law itself runs counter to Second Circuit law.[4] The panel found that "[n]one of the allegations suggest that Deutsche Bank cared how its Iranian customers obtained or spent the funds that it processed for them." *Kemper*, at *20. As a result, it concluded, Ms. Kemper only alleged "at most that Deutsche

---

[3]  Notably, Defendants' letter does not mention this key holding of *Linde*, or, for that matter, *Linde* itself.

[4]  It also conflicts with ATA law generally—specific intent is an element the *Boim III* majority "eliminate[d]." 549 F.3d at 706, 707 (Rovner, J., dissenting). Second Circuit ATA law likewise only requires "a showing that the defendants were 'deliberately indifferent to whether or not the organization [engages in terrorist acts].'" R&R at 16-17 (quoting *Hussein v. Dahabshiil Transfer Servs. Ltd.*, 230 F. Supp. 3d 167, 176 (S.D.N.Y.), *aff'd*, 705 F. App'x 40 (2d Cir. 2017) and citing cases). The *Kemper* panel in fact expressly acknowledged that the plaintiff pleaded such deliberate indifference, *Kemper*, at *3, but then ignored that pleading when it substituted the specific intent requirement that *Boim III* (and the predicate material support statutes) rejected.

Bank joined a conspiracy to evade sanctions"—but not "a separate terrorism-related conspiracy involving Iran." *Kemper*, at *8.

As an initial matter, whether plaintiff "has proved a single conspiracy or has instead proved multiple other independent conspiracies is a question of fact for a properly instructed jury," not a grounds for dismissal as a matter of law. *United States v. Aracri*, 968 F.2d 1512, 1519 (2d Cir. 1992) (internal quotation marks and citations omitted). But more importantly, *motivation* is not an element of conspiracy in this or any other Circuit—indeed, making it dispositive sets a dangerous precedent for conspiracy law generally. The panel purportedly derived its motivation element from *Ocasio v. United States*, 136 S. Ct. 1423 (2016), which required a showing of "'the specific intent that' the conspiratorial goal be completed." *Kemper* at *8 (quoting *Ocasio* 136 S. Ct. at 1429). But the Supreme Court there explained that "'[a] specific intent to distribute drugs oneself is *not* required to secure a conviction for participating in a drug-trafficking conspiracy.' Agreeing to store drugs at one's house in support of the conspiracy may be sufficient." 136 S. Ct. at 1430 (quoting *United States v. Piper*, 35 F.3d 611, 614 (1st Cir. 1994) (emphasis added). *Piper*, in turn, held that to establish scienter, participation "in one ... link of the distribution chain, **knowing that it extended beyond his individual role**, was sufficient." *Piper*, 35 F.3d at 614–15 (internal quotation marks and citation omitted, emphasis added in *Piper*).[5]

The Second Circuit and other Circuits have agreed. As Judge Pollak correctly explained, "[t]he goals of all the participants need not be congruent for a single conspiracy to exist, so long as their goals are not at cross-purposes." R&R at 52 (quoting *United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990)). Other examples abound in the Second Circuit—*see* Plaintiffs' Mem. in Opp. of Ds. Mots. to Dismiss, ECF No. 125, at 38-41 (citing cases)—and beyond. *See, e.g.*, *United States v. Martin*, 618 F.3d 705, 736–37 (7th Cir. 2010) ("[E]ach co-conspirator's financial motivation for joining the conspiracy is essentially irrelevant."); *United States v. Frink*, 912 F.2d 1413, 1417 (11th Cir. 1990) (when selling cars under suspicious circumstances, defendant car dealer "[d]eliberately falsified paperwork"—just as Defendants did in this case—which was "even more indicative of guilty knowledge" and sufficient to support conviction for conspiracy to aid and abet drug distribution).

