**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

One Liberty Plaza
New York, NY 10006-1470
T: +1 212 225 2000
F: +1 212 225 3999

clearygottlieb.com

WASHINGTON, D.C. • PARIS • BRUSSELS • LONDON • MOSCOW
FRANKFURT • COLOGNE • ROME • MILAN • HONG KONG
BEIJING • BUENOS AIRES • SÃO PAULO • ABU DHABI • SEOUL

D: +1 212 225 2490
jblackman@cgsh.com

VICTOR I. LEWKOW
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
YARON Z. REICH
RICHARD S. LINCER
JAMES A. DUNCAN
STEVEN M. LOEB
CRAIG B. BROD
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
ANDRES DE LA CRUZ
DAVID C. LOPEZ
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN
LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR.
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW

FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
JOON H. KIM
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRÁLDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHAEL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK
ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM J. BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
JARED GERBER
COLIN D. LLOYD
COREY M. GOODMAN
RISHI ZUTSHI
JANE VANLARE

DAVID H. HERRINGTON
KIMBERLY R. SPOERRI
AARON J. MEYERS
DANIEL C. REYNOLDS
ABENA A. MAINOO
HUGH C. CONROY, JR.
JOSEPH LANZKRON
MAURICE R. GINDI
KATHERINE R. REAVES
RAHUL MUKHI
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
HEIDE H. ILGENFRITZ
KATHLEEN M. EMBERGER
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
JOHN V. HARRISON
CAROLINE F. HAYDAY
NEIL R. MARKEL
KENNETH S. BLAZEJEWSKI
ANDREA M. BASHAM
LAURA BAGARELLA
SHIRLEY M. LO
JONATHAN D.W. GIFFORD
SUSANNA E. PARKER
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

April 19, 2019

Via ECF

The Honorable Dora L. Irizarry
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

  Re: *Freeman* v. *HSBC Holdings plc*, 14-cv-6601-DLI-CLP ("*Freeman*")

Dear Chief Judge Irizarry:

  The Moving Defendants[1] respectfully submit this response to Plaintiffs' April 9, 2019 letter, ECF No. 218 ("Pls.' Ltr."), concerning Judge Swain's recent decision granting the defendants' motion to dismiss in *O'Sullivan v. Deutsche Bank AG*, 17-cv-8709 (LTS) (OWO) (S.D.N.Y. Mar. 28, 2019) ("*O'Sullivan*").  *O'Sullivan* provides additional persuasive authority for the Moving Defendants' motions to dismiss in *Freeman*, and Plaintiffs' attempts to distinguish or cast doubt on *O'Sullivan* are unavailing.

  The Moving Defendants brought *O'Sullivan* to Your Honor's attention because the facts alleged, and legal theories pursued, by plaintiffs there are nearly identical to those in *Freeman*.  Plaintiffs' vague and unsubstantiated assertion that the allegations in *Freeman* "diverge significantly" from those in *O'Sullivan* is incorrect.  (Pls.' Ltr. at 1.)  The only purported "divergence" alluded to in Plaintiffs' letter—that "the *O'Sullivan* plaintiffs appear to

---

[1]  The "Moving Defendants" are HSBC Holdings PLC, HSBC Bank PLC, HSBC Bank Middle East Limited, HSBC Bank USA, N.A., Barclays Bank PLC, Standard Chartered Bank ("SCB"), The Royal Bank of Scotland N.V., Credit Suisse AG, and Commerzbank AG.

The Honorable Dora L. Irizarry, p. 2

have lumped attacks by Al Qaeda, Hezbollah, and other terrorist groups together" (*id.*)—is not a distinction at all, much less one with a difference.[2]

Plaintiffs' April 9 letter also contends that this Court should ignore *O'Sullivan* because Judge Swain "erred fundamentally" in her analysis of both primary and secondary liability claims under the Antiterrorism Act ("ATA") and Justice Against Sponsors of Terrorism Act ("JASTA"). (Pls.' Ltr. at 1.) Plaintiffs' arguments, which largely repeat the erroneous arguments they have made previously in this case, have no merit.

