OSEN LLC

ATTORNEYS AT LAW

WWW.OSENLAW.COM

2 UNIVERSITY PLAZA, SUITE 402, HACKENSACK, NJ 07601          1441 BROADWAY, SUITE 6022, NEW YORK, NY 10018
T. 201.265.6400    F. 201.265.0303                                                   T.212.354.0111

April 24, 2019

**VIA ECF**

Honorable Dora L. Irizarry
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Freeman, et al. v. HSBC Holdings plc, et al.*, 14-cv-6601 (DLI)(CLP)

Dear Chief Judge Irizarry:

Plaintiffs respectfully write in response to new authority raised by Defendants in their April 19, 2019 letter. Defendants contend that Your Honor's recent summary judgment decisions in *Weiss v. Nat'l Westminster Bank PLC*, No. 05-cv-4622 (DLI)(RML), 2019 WL 1441118 (E.D.N.Y. Mar. 31, 2019), and *Strauss v. Credit Lyonnais, S.A.*, No. 06-cv-702 (DLI)(RML), 2019 WL 1492902 (E.D.N.Y. Mar. 31, 2019), compel dismissal of *Freeman*. Apart from the fact that those cases are under appeal, they are largely irrelevant to the legal issues presented by *Freeman*.

The *Weiss* and *Strauss* plaintiffs alleged that two European banks knowingly or with deliberate indifference provided financial services for certain purported charities that served as "primary fundraisers" of the Foreign Terrorist Organization ("FTO") Hamas. Accordingly, plaintiffs, who were injured in several terrorist attacks committed by Hamas in Israel, claimed defendants were civilly liable pursuant to 18 U.S.C. § 2333(a) (based on their violations of 18 U.S.C. § 2339B) and 18 U.S.C. § 2333(d) (based on their aiding and abetting Hamas). Unlike *Freeman*, neither case involved conspiracy allegations.

The *Weiss* and *Strauss* plaintiffs' claims in fact survived motions to dismiss and several motions for summary judgment, before this Court dismissed them based on the Second Circuit's 2018 decision in *Linde v. Arab Bank, PLC*, 882 F.3d 314 (2d Cir. 2018). While *Linde* held that whether Arab Bank's knowing provision of financial services to Hamas violated § 2331 or § 2333(d) were jury questions, this Court reasoned that "*Linde* did not preclude a finding that, as a matter of law, providing *routine* financial services *for charitable purposes to charities* that include members and associates of terrorist organizations is not a violent act or act dangerous to human life under § 2331(1)" and does not appear to be intended to terrorize, or that it does not meet the general awareness prong of aiding and abetting under JASTA. *Weiss*, 2019 WL 1441118, at *7 (emphasis added). *See also id.* at *5 (accepting defendants' "argu[ment] that undisputed

evidence demonstrate[d] that, to [its] knowledge, Interpal was a charity aiming to do good works in a deeply deprived and troubled region.") (internal quotation marks and citation omitted).

Defendants here cannot contend that their conduct—*admitted* conspiracies to mislead U.S. counter-terror and other authorities by actively stripping identifying information from billions of dollars' worth of wire transfers for Iran, a state sponsor of terrorism, and agents of its terror apparatus—is "routine" in any sense of the word. Indeed, Defendants tellingly omit the word "routine" from their letter entirely, even when referencing the *Weiss* and *Strauss* decisions.

Moreover, Defendants' knowing circumvention of the U-Turn exemption for Iran's "many legitimate agencies, operations, and programs," Letter at 3 (quoting *Rothstein v. UBS*, 708 F.3d 82, 97 (2d Cir. 2013)), refutes—at the very least for pleading purposes—any suggestion that Defendants believed they were only supporting Iran's "good works," especially when that conduct was on behalf of agents of the Islamic Revolutionary Guard Corps (a designated FTO). The same is true for Defendants' illegal facilitation of Iran's purchase of items restricted for their military applications—including hydraulic presses necessary for the production of explosively formed penetrators of the type used to injure Plaintiffs. Second Amended Complaint, ¶¶ 825-35.

Defendants double down on the error in arguing that the dismissal of the *Weiss* and *Strauss* plaintiffs' aiding and abetting claims under § 2333(d) compels dismissal of Plaintiffs' § 2333(d) claims here. First, the claims here are premised on conspiracy. Defendants argue that Plaintiffs failed to meet *Halberstam*'s conspiracy test because "unlike the murder in *Halberstam* there are no plausible allegations here that the terrorist attacks were within the 'scope' and in furtherance of the sanctions-evading conspiracy involving the Moving Defendants." Letter at 3.[1] Defendants omit, of course, that the sanctions were *explicitly* designed to prevent terrorist attacks like those at issue here. *See* Pls' Resp. to Defs' Objs., ECF No. 183, at 21 n.13, 22, 34. Defendants likewise omit that their role in the conspiracy was to perform *precisely* the "deceptive banking practices" identified by the U.S. Treasury as instrumental to Iran's terror financing campaign. *See id.* at 23-24. If anything, terrorist attacks are more within the scope of a conspiracy to evade counter-terror sanctions than murder is within the scope of "a conspiracy to obtain stolen goods through regular nighttime forays and then to dispose of them." *Halberstam v. Welch*, 705 F.2d 472, 487 (D.C. Cir. 1983). Likewise, Defendants' roles involved acts that "were also arguably more deceptive and more involved than the unlawful acts undertaken by Linda Hamilton in *Halberstam*, who is only alleged to have done secretarial work for her boyfriend's business." *Freeman v. HSBC Holdings PLC*, No. 14-cv-6601 (DLI)(CLP), 2018 WL 3616845, at *27 (E.D.N.Y. July 27, 2018).

Second, even under an aiding and abetting theory, *Weiss* and *Strauss* do not help Defendants here.[2] Your Honor concluded that the same evidence of the *Weiss* and *Strauss*

---

[1]     Defendants also misleadingly suggest that *Kemper* rejected a similar JASTA claim. *See* Letter at 3 n.3 (arguing, in their *Halberstam* analysis, that *Kemper* "affirmed dismissal of JASTA conspiracy claims"). Defendants quote from *Kemper*'s *primary liability* analysis—*Kemper* never reached the merits of Ms. Kemper's JASTA claim. *Kemper v. Deutsche Bank AG*, 911 F.3d 383, 396 (7th Cir. 2018).

[2]     *See Freeman*, 2018 WL 3616845, at *23 n.42 (noting that "many of [Plaintiffs'] claims also fall under an aiding-abetting theory" which may be "presented to the jury").

Letter to Hon. Dora L. Irizarry, U.S.D.J.
April 24, 2019
Page 3 of 3

defendants' functionally *routine* banking activities suggested that they were not generally aware of their role in any of Hamas's or the Hamas "charities'" violent or life-endangering activities. *Weiss*, 2019 WL 1441118, at *10. Again, the allegations here more than plausibly point to the opposite—Defendants were *at least* "generally aware" that their evasion of counter-terror-finance sanctions, including for controlled items, played a role in Iran's and Hezbollah's terrorist attacks. A bank that systematically alters, falsifies, and conceals financial transactions is *always* aware that it is playing a role in unlawful financing, and it a reasonable inference that such financing included the terror financing that the evaded sanctions expressly sought to deter.

Respectfully submitted,

/s/ Gary M. Osen

cc:     All Counsel