# EXHIBIT A

1

 1                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2   - - - - - - - - - - - - - - - - X
                                     :
 3    FREEMAN, ET AL.,                : 18-CV-07359(BMC)
                                     :
 4          Plaintiffs,               :
                                     :
 5                                    : United States Courthouse
      -against-                       : Brooklyn, New York
 6                                    :
                                     :
 7                                    : February 11, 2019
      HSBC HOLDINGS PLC, ET AL.,      : 10:00 a.m.
 8                                    :
            Defendants.               :
 9
     - - - - - - - - - - - - - - - - X
10
         TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
11            BEFORE THE HONORABLE BRIAN M. COGAN
                  UNITED STATES DISTRICT JUDGE
12

13                    A P P E A R A N C E S:

14   For the Plaintiffs:      OSEN LLC
                              2 University Plaza
15                            Suite 402
                              Hackensack, New Jersey 07601
16
                         BY:  GARY M. OSEN, ESQ.
17

18                            TURNER & ASSOCIATES, P.A.
                              4705 Somers Avenue
19                            North Little Rock, Arkansas 72116

20                       BY:  TAB TURNER, ESQ.

21
     For the Defendants:      CLEARY, GOTTLIEB, STEEN & HAMILTON
22                            One Liberty Plaza
                              New York, New York 10006
23
                         BY:  JONATHAN I. BLACKMAN, ESQ.
24

25


                    Denise Parisi, RPR, CRR
                       Official Court Reporter

```
 1              A P P E A R A N C E S: (Continued.)

 2   For the Defendants:       MAYER BROWN LLP
                                 1999 K Street Northwest
 3                               Washington, DC 20006

 4                            BY:  MARC R. COHEN, ESQ.

 5
                               SULLIVAN & CROMWELL LLP
 6                               125 Broad Street
                                 New York, New York 10004
 7
                              BY:  MICHAEL T. TOMAINO, JR., ESQ.
 8                                 BRADLEY P. SMITH, ESQ.

 9
                               CLIFFORD CHANCE US LLP
10                               31 West 52nd Street
                                 New York, New York 10019
11
                              BY:  ROBERT G. HOUCK, ESQ.
12

13
     Court Reporter:           DENISE PARISI, RPR, CRR
14                             Official Court Reporter
                               Telephone: (718) 613-2605
15                             E-mail: DeniseParisi72@gmail.com

16   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.
17

18                 *     *     *     *     *

19         (In open court.)

20         THE COURTROOM DEPUTY:  THE COURTROOM DEPUTY:  All

21   rise.

22         THE COURT:  Good morning.  Have a seat, please.

23         THE COURTROOM DEPUTY:  Freeman, et al., versus HSBC

24   Holdings, PLC, et al., Docket No. 18-CV-7359.

25         Counsel, please state your appearances starting with
```

1  the plaintiff.
2          MR. TURNER:  Tab Turner for the plaintiffs.
3          MR. OSEN:  Gary Osen, Osen LLC, for the plaintiffs.
4          THE COURT:  Good morning.
5          MR. BLACKMAN:  Jonathan Blackman, Cleary Gottlieb,
6  for the defendant, Commerzbank; and I also elected to be the
7  speaker for all of the defendants other than Bank Saderat.
8          THE COURT:  Mr. Blackman, I haven't seen you for
9  years.  I do not understand why your hair has turned gray and
10 mine hasn't.
11         MR. BLACKMAN:  Your Honor, I think it's best for me
12 not to comment in response to that.  You also do have more
13 than me, clearly.
14         THE COURT:  That's true, too.
15         Okay.  Do I need the appearances for the other
16 counsel?  I should have it.  Let me know who is here.
17         MR. TOMAINO:  Good morning, Your Honor.  Michael
18 Tomaino with Sullivan & Cromwell for Barclays Bank PLC.
19         THE COURT:  Okay.
20         MR. COHEN:  Marc Cohen, Mayer Brown, for the HSBC
21 defendants and Credit Suisse.
22         THE COURT:  Okay.
23         MR. SMITH:  Brad Smith from Sullivan & Cromwell for
24 Standard Chartered Bank.
25         THE COURT:  Okay.

