# MAYER | BROWN

Mayer Brown LLP
1221 Avenue of the Americas
New York, NY 10020-1001
United States of America

T: +1 212 506 2500
mayerbrown.com

**Mark G. Hanchet**
T: (212) 506 2695:
MHanchet@mayerbrown.com

August 15, 2019

VIA ECF

Honorable Pamela K. Chen
United States District Judge
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Freeman, et al. v. HSBC Holdings plc, et al.*,
      14 Civ. 6601 (PKC) (CLP)

Dear Judge Chen:

On behalf of the Moving Defendants,[1] we write pursuant to the Court's August 8 Order directing the parties to submit letter briefing addressing the impact of the recent decision by the Court of Appeals for the Second Circuit in *Siegel, et al. v. HSBC North America Holdings, Inc., et al.*, -- F.3d --, 2019 WL 3719976, No. 18 Civ. 2540 (2d Cir. Aug. 8, 2019). The Moving Defendants respectfully submit that *Siegel* provides controlling and highly relevant Circuit authority that strongly supports the dismissal of all claims pending in this action.

In *Siegel*, the Second Circuit affirmed the dismissal of an Anti-Terrorism Act claim against several related bank defendants, holding that allegations of payment "stripping," sanctions circumvention, and the provision of banking services to a known supporter of terrorism were insufficient to plausibly plead that the bank defendants (1) were "generally aware" that they were playing a role in terrorist activities or (2) "substantially assisted" in the attack at issue. *Id*. at *7.

---

[1] The Moving Defendants are HSBC Bank USA N.A., HSBC Holdings plc, HSBC Bank plc, HSBC Bank Middle East Limited, Commerzbank AG, Barclays Bank PLC, Standard Chartered Bank, The Royal Bank of Scotland N.V., and Credit Suisse AG.

Mayer Brown is a global services provider comprising an association of legal practices that are separate entities including
Mayer Brown LLP (Illinois, USA), Mayer Brown International LLP (England), Mayer Brown (a Hong Kong partnership)
and Tauil & Chequer Advogados (a Brazilian partnership).

I.      Background

The *Siegel* plaintiffs asserted an aiding-and-abetting claim under the Justice Against Sponsors of Terrorism Act ("JASTA") against HSBC Bank USA N.A. (a Moving Defendant here) and HSBC North America Holdings Inc., based on a hotel bombing perpetrated by the terror group al Qaeda in Iraq ("AQI") in Amman, Jordan on November 9, 2005. The plaintiffs alleged that the HSBC defendants provided "a wide range of banking services" to a Saudi financial institution—Al Rajhi Bank—with connections to AQI that, the plaintiffs alleged, were known to the defendants. *Id*. at *2.

Similar to this case, the *Siegel* plaintiffs largely relied on publicly available documents associated with a Deferred Prosecution Agreement that certain HSBC entities entered in 2012, relating to regulatory and compliance violations. *Siegel*, 2019 WL 3719976, at *3. They alleged that the HSBC defendants "agree[d] to alter, falsify, or omit information from payment messages that involved prohibited countries and institutions" to "conceal[ ] financial activities and transactions from detection . . . by U.S. regulators, law enforcement, and/or depository institutions." *Id*. at *3. The plaintiffs contended that the HSBC defendants participated "in a 'scheme' to evade U.S. regulators . . . [making] it possible for [Al Rajhi Bank] and other prohibited financial institutions to transfer . . . hundreds of millions of dollars in U.S. currency through the U.S. in a manner designed to . . . circumvent monitoring by U.S. regulators' and then to transfer those funds 'to AQI, al-Qaeda, and other terrorist organizations actively engaged in plotting attacks against the United States and its citizens.'" *Id*. at *3. The plaintiffs theorized that the HSBC defendants thereby aided-and-abetted AQI in perpetrating the hotel bombing.

Judge Denise Cote of the Southern District of New York dismissed the action for failure to state a claim on July 27, 2018. *See Siegel v. HSBC Bank USA N.A.*, 2018 WL 3611967 (S.D.N.Y. July 27, 2018). The Moving Defendants cited to Judge Cote's dismissal decision in *Siegel* in their August 31, 2018, Joint Objections to the Magistrate Judge's Report and Recommendation (the "Joint Objections"). *See* ECF No. 174 at 5, 7, 17, and 20.

II.      Second Circuit Decision

The Second Circuit reconfirmed that before JASTA was enacted, "the ATA afforded relief only against the perpetrators of the terrorist attacks, not against secondary, supporting actors." *Siegel*, 2019 WL 3719976, at *4. Turning to the *Siegel* plaintiffs' JASTA claim, the Second Circuit affirmed, holding that the plaintiffs failed to plausibly allege both the "general awareness" and "substantial assistance" elements of their JASTA aiding-and-abetting claim.

