**MANDATE**

## UNITED STATES COURT OF APPEALS
### FOR THE
### SECOND CIRCUIT

At a Stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of January, two thousand twenty-three,

Before:  Dennis Jacobs,
Richard J. Sullivan,
*Circuit Judges*,
Gary R. Brown,
*District Judge.*[1]

_____

Charlotte Freeman, for the Estate of Brian S. Freeman, Kathleen Snyder, Randolph Freeman, G.F., a minor, I.F., a minor, Danny Chism, Linda Falter, Russell Falter, for the Estate of Shawn O. Falter, Shannon Millican, for the Estate of Johnathon M. Millican, Mitchell Millican, Billy Wallace, Stefanie Wallace, D.W., a minor, C.W., A.W., a minor, Tracie Arsiaga, Cedric Hunt, Sr., Robert Bartlett, Shawn Bartlett, Lisa Ramaci, Isabell Vincent, Charles Vincent, Gwendolyn Morin-Marentes, for the Estate of Steve Morin, Jr., E.M., a minor, Audrey Morin, Steve Morin, Amy Lynn Robinson, Floyd Burton Robinson, for the Estate of Jeremiah Robinson, Deborah Noble, for the Estate of Charles E. Matheny, IV, Charles E. Matheny, III, Silver Farr, Patrick Farr, for the Estate of Clay P. Farr, Rayanne Hunter, W.H., a minor, T.H., a minor, Fabersha Flynt Lewis, Lorenzo Sandoval, Sr., for the Estate of Israel Devora-Garcia, Lorenzo Sandoval, Jr., H. Joseph Bandhold, Donald C. Bandhold, Nanette Saenz, for the Estate of Carlos N. Saenz, Juan Saenz, John Vacho, for the Estate of Carol Vacho, for the Estate of Nathan J. Vacho, Ashley Vacho, Jeanette West, for the Estate of Robert H. West, Shelby West, Donna Engeman, Suzzettee Lawson, for the Estate of Isaac S. Lawson, C.L., a minor, Judy Ann Crabtree, Ronald Wayne Crabtree, Debra Wigbels, Ronald William Crabtree, Judy Huenink, Sean

**JUDGMENT**

Docket No. 19-3970

_____

[1] Judge Gary Brown, of the United States District Court for the Eastern District of New York, sitting by designation.

Slaven, Chastity Dawn Slaven, Nicole Landon,
Misti Fisher, Fred Frigo, Lynn Forehand, Lance
Haupt, Rhonda Haupt, Tiffany Haupt, Sabrina
Cumbe, David W. Haines, Dawn Haines, C.H., a
minor, Sangsoon Kim, Michelle Kim, Seop Steve
Kim, for the Estate of Jang H. Kim, Helen Fraser,
Richard Fraser, for the Estate of David M. Fraser,
Tricia English, N.W.E., a minor, N.C.E., a minor,
A.S.E., a minor, Todd Daily, for the Estate of
Shawn L. English, Philip S. Ford, Linda Gibson,
John Gibson, Denise Blohm, Jeremy Blohm,
Joanne Gutcher, Tracy Anderson, Jeffrey
Anderson, Anastasia Fuller, A.F., a minor, Anne F.
Harris, Paul D. Harris, Hyunjung Glawson,
Yolanda M. Brooks, Curtis Glawson, Sr., Ryan
Sabinish, Ann Christopher, for the Estate of Kwesi
Christopher, D.J.F., a minor, Ava Tomson, for the
Estate of Lucas V. Starcevich, Richard Tomson,
Bradley Starcevich, Glenda Starcevich, Ariana
Reyes, Trenton Starcevich, Karen Funcheon, for
the Estate of Alexander J. Funcheon, Robert
Funcheon, Holly Burson-Gilpin, for the Estate of
Jerome Potter, Nancy Umbrell, Mark Umbrell,
Nancy and Mark Umbrell for the Estate of Colby J.
Umbrell, Ilene Dixon, Shelley Ann Smith, William
Farrar, Sr., for the Estate of William A. Farrar,
Tonya K. Dressler, Ardith Cecil Dressler, Melissa
Dressler, Elizabeth Brown, for the Estate of Joshua
D. Brown, Marian Brown, Wayne Brown, Danielle
Sweet, for the Estate of Ryan A. Balmer, A.B., a
minor, G.B., a minor, Donna Kuglics, for the Estate
of Matthew J. Kuglics, Les Kuglics, Emily Kuglics,
Sylvia Johnson Spencer, Raymond Nigel Spencer,
Sr., John D. Lamie, Paula C. Bobb-Miles, for the
Estate of Brandon K. Bobb, Johnny Javier Miles,
Sr., J.J.M., Jr., a minor, Racquel Arnae Bobb Miles,
Ursula Ann Joshua, Brittany Marionique Joshua,
Ashley Gudridge, Marion Crimens, Timothy W.
Elledge, Christopher Levi, Brenda Habsieger,
Michael Habsieger, Jacob Michael Habsieger, Kelli
D. Hake, for the Estate of Christopher M. Hake,
Denice York, Russel York, Jill Hake, Peter Hake,
G.H., a minor, Maria E. Calle, Kim Miller, Walter
Bailey, Cassandra Bailey, Kacey Gilmore, Terrell
Gilmore, Jr., Michelle Klemensberg, for the Estate
of Larry R. Bowman, Harry Pickett, E.C.R., a
minor, Rachel M. Gillette, Kousay Al-Taie, for the
Estate of Ahmed Al-Taie, Adam G. Stout, Rebekah

A. Coldewe, Scott Hood, Patricia Smith, Kathy
Stillwell, for the Estate of Daniel Crabtree, Michael
Smith, Chad Farr, Jacqueline A. Smith, R.J.S., a
minor, David Hartley, for the Estate of Jeffrey
Hartley, Linda Pritchett, Allen Swinton, Daniel
Fritz, Temika Swinton, Marlynn Gonzales, T.S., a
minor, Julie Chism, T.B., a minor, Kari Carosella,
Mary Jane Vandegrift, William Parker, Scott
Lilley, Pam Marion, Kyshia Sutton, Donnie
Marion, Jason Sackett, Paula Menke, Robert
Canine, Daniel Menke, S.J.S., a minor, Matthew
Menke, Adam Wood, Nichole Lohring, Rosemarie
Alfonso, Anna Karcher, K.B., a minor, Anastasia
Fuller, for the Estate of Alexander H. Fuller,
Michelle Benavidez, for the Estate of Kennith W.
Mayne, Dan Dixon, for the Estate of Ilene Dixon,
Daniel Benavidez, Sr., Dan Dixon, for the Estate of
Robert J. Dixon, Christina Biederman, Cynthia
Delgado, Daniel Benavidez, Jr., Kynesha
Dhanoolal, Jennifer Morman, Merlese Pickett,
Christopher Miller, John Vandegrift, Angie
Jackson, Megan Marie Rice, Trina Jackson, Nancy
Fuentes, for the Estate of Daniel A. Fuentes, S.J., a
minor, Noala Fritz for the Estate of Lyle Fritz,
Gregory Bauer, Noala Fritz, Theresa Davis, Tiffany
M. Little, Linda David, for the Estate of Timothy
A. David, Michelle Klemensberg, Michael David,
Kousay Al-Taie, Donna Lewis, Timothy Karcher,
Kenneth J. Drevnick, Elizabeth Chism, for the
Estate of Jonathan B. Chism, Tonya Lotto, Tabitha
McCoy, for the Estate of Steve A. McCoy, Jerry L.
Myers, Kathy Stillwell, Theresa Hart, Roberto
Andrade, Sr., Wayne Newby, Robi Ann Galindo,
Veronica Hickman, Ryanne Hunter, for the Estate
of Wesley Hunter, David Eugene Hickman, Debra
Levi, Devon Fletcher Hickman, Cortez Glawson,
Rebecca J. Oliver, Linda Jones, J.L., a minor,
Armando Fuentes, Wood Megan, Sean Elliott,
Gilbert Arsiaga, Jr., Edna Luz Burgos, Adrian
McCann, Erik Roberts, Frank Lilley, N.T., a minor,
Harry Riley Bock, Colin Roberts, Jill Ann Bock,
Robin Roberts, Brett Coke, Chastity Dawn Laflin,
M.C., a minor, T.M., a minor, Meghan Parker-
Crockett, Keri Cotton, Janet Jones, Julio Fuentes,
Wesley Williamson, Daniel C. Oliver, J.L., a
minor, Travis Gibson, Debbie Beavers, George J.
White, Eric Levi, Johnny Washburn, Dan Dixon,
Dakota Smith-Lizotte, R.N.R., a minor, George