*Fourth*, the panel's proximate cause holding is irrelevant here.[6] The panel argued that recognizing a conspiracy claim "would undermine the causation analysis required by the ATA's use of the phrase 'by reason of'" because "pleading the type of wide-ranging conspiracy that Kemper has would allow plaintiffs to hold defendants liable who were not the proximate cause of the plaintiff's injury." *Kemper* at *9. This reasoning conflicts with the "primary liability with the character of secondary liability" principle enshrined in *Boim III*, *Linde* and other ATA cases. *See, e.g.*, *Boim III*, 549 F.3d at 697 (holding that providing material support is "enough to make [a

---

[5] Defendants' roles here are even more closely linked because, as Judge Pollak noted, Plaintiffs have alleged a hub-and-spoke conspiracy. R&R at 54-55.

[6] If anything, it reflects the panel's eagerness to limit the *en banc* holding of *Boim III*, as it "t[ook] this opportunity to clarify some language in *Boim III* that might be read to suggest that something less than proximate cause might suffice to prove ATA liability," even though "Kemper d[id] not argue that the ATA is devoid of a proximate-cause requirement . . . ." *Kemper*, at *5.

defendant] liable" because "he had helped to create a danger; it was immaterial that the effect of his help could not be determined—that his acts could not be found to be either a necessary or a sufficient condition of the injury.").[7] *See also Hussein*, 230 F. Supp. 3d at 176 (noting that "[w]ere Plaintiffs able plausibly to allege a conspiracy to provide material support, that would potentially give rise to a civil claim under Section 2333(a))"), cited in R&R at 32-33.

The panel also held that because Iran and its proxies proximately caused the attacks, they were a "superseding or intervening cause" and "a cause of independent origin that was *not foreseeable*." *Id.* at 16 (emphasis added) (internal quotation marks and citation omitted). Although contrary to the Seventh Circuit's own analysis in *Boim III* in relation to a § 2339A claim for aiding and abetting, it is even more inexplicable in the context of conspiracy claims (which were the only claims presented in *Kemper*). By definition, conspirators are liable for the foreseeable acts of co-conspirators performed in furtherance of the conspiracy and, as Judge Pollak rightly found, "violence against American and other Coalition troops and civilians is a 'foreseeable risk' and not outside the scope of a conspiracy to provide material support for terrorism . . . ." R&R at 60. Plaintiffs here have plausibly pleaded that Defendants knew or were deliberately indifferent to the substantial risk that at least some of the billions of dollars they concealed would be used by Iran for the proscribed purposes of financing terrorism, which also raised a plausible inference that such use was foreseeable.

Finally, although "some other fact," *Kemper*, at *8, should not have been necessary for pleading purposes in *Kemper*, the *Freeman* complaint is replete with additional facts suggesting knowledge, deliberate indifference, and foreseeability, including:

- The Defendants' communications amongst each other on how best to execute the conspiracy, R&R at 55;

- Communications from Defendants' officers showing their awareness that illegal payments could be going to terrorism, *id.*;

- Defendants' knowing participation in Iran's purchase and import of controlled items with military applications, including hydraulic presses necessary to make EFPs, *id.* at 84; *see also id.* at 96 (aircraft parts for SDGT Mahan Air); and

- Contrary to Deutsche Bank's self-serving allegation that its payments were *mostly* "legal" (credited by the *Kemper* court) or somehow "indirect," the Defendants here engaged in countless transactions ***directly*** on behalf of IRGC agents, such as NIOC and Mahan Air, *id.* at 10-11, 14, 62, 67, 78, 82-84, 87-90, 96.

---

[7] The court's reasoning incorporated conspiracy principles, as well: "The parties have discussed both issues mainly under the rubrics of 'conspiracy' and 'aiding and abetting.' Although those labels are significant primarily in criminal cases, they can be used to establish tort liability, and there is no impropriety in discussing them in reference to the liability of donors to terrorism under section 2333 just because that liability is primary." *Boim III*, 549 F.3d at 691 (citations omitted).

**Hon. Dora L. Irizarry, U.S.D.J.**
**January 3, 2019**
**Page 6 of 6**

      For the reasons set forth both herein and in our prior submissions, we respectfully submit that the Court should fully adopt Judge Pollak's Report and Recommendation.

                Respectfully submitted,

                /s/ Gary M. Osen

cc: All Counsel via ECF