On primary liability, Plaintiffs argue that under *Linde v. Arab Bank*, 882 F.3d 314 (2d Cir. 2018), the question of whether providing financial services to terrorist organizations is an act of international terrorism is always "a *matter of fact* for the jury to determine." (Pls.' Ltr. at 5.) But Your Honor has rejected that very argument. *See Weiss v. National Westminster Bank PLC*, No. 05-cv-4622, ECF No. 415, at 14 (E.D.N.Y. Mar. 31, 2019); *Strauss v. Credit Lyonnais, S.A.*, No. 06-cv-00702. ECF No. 480, at 15 (E.D.N.Y. Mar. 31, 2019).

Plaintiffs further argue that banking services involving wire stripping are violent and dangerous to human life. But as *O'Sullivan* correctly held when looking at the same allegations, and consistent with Your Honor's rulings in *Weiss* and *Strauss*, "banking services . . . are not inherently violent or dangerous." *O'Sullivan* Order at 17-18. As those decisions demonstrate, the fact that wire stripping is alleged does not make transfers with no alleged connection to terrorist attackers dangerous to human life.

Moreover, as in *O'Sullivan*, the allegations in *Freeman* are too attenuated to establish the requisite proximate link between the Moving Defendants' acts and Plaintiffs' injuries under *Rothstein v. UBS*, 708 F.3d 82 (2d Cir. 2013). Plaintiffs attempt to muddle the analysis by conflating their primary and secondary liability claims, but as *O'Sullivan* makes clear, Plaintiffs' indirect, circuitous, and "elongated" theory of causation containing numerous links in the chain, does not satisfy the ATA's causation requirement. *O'Sullivan* Order at 12 n.9; *see also Kemper v. Deutsche Bank AG*, 911 F.3d 383, 394 (7th Cir. 2018).

On secondary liability, Plaintiffs argue that *O'Sullivan* erred because under JASTA, the Moving Defendants did not need to share a common goal of committing an act of international terrorism to be liable for conspiracy, and instead, that it was sufficient that they shared a goal of evading sanctions. (Pls.' Ltr. at 2-3.) Plaintiffs' argument relies upon a misreading of *Halberstam v. Welch*, 705 F.2d 472 (D.C. Cir. 1983), under which a defendant may only be held liable for an act of an alleged co-conspirator if "the purpose of the act was to advance the overall *object* of the conspiracy." *Halberstam*, 702 F.2d at 487 (emphasis added).

---

[2] In a related vein, Plaintiffs argue that the court's observation in *O'Sullivan* that the complaint failed to allege that the Iranian Revolutionary Guard Corps ("IRGC") and Hezbollah "carried out" any of the relevant attacks distinguishes that case from this one. (Pls.' Ltr. at 6.) In fact, both the *O'Sullivan* complaint and the *Freeman* complaint contain the same conclusory allegations that the same groups "committed, planned and authorized" the attacks. (*Id.*) There is no meaningful difference between the two complaints. The same is true of the *Freeman* allegation that the attacks alleged there involved "Hezbollah-designed and Iranian-supplied Explosively Formed Penetrators[.]" (Pls.' Ltr. at 3.) All this would show at best is that Iran supported the attacks, but that does not affect the basic point that this does not create liability on the part of the Moving Defendants.

The Honorable Dora L. Irizarry, p. 3

*O'Sullivan*, in holding that the defendants cannot be held liable for acts outside the scope of the conspiracy they allegedly entered, is fully consistent with *Halberstam*.