1            MR. HOUCK:  Robert Houck from Clifford Chance for
2    NatWest Markets.
3            THE COURT:  Okay.
4            We don't have anybody yet for RBS or Bank Saderat?
5            MR. HOUCK:  Excuse me, Your Honor.  RBS as well.
6            THE COURT:  Right.  I knew that.  Okay.
7            Okay.  That's fine.  First of all, I want to assure
8    everybody that while you may not believe it, the assignment of
9    this case to me was entirely random.  I wouldn't believe it if
10   I were you, but it is the case.  Those of you who have worked
11   in the courts understand that there is a gremlin in the wheel
12   and sometimes things just happen, and it just happened.
13   That's just the way it is.  That was totally fortuitous.
14           Having said that, what do you want to do with the
15   case?  Where do we go next?  Defendants have motions?
16           MR. BLACKMAN:  Your Honor, the defendants believe
17   this case should be stayed for a number of reasons pending the
18   decision on the motion to dismiss that we made in what we can
19   call the Freeman I case which, in fact, the plaintiffs
20   properly indicated this case was related to.  The cases are
21   indeed closely related.  In fact, it's striking that the named
22   plaintiff is actually from the same family, the widow of Brian
23   Freeman, who is the named plaintiff.  In Freeman I, the
24   plaintiff -- the named plaintiff in this case is also
25   Freeman -- it's Mr. Freeman's stepmother -- and we have 65

1  families actually --

2          THE COURT:  So it is literally a related case.

3          MR. BLACKMAN:  Yes.  In all senses of the word, it's
4  a related case.

5          And not only is it a related case, but as Mr. Osen,
6  I think, will agree, he originally sought to amend the
7  Freeman I complaint to add these new plaintiffs; and when we
8  were last hear, which was on November 15th before Magistrate
9  Judge Pollak, we discussed at length the process of that
10 amendment, the timing, and he was concerned with the statute
11 of limitations which ran on these claims.

12         On January 2nd, we saw a proposed amended complaint,
13 we said -- besides the additional claimants, which we
14 expected, there were quite a few additional attacks, and we
15 said we just can't agree to an amendment, make a motion,
16 and -- for whatever reason, even though a motion would have
17 stopped the running of the statute of limitations, he instead
18 decided -- which is his right -- to file a new complaint, but
19 it clearly is a related complaint, and we have had the
20 Freeman I case pending since 2014 and a stay -- and this is
21 the important thing -- a stay in discovery in that case was
22 entered by Magistrate Judge Pollak on January 15, 2015.  That
23 stay remains in place.  In the meantime, Chief Judge Irizarry
24 had our motion to dismiss that case.  She referred it to
25 Magistrate Judge Pollak for report and recommendation.

1     THE COURT: When was that referred?

2     MR. BLACKMAN: It was referred, I believe, in around 2016, and it resulted in a decision which was a recommendation that the motion be denied this past summer in July 2018.

    The plaintiffs, as you would expect, immediately wrote to her saying: Lift the stay of discovery.

    She has not done that. Not only has she not done that, but when we were here before her on November 15th of 2018, she said: I'm still considering it and I'm waiting to hear from Judge Irizarry.

    THE COURT: So she has not adopted the RNR either.

    MR. BLACKMAN: We, of course, filed objections which are pending before Chief Judge Irizarry. She is -- as though sub judice, she has not lifted the stay, and Magistrate Judge Pollak has not lifted the stay. And if, in fact, the amendment had gone through as an amendment, it would be subject to that stay. So we think, for reasons of judicial efficiency and, frankly, just common sense, this case ought to be stayed. Motion practice in this case would be, in most respects, duplicative of what's already been fully briefed and is before Chief Judge Irizarry. It would make no sense to do that, again; and it would make even less sense to proceed with discovery, which I have to also say, not only has been stayed in the related case of Freeman I, but there's another case in the Southern District called O'Sullivan, and -- which, again,

1  is essentially the same case, different plaintiffs, same
2  theory, same basic claims involving violations of Iran
3  sanctions by the defendants which are alleged to be the cause
4  of injuries to service personnel in Iraq -- it's the same
5  case -- that case of discovery was stayed over the plaintiffs'
6  opposition, initially by Magistrate Judge Orenstein, and
7  objections to that stay were overruled by Judge Swain.
8       So both cases that have gotten to the stage of
9  motion practice, both in this Court and in the Southern
10 District, have been stayed.  None of the cases raising these
11 theories have gone forward.
12      And there's another case against just HSBC called
13 the Siegel case where the motion to dismiss was granted by
14 Judge Cote, and that's now on appeal on the Circuit --
15      THE COURT:  By Judge?
16      MR. BLACKMAN:  By Judge Cote.
17      And if the Circuit affirms, that will obviously have
18 a potentially preclusive impact on all these cases, so it's
19 just another reason why, as a matter of just sensible judicial
20 management, we ought to just pause this case pending at least
21 Chief Judge Irizarry's decision, the motion to dismiss, and
22 then revisit the question of what to do next.  That's our
23 submission.
24      THE COURT:  Okay.
25      Let me ask the plaintiffs, was the purpose of filing