As to general awareness, the *Siegel* court reiterated its holding in *Linde v. Arab Bank, PLC*, 882 F.3d 314, 329 (2d Cir. 2018), that JASTA aiding-and-abetting requires that "the bank was generally aware that by providing financial services to a client, it was thereby playing a role in the violent or life endangering activities" of the terrorist organization that carried out the attack that injured the plaintiff. *Siegel*, 2019 WL 3719976, at *5. The court contrasted this more demanding standard with "the *mens rea* required to establish material support in violation of 18

U.S.C. § 2339B, which requires only knowledge of the organization's connection to terrorism, not intent to further its terrorist activities or awareness that one is playing a role in those activities." *Id*. (citing *Linde*, 882 F.3d at 329-30).

The court ruled that the *Siegel* plaintiffs had "failed to allege that HSBC was aware that by providing banking services to [Al Rajhi Bank], it was supporting AQI, much less assuming a role in AQI's violent activities." *Id*. It held that "HSBC had little reason to suspect that it was assuming a role in AQI's terrorist activities," because Al Rajhi Bank is "a large bank with vast operations," the majority of which are not associated with terrorism. *Id*. at *6. The court further observed that the operative complaint contained no non-conclusory allegation that the HSBC defendants "provided banking services for any transactions relating to the November 9 Attack[]". *Id*. at *6. And although the plaintiffs generally alleged that the HSBC defendants "agree[d] to alter, falsify, or omit information from payment messages that involved prohibited countries and institutions" to "conceal[ ] financial activities and transactions from detection . . . by U.S. regulators, law enforcement, and/or depository institutions," *id*. at *3, and engaged in a "scheme" to circumvent U.S. sanctions, *id*. at *6, the court found that plaintiffs "fail[ed] to advance any plausible, factual, non-conclusory allegations that HSBC knew or intended that those funds would be sent to AQI or to any other terrorist organizations." *Id*. at *6.

With respect to substantial assistance, the court held that the six factors identified in *Halberstam v. Welch,* 705 F.2d 472 (D.C. Cir. 1983), weighed against a finding of substantial assistance because HSBC was not plausibly alleged to have encouraged the attack, sent any funds to AQI, or had any direct relationship with AQI. *Siegel*, 2019 WL 3719976, at *6. And while the Second Circuit acknowledged allegations of a long-standing relationship between the HSBC defendants and Al Rajhi Bank, it found those allegations insufficient to infer substantial assistance, in light of the fact that Al Rajhi is "a large bank with vast operations, and the plaintiffs do not allege—even conclusorily—that most, or even many, of HSBC's services to [Al Rajhi Bank] assisted terrorism." *Id*. The Second Circuit concluded:

> Taken as true and viewed in the light most favorable to the plaintiffs, the allegations establish, at most, that, up until January 2005, HSBC helped [Al Rajhi Bank] violate banking regulations despite knowing that [Al Rajhi Bank] supported terrorist organizations. Even were that proven, however, it would be an insufficient basis for liability under JASTA because the plaintiffs have failed to allege that HSBC knowingly assumed a role in AQI's terrorist activities or substantially assisted AQI in those activities, specifically the November 9 Attacks. We therefore conclude that the plaintiffs' aiding-and-abetting claim fails.

*Siegel*, 2019 WL 3719976, at *7.

Honorable Pamela K. Chen
August 15, 2019
Page 4

### III. Application to This Case

*Siegel* squarely rejects Plaintiffs' secondary liability theory in this case and supports the Moving Defendants' Joint Objections submitted in response to the Magistrate Judge's Report and Recommendation (the "R&R", ECF No. 165) and dismissal of this case.

*First*, as in *Siegel*, Plaintiffs here rely on publicly available materials (in the case of HSBC Bank USA NA, the same materials) relating to government investigations into *regulatory and compliance* violations by the Moving Defendants to support their JASTA claims. *See, e.g.*, Second Amended Complaint ("SAC"), ECF No. 115, at ¶ 164. As in *Siegel*, Plaintiffs allege that the Moving Defendants "agreed to alter, falsify, or omit information from bank-to-bank payment orders" (SAC ¶ 22) involving Iran and otherwise provided banking services to Iranian counterparties despite knowledge that Iran was a state sponsor of terrorism (SAC ¶ 42). But just as the *Siegel* court observed with respect to the banking services provided to Al Rajhi Bank, Plaintiffs' allegations here, at most, suggest that the Moving Defendants helped certain Iranian entities to violate U.S. sanctions. *Siegel*, 2019 WL 3719976, at *7. These allegations are insufficient as a matter of law to support the conclusion that the Moving Defendants participated in a conspiracy to commit *acts of international terrorism*. *See* Joint Objections at 19-20 ("[T]he R&R erroneously conflated Plaintiffs' allegations that the Moving Defendants entered a conspiracy to evade economic sanctions with allegations . . . that the Moving Defendants entered a conspiracy to commit acts of international terrorism.").