Arsiaga, John McCully, Hathal K. Taie, James
Smith, C.F., a minor, Anthony Alderete, Amanda
B. Adair, Michael J. Miller, Nicholas Baumhoer,
Steve Morin, Sr., Kimberley Vesey, Zachary Hake,
Cassie Collins, George D. White, Cara Roberts,
M.T., a minor, Stephanie McCully, T.F., a minor,
Terrel Charles Bartlett, Cory Smith, A.B., a minor,
Evan Kirby, Judy Huenink, for the Estate of
Benjamin J. Slaven, Carrol Alderete, B.D., a minor,
Nancy Fuentes, John Vandegrift, for the Estate of
Matthew R. Vandegrift, D.J.F., a minor, Cynthia
Delgado, for the Estate of George Delgado,
Mackenzie Haines, Natalia White, Cynthia
Thornsberry, K.W., a minor, Megan Marie Rice,
for the Estate of Zachary T. Myers, R.M., a minor,
Stephanie Gibson Webster, Christina Smith,
Debbie Smith, Jeffrey D. Price, Cassie Smith,
Harry Cromity, James Craig Roberts, Marvin
Thornsberry, L.T., a minor, Skylar Hake, Vivian
Pickett, Andrew Tomson, Flora Hood, Patricia
Montgomery, Patricia Arsiaga, for the Estate of
Jeremy Arsiaga, Don Jason Stone, Matthew
Arsiaga, Alesia Karcher, Lawrence Kruger, Audrey
Karcher, Thomas Smith, Shaylyn C. Reece,
Andrew Lucas, John Sackett, Shaula Shaffer, Noala
Fritz, for the Estate of Jacob Fritz, Shyanne Smith-
Lizotte, Megan People, Nathan Newby, R.M., a
minor, Tony Gonzales, Katherine McRill-Fellini,
Victoria Denisse Andrade, Kristy Kruger, Joedi
Wood, Austin Wallace, Tammy Vanderwaal,
Angelica Andrade, Brian Neuman, Esther Wolfer,
Samantha Tomson, Matthew Lilley, Bryan
Montgomery, Angel Munoz, Kemely Pickett,
Mariah Simoneaux, James Canine, Vanessa Chism,
A.K., a minor, Raymond Montgomery, Donna
Engeman, for the Estate of John W. Engeman,
Carol Kruger, Nawal Al-Taie, Megan Smith,
Leonard Wolfer, Tim Lucas, David Noble, Marsha
Novak, Emily Levi, Tony Wood, E.C.R., a minor,
Donna Lewis, for the Estate of Jason Dale Lewis,
Kierra Glawson, Ethan Fritz, Stephanie Howard,
Russell C. Falter, Kynesha Dhanoolal, for the
Estate of Dayne D. Dhanoolal, Douglas Kruger,
L.M., a minor, Brian Coke, Preston Shane Reece,
Jean Mariano, A.L.R., a minor, Cassie Collins, for
the Estate of Shannon M. Smith, G.L., a minor,
Erika Neuman, Michael Lucas, Calvin Canine,
Dixie Flagg, Bashar Al-Taie, Marjorie Falter,

Jolene Lilley, Victoria Pena Andrade, Tiffany M.
Little, for the Estate of Kyle A. Little, Elizabeth
Chism, Tamara Runzel, K.L., a minor, Marlen
Pickett, Tabitha McCoy, Shilyn Jackson, Kimberlee
Austin-Oliver, Sylvia Macias, Merlese Pickett, for
the Estate of Emmanuel Pickett, David Lucas,

        Plaintiffs - Appellants,

v.

HSBC Holdings PLC, HSBC Bank PLC, HSBC
Bank Middle East Limited, HSBC Bank USA,
N.A., Barclays Bank PLC, Standard Chartered
Bank, Royal Bank of Scotland, N.V., Credit Suisse,
Bank Saderat PLC, John Does, 1-50,
Commerzbank AG,

        Defendants - Appellees.

_____

The appeal in the above captioned case from a judgment of the United States District
Court for the Eastern District of New York was argued on the district court's record and the
parties' briefs. Upon consideration thereof,

IT IS HEREBY ORDERED, ADJUDGED and DECREED that the district court's
judgment is AFFIRMED.

                     For the Court:
                     Catherine O'Hagan Wolfe,
                     Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit

19-3970
*Freeman v. HSBC Holdings PLC*

# United States Court of Appeals
# for the Second Circuit

August Term 2020

Argued:  February 1, 2021
Decided:  January 5, 2023

No. 19-3970

CHARLOTTE FREEMAN, for the Estate of BRIAN S.
FREEMAN, KATHLEEN SNYDER, RANDOLPH FREEMAN,
G.F., a minor, I.F., a minor, DANNY CHISM, LINDA
FALTER, RUSSELL FALTER, for the Estate of SHAWN O.
FALTER, SHANNON MILLICAN, for the Estate of
JOHNATHON M. MILLICAN, MITCHELL MILLICAN, BILLY
WALLACE, STEFANIE WALLACE, D.W., a minor, C.W,
A.W., a minor, TRACIE ARSIAGA, CEDRIC HUNT, SR.,
ROBERT BARTLETT, SHAWN BARTLETT, LISA RAMACI,
ISABELL VINCENT, CHARLES VINCENT, GWENDOLYN
MORIN-MARENTES, for the Estate of STEVE MORIN, JR.,
E.M., a minor, AUDREY MORIN, STEVE MORIN, AMY
LYNN ROBINSON, FLOYD BURTON ROBINSON, for the
Estate of JEREMIAH ROBINSON, DEBORAH NOBLE, for the
Estate of CHARLES E. MATHENY, IV, CHARLES E.
MATHENY, III, SILVER FARR, PATRICK FARR, for the
Estate of CLAY P. FARR, RAYANNE HUNTER, W.H., a
minor, T.H., a minor, FABERSHA FLYNT LEWIS,
LORENZO SANDOVAL, SR., for the Estate of ISRAEL
DEVORA-GARCIA, LORENZO SANDOVAL, JR., H. JOSEPH
BANDHOLD, DONALD C. BANDHOLD, NANETTE SAENZ,
for the Estate of CARLOS N. SAENZ, JUAN SAENZ, JOHN
VACHO, for the Estate of CAROL VACHO, for the Estate
of NATHAN J. VACHO, ASHLEY VACHO, JEANETTE WEST,

for the Estate of ROBERT H. WEST, SHELBY WEST, DONNA
ENGEMAN, SUZZETTEE LAWSON, for the Estate of ISAAC
S. LAWSON, C.L., a minor, JUDY ANN CRABTREE,
RONALD WAYNE CRABTREE, DEBRA WIGBELS, RONALD
WILLIAM CRABTREE, JUDY HUENINK, SEAN SLAVEN,
CHASTITY DAWN SLAVEN, NICOLE LANDON, MISTI
FISHER, FRED FRIGO, LYNN FOREHAND, LANCE HAUPT,
RHONDA HAUPT, TIFANY HAUPT, SABRINA CUMBE,
DAVID W. HAINES, DAWN HAINES, C.H., a minor,
SANGSOON KIM, MICHELLE KIM, SEOP STEVE KIM, for the
Estate of Jang H. Kim, HELEN FRASER, RICHARD FRASER,
for the Estate of DAVID M. FRASER, TRICIA ENGLISH,
N.W.E., a minor, N.C.E., a minor, A.S.E., a minor, TODD
DAILY, for the Estate of SHAWN L. ENGLISH, PHILIP S.
FORD, LINDA GIBSON, JOHN GIBSON, DENISE BLOHM,
JEREMY BLOHM, JOANNE GUTCHER, TRACY ANDERSON,
JEFFREY ANDERSON, ANASTASIA FULLER, A.F., a minor,
ANNE F. HARRIS, PAUL D. HARRIS, HYUNJUNG
GLAWSON, YOLANDA M. BROOKS, CURTIS GLAWSON, SR.,
RYAN SABINISH, ANN CHRISTOPHER, for the Estate of
KWESI CHRISTOPHER, D.J.F., a minor, AVA TOMSON, for
the Estate of LUCAS V. STARCEVICH, RICHARD TOMSON,
BRADLEY STARCEVICH, GLENDA STARCEVICH, ARIANA
REYES, TRENTON STARCEVICH, KAREN FUNCHEON, for
the Estate of ALEXANDER J. FUNCHEON, ROBERT
FUNCHEON, HOLLY BURSON-GILPIN, for the Estate of
JEROME POTTER, NANCY UMBRELL, MARK UMBRELL,
NANCY and MARK UMBRELL, for the Estate of COLBY J.
UMBRELL, ILENE DIXON, SHELLEY ANN SMITH, WILLIAM
FARRAR, SR., for the Estate of WILLIAM A. FARRAR,
TONYA K. DRESSLER, ARDITH CECIL DRESSLER, MELISSA
DRESSLER, ELIZABETH BROWN, for the Estate of JOSHUA
D. BROWN, MARIAN BROWN, WAYNE BROWN, DANIELLE
SWEET, for the Estate of RYAN A. BALMER, A.B., a minor,
G.B., a minor, DONNA KUGLICS, for the Estate of
MATTHEW J. KUGLICS, LES KUGLICS, EMILY KUGLICS,