In *Halberstam* the court concluded that a murder advanced the object and "was certainly not outside the scope of a conspiracy to obtain stolen goods through regular nighttime forays and then to dispose of them." *Id.* at 487. Here, the alleged conspiracy with Iran to evade economic sanctions is far from alleging a conspiracy to commit terrorism, and unlike the murder in *Halberstam* there are no plausible allegations here that the terrorist attacks were within the "scope" and in furtherance of the sanctions-evading conspiracy involving the Moving Defendants.[3] As noted in *Rothstein*, 708 F.3d at 97, "Iran has many legitimate agencies, operations, and programs to fund" such that transacting with Iran does not equate to supporting terrorism.

In any event, the Court need not even reach the *Halberstam* analysis because Plaintiffs' allegations do not satisfy JASTA's threshold requirements that the act of international terrorism be "committed, planned, or authorized" by a Foreign Terrorist Organization ("FTO") that was so-designated at the time of the attack, and that the Moving Defendants "knowingly provid[ed] substantial assistance [*to*], or conspire[d] *with* the person *who committed* such an act of international terrorism." *Linde*, 882 F.3d at 320 (alteration in original) (emphasis added) (quoting 18 U.S.C. § 2333(d)). *See Moving Defendants' Joint Objections to the Magistrate Judge's Report and Recommendation* at 18-19, ECF No. 174.[4]

Plaintiffs also argue that *O'Sullivan*'s dismissal of the aiding and abetting claims is inconsistent with the *Halberstam* framework. (Pls.' Ltr. at 4.) In doing so, Plaintiffs improperly ignore *Linde*, 882 F.3d at 329, as well as Your Honor's recent decisions in *Weiss* and *Strauss*. In both *Weiss* and *Strauss* this Court recognized that "aiding and abetting requires the secondary actor to be aware that, by assisting the principal, it is itself assuming a role in terrorist activities" which for a financial institution, "requires a showing that in providing financial services, the bank was generally aware that it was thereby playing a role in the terrorist organization's violent or life-endangering activities, which requires more than the provision of material support to a designated terrorist organization." *Weiss* Order at 10 (internal brackets and quotation marks omitted); *Strauss* Order at 10 (same). Here, there is no allegation that the Moving Defendants had a "general awareness" that they were assuming a "role" in acts of terrorism. Nor do Plaintiffs plausibly allege that the Moving Defendants were aware that the Iran-based entities to whom they allegedly provided banking services were engaged in terrorist activity. Thus, there can be no aiding and abetting liability.

---

[3] *See, e.g.*, *Kemper*, 911 F.3d at 395 (affirming dismissal of JASTA conspiracy claims where the defendants "may have engaged in business dealing that incidentally assisted a separate terrorism-related conspiracy involving Iran [but the facts] d[id] not suggest that [the defendant] ever agreed to join that conspiracy").

[4] Plaintiffs' references to the recent designation of the IRGC as an FTO and to an enforcement action against SCB are outside the pleadings and wholly irrelevant. The fact that the IRGC is now being designated as an FTO underscores that it was *not* a designated FTO at the time of the alleged attacks (as required by JASTA) and has no bearing on what the Moving Defendants knew or intended (or apparently intended) years ago. Further, Plaintiffs do not allege that the Moving Defendants had any dealings with, much less conspired with or aided and abetted, the IRGC in furtherance of its purported terrorist activities. Nothing in the document that Plaintiffs attached to their letter impacts Judge Swain's ruling or the motions pending before the Court.

The Honorable Dora L. Irizarry, p. 4

*Finally*, no court, other than in the Report and Recommendation by Magistrate Judge Pollak in *Freeman*—to which the Moving Defendants have objected—has ever held that sanctions violations are sufficient for either primary or secondary liability under the ATA or JASTA.  If Congress had wanted to create a civil cause of action under the ATA or JASTA for sanctions violations, it would have done so expressly.  It did not.  As *O'Sullivan* and the numerous other precedents that the Moving Defendants have cited confirm, courts should not employ a tortured reading of the ATA and JASTA to read such a cause of action into the statutory framework by implication.

Respectfully submitted,


/s/ Jonathan I. Blackman

cc:     All Counsel of Record (via ECF)