1  this action rather than amending the one before Judge Irizarry
2  just belt and suspenders as to the statute of limitations?
3            MR. OSEN:  Yes, Your Honor.  The defendants declined
4  to consent to amendment, and because of the timing of the
5  filing that would have to take place, there wasn't sufficient
6  time to brief the motion with the holidays, so in order to
7  protect the claims of all plaintiffs who were still unfiled,
8  if you will, we filed as a new action, although it materially
9  is -- well, let me take a step back, Your Honor.  The one
10 distinction between the two cases is that when Freeman II --
11 I'm sorry -- when Freeman I was amended in 2016, it predated
12 the passage of JASTA.  JASTA was briefed to both Judge Pollak
13 and Judge Irizarry, but it wasn't in the complaint.  So when
14 we filed Freeman II on December 26th, we incorporated the
15 claims which Judge Pollak had discussed and found to be
16 sufficiently meritorious, so those were -- those were kind of
17 baked into the new complaint to clean up that aspect of it,
18 but otherwise, it was filed as a related case.
19           THE COURT:  Okay.  The depth of Mr. Blackman's
20 presentation suggests that you are opposed to staying this
21 case; is that right?
22           MR. OSEN:  Not exactly, Your Honor.  Frankly, we
23 didn't know what Your Honor or Judge Irizarry may have said or
24 decided to do in terms of administration, so our position is
25 that as far as what happens with Freeman II is obviously in

1  the discretion of the Court -- Your Honor -- and Judge
2  Irizarry.
3            As far as whether in principle we agree to a stay,
4  it depends on whether or not the cases are consolidated.  The
5  defendants had argued last November that they couldn't agree
6  or consent to amendment because they had new issues they
7  wished to raise in briefing those new attacks that were
8  listed, and so to the extent that the cases are not
9  consolidated and they proceed on separate tracks, then,
10 obviously, from our standpoint, there's no benefit to the
11 plaintiffs in having a new set of briefing that is going to be
12 done anyway be delayed, so it's really a question of the
13 Court's own internal preferences.
14           THE COURT:  Well, has anyone asked Judge Irizarry if
15 she wants to take this case?
16           MR. BLACKMAN:  We have not.
17           THE COURT:  I have not spoken to her about it.
18           MR. BLACKMAN:  What Mr. Osen said is a bit different
19 than what he told me on the phone where he did say that he
20 was, sort of, open -- obviously, it's the Court's decision to
21 consolidation -- but that he did think that he wanted to start
22 some discovery.  If I misheard him, I apologize, but he did, I
23 think, say that, and that was one of the reasons for the depth
24 of my --
25           MR. OSEN:  To be clear, Your Honor, we will take

1  discovery in any case we can get it, so that shouldn't be a
2  surprise, but the greater issue here is simply -- well, let
3  me --
4          THE COURT:  The question is:  Has anyone said to
5  Judge Irizarry:  You are the low-numbered judge, why don't you
6  take Judge Cogan's case?
7          MR. OSEN:  We have not, Your Honor.
8          THE COURT:  We don't talk like that if you don't
9  call it to our attention, which you now have.  So now that you
10 have called it to my attention, I will talk to Judge Irizarry.
11         Is anyone opposed to reassigning this case to her?
12         MR. BLACKMAN:  We would not be opposed, Your Honor.
13         MR. OSEN:  We are not opposed, Your Honor.
14         Just one last point on this.
15         It's just a procedural peculiarity that may explain
16 the status here.  When we filed Freeman II, we served it on
17 all defendants by e-mail the day of and asked them if they
18 would accept service since they were all represented in
19 Freeman I.  We never received a response, both to that e-mail
20 and to follow up, so we went ahead and had to serve them in
21 the old-fashion way; and so, therefore, there's been a
22 built-in delay of about 20 days or so or 30 days for service,
23 which, in part, explains, why it's sort of procedurally in
24 this posture because most of the defendants have just appeared
25 in the last 48 hours or so.