Indeed, *Siegel*'s reasoning regarding the absence of allegations sufficient to support a plausible inference that the defendants acted with the *mens rea* needed to establish aiding-and-abetting applies with even greater force in the context of conspiracy, which has a more demanding *mens rea* standard requiring that a defendant "reach an agreement with the specific intent that" the conspiratorial goal be completed. *Ocasio v. United States*, 136 S.Ct. 1423, 1429 (2016). The Seventh Circuit recently affirmed the dismissal of substantially similar JASTA conspiracy claims on this very basis. *See Kemper v. Deutsche Bank AG*, 911 F.3d 383, 395 (7th Cir. 2018) ("We thus agree with the district court's reading of the complaint to allege, at most, that Deutsche Bank joined a conspiracy to evade sanctions. Deutsche Bank and the Iranian financial institutions agreed to omit any reference to Iranian counterparties so as to avoid detection by U.S. banks and the possible sanctions that detection might trigger. But no facts suggest that Deutsche Bank agreed to facilitate any wrongful conduct beyond this.").

*Second*, in rejecting the argument that doing business with Al Rajhi Bank could be equated to doing business with terrorist organizations, or give rise to a plausible inference that the HSBC defendants were aware that their conduct played a role in terroristic activities or that they intended to further such activities, the Second Circuit observed that Al Rajhi Bank is "a large bank with vast operations" and that the plaintiffs did not allege "that most, or even many, of [Al Rajhi Bank's] banking activities are linked to terrorists" or "offer any non-conclusory allegations that HSBC provided banking services for any transactions relating to the November 9 Attacks." *Siegel*, 2019 WL 3719976, at *6.

Honorable Pamela K. Chen
August 15, 2019
Page 5

So too here. As the Moving Defendants have argued, Iran "'has many legitimate agencies, operations, and programs to fund' and thus allegedly transacting with an Iranian bank does not establish support for terrorism." Joint Objections at 20-21 (citing *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013)). And, as in *Siegel*, Plaintiffs here have made "no allegation that . . . the Moving Defendants processed even one dollar for any segment of the Iranian Government that allegedly funded terrorist organizations or groups, much less that the Moving Defendants processed transactions directly for any terrorist entity." Joint Mot. to Dismiss at 7, ECF No. 120; *see also* Joint Objections at 23-27.[2] As in *Siegel*, the allegations are plainly insufficient to permit a plausible inference that the Moving Defendants acted with the specific intent necessary to support a conspiracy claim. Furthermore, as in *Siegel*, Plaintiffs have made no allegations that the Moving Defendants provided banking services to designated foreign terrorist organizations or any of the terrorist organizations connected to the attacks at issue. Joint Mot. to Dismiss at 7-8, ECF No. 120; *see also* Joint Objections at 38.

*Third*, *Siegel* dispels any notion that the Second Circuit, through its decision in *Linde*, "urge[d] judicial restraint at this preliminary state in the litigation" and somehow cautioned district courts against dismissing deficient ATA claims. *See* R&R at 135; Joint Objections at 7. To the contrary, the Second Circuit affirmed Judge Cote's dismissal decision, which stated just the opposite: "it is particularly important to focus with care in cases like this on each of the necessary elements to a finding that JA[ST]A has been violated." *See Siegel*, 2018 WL 3611967, at *5; Joint Objections at 17.

The Second Circuit's reasoning applies with equal force here, and strongly supports dismissal of Plaintiffs' claims.[3]

Respectfully submitted,

/s/ *Mark G. Hanchet*

Mark G. Hanchet

Cc: Counsel of Record (via ECF)

---

[2] Although the Second Circuit observed that the HSBC defendants in *Siegel* ceased doing business with Al Rajhi Bank ten months before the bombing in Jordan, this was but one factor the court considered in rejecting the *Siegel* plaintiffs' claim. *See Siegel*, 2019 WL 3719976, at *6. Here, Plaintiffs' failure to tie any alleged banking services provided by the Moving Defendants to any alleged terrorist attack—let alone banking services provided within 10 months of the given attack—undercuts their claims.

[3] While *Siegel* deals with secondary liability under JASTA, it notes in discussing JASTA's origins that "[i]n its original form, the ATA afforded relief only against the perpetrators of the terrorist attacks, not against secondary, supporting actors." *Siegel*, 2019 WL 3719976, at *4. Clearly, there are no factual allegations, nor could there be, that the Moving Defendants were the "perpetrators of the terrorist attacks" that injured the Plaintiffs in the present case, and therefore no basis for imposing primary liability on them either.