2

SYLVIA JOHNSON SPENCER, RAYMOND NIGEL SPENCER, SR., JOHN D. LAMIE, PAULA C. BOBB-MILES, for the Estate of BRANDON K. BOBB, JOHNNY JAVIER MILES, SR., J.J.M., JR., a minor, RACQUEL ARNAE BOBB MILES, URSULA ANN JOSHUA, BRITTANY MARIONIQUE JOSHUA, ASHLEY GUDRIDGE, MARION CRIMENS, TIMOTHY W. ELLEDGE, CHRISTOPHER LEVI, BRENDA HABSIEGER, MICHAEL HABSIEGER, JACOB MICHAEL HABSIEGER, KELLI D. HAKE, for the Estate of CHRISTOPHER M. HAKE, DENICE YORK, RUSSEL YORK, JILL HAKE, PETER HAKE, G.H., a minor, MARIA E. CALLE, KIM MILLER, WALTER BAILEY, CASSANDRA BAILEY, KACEY GILMORE, TERRELL GILMORE, JR., MICHELLE KLEMENSBERG, for the Estate of LARRY R. BOWMAN, HARRY PICKETT, E.C.R., a minor, RACHEL M. GILLETTE, KOUSAY AL-TAIE, for the Estate of AHMED AL-TAIE, ADAM G. STOUT, REBEKAH A. COLDEWE, SCOTT HOOD, PATRICIA SMITH, KATHY STILLWELL, for the Estate of DANIEL CRABTREE, MICHAEL SMITH, CHAD FARR, JACQUELINE A. SMITH, R.J.S., a minor, DAVID HARTLEY, for the Estate of JEFFREY HARTLEY, LINDA PRITCHETT, ALLEN SWINTON, DANIEL FRITZ, TEMIKA SWINTON, MARLYNN GONZALES, T.S., a minor, JULIE CHISM, T.B., a minor, KARI CAROSELLA, MARY JANE VANDEGRIFT, WILLIAM PARKER, SCOTT LILLEY, PAM MARION, KYSHIA SUTTON, DONNIE MARION, JASON SACKETT, PAULA MENKE, ROBERT CANINE, DANIEL MENKE, S.J.S., a minor, MATTHEW MENKE, ADAM WOOD, NICHOLE LOHRING, ROSEMARIE ALFONSO, ANNA KARCHER, K.B., a minor, ANASTASIA FULLER, for the Estate of ALEXANDER H. FULLER, MICHELLE BENAVIDEZ, for the Estate of KENNITH W. MAYNE, DAN DIXON, for the Estate of ILENE DIXON, DANIEL BENAVIDEZ, SR., DAN DIXON, for the Estate of ROBERT J. DIXON, CHRISTINA BIEDERMAN, CYNTHIA DELGADO, DANIEL BENAVIDEZ, JR., KYNESHA DHANOOLAL, JENNIFER MORMAN, MERLESE PICKETT,

3

CHRISTOPHER MILLER, JOHN VANDEGRIFT, ANGIE JACKSON, MEGAN MARIE RICE, TRINA JACKSON, NANCY FUENTES, for the Estate of DANIEL A. FUENTES, S.J., a minor, NOALA FRITZ, for the Estate of LYLE FRITZ, GREGORY BAUER, NOALA FRITZ, THERESA DAVIS, TIFFANY M. LITTLE, LINDA DAVID, for the Estate of TIMOTHY A. DAVID, MICHELLE KLEMENSBERG, MICHAEL DAVID, KOUSAY AL-TAIE, DONNA LEWIS, TIMOTHY KARCHER, KENNETH J. DREVNICK, ELIZABETH CHISM, for the Estate of JONATHAN B. CHISM, TONYA LOTTO, TABITHA MCCOY, for the Estate of STEVE A. MCCOY, JERRY L. MYERS, KATHY STILLWELL, THERESA HART, ROBERTO ANDRADE, SR., WAYNE NEWBY, ROBI ANN GALINDO, VERONICA HICKMAN, RYANNE HUNTER, for the Estate of WESLEY HUNTER, DAVID EUGENE HICKMAN, DEBRA LEVI, DEVON FLETCHER HICKMAN, CORTEZ GLAWSON, REBECCA J. OLIVER, LINDA JONES, J.L., a minor, ARMANDO FUENTES, WOOD MEGAN, SEAN ELLIOTT, GILBERT ARSIAGA, JR., EDNA LUZ BURGOS, ADRIAN MCCANN, ERIK ROBERTS, FRANK LILLEY, N.T., a minor, HARRY RILEY BOCK, COLIN ROBERTS, JILL ANN BOCK, ROBIN ROBERTS, BRETT COKE, CHASTITY DAWN LAFLIN, M.C., a minor, T.M., a minor, MEGHAN PARKER-CROCKETT, KERI COTTON, JANET JONES, JULIO FUENTES, WESLEY WILLIAMSON, DANIEL C. OLIVER, J.L., a minor, TRAVIS GIBSON, DEBBIE BEAVERS, GEORGE J. WHITE, ERIC LEVI, JOHNNY WASHBURN, DAN DIXON, DAKOTA SMITH-LIZOTTE, R.N.R., a minor, GEORGE ARSIAGA, JOHN MCCULLY, HATHAL K. TAIE, JAMES SMITH, C.F., a minor, ANTHONY ALDERETE, AMANDA B. ADAIR, MICHAEL J. MILLER, NICHOLAS BAUMHOER, STEVE MORIN, SR., KIMBERLEY VESEY, ZACHARY HAKE, CASSIE COLLINS, GEORGE D. WHITE, CARA ROBERTS, M.T., a minor, STEPHANIE MCCULLY, T.F., a minor, TERREL CHARLES BARTLETT, CORY SMITH, A.B., a minor, EVAN KIRBY, JUDY HUENINK, for the Estate of BENJAMIN J. SLAVEN,

4

CARROL ALDERETE, B.D., a minor, NANCY FUENTES,
JOHN VANDEGRIFT, for the Estate of MATTHEW R.
VANDEGRIFT, D.J.F., a minor, CYNTHIA DELGADO, for the
Estate of GEORGE DELGADO, MACKENZIE HAINES,
NATALIA WHITE, CYNTHIA THORNSBERRY, K.W., a
minor, MEGAN MARIE RICE, for the Estate of ZACHARY
T. MYERS, R.M., a minor, STEPHANIE GIBSON WEBSTER,
CHRISTINA SMITH, DEBBIE SMITH, JEFFREY D. PRICE,
CASSIE SMITH, HARRY CROMITY, JAMES CRAIG ROBERTS,
MARVIN THORNSBERRY, L.T., a minor, SKYLAR HAKE,
VIVIAN PICKETT, ANDREW TOMSON, FLORA HOOD,
PATRICIA MONTGOMERY, PATRICIA ARSIAGA, for the
Estate of JEREMY ARSIAGA, DON JASON STONE,
MATTHEW ARSIAGA, ALESIA KARCHER, LAWRENCE
KRUGER, AUDREY KARCHER, THOMAS SMITH, SHAYLYN
C. REECE, ANDREW LUCAS, JOHN SACKETT, SHAULA
SHAFFER, NOALA FRITZ, for the Estate of JACOB FRITZ,
SHYANNE SMITH-LIZOTTE, MEGAN PEOPLE, NATHAN
NEWBY, R.M., a minor, TONY GONZALES, KATHERINE
MCRILL-FELLINI, VICTORIA DENISSE ANDRADE, KRISTY
KRUGER, JOEDI WOOD, AUSTIN WALLACE, TAMMY
VANDERWAAL, ANGELICA ANDRADE, BRIAN NEUMAN,
ESTHER WOLFER, SAMANTHA TOMSON, MATTHEW
LILLEY, BRYAN MONTGOMERY, ANGEL MUNOZ, KEMELY
PICKETT, MARIAH SIMONEAUX, JAMES CANINE, VANESSA
CHISM, A.K., a minor, RAYMOND MONTGOMERY, DONNA
ENGEMAN, for the Estate of JOHN W. ENGEMAN, CAROL
KRUGER, NAWAL AL-TAIE, MEGAN SMITH, LEONARD
WOLFER, TIM LUCAS, DAVID NOBLE, MARSHA NOVAK,
EMILY LEVI, TONY WOOD, E.C.R., a minor, DONNA
LEWIS, for the Estate of JASON DALE LEWIS, KIERRA
GLAWSON, ETHAN FRITZ, STEPHANIE HOWARD, RUSSELL
C. FALTER, KYNESHA DHANOOLAL, for the Estate of
DAYNE D. DHANOOLAL, DOUGLAS KRUGER, L.M., a
minor, BRIAN COKE, PRESTON SHANE REECE, JEAN
MARIANO, A.L.R., a minor, CASSIE COLLINS, for the

5

Estate of SHANNON M. SMITH, G.L., a minor, ERIKA
NEUMAN, MICHAEL LUCAS, CALVIN CANINE, DIXIE
FLAGG, BASHAR AL-TAIE, MARJORIE FALTER, JOLENE
LILLEY, VICTORIA PENA ANDRADE, TIFFANY M. LITTLE,
for the Estate of KYLE A. LITTLE, ELIZABETH CHISM,
TAMARA RUNZEL, K.L., a minor, MARLEN PICKETT,
TABITHA MCCOY, SHILYN JACKSON, KIMBERLEE
AUSTIN-OLIVER, SYLVIA MACIAS, MERLESE PICKETT, for
the Estate of EMMANUEL PICKETT, DAVID LUCAS,

*Plaintiffs-Appellants*,

*v.*

HSBC HOLDINGS PLC, HSBC BANK PLC,
HSBC BANK MIDDLE EAST LIMITED,
HSBC BANK USA, N.A., BARCLAYS BANK
PLC, STANDARD CHARTERED BANK,
ROYAL BANK OF SCOTLAND, N.V.,
CREDIT SUISSE, BANK SADERAT PLC,
JOHN DOES 1–50, COMMERZBANK AG,

*Defendants-Appellees*.[*]

---

Appeal from the United States District Court
for the Eastern District of New York
No. 14-cv-6601, Pamela K. Chen, *Judge.*

---

[*] The Clerk of Court is respectfully directed to amend the official case caption as set forth above.

6

Before:       JACOBS, SULLIVAN, *Circuit Judges*, and BROWN, *District Judge*.[†]

Plaintiffs-Appellants are U.S. service members wounded in terrorist attacks in Iraq and the families and estates of service members killed in such attacks.  They appeal from the dismissal of their claims under the Antiterrorism Act (the "ATA"), Pub. L. No. 101-519, 104 Stat. 2250–53 (1990), as amended by the Justice Against Sponsors of Terrorism Act (the "JASTA"), Pub. L. No. 114-222, 130 Stat. 852–56 (2016), against various financial institutions in the United States and abroad (the "Banks").  As relevant to this appeal, Plaintiffs allege that the Banks conspired with and aided and abetted Iranian entities to circumvent sanctions imposed by the United States and channel funds to terrorist groups that killed or injured U.S. service members.   The district court (Chen, *J.*) dismissed Plaintiffs' JASTA conspiracy claims primarily because Plaintiffs failed to plausibly plead a direct connection between the Banks and the terrorist groups.  The district court also declined to consider Plaintiffs' JASTA aiding-and-abetting claims because they were raised for the first time in Plaintiffs' motion for reconsideration.