1    THE COURT:  I see.

2    MR. BLACKMAN:  Frankly, Your Honor, one of the
3 reasons that we didn't accept services, we thought this case
4 was going to go to Judge Irizarry in the normal course of --

5    THE COURT:  It doesn't do that anymore.  Judges have
6 to make it happen.  And, you know, generally what happens is
7 when the plaintiff puts on the cover sheet "related to," a
8 letter follows to one or both judges -- usually the
9 low-numbered judge, and maybe the high-numbered judge as
10 well -- saying these are really related and should be in front
11 of one judge; whichever one, we don't care.

12    MR. BLACKMAN:  There's an interesting wrinkle here,
13 and I don't want to burden the Court with cases that are not
14 before you, but because of the same statute of limitations
15 issue, there are also three other cases filed in this interval
16 between Christmas and New Year's.  One of them is actually --
17 it's called Stevens -- it's before Judge Dearie -- and it's
18 marked as related to this case; another one called Donaldson
19 was marked as related to Freeman I; and a third one called
20 Tavera is not marked as related to anybody.  Donaldson
21 actually was transferred from Judge Gershon to Judge DeArcy
22 Hall, so she now has two of those cases.  We have a chart.

23    THE COURT:  Clearly there's the need for some
24 judicial administration here.

25    Okay.  If either side wants the case -- well, let me

1   put it this way: You should make a proposal to us as to what
2   to do with these cases, whoever is interested. Generally
3   speaking, if the cases are truly related, they should go to
4   the judge who has the earliest filed case, the lowest numbered
5   case; but, again, that has got to be called to our attention.
6           Now, since no one has called it to our attention at
7   this point, I'm going to give Judge Irizarry a copy of this
8   transcript and then I'm going to talk to her and see what she
9   thinks; but, in the meantime, if you have views as to how
10  these cases should be administered, feel free to send a letter
11  to the low-numbered judge of whichever case you think is
12  related with copies to the other judges and then we will all
13  talk and come to a decision as to what to do.
14          MR. BLACKMAN: Your Honor, in that vein, perhaps
15  along with the transcript, here is our chart of cases.
16          THE COURT: Great. I like charts.
17          MR. BLACKMAN: I have a copy for Counsel (handing).
18          THE COURT: I will start the dialogue with Judge
19  Irizarry now because that's the one that seems to be most
20  likely related and appropriate to consolidate this one with.
21  We won't do anything for a week, at least. In the meantime,
22  if you all have any positions that you want to set forth as to
23  how the collection of cases should be treated, write a letter
24  to the low-numbered judge, copies to the other judges, and
25  then we will all discuss it and let you know what we decide.

1     MR. BLACKMAN: I think, Your Honor, you will see
2  from the chart that we've reached out to plaintiffs in these
3  other cases and we have agreements in at least two of them to
4  essentially stay them in place --
5     THE COURT: Okay.
6     MR. BLACKMAN: -- pending the decision in
7  Freeman II.
8     THE COURT: Look, it's one thing to stay, but it's
9  another thing as to how you are going to go forward and
10 coordinate things; and a lot of the depositions may be
11 overlapping, at least in this case. And Freeman I, it seems
12 to me, ought to be in front of one judge, whoever that is.
13    MR. BLACKMAN: And our view is that, of course, we
14 shouldn't have to get the depositions because the motion to
15 dismiss should be granted; but in the meantime, I think
16 defendants ought to talk amongst themselves about what letter
17 to write and what proposal to make --
18    THE COURT: That's fine.
19    MR. BLACKMAN: -- but I think we are uniform in the
20 idea that pending a decision by the Court on how to administer
21 these related cases, they all ought to be stayed, including
22 all pleading, which was the first question Your Honor asked.
23    THE COURT: Well, no one in this case has asked me
24 to do anything for the next week or so, so you will
25 effectively have your stay even though I'm not ordering it;

                    Denise Parisi, RPR, CRR
                     Official Court Reporter

1  nothing is going to happen.  If the plaintiff tries to take
2  some discovery from you, then that'll tee the issue up; but I
3  tend to agree, we ought to decide where the cases are going to
4  be before we start taking discovery.  I want to get that out
5  of the way; I want to do that as quickly as possible.  That's
6  why I'm only giving you a week to set forth your positions.
7  Who knows, maybe you will both agree and you will write a
8  joint letter which makes it all the more likely that what you
9  are asking for will be granted.  Let's try that.
10              MR. BLACKMAN:  Thank you, Your Honor.
11              THE COURT:  Anything else I can do for you?
12              Okay.  Nice to see you all.
13              (Matter concluded.)
14
15                      *     *     *     *     *
16
17  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
18
19       /s/ Denise Parisi                   February 12, 2019
20         DENISE PARISI                             DATE
21
22
23
24
25