Although we disagree with the district court's primary reason for dismissing Plaintiffs' JASTA conspiracy claims, we **AFFIRM** the district court's judgment because Plaintiffs failed to adequately allege that the Banks conspired – either directly or indirectly – with the terrorist groups, or that the terrorist attacks that killed or injured the service members were in furtherance of the alleged conspiracy to circumvent U.S. sanctions.  We agree with the district court that Plaintiffs forfeited their JASTA aiding-and-abetting claims by raising them for the first time in a motion for reconsideration.

Judge Jacobs concurs in a separate opinion.

AFFIRMED.

---

[†] Judge Gary R. Brown, of the United States District Court for the Eastern District of New York, sitting by designation.

PETER RAVEN-HANSEN, George Washington University Law School, Washington, DC (Gary M. Osen, Ari Ungar, Michael Radine, Dina Gielchinsky, Aaron A. Schlanger, Osen LLC, Hackensack, NJ, *on the brief*), *for Plaintiffs-Appellants*.

ANDREW J. PINCUS, Mayer Brown LLP, Washington, DC (Mark G. Hanchet, Robert W. Hamburg, Mayer Brown LLP, New York, NY, *on the brief*), *for Defendants-Appellees HSBC Holdings PLC, HSBC Bank PLC, HSBC Bank Middle East Limited, and HSBC Bank USA, N.A.*

Marc R. Cohen, Alex C. Lakatos, Mayer Brown LLP, Washington, DC, *for Defendant-Appellee Credit Suisse.*

Alexis Collins, Cleary Gottlieb Steen & Hamilton LLP, Washington, DC; Jonathan I. Blackman, Carmine D. Boccuzzi, Jr., Cleary Gottlieb Steen & Hamilton LLP, New York, NY, *for Defendant-Appellee Commerzbank AG.*

Michael T. Tomaino, Jr., Jeffrey T. Scott, Sullivan & Cromwell LLP, New York, NY, *for Defendant-Appellee Barclays Bank PLC.*

Sharon L. Nelles, Andrew J. Finn, Bradley P. Smith, Sullivan & Cromwell LLP, New York, NY, *for Defendant-Appellee Standard Chartered Bank.*

Robert G. Houck, Clifford Chance US LLP, New York, NY, *for Defendant-Appellee Royal Bank of Scotland, N.V.*

8

Stephen I. Vladeck, Austin, TX, *for Amici Curiae Law Professors in support of Plaintiffs-Appellants*.

Michael A. Petrino, Jonathan E. Missner, Stein Mitchell Beato & Missner LLP, Washington, DC, *for Amici Curiae Eight United States Senators in support of Plaintiffs-Appellants*.

Arthur H. Bryant, Bailey & Glasser LLP, Oakland, CA; Joshua I. Hammack, Bailey & Glasser LLP, Washington, DC, *for Amici Curiae Retired Generals of the U.S. Armed Forces in support of Plaintiffs-Appellants.*

Marc J. Gottridge, Lisa J. Fried, Benjamin A. Fleming, Hogan Lovells US LLP, New York, NY, *for Amici Curiae the Institute of International Bankers, the American Bankers Association, the Chamber of Commerce of the United States of America, and the European Banking Federation in support of Defendants-Appellees.*

RICHARD J. SULLIVAN, *Circuit Judge*:

Plaintiffs-Appellants – U.S. service members wounded in terrorist attacks in Iraq and the families and estates of service members killed in such attacks – appeal from a judgment of the district court (Chen, *J.*) dismissing their claims under the Antiterrorism Act (the "ATA"), Pub. L. No. 101-519, 104 Stat. 2250–53 (1990), as

9

amended by the Justice Against Sponsors of Terrorism Act (the "JASTA"), Pub. L. No. 114-222, 130 Stat. 852–56 (2016).  As relevant to this appeal, Plaintiffs allege that Defendants-Appellees, which are U.S. and international financial institutions (collectively, the "Banks"), are liable under JASTA's conspiracy and aiding-and-abetting provisions, Pub. L. No. 114-222, § 4, 130 Stat. at 854, codified at 18 U.S.C. § 2333(d)(2), for helping Iranian banks and institutions circumvent U.S. sanctions against Iran.[1]  The district court dismissed Plaintiffs' JASTA conspiracy claims primarily because Plaintiffs failed to plausibly plead a direct connection between the Banks and the terrorist groups responsible for killing or injuring Plaintiffs.  The district court also declined to consider Plaintiffs' JASTA aiding-and-abetting claims because they were raised for the first time in Plaintiffs' motion for reconsideration.

Although we disagree with the district court's primary reason for dismissing the Plaintiffs' JASTA conspiracy claims, we **AFFIRM** the district court's judgment because Plaintiffs failed to adequately allege that the Banks conspired – either directly or indirectly – with the terrorist groups, or that the

---

[1] The Banks include HSBC Holdings PLC, HSBC Bank PLC, HSBC Bank Middle East Limited, HSBC Bank USA, N.A. (collectively, "HSBC"); Barclays Bank PLC ("Barclays"); Standard Chartered Bank ("Standard Chartered"); Royal Bank of Scotland, N.V. ("RBS"); Credit Suisse; and Commerzbank AG ("Commerzbank").

terrorist attacks that killed or injured the service members were in furtherance of the conspiracy to circumvent U.S. sanctions.  We agree with the district court that Plaintiffs forfeited their JASTA aiding-and-abetting claims by raising them for the first time in a motion for reconsideration.

## I.   BACKGROUND

In their operative pleading (the "Complaint"), Plaintiffs identify ninety-two terrorist attacks – all carried out by Iraqi Shi'a militias – that killed or injured U.S. service members, including Plaintiffs.  The Complaint alleges that these Iraqi militias were trained and armed by U.S.-designated Foreign Terrorist Organizations ("FTOs"), including Hezbollah and the Islamic Revolutionary Guard Corps (the "IRGC").  According to the Complaint, Hezbollah and the IRGC, in turn, were supported with funding and weapons by the Iranian government through various state-controlled entities.  These Iranian entities included the Islamic Republic of Iran Shipping Lines ("IRISL"), a state-owned shipping company that Plaintiffs allege has "a long history of facilitating arms shipments on behalf of the IRGC," J. App'x at 373 ¶ 197; the National Iranian Oil Company ("NIOC"), a state-owned oil company that provided support to the IRGC – including by using its own helicopters to conduct surveillance on U.S. forces and

allies along the Iranian border; and Mahan Air, a privately-operated Iranian airline that the U.S. Treasury Department designated as a Specially Designated Global Terrorist ("SDGT") in 2011 for transporting personnel, weapons, and goods for Hezbollah and the IRGC.

Plaintiffs allege that, because of the weakness of Iran's domestic currency, the Iranian government relied on access to U.S. dollars to finance its terrorism network. Since 1995, the United States has enacted a series of sanctions designed to prevent Iran from using U.S. dollars to finance terrorism. *See, e.g.*, Exec. Order No. 12,959, 60 Fed. Reg. 24,757 (May 6, 1995). Nevertheless, to avoid crippling Iran's legitimate economic activities, the U.S. government established the so-called "U-Turn exemption," which permitted U.S. banks to process transactions to and from Iran so long as (1) non-U.S., non-Iranian banks acted as intermediaries between the U.S. banks and Iranian counterparties; (2) none of the Iranian counterparties were sanctioned entities; and (3) the payment information was transparent, so that the transactions could be readily monitored by U.S. banks and regulators. *See* 31 C.F.R. § 560.516 (1995); *see also Kemper v. Deutsche Bank AG*, 911

F.3d 383, 387–88 (7th Cir. 2018) (describing the U-Turn exemption).[2]  Aside from limiting Iran's access to U.S. dollars, the United States also established regulations prohibiting trade with Iran involving certain types of military articles, such as nuclear weapons, conventional-weapons systems, and dual-use products (collectively, the "Iran Trade Regulations").

The Complaint alleges two principal types of activity that furthered Iran's financial support of terrorism.  First, Plaintiffs allege that the Banks helped conceal identifying information from wire transfers to and from several Iranian banks, including  Bank  Saderat  PLC  ("Saderat"),  [3] by  (1) "stripping"  identifying information  from  the  wire  transfer  messages  of  the  Society  for  Worldwide Interbank Financial Telecommunications ("SWIFT"), the medium used for most international money transfers; and (2) using an alternate form of SWIFT message that  contained  less  information  about  the  counterparties  than  the  standard message used for international money transfers.  According to the Complaint,

---

[2] In 2008, the U.S. government revoked the U-Turn exemption because it suspected Iran of using the exemption to finance its nuclear-weapons and missile programs.  *See* 73 Fed. Reg. 66,541 (Nov. 10, 2008).

[3] Saderat was named as a defendant in the Complaint and initially joined this appeal.  However, Saderat's attorneys subsequently withdrew from their representation on appeal.  On January 10, 2020, Saderat, as a pro se corporation, was deemed in default of this appeal and was precluded from submitting a brief.  *See* Doc. No. 30 (citing *Berrios v. N.Y. City Hous. Auth.*, 564 F. 3d 130, 132–33 (2d Cir. 2009)).

these practices allowed Iranian banks to transfer hundreds of millions of dollars to terrorist organizations without detection by U.S. banks and bank regulators. Second, Plaintiffs allege that the Banks helped various Iranian entities such as IRISL, NIOC, and Mahan Air obtain letters of credit that concealed their identity, thereby allowing them to circumvent the Iran Trade Regulations and acquire prohibited goods, technologies, and weapons.

Plaintiffs claim that the Banks undertook these transactions despite being aware of, or deliberately indifferent to, the fact that the Iranian banks and entities "engaged in money laundering on behalf of a State Sponsor of Terrorism," J. App'x at 347 ¶ 49, and "assisted Iran, the IRGC, IRISL, Mahan Air, Hezbollah, and/or the [Iraqi militias] in committing the acts of international terrorism," *id.* at 402 ¶ 360.

On November 10, 2014, Plaintiffs commenced this action under the ATA, asserting claims under 18 U.S.C. § 2333(a) on a theory of primary liability. On September 28, 2016, Congress passed JASTA, which amended the ATA to permit claims against third parties that aided and abetted an act of international terrorism or conspired with a person who committed an act of international terrorism. *See* Pub. L. No. 114-222, § 4, 130 Stat. at 854, codified at 18 U.S.C. § 2333(d)(2).

Congress made JASTA's secondary-liability provision retroactive to all cases pending at the time of the enactment. *See* Pub. L. No. 114-222, § 7, 130 Stat. at 855.

Nevertheless, Plaintiffs did not seek to amend the Complaint after the passage of JASTA. Rather, in response to the Banks' renewed motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiffs argued that JASTA's secondary liability for conspiracy provided an alternative ground of relief for the Complaint's allegations under section 2333(a). The district court referred the motion to Magistrate Judge Cheryl L. Pollak, who recommended denying the motion in its entirety. Judge Pollak concluded that with respect to Plaintiffs' conspiracy claims, the Complaint adequately alleges that the Banks joined a conspiracy to finance and enrich Iranian terror proxies, and that the ninety-two terrorist attacks that injured or killed Plaintiffs were both within the scope and foreseeable risks of the conspiracy.

The district court declined to adopt Judge Pollak's report and recommendation, and instead granted the Banks' motion to dismiss. The district court explained that "the plain text of JASTA's conspiracy[-]liability provision requires that a defendant conspire directly with the person or entity that committed the act of international terrorism that injured the plaintiff." *Freeman v.*

15

*HSBC Holdings PLC* (*Freeman I*), 413 F. Supp. 3d 67, 99 n.41 (E.D.N.Y. 2019). According to the district court, the Complaint merely alleges that Hezbollah and the IRGC, "acting through agents and proxies, are the entities responsible for committing the acts of international terrorism that injured Plaintiffs." *Id.* at 97–98. Finding "not a single allegation in the [Complaint] that any of the [Banks] *directly* conspired with Hezbollah or the IRGC" or "that any of [the Banks'] alleged coconspirators, *e.g.*, the Iranian banks, IRISL, NIOC, or Mahan Air, directly participated in the attacks that injured Plaintiffs," the district court concluded that "Plaintiffs have failed to adequately allege the threshold requirements" for their secondary-liability claims.[4] *Id.* Plaintiffs then moved for reconsideration, arguing, among other things, that the district court failed to analyze Plaintiffs' claims under JASTA's aiding-and-abetting theory. The district court denied Plaintiffs' motion, explaining that "[n]owhere in any of [Plaintiffs'] submissions" did they assert a claim under an aiding-and-abetting theory, even after the passage of JASTA. Sp. App'x. at 92. This appeal followed.[5]

---

[4] The district court also stated in a footnote "that the [Complaint] fails to sufficiently allege a JASTA conspiracy for the same reasons discussed earlier in the primary[-]liability section." *Freeman I*, 413 F. Supp. 3d at 96 n.36.

[5] On appeal, Plaintiffs do not challenge the district court's dismissal of their primary-liability claims.

16

## II.   STANDARD OF REVIEW

"We review de novo a district court's dismissal of a complaint under Rule 12(b)(6)," *Honickman v. BLOM Bank SAL*, 6 F.4th 487, 495 (2d Cir. 2021), and may affirm the district court's dismissal "on any ground that finds support in the record," *Dettelis v. Sharbaugh*, 919 F.3d 161, 163 (2d Cir. 2019).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

## III.   DISCUSSION

Plaintiffs challenge the district court's dismissal of their JASTA conspiracy claims and its decision to not consider their JASTA aiding-and-abetting claims. We address each challenge in turn.

### A.   Plaintiffs Failed to Plausibly State a JASTA Conspiracy Claim

The district court dismissed Plaintiffs' JASTA conspiracy claims primarily because the Complaint failed to plausibly allege that the Banks conspired directly with the terrorist groups that killed or injured U.S. service members.  Although we disagree with the district court's primary reason for dismissal, we affirm its decision because Plaintiffs have not adequately alleged that the Banks conspired – either directly or indirectly – with the terrorist groups that carried out the attacks,

17

or that the terrorist attacks that killed or injured the service members were in furtherance of the Banks' alleged conspiracy with Iranian entities to circumvent U.S. sanctions.

### 1. JASTA's Secondary-Liability Provision Extends Liability to Any Person Who Conspires with a Person Who Commits an Act of International Terrorism

In 1992, Congress enacted the core provisions of the ATA. *See* Pub. L. No. 102-572, § 1003, 106 Stat. 4521–24 (1992), codified at 18 U.S.C. §§ 2331–2338. As relevant to this appeal, the ATA added 18 U.S.C. § 2333(a), which provides:

> Any national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs, may sue therefor in any appropriate district court of the United States and shall recover threefold the damages he or she sustains and the cost of the suit, including attorney's fees.

18 U.S.C. § 2333(a).  The ATA further defines "international terrorism" as activities that:

> (A) involve violent acts or acts dangerous to human life that are a violation of the criminal laws of the United States or of any State . . . ;
>
> (B) appear to be intended —
>
> > (i) to intimidate or coerce a civilian population;
> >
> > (ii) to influence the policy of a government by intimidation or coercion; or

> (iii) to affect the conduct of a government by mass destruction, assassination, or kidnapping; and

(C) occur primarily outside the territorial jurisdiction of the United States.

*Id*. § 2331(1)(A)–(C).  This original version of the ATA established primary liability for those who committed an act of international terrorism.  But it did not expressly provide for secondary liability – liability for those who aided and abetted or conspired with the primary wrongdoers.  *See Rothstein v. UBS AG*, 708 F.3d 82, 98 (2d Cir. 2013).

This changed in 2016, when Congress amended the ATA through JASTA.  *See* Pub. L. No. 114-222, 130 Stat. at 852–56.  The JASTA amendments added a new provision, codified at 18 U.S.C. § 2333(d)(2), that explicitly recognized secondary liability – aiding-and-abetting and conspiracy – for a claim brought under section 2333(a).  Specifically, JASTA's secondary-liability provision states:

> In an action under [section 2333(a)] for an injury arising from an act of international terrorism committed, planned, or authorized by an organization that has been designated as a foreign terrorist organization under section 219 of the Immigration and Nationality Act (8 U.S.C. [§] 1189), as of the date on which such act of international terrorism was committed, planned, or authorized, liability may be asserted as to any person who aids and abets, by knowingly providing substantial assistance, or who conspires with the person who committed such an act of international terrorism.

18 U.S.C. § 2333(d)(2).  A "person" who commits an act of international terrorism –
as used in this provision – can "include corporations, companies, associations,
firms, partnerships, societies, and joint stock companies, as well as individuals."
1 U.S.C. § 1; *see also* 18 U.S.C. § 2333(d)(1) (incorporating this definition of
"person").

In JASTA's "Purpose" section, Congress explained that the purpose of the
amendments was "to provide civil litigants with the broadest possible basis,
consistent with the Constitution of the United States, to seek relief against persons,
entities, and foreign countries . . . that have provided material support, directly or
indirectly, to foreign organizations or persons that engage in terrorist activities
against the United States."  Pub. L. 114-222 § 2(b), 130 Stat. at 853.  Congress also
took the unusual step of specifying a decision from the D.C. Circuit, *Halberstam v.
Welch*, 705 F.2d 472 (D.C. Cir. 1983), as one that provides "the proper legal
framework for how [civil aiding-and-abetting and conspiracy] liability should
function in the context of" the ATA as amended by JASTA.  Pub. L. 114-222,
§ 2(a)(5), 130 Stat. at 852.  As Congress indicated, *Halberstam* has been recognized
as a "leading case regarding [f]ederal civil aiding[-]and[-]abetting and conspiracy
liability, including by the Supreme Court of the United States" and this Court.  *Id.*;

20

see, e.g., *Beck v. Prupis*, 529 U.S. 494, 503 (2000); *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 25 n.3 (2d Cir. 1990).

*Halberstam* addressed whether the defendant, Linda Hamilton, could be held civilly liable, under a theory of aiding and abetting or as a coconspirator, for the killing of Michael Halberstam by Hamilton's long-term business and romantic partner, Bernard Welch. *See* 705 F.2d at 474. Welch killed Halberstam during a burglary – one of many burglaries that Welch had committed over the course of five years. *See id.* But while Hamilton was not present during the burglary, and was not even aware of the burglary at the time it took place, she had helped Welch fence and manage his inventory of stolen goods over the years and "knew full well the purpose of Welch's evening forays and the means by which she and Welch had risen from rags to riches in a relatively short period of time," "clos[ing] neither her eyes nor her pocketbook to the reality of the life she and Welch were living." *Id.* (alteration and internal quotation marks omitted). One of the primary issues before the court in *Halberstam* was therefore "to what extent . . . [a] secondary defendant [can] be liable for another tortious act (murder) committed by the primary tortfeasor while pursuing the underlying tortious activity." *Id. at 476*.

21

In an opinion by Judge Wald, for a panel that included Judge Bork and then-Judge Scalia, the D.C. Circuit held that Hamilton could be held civilly liable for Halberstam's murder, both on a theory of aiding and abetting and as a coconspirator.  *Id*. at 487–89.  With respect to conspiracy, the court explained that the elements required to establish civil liability for a conspiracy are:

> (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme.

*Id*. at 477.  The court went on to explain that, in contrast to a criminal conspiracy, "the agreement in a civil conspiracy does not assume the same importance it does in a criminal action," and that "[p]roof of a tacit, as opposed to explicit, understanding is sufficient to show agreement."  *Id*.  As such, a civil conspirator "can be liable even if he neither planned nor knew about the particular overt act that caused injury, so long as the purpose of the act was to advance the overall object of the conspiracy."  *Id*. at 487.

The *Halberstam* court affirmed the district court's conclusion that Hamilton could be held civilly liable for Halberstam's murder as a coconspirator because (1) "Hamilton and Welch agreed to undertake an illegal enterprise to acquire

stolen property," and (2) "Welch's killing of Halberstam during a burglary was an overt act in furtherance of the agreement." *Id*. In reaching this conclusion, the court emphasized that "Welch was trying to further the conspiracy by escaping after an attempted burglary, and he killed Halberstam in his attempt to do so." *Id*. Because "[t]he use of violence to escape apprehension was certainly not outside the scope of a conspiracy to obtain stolen goods through regular nighttime forays and then to dispose of them," the court concluded that Hamilton was civilly liable for that violence. *Id*.

> **2. The District Court Erred in Concluding That JASTA Required Plaintiffs to Allege that the Banks Conspired Directly with Terrorist Organizations**

Applying *Halberstam* to this case, the district court found that the Complaint failed to state a JASTA conspiracy claim because it did not contain "a single allegation . . . that any of the [Banks] *directly* conspired with Hezbollah or the IRGC," the two entities "responsible for committing the acts of international terrorism that injured Plaintiffs." *Freeman I*, 413 F. Supp. 3d at 98. The district court explained that although JASTA added conspiracy liability to the ATA, "Congress significantly limited that secondary liability to defendants who conspired *with*" the person who committed an act of international terrorism. *Id*. at 94 n.35. The Banks press this interpretation of section 2333(d)(2) on appeal,

arguing that the phrase "conspires with" demands "that the defendant interact with the terrorist attacker."  Banks' Br. at 14–15.  We conclude that this narrow construction of section 2333(d)(2) is unsupported by the text and structure of JASTA and runs counter to basic principles of conspiracy liability.

First, the word "directly" is absent from JASTA.  The text of the statute plainly provides that "liability may be asserted as to any person . . . who *conspires with* the person who committed such an act of international terrorism," without requiring a direct connection between the Banks and terrorist attackers.  18 U.S.C. § 2333(d)(2) (emphasis added).  The Banks attempt to shoehorn the "proximity requirement" into the word "with."  Banks' Br. at 18.  But from a linguistic standpoint, it is difficult to attach great significance to Congress's use of the preposition "with" after "conspires."  In the context of section 2333(d)(2), the terms "aids" and "abets" are both transitive verbs, which do not require a preposition to link them to the phrase "the person who committed such an act of international terrorism."  *See* Bryan A. Garner, *Garner's Modern English Usage* 1035 (4th ed. 2016).  By contrast, the term "conspires" – as used in the statute – is an intransitive verb, after which a preposition is necessary.  *See id.* at 1034.  The word "with," therefore, does not circumscribe the scope of JASTA conspiracy liability; it is simply the

24

natural way of linking the verb "conspires" to the remainder of the text. As Justice Cardozo observed nearly a century ago, "[i]t is impossible in the nature of things for a man to conspire with himself," since one necessarily conspires *with* other people. *Morrison v. California*, 291 U.S. 82, 92 (1934).

Second, under well-settled principles of conspiracy law, "[t]here is no requirement that each member of a conspiracy conspire directly with every other member of it, or be aware of all acts committed in furtherance of the conspiracy, or even know every other member." *United States v. Rooney*, 866 F.2d 28, 32 (2d Cir. 1989) (citation omitted). Indeed, a standard formulation of the jury instruction for such crimes makes clear that "to become a member of the conspiracy, the defendant need not have known the identities of each and every other member, nor need he have been apprised of all of their activities." 2 Leonard B. Sand et al., *Modern Federal Jury Instructions – Criminal* ¶ 19.01 (2021). That is also the law of this Circuit. *See United States v. Labat*, 905 F.2d 18, 21 (2d Cir. 1990) ("The defendant need not know the identities of all of the other conspirators.").

By way of example, in *United States v. Bicaksiz*, 194 F.3d 390 (2d Cir. 1999), we upheld the sufficiency of a defendant's conviction for conspiring to commit a murder for hire, even though the defendant never met his coconspirators and

25

coordinated through an intermediary who turned out to be a non-conspiring government informant.  *See id.* at 400.  We explained that even though the defendant and one of his coconspirators "were unaware of each other's identity, there [was] sufficient evidence in the record for the jury to have reasonably found that each was aware of an unknown participant playing an assigned and understood role in furtherance of the criminal venture."  *Id.*

This same rationale applies to a JASTA conspiracy claim.  So long as the defendant and the "person" – which can include an entity or association – carrying out the act of international terrorism are part of a common conspiracy, there is nothing in the text or structure of JASTA requiring that they meet, communicate, or interact for the defendant to be held liable for his coconspirator's actions.  This conclusion is further reinforced by the fact that the elements of civil conspiracy articulated in *Halberstam* – "(1) an agreement between two or more persons; (2) to participate in an unlawful act . . . ; (3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; (4) which overt act was done pursuant to and in furtherance of the common scheme" – make no mention of directness.  705 F.2d at 477.

The Concurrence agrees with the district court and would hold that JASTA requires a direct link between the Banks and the terrorist groups.  After surveying statutes in the United States Code that contain the phrases "conspire with" or "conspire to," the Concurrence observes that "JASTA stands alone as the only statute that prohibits defendants from conspiring 'with' a specific person or category of persons."  Concurrence at 3.

But this is a distinction without a difference.  The fact that JASTA limits its reach to conspiracies that include a specified "category of persons" does not suggest that a defendant must interact *directly* with such "category of persons."  *Id*. Again, "directly" is nowhere to be found on the face of the statute, and well-established principles of conspiracy law do not require "that each member of a conspiracy conspire directly with every other member of it."  *Rooney*, 866 F.2d at 32.  Indeed, by ignoring JASTA's text and black-letter conspiracy law, the Concurrence's narrow construction would absolve terrorist facilitators from liability as long as they interact with terrorist perpetrators through an intermediary.  That result would be a drastic distortion of JASTA, as Congress made clear in enacting the statute that its purpose was to provide civil litigants with the "*broadest possible basis* . . . to seek relief against persons, entities, and

27

foreign countries . . . that have provided material support, *directly or indirectly*, to foreign organizations or persons that engage in terrorist activities against the United States."  Pub. L. 114-222, § 2(b), 130 Stat. at 853 (emphasis added).[6]

We therefore see no reason to conclude that a JASTA conspiracy claim requires a direct connection between the defendant and the person who commits an act of international terrorism.  To hold otherwise would require us to read "directly" into the plain text of the statute, defy well-established principles of conspiracy law, and risk shielding avowed terrorists and terrorist facilitators from liability simply because they did not have direct dealings with those who detonated explosive devices – something that is clearly inconsistent with JASTA's stated purpose.

---

[6] Contrary to the Banks' position in their Rule 28(j) letter, this Court's opinion in *Kaplan v. Lebanese Canadian Bank*, 999 F.3d 842 (2d Cir. 2021), does not compel us to adopt the district court's narrow reading of JASTA.  While it is true that *Kaplan* makes a passing reference to the word "with" in assessing the language of the aiding-and-abetting provision of section 2333(d)(2), *id.* at 855, *Kaplan* did not involve a JASTA conspiracy claim.  To the extent that *Kaplan* purported to interpret the term "conspires with," it was pure dicta.  Moreover, *Kaplan* recognized that JASTA has the statutorily codified purpose of "provid[ing] civil litigants with the broadest possible basis" to seek damages against organizations responsible for "terrorist activities against the United States, whether directly or indirectly."  *Id.* (internal quotation marks omitted) (citing JASTA, Pub. L. No. 114-222, § 2(b), 130 Stat. at 853).    Surely, that purpose was not limited to the aiding-and-abetting prong of section 2333(d)(2).

### 3. Plaintiffs Failed to Allege That the Banks Conspired with Terrorist Organizations

Although the district court erred in requiring Plaintiffs to allege a "direct" connection between the Banks and the terrorist organizations that perpetrated the acts of violence in question, we nevertheless find that Plaintiffs have not sufficiently alleged a JASTA conspiracy claim because the Complaint is devoid of any fact suggesting that the Banks conspired – either *directly or indirectly* – with the terrorist perpetrators.  As discussed, to assert a conspiracy claim under JASTA, a plaintiff must plead "an *agreement* between two or more persons . . . to participate in an unlawful act" and an "injury caused by an unlawful overt act performed by one of the parties to the *agreement*."  *Halberstam*, 705 F.2d at 477 (emphasis added). While courts may "infer an agreement from indirect evidence in most civil conspiracy cases," *id.* at 486, a complaint must nonetheless allege that the coconspirators were "pursuing the same object," *id.* at 487; *see also N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 39 (2d Cir. 2018) ("Proof of a conspiracy" requires "direct or circumstantial evidence that reasonably tends to prove a conscious commitment to a common scheme designed to achieve an unlawful objective." (alteration and internal quotation marks omitted)); *United States v. Parker*, 554 F.3d 230, 234 (2d Cir. 2009) ("[U]nless at least two persons have

29

a *shared* purpose or stake in the promotion of an illegal objective, there is no conspiracy."); *Int'l Distrib. Ctrs., Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 793 (2d Cir. 1987) ("[C]onspirators [must have] a unity of purpose or a common design and understanding.").

Here, the Complaint fails to allege that the Banks and the terrorist groups shared any "common intent." *Halberstam*, 705 F.2d at 480.  As to the Banks, the Complaint states that they "shared the common goal of . . . providing Iran and the Iranian [b]ank[s] . . . the ability to illegally transfer billions of dollars (undetected) through the United States."  J. App'x at 398 ¶ 344.  With respect to the terrorist groups, the Complaint asserts that they "actively engaged in planning and perpetrating the murder and maiming of hundreds of Americans in Iraq."  *Id.* at 403 ¶ 359.  Nowhere in the Complaint, however, do Plaintiffs plead that the Banks intended to kill or injure U.S. service members in Iraq, or that the terrorist groups agreed to help the Banks and Iranian entities evade U.S. sanctions.  In the absence of any allegation that the Banks and the terrorist groups "engaged in a common pursuit," *Halberstam*, 705 F.2d at 481, we cannot identify "an[y] agreement" that could form the basis of a JASTA conspiracy between the Banks and the terrorist groups, whether they conspired directly or indirectly with one

30

another, *id.* at 477; *see also Bernhardt v. Islamic Republic of Iran*, 47 F.4th 856, 873 (D.C. Cir. 2022) (holding that "Bernhardt's conspiracy claim [against HSBC] is inadequate" because "[t]he complaint states that HSBC was trying to make substantial profits by evading sanctions, whereas al-Qaeda sought to terrorize the U.S. into retreating from the world stage" (internal quotation marks omitted)).

### 4. Plaintiffs Likewise Failed to Allege an Overt Act in Furtherance of the Common Scheme

Aside from Plaintiffs' failure to adequately allege an agreement between the Banks and the terrorist groups, we also cannot find that the ninety-two terrorist attacks alleged in the Complaint furthered a conspiracy in which the Banks were participants. Under *Halberstam*, a plaintiff asserting a civil conspiracy claim must adequately plead that their injuries were caused by "an unlawful overt act" done "in furtherance of the [coconspirators'] common scheme." *Halberstam*, 705 F.2d at 477. In this case, the Complaint defines "the Conspiracy" as "six Western international banks . . . knowingly conspir[ing] with Iran and its banking agents . . . to evade U.S. economic sanctions, conduct illicit trade-finance transactions, and disguise financial payments to and from U.S. dollar-denominated accounts." J. App'x at 335 ¶ 6. The Complaint also alleges that Plaintiffs were "killed and injured by reason of acts of international

terrorism perpetrated by Iran through its agents." *Id.* at 403 ¶ 361.  Notably absent from the Complaint, however, are allegations of ways by which the "acts of international terrorism" furthered "the Conspiracy."   Rather, the Complaint alleges only that "[t]he Conspiracy was . . . a significant factor in the chain of events leading to Plaintiffs' deaths and injuries," *id.* at 402 ¶ 360, without explaining how the terrorist attacks "advance[d] the overall object of the conspiracy" – the evasion of U.S. sanctions against Iran, *Halberstam*, 705 F.2d at 487.

On appeal, Plaintiffs do not contend that the ninety-two terrorist attacks furthered the conspiracy to evade U.S. sanctions; instead, they argue that civil conspiracy liability under *Halberstam* reaches not only acts "in furtherance of" the conspiracy but also any conduct that might "foreseeably result from it."  Reply Br. at 19.  The crux of Plaintiffs' argument is that, because the Iraqi militias' "terror campaign" was "the foreseeable result" of the Banks' conspiracy with Iranian entities to circumvent U.S. sanctions, the Banks should be liable for the terrorist attacks.  *Id*. at 19–20.  In making this argument, Plaintiffs rely principally on *American Family Mutual Ins. Co. v. Grim*, 201 Kan. 340 (1968), a case discussed in *Halberstam*, 705 F.2d at 482–83.

The facts in *Grim* are certainly a far cry from those at issue here.  In *Grim*, a boy broke into a local church with three companions at night to search for soft drinks.  201 Kan. 341.  Because the doors to the kitchen were locked, several of the boys attempted to gain entry through the attic.  *Id.* at 341–42.  While the boy in question remained in a storeroom behind the sanctuary, two of his companions proceeded to the attic, but failed to completely extinguish the torches they used to illuminate their way.  *Id.* at 342–43.  After the boys obtained the soft drinks and left, the church caught fire from the torches and was severely damaged.  *Id.* at 343–44.  Although the defendant in question neither entered the attic, knew about the torches, nor was near the church when the fire started, *id.*, the court nonetheless found him liable for the fire damage, "invoking both civil conspiracy and aiding-abetting theories," *Halberstam*, 705 F.2d at 483.  Drawing on the restatement's section on aiding and abetting, the court pointed out that "a person who encourages another to commit a tortious act may also be responsible for other foreseeable acts done by such other person in connection with the intended act." *Grim*, 201 Kan. at 346.  The court also relied on a theory of conspiracy, reasoning that despite the boy's lack of involvement with the torches, he was liable for the

fire because "the torches were used in the four boys' attempt to carry out their original unlawful plan." *Id.* at 345.

As Plaintiffs acknowledge, the *Halberstam* court identified *Grim* as an example of "judicial merger" of civil conspiracy and aiding and abetting, *Halberstam*, 705 F.2d at 482; *see also* Reply Br. at 19, without "distinguish[ing] the elements and proof of civil conspiracy and aiding-abetting," *Halberstam*, 705 F.2d at 489. But the *Halberstam* court noted that "[t]here is a qualitative difference between proving an agreement to participate in a tortious line of conduct [– in the case of conspiracy –] and proving knowing action that substantially aids tortious conduct [– in the case of aiding and abetting]." *Id.* at 478. The *Halberstam* court therefore found "it important to keep the distinctions [between conspiracy and aiding and abetting] clearly in mind" because "the distinctions can make a difference." *Id.*; *see also id.* at 489 ("Our effort to distinguish the elements and proof of civil conspiracy and aiding-abetting may appear formalistic, but it is motivated by our desire to move cautiously in cases like this one.").

Keeping the distinctions "clearly in mind," *id.* at 483, we are unpersuaded by Plaintiffs' contention that civil conspiracy liability reaches any coconspirator conduct that "foreseeably" results from the conspiracy, Reply Br. at 19. Plaintiffs

34

put great emphasis on the fact that foreseeability is discussed in *Halberstam*. *See id.* (citing *Halberstam*, 705 F.2d at 482–83). But that discussion pertains to aiding-and-abetting liability – not conspiracy. *See, e.g., Halberstam*, 705 F.2d at 483 ("[T]he principle to apply in assigning liability under the *aiding-abetting* theory was: '[a] person who encourages another to commit a tortious act may also be responsible for other *foreseeable* acts done by such other person in connection with the intended act.'" (quoting *Grim*, 201 Kan. at 346) (emphasis added)); *id.* at 485 ("As for the second issue in *aiding-abetting*, the extent of liability, the test from *Cobb* and *Grim* appears to be that a person who assists a tortious act may be liable for other reasonably *foreseeable* acts done in connection with it." (emphasis added)); *id.* at 488 ("Similarly, under an *aiding-abetting* theory, it was a *natural and foreseeable* consequence of the activity Hamilton helped Welch to undertake." (emphasis added)). Given *Halberstam*'s repeated admonition to keep the two theories separate, we see no reason to inject the foreseeability requirement pertinent to aiding-and-abetting liability into the "in-furtherance-of" requirement that exists for conspiracy.

*Halberstam*'s requirement of an overt act to further the "*overall object*" of the conspiracy, 705 F.2d at 487 (emphasis added), is grounded in the very core of

conspiracy liability, which is "an *agreement* between the defendant and the primary wrongdoer to commit a wrong," Restatement (Third) of Torts: Liability for Economic Harm § 27 (Am. L. Inst. 2020) (emphasis added). The mere fact that certain conduct may be the "natural and foreseeable consequence" of the conspiracy is therefore not enough to meet the in-furtherance-of requirement at the heart of a conspiracy claim. *Halberstam*, 705 F.2d at 488. For instance, in a conspiracy between *A* and *B* to smuggle firearms into the United States, it may well be foreseeable to *A* that *B* might use the smuggled firearms to commit a robbery; but, without more, there is no basis for concluding that *B*'s use of the firearm in the robbery would somehow further *A* and *B*'s firearms-smuggling conspiracy. To hold a defendant liable for a coconspirator's actions merely because they are foreseeable – even though wholly detached from the shared conspiratorial plan – would stretch the concept of civil conspiracy too far beyond its origin. *See Halberstam*, 705 F.2d at 484–85 (explaining that the overt act causing the plaintiff's injury must be "in furtherance of the agreement"); *Bernhardt*, 47 F.4th at 873 ("[I]t [is not] plausible to infer that an attack on a secret CIA base in Afghanistan would further HSBC's alleged objective of maximizing profits through the evasion of U.S. sanctions."); *Adams v. Alcolac, Inc.*, 974 F.3d 540, 545

36

(5th Cir. 2020) ("The question is not whether the plaintiffs' battery was a foreseeable result of the alleged conspiracy but whether the battery was done in pursuance of the common purpose of the conspiracy." (internal quotation marks omitted)).

When read in context, *Halberstam* makes clear that a coconspirator's overt act must further the objects of a conspiracy for another coconspirator to be held civilly liable for that act. After upholding "the district court's finding that Hamilton and Welch agreed to undertake an illegal enterprise to acquire stolen property," the court explained that "[t]he only remaining issue, then, is whether Welch's killing of Halberstam during a burglary was an overt act *in furtherance of* the agreement." *Halberstam*, 705 F.2d at 487 (emphasis added). The court concluded that it was, noting that "a conspirator can be liable even if he neither planned nor knew about the particular overt act that caused injury, so long as the purpose of the act was to advance the *overall object* of the conspiracy." *Id.* (emphasis added). In this case, Plaintiffs simply have not explained how the ninety-two terrorist attacks furthered the Banks' conspiracy with Iranian entities to circumvent U.S. sanctions. We therefore affirm the district court's dismissal of Plaintiffs' JASTA conspiracy claims also on this ground. *See Bernhardt*, 47 F.4th

at 873 (holding that Bernhardt "fail[ed]to allege an overt act in furtherance of a conspiracy," as "HSBC's sanctions evasion . . . is not . . . an overt act of international terrorism or the source of Bernhardt's injury under the ATA.").

## B.     Plaintiffs Forfeited Their JASTA Aiding-and-Abetting Claims

Plaintiffs also urge us to consider their JASTA aiding-and-abetting claims, which they raised for the first time in their motion for reconsideration.  As a general rule, we "will not consider an argument on appeal that was raised for the first time below in a motion for reconsideration." *Off. Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 159 (2d Cir. 2003).  While we have discretion to consider untimely arguments, we frequently decline to do so when the party asserting the argument presents no persuasive excuse.  *See, e.g.*, *Phillips v. City of New York*, 775 F.3d 538, 544 (2d Cir. 2015); *Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co.*, 762 F.3d 165, 188–19 (2d Cir. 2014); *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52–53 (2d Cir. 2012).  In this case, Plaintiffs have not articulated any excuse that would warrant the exercise of our discretion. Instead, Plaintiffs cherry-pick certain statements made by the district court during a hearing to show that they did not forfeit their aiding-and-abetting claims.  But conveniently omitted from Plaintiffs' excerpt of the transcript are the following remarks from the district court:

> Nowhere in any of your submissions have you actually used the words, ["]We are alleging aiding[-]and[-]abetting liability under JASTA,["] and even in your briefing now, you simply say that one of the elements is met, namely, a general awareness of the terrorist activities of some of these entities that they provided banking services for[.]  [B]ut . . . I find it a little disingenuous, to be perfectly frank, because you never declared in this case that you were advancing an aiding[-]and[-]abetting theory.

Sp. App'x at 92–93.  The district court therefore emphatically rejected Plaintiffs' suggestion that they had raised their aiding-and-abetting arguments prior to the motion for reconsideration or that it ever considered them.  The district court's conclusion is also supported by the record:  Plaintiffs never asserted JASTA aiding-and-abetting liability in their opposition to the Banks' motion to dismiss or in their response to the Banks' objections to the Report and Recommendation, despite ample opportunity to do so.  *See* Dist. Ct. Doc. Nos. 125 at 26, 31–32; 183 at 2–21.

Plaintiffs point us to the Supreme Court's decision in *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014), to suggest that "the [Complaint] can be sustained on any legal theory that its allegations, fairly construed, support."  Reply Br. at 21.  But this case hardly resembles *Johnson*, in which the plaintiffs had simply failed to identify 42 U.S.C. § 1983 in an action asserting violations of their constitutional rights.  *Johnson*, 574 U.S. at 10.  Here, the Complaint does not merely articulate an

"imperfect statement of the legal theory supporting the claim asserted," *id*. at 11; it asserts only a conspiracy theory, with no reference to aiding and abetting whatsoever, *see generally* J. App'x at 318–927.  Plaintiffs' subsequent briefs before the district court do the same.  *See, e.g.*, Dist. Ct. Doc. No. 125.  Indeed, Plaintiffs themselves concede that they did not assert a claim under an aiding-and-abetting theory until they commenced a second lawsuit in 2018.  *See* Reply Br. at 21 n.21 ("[C]laims for aiding and abetting were first pleaded as such in *Freeman* [*v. HSBC Holdings PLC (Freeman II)*, No. 18-cv-7359 (PKC) (E.D.N.Y. 2018)].").  The fact that Plaintiffs ultimately filed an entirely separate action asserting JASTA aiding-and-abetting liability only reinforces the fact that they failed to raise those arguments here.

On this record, we find that the district court acted within its discretion in declining to consider Plaintiffs' untimely JASTA aiding-and-abetting claims.  We also decline to do so on appeal.

## IV.   CONCLUSION

Although we disagree with the district court's conclusion that a JASTA conspiracy claim requires a direct connection between the defendant and the person who commits an act of international terrorism, we **AFFIRM** the district

court's judgment because Plaintiffs failed to adequately allege that the Banks conspired either directly or indirectly with the terrorist groups, or that the terrorist attacks that killed or injured U.S. service members furthered the Banks' conspiracy with Iranian entities to circumvent U.S. sanctions.  We agree with the district court that Plaintiffs forfeited their aiding-and-abetting claims by raising them for the first time in a motion for reconsideration.

1    DENNIS JACOBS, <u>Circuit Judge</u>, concurring:

2          The majority opinion observes that JASTA does not require a direct

3    relationship between the Banks and the terrorist attackers.  This observation is

4    dicta because, as we all agree, it does not affect the result.  I would let the dicta

5    pass, except that it is wrong.

6          JASTA requires that a defendant conspire "*with* the person who

7    committed" acts of terrorism.  18 U.S.C. § 2333(d)(2) (emphasis added).  That

8    intimate little preposition requires that there be a direct link between a defendant

9    bank and a terrorist.

10         The use of "with" is particular, and unusual.  The United States Code is

11   full of statutes that sweep up defendants who "conspire[] to" commit certain

12   acts, without reference to the person or category of persons with whom the

13   defendant must conspire.  Examples are in the margin.[1]  The phrase "conspires

14   with" appears in that Code far less often.[2]  Where it does appear, the object of the

---

[1] <u>See, e.g.,</u> 18 U.S.C. § 115(a)(2) ("Whoever assaults, kidnaps, or murders, or attempts or *conspires to* kidnap or murder . . . shall be punished as provided in subsection (b)." (emphasis added)); 18 U.S.C. § 832(c) ("Whoever without lawful authority develops, possesses, or attempts or *conspires to* develop or possess a radiological weapon . . . shall be imprisoned for any term of years or for life." (emphasis added)).

[2] By my count, the phrase "conspires to" appears 125 times in the United States Code, while the phrase "conspires with" appears only 19 times.

1    preposition "with" is not particular: that is, the conspirator is prohibited from

2    conspiring with anybody at all.  See, e.g., 18 U.S.C. § 956(a)(1) ("Whoever, within

3    the jurisdiction of the United States, *conspires with one or more other persons* . . . to

4    commit . . . the offense of murder, kidnapping, or maiming [overseas] . . . shall . .

5    . be punished as provided in subsection (a)(2)." (emphasis added)); 18 U.S.C. §

6    1594(c) ("Whoever *conspires with another* to violate section 1581 . . . shall be

7    punished in the same manner as a completed violation of such section."

8    (emphasis added)).

9         The requirement that the defendant conspire "with another" or "with one

10   or more other persons" does not amount to a limitation because "[i]t is

11   impossible in the nature of things for [one] to conspire with [one]self."  Morison

12   v. California, 291 U.S. 82, 92 (1934).  Rather, these statutes prohibit conspiracy in

13   its broadest terms, whereby each member must conspire directly with another

14   member of the conspiracy, but not necessarily "with every other member of it."

15   United States v. Rooney, 866 F.2d 28, 32 (2d Cir. 1989).  Application of these

2

1   statutes does not depend on whether the defendant conspires directly with any

2   defined person.  "With" requires a direct linkage, even if it is promiscuous.[3]

3        So far as I can tell, JASTA stands alone as the only statute that prohibits

4   defendants from conspiring "with" a specific person or category of persons: "the

5   person who committed such an act of international terrorism."  18 U.S.C. §

6   2333(d)(2).

7        This substantive and grammatical difference between JASTA and other

8   statutes must be given meaning.  See Marx v. General Revenue Corp., 568 U.S.

9   371, 384 (2013) ("Finally, the language in § 1692k(a)(3) sharply contrasts with

10  other statutes in which Congress has placed conditions on awarding costs to

11  prevailing defendants."); Orff v. United States, 545 U.S. 596, 604 (2005)("Our

12  conclusion draws force from . . . the broader phrasing of [other] statutes . . . .");

13  H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 245 (1989)

14  ("Moreover, Congress' approach in RICO can be contrasted with its decision to

15  enact explicit limitations to organized crime in other statutes.").

---

[3] The Majority acknowledges that in Kaplan v. Lebanese Canadian Bank, 999 F.3d 842 (2d Cir. 2021) we emphasized that "JASTA states that to be liable for conspiracy a defendant would have to be shown to have 'conspire[d] with' the principal," id. at 855.

3

1        The only reasonable reading of JASTA is that it requires proof of a direct

2  link between a defendant bank and a terrorist.  A holding on that issue must

3  await a case in which it affects the outcome.