UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
CHARLOTTE FREEMAN, *et al.*,

                     Plaintiffs,

       - against -

HSBC HOLDINGS PLC, *et al.*,

                    Defendants.
--------------------------------------------------------x

### MEMORANDUM & ORDER
14-CV-6601 (PKC) (CLP)

PAMELA K. CHEN, United States District Judge:

Plaintiffs, a group of American citizens killed or injured by terrorist attacks in Iraq, and/or

their families, filed this action in November 2014 against ten banking institutions[1] and John

Does 1–50, seeking damages pursuant to the Antiterrorism Act (the "ATA"), 18 U.S.C. § 2333, as

now amended by the Justice Against State Sponsors of Terrorism Act ("JASTA"), codified at 18

U.S.C. § 2333(d).[2]  *Freeman v. HSBC*, No. 14-CV-6601 (PKC) (CLP) ("*Freeman I*").  On

September 16, 2019, the Court dismissed the action for lack of personal jurisdiction and failure to

state a claim pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6).  *Freeman v.*

*HSBC Holdings PLC*, 413 F. Supp. 3d 67, 73 (E.D.N.Y. 2019) ("*Freeman I Dismissal*").  On

---

[1] The ten banking institutions are HSBC Holdings, PLC; HSBC Bank PLC; HSBC Bank Middle East Ltd.; HSBC Bank USA, N.A.; Barclays Bank PLC; Standard Chartered Bank ("SCB"); Royal Bank of Scotland, N.V.; Credit Suisse AG; Bank Saderat PLC ("Saderat"); and Commerzbank AG ("Commerzbank") (collectively, except Saderat, "Defendants").  Because Saderat has effectively defaulted in this action, (*see* 10/8/2019 Dkt. Order; Dkt. 271; 1/12/2024 Dkt. Order), and has not filed an opposition to Plaintiffs' motion to vacate, all references to "Defendants" in this Memorandum & Order do not include Saderat.

[2] JASTA was enacted during the pendency of this case.  *See* Pub. L. No. 114-222, 130 Stat. 852 (Sep. 28, 2016).  JASTA applies to pending civil actions "arising out of an injury to a person, property, or business on or after September 11, 2001."  *See id.* §7 (2), 130 Stat. at 855.

January 5, 2023, the Second Circuit affirmed the dismissal of this action, on other grounds. *Freeman v. HSBC Holdings PLC*, 57 F.4th 66 (2d Cir. 2023) ("*Freeman Appeal*"), *cert. denied*, 144 S. Ct. 83 (2023). Now pending before the Court is Plaintiffs' motion to vacate the dismissal of this action so that they may seek leave to file an amended complaint. For the reasons set forth below, the Court denies Plaintiffs' motion, and this action remains closed.

## BACKGROUND

The Court assumes the parties' familiarity with the background of this case, *see Freeman I Dismissal*, 413 F. Supp. 3d 67, and therefore sets forth only the relevant factual and procedural background.

## I.    Factual Background

The majority of Plaintiffs are American citizens who served as part of the Coalition Forces in Iraq from 2004 to 2011 and were injured or killed by terrorist attacks in Iraq during that time. (Second Am. Compl. ("SAC"), Dkt. 115, ¶¶ 7–9.)[3] Plaintiffs allege that Defendants engaged in a wide-ranging conspiracy dating back to 1987 to evade U.S. sanctions on financial and business dealings with Iran, conduct illicit trade-finance transactions, conceal the involvement of Iranian agents in financial payments to and from U.S. dollar-denominated accounts, and facilitate Iran's provision of material support to terrorist activities and organizations, including Hezbollah.[4] (SAC,

---

[3] Plaintiffs include several non-military members, such as Steven Vincent, a reporter covering the Iraq War, and a translator, Ahmed Al-Taie. *Freeman I Dismissal*, 413 F. Supp. 3d at 74 n.10; (*see also* SAC, Dkt. 115, ¶¶ 1232–40, 1388–1400).

[4] Hezbollah is a designated terrorist organization and political party based in Lebanon that Plaintiffs allege to have used, both directly and through its agents and auxiliaries, improvised explosive devices to maim and kill Americans in Iraq. It was designated a foreign terrorist organization ("FTO") in 1997. (SAC, Dkt. 115, ¶ 229.)

2

Dkt. 115, ¶¶ 22–23.)  Through Defendants' alleged engagement in "stripping,"[5] among other activities, organizations designated by the U.S. as FTOs[6] and Specially Designated Global Terrorists ("SDGTs")[7] were able to illegally avail themselves of United States financial institutions, markets, and instruments without alerting other banks or the United States authorities. (*See, e.g.*, *id.* ¶¶ 25, 40–45, 194–95, 372, 482, 673, 1011.)  Plaintiffs claim injury under the ATA based on Defendants' alleged direct and indirect provision of material support for terrorism to and conspiracy with FTOs and SDGTs.  (*Id.* ¶¶ 2179–2293.)

## II.     The ATA and JASTA

### A.     The ATA

The ATA, which was passed in 1990, "affords a civil action for damages to United States nationals injured by acts of international terrorism."  *Linde v. Arab Bank, PLC*, 882 F.3d 314, 319 (2d Cir. 2018).  However, the ATA only provides for civil relief "against the principals perpetrating acts of international terrorism."  *Id.*  "It provide[s] no civil action against secondary actors who, while not committing international terrorist acts themselves, facilitated such acts by others."  *Id.* at 319–20 (citing *Rothstein v. UBS AG*, 708 F.3d 82, 97 (2d Cir. 2013)).  Furthermore, the ATA's scope only extends to *violent* acts of international terrorism, since the ATA defines "international terrorism" as "activities that . . .  [*inter alia*] involve violent acts or acts dangerous to human life

---

[5] "Stripping" involves removing or otherwise altering certain information on payment messages sent through U.S. correspondent banks.  (*See, e.g.*, *id.* ¶ 25.)

[6] The Secretary of State is authorized to designate foreign organizations as FTOs under Section 219 of the Immigration and Nationality Act.  8 U.S.C. § 1189(a)(1).

[7] The United States Department of the Treasury designates SDGTs pursuant to Executive Order 13224.  *See* 31 C.F.R. § 594.310 ("The term . . . SDGT means any person whose property and interests in property are blocked pursuant to [31 C.F.R] § 594.201(a).").  The United States may block the property of and prohibit transactions with any entity designated as an SDGT. *Freeman I Dismissal*, 413 F. Supp. 3d at 74 n.7.

that are a violation of the criminal laws of the United States or of any State, or that would be a criminal violation if committed within the jurisdiction of the United States or of any State."  18 U.S.C. § 2331(1); *see Linde*, 882 F.3d at 326 ("[T]o qualify as international terrorism, a defendant's act must also involve violence or endanger human life." (citing *id.*)).  For purposes of the ATA, "the provision of material support to a terrorist organization does not invariably equate to an act of international terrorism," because "providing financial services to a terrorist organization" does not necessarily "involve violence or endanger life and do[es] not manifest the apparent intent required by § 2331(1)(B)."  *Linde*, 882 F.3d at 326.

## B.   JASTA

In recognition of the ATA's limitations, on September 28, 2016, Congress passed JASTA, which created "a new provision, codified at 18 U.S.C. § 2333(d)(2) [('§ 2333(d)')], that explicitly recognize[s] secondary liability—aiding-and-abetting and conspiracy—for a claim brought under [§] 2333(a)."[8] *Freeman Appeal*, 57 F.4th at 73–74 (citing 18 U.S.C. § 2333(d)(2)).  JASTA also expanded the definition of a "person" under the relevant statute to encompass "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  *Id.* at 76 (first quoting 1 U.S.C. § 1; and then citing 18 U.S.C. § 2333(d)(1)).  Congress also "made JASTA's secondary-liability provision retroactive to all cases pending at the time of the enactment."  *Id.* at 73–74 (citing Pub. L. No. 114–222, § 7(1), 130 Stat. at 855).  Through this expansion in the scope of liability, Congress sought "to provide civil litigants with the broadest possible basis, consistent with the Constitution of the United States, to seek relief against persons, entities, and foreign countries . . . that have provided material support, directly or indirectly, to foreign organizations or persons that engage in terrorist activities against the United

---

[8] Hereinafter, the Court refers to the ATA and § 2333(a) interchangeably, and JASTA and § 2333(d) interchangeably.

States." *Id.* at 76 (quoting Pub. L. 114-222, § 2(b), 130 Stat. at 853).  With the passage of JASTA, claims that had failed under the ATA due to a lack of proximate causal link to a *violent* terrorist act became more viable.  *See Linde*, 882 F.3d at 328–29 (discussing potential impact of "JASTA's expansion of ATA liability" on aiding-and-abetting claims that had failed to "establish causation" in relation to terrorism acts, as required by ATA).

## III.    Procedural History

### A.    *Freeman I*

Plaintiffs filed their original complaint in this matter on November 10, 2014, which was assigned to the Honorable Dora Irizarry, District Judge.  *Freeman I Dismissal*, 413 F. Supp. 3d at 75.  Plaintiffs thereafter filed two amended complaints, with which they added Commerzbank and SCB as new defendants.  *Id.*  The operative SAC was filed on August 17, 2016.  (SAC, Dkt. 115.)  At that time, only the ATA causes of action were available to Plaintiffs.

On September 14, 2016, Defendants moved to dismiss the SAC.  (Dkts. 119–124 (filed on November 10, 2016, pursuant to Judge Irizarry's bundling preferences).)  On October 11, 2016, Plaintiffs filed their omnibus response ("Omnibus Response"), in which they pointed to the newly passed JASTA as providing "an alternative legal basis for Plaintiffs' conspiracy claims." (Omnibus Resp., Dkt. 125,[9] at 31 (filed on November 10, 2016, pursuant to the district's bundling preferences).)  On July 11, 2017, Judge Irizarry referred the pending motions to dismiss to the Honorable Cheryl L. Pollak, Magistrate Judge.  (7/11/2017 Dkt. Order.)

On July 27, 2018, Judge Pollak issued her Report and Recommendation ("R&R"), in which she recommended denying Defendants' dismissal motions in their entirety.  (R&R, Dkt. 165.)

---

[9] Although Plaintiffs filed two "Omnibus Responses" at Dkts. 117 and 125, one was directed solely at Saderat's motion to dismiss, (Dkt. 116), and the other at Defendants' motion to dismiss, (Dkt. 119), respectively.  Plaintiffs' filings are identical, and so the Court only refers to Dkt. 125.

Notably, Judge Pollak's comprehensive R&R discussed the standards for both conspiracy and aiding and abetting under the ATA and JASTA, (*see* R&R, Dkt. 165, at 25–30 (discussing primary liability standards under the ATA), 30–47 (discussing secondary liability standards under the ATA through JASTA, including conspiracy and aiding and abetting)), but analyzed Plaintiffs' claims only "in light of the conspiracy [secondary liability] principles" set forth in *Halberstam v. Welch* ("*Halberstam*"), 705 F.2d 472 (D.C. Cir. 1983)[10], (*id.* at 49), and the primary liability standards applicable to the predicate acts recognized by the ATA, (*id.* at 49 n.40, 105).[11]  Though Judge Pollak noted that "many of [Plaintiffs'] claims would also fall under an aiding-abetting theory," she specifically stated that Plaintiffs had not pleaded aiding-and-abetting claims.  (*Id.* at 49 n.42.)

Defendants filed objections to the R&R on August 31, 2018, in which they highlighted that "Plaintiffs and the R&R do not suggest that Plaintiffs' First or Second Claims for Relief allege the elements of secondary aiding[-]and[-]abetting liability."  (R&R Obj., Dkt. 174, at 6 n.4 (citing Omnibus Resp., Dkt. 125, at 32).)  Plaintiffs did not contest this in their response.  (*See generally* R&R Obj. Opp'n., Dkt. 183.)  Instead, Plaintiffs' post-R&R filings did not contest Defendants' characterization of their claims and identified Defendants' "aiding[-]and[-]abetting cases" as

---

[10] As Judge Pollak explained, "[i]n addition to defining who can be held liable under § 2333(d), Congress incorporated into JASTA an instruction that courts, when assessing secondary liability, should apply the test found in *Halberstam*."  (R&R, Dkt. 165, at 37 (first citing Pub. L. 114-222 § 2(a)(5), 130 Stat. at 852; and then citing *Linde*, 882 F.3d at 328).)

[11] The conduct proscribed by 18 U.S.C. §§ 2332d, 2339A, and 2339B are the material support statutes that serve as the predicates upon which a § 2333(a) conspiracy can be brought. § 2332d makes it illegal for any "United States person, knowing or having reasonable cause to know that a country is designated under section 6(j) of the Export Administration Act of 1979 . . . as a country sponsoring international terrorism," to "engage[] in a financial transaction with the government of that country[.]"  18 U.S.C. § 2332d.  § 2339A defines "material support" in aid of a violation of certain criminal statutes.  18 U.S.C. § 2339A.  § 2339B prohibits "knowingly provid[ing] material support or resources to [an FTO]," or attempting or conspiring to do so.  18 U.S.C. § 2339B.

"inapposite." (*Id.* at 26 n.15 (rejecting Defendants' reliance on *Owens v. BNP Paribas, S.A.*, 897 F.3d 266 (D.C. Cir. 2018), because "it is an aiding and abetting case").)[12] Plaintiffs also endorsed Judge Pollak's application of JASTA to their conspiracy claims. (*Id.* at 6 ("Judge Pollak recognized that the allegations of Plaintiffs' pre-JASTA Complaint plausibly supported 'not only' their claims for primary liability with the character of conspiracy, but also JASTA § 2333(d)(2) liability for conspiracy.").)

On October 30, 2018, while Defendants' objections to the R&R were pending, Plaintiffs requested leave from Judge Pollak to "join" over 400 new plaintiffs who had retained or were expected to retain Plaintiffs' counsel since the filing of the SAC and whose claims would soon be barred by the statute of limitations. (Joinder Mot., Dkt. 185, at 1.) Plaintiffs' counsel proposed joining these 400-plus plaintiffs via a third amended complaint ("TAC"), which would not add any new causes of action. (*Id.* at 2.) Defendants opposed the proposed addition of new plaintiffs, arguing that it would "more than doubl[e] the existing number[,] . . . [and] nearly doubles the number of attacks alleged, from 92 to 173." (Dkt. 201, at 2.) Ultimately, on December 11, 2018, Plaintiffs notified Judge Pollak that they had "decided to file a related case rather than to amend the current *Freeman* complaint," and the TAC was not filed. (Dkt. 202, at 1.)

**B. *Freeman II* and *Bowman***

On December 26, 2018, Plaintiffs filed a new action, *Freeman et al. v. HSBC Holdings PLC et al.*, No. 18-CV-7359 (PKC) (CLP) ("*Freeman II*"), on behalf of the additional plaintiffs proposed in *Freeman I*. On April 11, 2019, Plaintiffs' counsel filed an additional action in this district, *Bowman et al. v. HSBC Holdings PLC et al.*, No. 19-CV-2146 (PKC) (CLP) ("*Bowman*"),

---

[12] In a footnote to their discussion regarding their Seventh Claim, asserted only against SCB, Plaintiffs stated, "Claim VII is properly analyzed through the prism of aiding-and-abetting principles of proximate cause." (R&R Obj. Opp'n., Dkt. 183, at 44 n.25.) The Court discusses Plaintiffs' Seventh Claim *supra*.

7

against the same defendants, though on behalf of different plaintiffs. In addition to the claims asserted in *Freeman I*, both *Freeman II* and *Bowman* asserted conspiracy and aiding-and-abetting claims under JASTA. Compl., *Freeman II*, No. 18-CV-7359, Dkt. 1, at ¶ 3683–777; Compl, *Bowman*, No. 19-CV-2146, Dkt. 1, at ¶¶ 1291–385. *Bowman* was randomly assigned to the undersigned. *Bowman,* No. 19-CV-2146, 4/16/2019 Dkt. Order. Later, *Freeman I* and *Freeman II* were both reassigned to the undersigned as well. (5/8/2019 Dkt. Order); *Freeman II*, No. 18-CV-7359, 5/8/2019 Dkt. Order.

On May 30, 2019, the Court held a pre-motion conference to discuss the status of *Freeman I*, *Freeman II*, and *Bowman* with the parties, including the proposed motions to dismiss in *Freeman I*. (5/30/2019 Min. Entry.) During the conference, the Court noted "that [Plaintiffs] didn't amend in *Freeman I* to add the JASTA claim, but . . . everyone has treated the case as if it was amended to include that claim," concluding that amendment would be "somewhat of a formality at this point." Hr'g. Tr., *Freeman II*, No. 18-CV-7359, Dkt. 66, at 19:9–17. However, the Court also stated that while "everyone assumed that JASTA applies, even though there wasn't a formal JASTA claim" in the *Freeman I* complaint, the parties would "need to probably go through the formality of having [Plaintiffs] resubmit a complaint [under JASTA] if we get past the motion to dismiss phase so that it's clear exactly what the claims are going forward." *Id.* at 11:13–14; 19:25–20:3.

### C. The Dismissal and Reconsideration Motion in *Freeman I*

On September 16, 2019, the Court dismissed the SAC in its entirety. *Freeman I Dismissal*, 413 F. Supp. 3d 67. The Court declined to adopt Judge Pollak's recommendation to deny Defendants' motions to dismiss, instead finding that Plaintiffs had "failed to adequately allege the threshold requirements for both primary liability under § 2333(a) and secondary conspiracy liability under § 2333(d)(2)." *Id.* at 98–99. The Court analyzed Plaintiffs' conspiracy claims under

8

both primary liability (ATA) and secondary liability (JASTA), *see id.* at 81–82, 95, and construed Plaintiffs' primary liability claims as "assert[ing] that Defendants [had] violated 18 U.S.C. § 2339A and 18 U.S.C. § 2339B by conspiring to provide material support to Iran, despite knowing or being deliberately indifferent to the fact that Iran provides financial, material, and logistical support to terrorist organizations, including FTOs such as Hezbollah," *id.* at 84.

On September 26, 2019, Plaintiffs filed a motion for "partial reconsideration of the Court's dismissal of Plaintiffs' primary and secondary liability conspiracy claims against [Saderat], and dismissal of Plaintiffs' secondary liability aiding[-]and[-]abetting and conspiracy claims against [SCB]." (Mot. Recons. Mem., Dkt. 239-1, at 1.)  In their procedural overview, Plaintiffs noted that "because the amendment [i.e., the addition of § 2333(d)(2) under JASTA] occurred before briefing of Defendants' motions to dismiss was completed, . . . JASTA provided an alternative basis for recovery under the SAC." (*Id.* at 4 (citing Omnibus Resp., Dkt. 125, at 3[13]).)  Notably, Plaintiffs observed that "[w]hile this Court subsequently recognized that 'all of the claims' were also brought under JASTA, . . . its analysis . . . focused solely on § 2333(d)(2)'s conspiracy elements" and, "[b]ecause of the procedural history of this litigation," "did not directly address Defendants' alternative § 2333(d)(2) liability for aiding and abetting." (*Id.* at 11 n.6.)  On October 10, 2019, SCB responded that "Plaintiffs expressly disclaimed that they were making any

---

[13] The page Plaintiffs cite to in their Omnibus Response states, in relevant part: "Plaintiffs' First and Second Claims for Relief against all Defendants are predicated on the incorporated criminal *conspiracy* provisions of 18 U.S.C. § 2339A and § 2339B, (as well as [Pub. L. No. 114-222] § 4(a), adding § 2333(d) to the ATA)"; and "[u]nder both settled Second Circuit precedent and the legal framework Congress has expressly found applicable in [Pub. L. No. 114-222] § 2(a)(5), Defendants are liable for all of the foreseeable acts of the *conspiracy* they willingly joined." (Omnibus Resp., Dkt. 125, at 3 (emphases added).)

such [aiding-and-abetting] claim in an April 2019 submission to the Court (Dkt. No. 222[14]), and that Plaintiffs' effort to recast their failed conspiracy claim as an aiding[-]and[-]abetting claim improperly 'presents the case under a new theory.'" (Defs. Recons. Resp., Dkt. 242, at 3 (cleaned up and citations omitted).) On October 17, 2019, Plaintiffs replied, *inter alia*, that "[u]nlike the First and Second Claims, which expressly alleged conspiracy, the Seventh Claim alleged knowing, substantial assistance—i.e., aiding and abetting—as a primary liability claim." (Recons. Reply, Dkt. 243, at 7–8.) Further, Plaintiffs stated that their April 2019 submission to the Court, Dkt. 222, "never 'expressly disclaim[ed]' anything" but rather differentiated the aiding-and-abetting case law that Defendants had raised because some of the case law "involved claims predicated *solely* on aiding and abetting, whereas Plaintiffs' § 2333(d) claims 'here are premised on conspiracy.'" (*Id.* at 8 (citing Dkt. 222).)

On October 28, 2019, the Court held oral argument on Plaintiffs' motion for reconsideration. (10/28/2019 Min. Entry.) While Plaintiffs represented that the "key question" regarding Plaintiffs' motion for reconsideration was "whether the Court overlooked the

---

[14] Dkt. 222 is an April 24, 2019 letter from Plaintiffs that is part of a back-and-forth between the parties concerning supplemental authority. (*See, e.g.*, Dkt. 217 (Defendants' notice of supplemental authority); Dkt. 218 (Plaintiffs' first response); Dkt. 220 (Defendants' reply); Dkt. 222 (Pls.' second response).) On March 29, 2019, Defendants notified Judge Irizarry of a Southern District of New York decision granting dismissal of a complaint asserting claims "for primary liability and secondary liability under the ATA including JASTA," *O'Sullivan v. Deutsche Bank AG*, No. 17-CV-8709 (LTS) (GWG), (Dkt. 217, at 1), which is now reported at 2019 WL 1409446 (Mar. 28, 2019). In reply to Plaintiffs' arguments distinguishing *O'Sullivan*, Defendants claimed that Judge Irizarry had "rejected that very argument" when granting summary judgment to defendants in two decisions involving similar ATA and/or JASTA claims, *Weiss v. Nat'l Westminster Bank PLC*, No. 05-CV-4622 (DLI) (RML), 2019 WL 1441118 (E.D.N.Y. Mar. 31, 2019), and *Strauss v. Credit Lyonnais, S.A.*, No. 06-CV-0702 (DLI) (RML), 2019 WL 1492902 (E.D.N.Y. Mar. 31, 2019). (Dkt. 220, at 2.) In their April 24, 2019 letter, Plaintiffs' second response in this discussion, they disputed the applicability of *Weiss* and *Strauss*, arguing that both involved aiding-and-abetting claims and were therefore "largely irrelevant to the legal issues presented by *Freeman*," because "the claims here are premised on conspiracy." (Dkt. 222, at 1.)

significance of the [Islamic Revolutionary Guard Corps]'s designation as an FTO" and any potential impact of this on the Court's causation analysis, (10/28/2019 Hr'g Tr., Dkt. 248, at 10:21–25), Plaintiffs also represented that "the only other procedural issue" was that the Court's September 16, 2019 decision dismissing the SAC "did not directly address aiding[-]and[-]abetting claims under . . . JASTA." (*Id.* at 9:4–6.)  The Court responded:

> To the extent that I said at the first meeting with all the parties that I'm assuming that the claims are being construed under JASTA as well or broader under JASTA as well, I was not in any way endorsing the theory that you were alleging aiding and abetting along with conspiracy under JASTA.  In fact, I did not think that based on the letter that's been cited by SCB which was docketed as 222.  I read that letter, and I understand what you're saying about the second part of the letter, but the letter seemed to stake out the position at least to my mind that the plaintiffs were relying on the conspiracy theory both for purposes of primary liability under the ATA and then also under JASTA.  That certainly was the focus of the briefing thereafter.
>
> [ . . . ] [W]hen you said that the decisions cited by [D]efendants . . . had no legal relevance, one of your main points was that those cases talked about aiding[-]and[-]abetting liability and didn't talk about conspiracy.  So that, to me, signaled the fact that your claims were about conspiracy, even though you suggested later that even if one considered them for purposes of their aiding and abetting relevance, they didn't preclude your claims.
>
> Nowhere in any of your submissions have you actually used the words, [w]e are alleging aiding[-]and[-]abetting liability under JASTA, and even in your briefing now, you simply say that one of the elements is met, namely, a general awareness of the terrorist activities of some of these entities that they provided banking services for, but I just think the way you proceeded is not exactly or I find it a little disingenuous, to be perfectly frank, because you never declared in this case that you were advancing an aiding[-]and[-]abetting theory.
>
> There's been so much briefing for the last year and a half or two years, that it seemed to me at some point, post JASTA, and I realize the briefing started before JASTA, that in these many submissions that I've received, that you would have clarified that you were actually claiming aiding[-]and[-]abetting liability [to me or] to . . . Chief Judge Irizarry who had the case before me. I think the defense has a theory as to why you didn't do that, because of some of the decisions Judge Irizarry wrote, but nonetheless, I wanted to be clear that I didn't actually believe or interpret your [claims alleged] aiding[-]and[-]abetting liability under JASTA even after the statute was passed.

(*Id.* at 44:18–46:14.)  Plaintiffs countered that their Sixth Claim, against Commerzbank, and Seventh Claim, against SCB, "were what [they] would call aiding[-]and[-]abetting claims," in comparison to the other claims, which "focused on conspiracy" and "[were] always the focus of the parties' exchanges." [15]  (*Id.* at 57:24–58:9, 58:6–9.)  Ultimately, the Court "still consider[ed] [Plaintiffs'] arguments . . . under a theory of aiding[-]and[-]abetting liability," (*id.* at 46:16–17), and noted that it would not "preclude [P]laintiffs from amending [to include this theory], if we get to that point," (*id.* at 45:6–9).  Having found that it had "considered both the facts and the law that the [P]laintiffs are relying on for reconsideration" and that Plaintiffs had failed to show the requisite "extraordinary circumstances" required to overcome the strict standard applicable, the Court denied Plaintiffs' motion for reconsideration.  (*Id.* at 60:16–61:16.)

### D.    Potential Consolidation of *Freeman I* and *II* and *Bowman* for Appeal

During the October 28, 2019 oral argument on Plaintiff's motion for reconsideration, the parties also discussed consolidating *Freeman I*, *Freeman II*, and *Bowman* in order to facilitate one Notice of Appeal.  (*See id.* at 62–63.)  Plaintiffs argued that "it might make sense to write a consolidated complaint" that included the JASTA claims "elucidate[d]" by the *Freeman II* and *Bowman* complaints.  (*See id.* at 63:11–21.)  The Court agreed that "that is certainly an option" and that "if [Plaintiffs] wanted to do that and the defense could go through the motions, so to speak, of moving to dismiss, [the Court] could issue a ruling."  (*Id.* at 63:22–64:3.)  However, the Court noted that an agreement, rather than a consolidated amendment, "probably [made] more sense in terms of conserving . . . resources."  (*Id.* at 64:3–7.)  "[I]f it happens that my decision is reversed in whole or in part, then you can file an Amended Complaint at that time."  (*Id.* at 64:4–6.)  The

---

[15] Plaintiffs' Sixth Claim for relief asserted civil liability against Commerzbank under § 2333(a) for violations of 18 U.S.C. § 2339B; Plaintiffs' Seventh Claim for relief asserted civil liability against SCB bank under § 2333(a) for violations of 18 U.S.C. § 2339A.  (SAC, Dkt. 115, at 332, 334.)

parties agreed that they would confer and provide the Court with a joint proposal within 30 days, or by November 27, 2019.  (*Id.* at 64–65.)

### E.    Plaintiffs' Notice of Appeal[16] in *Freeman I*

The Court then tolled the deadline for Plaintiffs to notice their appeal until November 27, 2019.  (10/28/2019 Min. Entry.)  However, on November 4, 2019, the Second Circuit issued a summary order in *Ren Yuan Deng v. New York State Office of Mental Health*, 783 F. App'x 72 (2d Cir. 2019) (summary order), limiting the Court's authority to toll or extend the period for parties to notice their appeal.  On November 25, 2019, the Court notified the parties of the *Deng* decision and directed them to indicate how they wished to proceed with respect to all three cases.  (11/25/2019 Dkt. Order.)  The next day, November 26, 2019, before responding to the Court's November 25, 2019 docket order[17], Plaintiffs noticed their appeal in *Freeman I*. (Notice of Appeal, Dkt. 246.)  Further, despite conferring, the parties were "unable to agree on the form of the stipulated dismissal" of the aiding[-]and[-]abetting claims in *Freeman II* and *Bowman*, because Plaintiffs "declined to agree to [Defendants'] proposed stipulation and dismissal order" that "would make express the reasons for dismissing aiding[-]and[-]abetting claims in those cases," given that these claims had not been previously raised nor disposed of in the *Freeman I Dismissal*. (11/27/2019 Joint Letter, Dkt. 247, at 3.)[18]

---

[16] Plaintiffs appealed both the *Freeman I Dismissal* and the Court's denial of their motion for reconsideration.  (*See* Notice of Appeal, Dkt. 246.)

[17] The parties' joint response to the Court's November 25, 2019 docket order was filed on November 27, 2019.

[18] In support of their argument that the *Freeman I* Plaintiffs had "chose[n] to pursue only a conspiracy theory of liability," Defendants cited numerous instances where Plaintiffs had "made this clear": Dkt. 117 at 31–32 (applying discussion of JASTA to "Plaintiffs' conspiracy claims," with no mention of aiding-and-abetting claims); Dkt. 183 at 6–7 (arguing Plaintiffs' complaint supports JASTA "liability for conspiracy," with no mention of aiding and abetting); Dkt. 218 at 2– 4 (arguing *O'Sullivan*, 2019 WL 1409446, did not apply the proper framework to "§ 2333(d)

**F.    Dismissal of *Freeman II* and *Bowman***

*Freeman II* and *Bowman* initially proceeded without consolidation.  On December 2, 2019, the Court granted the *Freeman II* plaintiffs leave to amend their complaint, *Freeman II*, No. 18-CV-7359, 12/2/2019 Dkt. Order, and did the same for the *Bowman* plaintiffs on December 18, 2019, *Bowman*, No. 19-CV-2146, 12/18/2019 Dkt. Order.   The *Freeman II* plaintiffs filed their First Amended Complaint on December 16, 2019, *Freeman II*, No. 18-CV-7359, Dkt. 72, and the *Bowman* plaintiffs did the same on December 20, 2019, *Bowman*, No 19-CV-2146, Dkt. 21.  On January 6, 2020, Defendants moved to dismiss both cases. *Freeman II*, No. 18-CV-7359, Dkt. 75; *Bowman*, No 19-CV-2146, Dkt. 34.  On June 5, 2020, the Court dismissed both cases.  *Freeman v. HSBC Holdings PLC* ("*Freeman II Dismissal*"), 465 F. Supp. 3d 220 (E.D.N.Y. 2020).   Given the *Freeman I Dismissal*, which discussed Plaintiffs' conspiracy theories at length, the Court focused exclusively on the aiding-and-abetting theories in the *Freeman II Dismissal*.  *Id.* at 225–26.

The Court consolidated *Freeman II* and *Bowman* into *Freeman II* on July 13, 2023. *Freeman II*, No. 18-CV-7359, 7/13/2023 Dkt. Order.  On December 27, 2023, and March 28, 2025, the *Freeman II* plaintiffs filed, respectively, a Second Amended Complaint and a Third Amended Complaint, *Freeman II*, No. 18-CV-7359, Dkts. 117, 137.  Defendants filed a motion to dismiss the Third Amended Complaint in *Freeman II* on July 16, 2025.  *Freeman II*, No. 18-CV-7359, Dkt. 143.  That motion is currently pending.

---

Conspiracy Claims," with no mention of aiding and abetting); Dkt. 222 at 2 (attempting to distinguish *Weiss* and *Strauss* from *Freeman I* because "[f]irst, the claims here are premised on conspiracy" and not aiding and abetting); and Dkt. 235 at 3–4 (attempting to distinguish *Siegel*, 933 F.3d 217, based on argument that *Freeman I* claims are "predicated on conspiracy" rather than aiding and abetting).  (11/27/2019 Joint Letter, Dkt. 247, at 3 n.3.)

### G.    Affirmance of *Freeman I* Dismissal

On January 5, 2023, the Second Circuit upheld the *Freeman I Dismissal*, albeit on different grounds, and found that Plaintiffs had forfeited their aiding-and-abetting claims.  *See Freeman Appeal*, 57 F.4th at 72.  As discussed in more detail, *supra*, the Circuit "agree[d] with the district court that Plaintiffs forfeited their JASTA aiding-and-abetting claims by raising them for the first time in a motion for reconsideration." *Id.*  The Circuit found that "Plaintiffs never asserted JASTA aiding-and-abetting liability in their opposition to the Banks'[19] motion to dismiss or in their response to the Banks' objections to [Judge Pollak's R&R], despite ample opportunity to do so." *Id.* at 83.  Rejecting Plaintiffs' argument that the SAC could be sustained on "any legal theory that its allegations, fairly construed, support," *id.*, the Circuit noted that "the [SAC] does not merely articulate an imperfect statement of the legal theory supporting the claim asserted; it asserts only a conspiracy theory, with no reference to aiding and abetting whatsoever.  Plaintiffs' subsequent briefs before the district court do the same." *Id.* (internal quotations and citations omitted).  Ultimately, it held that "Plaintiffs have not articulated any excuse that would warrant the exercise of" the discretion courts have "to consider untimely arguments such as Plaintiffs' aiding-and-abetting claims." *Id.* at 83.

### H.    Plaintiffs' Motion to Vacate

Following the issuance of the Second Circuit's mandate affirming the *Freeman I Dismissal*, Plaintiffs served their motion to vacate the *Freeman I Dismissal* on February 26, 2024, seeking to have the Court reconsider that dismissal and reopen this case so that Plaintiffs can file a Third Amended Complaint alleging aiding-and-abetting claims under JASTA against Defendants. (Dkt. 275.)  Plaintiffs' motion was fully briefed on May 21, 2024.  (Pl. Mot. to Vacate, Dkt. 277.)

---

[19] The "Banks" include all Defendants and Saderat.  *See Freeman Appeal*, 57 F.4th at 72.

On October 9, 2024, the Court "defer[red] resolution of" the motion to vacate "until after the Supreme Court issues its decision in" *BLOM Bank SAL v. Honickman*, 6 F.4th 487 (2d. Cir. 2024), to which the Supreme Court had just granted a writ of certiorari, "because that decision will address the appropriate standard the Court should apply in resolving the [m]otion to [v]acate." (10/9/2024 Dkt. Order.)  The Supreme Court issued its ruling in *BLOM* on June 5, 2025, *see BLOM*, 605 U.S. ---, 145 S. Ct. 1612, 1619 (2025), and the *Freeman I* parties submitted supplemental letters regarding the same on June 10, 2025, (Defs.' 6/10/2025 Letter, Dkt. 281), and June 18, 2025, (Pls.' 6/18/2025 Letter, Dkt. 282).

## LEGAL STANDARD

Motions to vacate are assessed pursuant to Federal Rule of Civil Procedure ("Rule") 60(b).[20]  "Rule 60(b) allows a party to seek relief from final judgment and reopen a case based on mistake or excusable neglect, newly discovered evidence, fraud, or the void or prospectively inequitable status of a judgment."  *BLOM*, 145 S. Ct. 1619 (2025) (citing Fed. R.

---

[20] At the time the parties briefed Plaintiffs' motion, Rule 60(b) motions in this Circuit were assessed pursuant to *Foman v. Davis*, 371 U.S. 178, 180–82 (1962) (applying Rule 59(e) standard to plaintiff's Rule 60(b) motion and noting that, where a plaintiff merely seeks to "state an alternative theory for recovery" in the proposed amended complaint, leave to amend should be "freely given" "[i]n the absence of any apparent or declared reason" including, *inter alia*, undue delay or bad faith), and *Williams v. Citigroup Inc.*, 659 F.3d 208, 213 (2d Cir. 2011) ("[P]ostjudgment motions for leave to replead must be evaluated with due regard to both the value of finality and the policies embodied in Rule 15," which governs leave to amend).  (*See generally* Mem., Dkt. 277-1.)  But in *BLOM*, the Supreme Court explicitly rejected the Second Circuit's *Foman*/*Williams* approach to Rule 60(b) motions to vacate, finding that "[t]he Second Circuit's 'balancing' approach . . . dilutes Rule 60(b)(6)'s well-established standard."  145 S. Ct. at 1619; *see also id.* at 1622 ("Balancing the strict standards of Rule 60(b)(6) against the more relaxed standards of Rule 15 necessarily weakens the former, and is thus incompatible with [the Supreme Court's] long line of precedents holding that Rule 60(b)(6) 'should only be applied in "extraordinary circumstances."'" (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)).  Indeed, the Supreme Court found that *Foman* is entirely inapposite to motions to vacate pursuant to Rule 60(b) because it "dealt with Rule 59(e), not Rule 60(b)," and "Rule 59(e) does not threaten the finality of judgments to the same degree that Rule 60(b)(6) does." *BLOM*, 1435 S. Ct. at 1622.

Civ. P. 60(b)(1)–(5)).   "Rule 60(b) also includes a 'catchall' provision—Rule 60(b)(6)—that allows a district court to reopen a case for 'any other reason that justifies relief.'"   *Id.* (quoting *Kemp v. United States*, 596 U.S. 528, 533 (2022)).   But because "a Rule 60(b) motion 'threaten[s] an already final judgment with successive litigation'" years after it is entered, *id.* at 1622 (alterations in original), "[r]elief under Rule 60(b)(6) requires extraordinary circumstances," *id.* at 1619.   "This very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved."   *Id.* at 1620 (quoting *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005)).   Rule 60(b)'s "standard does not become less demanding when a Rule 60(b)(6) movant also hopes to amend [their] complaint."   *Id.* at 1619.   "Rather, a party seeking to reopen [their] case and replead must first satisfy Rule 60(b) on its own terms and obtain Rule 60(b) relief before Rule 15(a)'s liberal amendment standard can apply."   *Id.*   A district court enjoys wide discretion in resolving a motion under Rule 60(b).   *Id.* at 1622 ("[A] district court's decision need only 'appl[y] the correct legal standard and offe[r] substantial justification' for its conclusion." (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990))).

"Extraordinary circumstances" are strictly interpreted.   *Pastor v. P'ship for Children's Rts.*, 856 F. App'x 343, 344–45 (2d Cir. 2021) (summary order) ("Rule 60(b)(6) is . . . properly invoked only when there are extraordinary circumstances justifying relief . . . and when the judgment may work an extreme and undue hardship." (quoting *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020))); *see, e.g.*, *Buck v. Davis*, 580 U.S. 100, 120–26 (2017) (death penalty sentence after medical expert improperly offered race-based testimony constituted extraordinary circumstances).   The Supreme Court first recognized "extraordinary circumstances" in *Klapprott v. United States*, 335 U.S. 601 (1949), when the petitioner, seeking to set aside a default judgment entered in denaturalization proceedings, was "in jail . . ., weakened from illness,

without a lawyer . . . or funds to hire one," "disturbed and fully occupied in efforts to protect himself against the gravest criminal charges" in separate proceedings, and "no more able to defend himself " in the proceedings he sought to vacate "than he would have been had he never received notice of the charges."  335 U.S. at 613–14.  By contrast, a year later, the Supreme Court found no such "extraordinary circumstances" in *Ackermann v. United States*, 340 U.S. 193 (1950), where the petitioner, also facing an adverse denaturalization judgment, declined to appeal and only sought *vacatur* four years later, arguing that his delay was due to expense and the advice of his attorney and a third party.  340 U.S. at 196–97.  Ultimately, "extraordinary circumstances" lie in "the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence."  *Id.* at 202 (discussing *Klapprott*, 335 U.S. 601).

## DISCUSSION

### I.     Plaintiffs Cannot Claim "Extraordinary Circumstances" Where Plaintiffs Created Those Circumstances

Plaintiffs' failure to amend the complaint to add aiding-and-abetting claims over the lengthy course of this case was a problem of their own making.  As is clear from the procedural history, *see supra*, which the Court pointedly summarizes below, and as the Circuit *has already found*, over the 18-month period that began in July 2018, Plaintiffs had "ample opportunity" to amend their SAC to add the aiding-and-abetting claims they now seek to bring, *Freeman Appeal*, 57 F.4th at 83, and throughout this period, Plaintiffs also had every reason to believe that they should do so in order to preserve those claims.

18

Chronology

7/27/2018:    R&R: Judge Pollak issues her R&R in *Freeman I*, expressly noting that Plaintiffs *have not* pleaded aiding-and-abetting claims.   (R&R, Dkt. 165, at 49 n.42.) Plaintiffs do not seek to amend to add aiding-and-abetting claims.

8/31/2018:    Defendants' Objections: Defendants file objections to the R&R.   (R&R Obj., Dkt. 174.)  Plaintiffs do not seek to amend in their October 5, 2018 opposition to Defendants' objections.  (R&R Obj. Opp., Dkt. 183.)

10/30/2018:   Plaintiffs' Proposed TAC: Plaintiffs seek leave to file TAC in *Freeman I* only to add 450 new plaintiffs, *but do not seek to add any new claims, i.e., aiding-and-abetting claims.*  (Joinder Mot., Dkt. 185.)

12/11/2018:   Plaintiffs' Withdrawal of TAC: Plaintiffs advise Judge Pollak that they will not file a TAC in *Freeman I* but will instead initiate a "related case" on behalf of the 450 new plaintiffs.  (Dkt. 202, at 1.)

12/26/2018 &  Initiation of *Freeman II* and *Bowman*: Plaintiffs file *Freeman II* and *Bowman*, *both*
4/11/2019     *of which contain aiding-and-abetting claims*.   Compl., *Freeman II*, No. 18-CV-7359, Dkt. 1, at ¶ 3710–77; Compl., *Bowman*, No. 19-CV-2146, Dkt. 1, at ¶¶ 1318–85.  Plaintiffs still do not seek to add aiding-and-abetting claims to *Freeman I.*

5/30/2019:    Conference Regarding the Three Cases: The Court states at a pre-motion conference in *Freeman II* that the *Freeman I* Plaintiffs would "need to probably go through the formality" of filing a complaint under JASTA "if we get past the motion to dismiss phase so that it's clear exactly what the claims are going forward."  Hr'g. Tr., *Freeman II*, No. 18-CV-7359, Dkt. 66, at 19:9–20:3.  Plaintiffs do not seek to amend.

9/16/2019:    Dismissal of *Freeman I*: The Court dismisses *Freeman I* in its entirety.  (Dismissal, Dkt. 237); *Freeman I Dismissal*, 413 F. Supp. 3d 67.

9/26/2019:    Plaintiffs' Reconsideration Motion of *Freeman I Dismissal*: Plaintiffs move for partial reconsideration of *Freeman I Dismissal*.  (Mot. Recons. Mem., Dkt. 239-1, at 1.)  Plaintiffs do not move to amend.

10/17/2019:   Plaintiffs' Response to SCB's Opposition to Reconsideration: In reply to SCB's opposition to Plaintiffs' partial reconsideration motion, Plaintiffs effectively acknowledge that they have not alleged aiding-and-abetting claims against any Defendant except SCB.[21]  (Recons. Reply, Dkt. 243, at 7–8.)

_____

[21]  In this reply, Plaintiffs stated that the SAC's "Seventh Claim alleged knowing, substantial assistance—i.e., aiding and abetting—as a primary liability claim."  (Recons. Reply,

10/28/2019:    <u>Oral Argument on Plaintiffs' Reconsideration Motion</u>: The Court emphatically states at the oral argument on Plaintiff's reconsideration motion that Plaintiffs have *never* alleged aiding-and-abetting liability in *Freeman I*. (10/28/2019 Hr'g Tr., Dkt. 248, at 44:18–46:14.) Plaintiffs argue only that they have effectively alleged aiding and abetting as to Defendants SCB and Commerzbank.[22] (*Id.* at 57:24–58:8.) The Court says it will consider Plaintiffs' reconsideration "argument . . . under a theory of aiding and abetting liability." (*Id.*) The Court denies reconsideration. (*Id.* at 60–61.)

10/28–     <u>Parties' Stipulation Negotiations</u>: The parties unsuccessfully attempt to negotiate a
11/25/2019:   stipulation that would add aiding-and-abetting claims to *Freeman I* and consolidate *Freeman I* and *II* and *Bowman* for appeal. (*See* 11/27/2019 Joint Letter, Dkt. 247.) Plaintiffs do not seek to amend complaint in *Freeman I* to add aiding-and-abetting claims.

11/27/2019:    <u>Plaintiffs' Appeal in *Freeman I*</u>: Plaintiffs notice their appeal of the *Freeman I Dismissal* and the denial of their reconsideration motion. (Notice of Appeal, Dkt. 246.)

Plaintiffs argue that the extraordinary circumstance[23] that justifies reconsideration and the

reopening of this case under Rule 60(b)(6) is its "unique" procedural history, particularly the

Court's purported failure to "facilitate the prompt dismissal of the *Freeman II* and *Bowman*

complaints" following the failed consolidation of *Freeman I* and *II* and *Bowman*, (Mot. to Vacate

Mem. ("Mem."), Dkt. 277-1, at 24), which, according to Plaintiffs, caused them to not have "had

the opportunity to amend' [the SAC] that [they] *reasonably understood the Court to provide*,"

---

Dkt. 243, at 7–8.) The Seventh Claim in the SAC is brought only against Defendant SCB. (SAC, Dkt. 115, ¶¶ 2274–93.)

[22] Here, Plaintiffs claimed that the SAC's Sixth Claim, brought only against Commerzbank, was also an aiding-and-abetting claim. (10/28/2019 Hr'g Tr., Dkt. 248, at 57:24–58:5; SAC, Dkt. 115, ¶¶ 2264–73.)

[23] As previously noted, the parties briefed Plaintiffs' motion before *BLOM*. Thus, Plaintiffs originally argued that their motion to vacate meets both the exceptional circumstances requirement of Rule 60(b) *and* the standard set by *Foman/Williams*. (Mem., Dkt. 277-1, at 18.) Their latest briefing, post-*BLOM*, asserts that *BLOM* "does not, in any way, alter the proper disposition of Plaintiffs' [motion]" "[b]ecause of the extraordinary circumstances justifying vacatur here." (Pls.' 6/18/2025 Letter, Dkt. 282, at 1.)

(Pls.' 6/18/2025 Letter, Dkt. 282, at 1 (emphasis in original)).[24]  Plaintiffs claim that this "derailed amendment process" prevented them from pursuing their aiding-and-abetting claims after the *Freeman I Dismissal*.  (Mem., Dkt. 277-1, at 24.)[25]  Plaintiffs thus narrowly focus their argument on the one month before they noticed their appeal and, in essence, seek to shift blame onto the Court for their failure to seek amendment of the SAC at that time, despite—or perhaps because of—the clear record demonstrating that Plaintiffs had both opportunity and reason to amend the SAC to add aiding-and-abetting claims.

At its core, Plaintiffs' argument, though not clearly stated, is that it is irrelevant that Plaintiffs had both the opportunity and reason to amend their complaint *before* October 28, 2019, when Plaintiffs argued, and the Court denied, their motion for reconsideration, because they still could have done so between October 28 and November 26, 2019, when Plaintiffs noticed their appeal, but were effectively *prevented* from doing so by the Court.  (*See* Reply, Dkt. 279, at 6

---

[24] This argument contradicts Plaintiffs' pre-appeal arguments to the Court that they had actually asserted aiding-and-abetting claims in *Freeman I*.  But, as noted *supra*, Plaintiffs implicitly contradicted those arguments at various times during the 18-month period leading up to their appeal.

[25] Plaintiffs further claim that they had "not initially raised the amendment issue on appeal" and therefore, this amendment issue is not foreclosed by the *Freeman Appeal*.  (Mem., Dkt. 277-1, at 24.)  The Court disagrees.  First, as noted, the Circuit has already found that Plaintiffs had "ample opportunity" to amend, regardless of whether Plaintiffs squarely raised the issue or not. *Freeman Appeal*, 57 F.4th at 83.  Second, the Circuit specifically reviewed the October 2019 amendment discussion between the Court and Plaintiffs on which Plaintiffs attempt to hang their current argument, regardless of whether the Circuit's review was framed in the way Plaintiffs now wish.  *See id.* (discussing "statements made by the district court during [the October 2019] hearing").  Finally, the Court notes that Plaintiffs did not raise the amendment issue on appeal because Plaintiffs chose instead—and ill-fatedly—to argue that the aiding-and-abetting claims were present in their SAC (and therefore amendment was not needed).  Plaintiffs' regret regarding what they raised—and how they raised it—to the Circuit does not change the fact that the record on which Plaintiffs bring their current motion was squarely in front of the Circuit during the *Freeman Appeal*.  Plaintiffs are now stuck with the ramifications of the strategic decisions they made in pursuing the *Freeman Appeal*.

(noting that Plaintiffs' "request to 'write a consolidated complaint' was effectively, if unintentionally, denied.")[26].)  Plaintiffs argue that they believed, based on the Court's statements at the October 28, 2019 argument, that they would have the opportunity to add aiding-and-abetting claims after the appeal regardless of its outcome and that their procedural predicament was foisted upon them by the Court.  (*See id.* at 4–5 (noting Plaintiffs "raised" the Court's "apparent agreement not to 'preclude [P]laintiffs from amending . . . their complaint with respect to aiding[-]and[-]abetting liability under JASTA' from the October 28, 2019, conference" during a June 27, 2023 conference).)  This Hail Mary attempt to re-write history, however, is unavailing.

### A.    Purported Lack of Necessity or Futility of Pre-Appeal Amendment

At the October 28, 2019 oral argument on Plaintiffs' reconsideration motion, the Court unequivocally stated that the aiding-and-abetting claims had not been brought in *Freeman I* despite the case's extensive briefing.  (10/28/2019 Hr'g Tr., Dkt. 248, at 44:18–46:17.)  While effectively conceding that those claims had not been brought against the majority of the Defendants, Plaintiffs' counsel still insisted that they had stated aiding-and-abetting claims against SCB and Commerzbank.  (*Id.* at 57:24–58:5.)  Without specifically referring to SCB and Commerzbank, the Court indicated that it considered aiding-and-abetting liability under JASTA in denying reconsideration of its *Freeman I Dismissal*.  (*See* 10/28/2019 Hr'g Tr., Dkt. 248, at 61:5–20.)

The Court also noted at the oral argument, and after denying reconsideration, that "*if it happens that my decision is reversed in whole or in part, then you can file an Amended Complaint*

---

[26] The Court assumes Plaintiffs here refer to the October 28, 2019 oral argument discussion where they state, "it might make sense to write a consolidated complaint that allows Your Honor then to issue an order as to that."  (10/28/2019 Hr'g Tr., Dkt. 248, at 63:17–19.)  What Plaintiffs conveniently omit is this Court's response: "that is certainly an option." (*Id.* at 63:22.)  The Court then presented the alternative option of "com[ing] up with some [stipulated dismissal] agreement . . . [which] probably makes more sense in terms of conserving [the parties'] resources." (*Id.* 64:4–7.)  Plaintiffs chose to pursue—but failed to effectuate, as discussed *supra*—the alternative option.

*at that time*." (*Id.* at 64:4–6 (emphasis added).)  This is the statement that Plaintiffs construe as the Court's invitation to amend, which they claim they accepted and now seek to avail themselves of.  (Pls.' 6/18/2025 Letter, Dkt. 282, at 2.)  However, Plaintiffs fail to include the fact that this "invitation" was conditioned upon the Circuit *reversing* the Court's denial of reconsideration, which did not happen.  (*See* 10/28/2019 Hr'g Tr., Dkt. 248, at 64:4–6.)  Because the Court had clearly stated that the aiding-and-abetting claims had not been brought in *Freeman I*—statements that the Second Circuit relied upon and quoted at length during the appeal, *Freeman Appeal*, 57 F.4th at 83 (citations omitted)—and because the Court entertained the idea of amendment to include these claims *post*-appeal, Plaintiffs had clear notice that the aiding-and-abetting claims would not be included in the appeal.  Plaintiffs were also on notice that they would only be able to add the aiding-and-abetting claims *post*-appeal if they were successful on appeal.  Correspondingly, if Plaintiffs wanted to ensure that these claims were preserved, they would have had to add them *before* noticing their appeal—something that Plaintiffs clearly understood based on what transpired after the October 28, 2019 oral argument, as discussed *infra* at Discussion § I.B.

Plaintiffs also argue that they did not raise the possibility of amendment after the October 28, 2019 oral argument because they believed that seeking leave to add these claims would have been "futile," as they believed that the Court had already dismissed them.  (Mem., Dkt. 277-1, at 9 ("Having found Plaintiffs' aiding[-]and[-]abetting claims insufficient as a matter of law, amending *Freeman I* to explicitly include them would have been . . . futile," and so "Plaintiffs would have to first appeal the Court's ruling to the Second Circuit").)  The Court finds this argument without merit and disingenuous for several reasons.  First, it contradicts and defeats Plaintiffs' other argument that they believed that the Court had "invited" them to seek to amend to add the aiding-and-abetting claims, regardless of the outcome of the appeal.  Second, this purported

belief that the Court had already decided their aiding-and-abetting claims was contradicted by the Court's "emphatic" statements at the oral argument, set forth earlier, about Plaintiffs never having pleaded aiding-and-abetting claims in *Freeman I* and Plaintiffs' implicit concession that, at most, they had brought aiding-and-abetting claims against only SCB and Commerzbank. *See supra* at 19–20; *Freeman Appeal*, 57 F.4th at 83. This would mean that the Court's purported dismissal of aiding-and-abetting claims would only apply to those two Defendants. Third and relatedly, even though the Court stated at the oral argument that it "still consider[ed] [Plaintiffs'] argument . . . under a theory of aiding[-]and[-]abetting liability," (10/28/2019 Hr'g Tr., Dkt. 248, at 46:16–17), this did not provide a sufficient basis for Plaintiffs to conclude that the Court had decided that any and all aiding-and-abetting claims would be dismissed, particularly when the Court expressly stated that it would not "preclude [P]laintiffs from amending [to include an aiding-and-abetting theory], if we get to that point," (*id.* at 45:6–7). Fourth, to the extent Plaintiffs actually believed that the Court had already ruled on and dismissed their aiding-and-abetting claims, they could have chosen to agree to the stipulation proposed by Defendants, as discussed *infra* at Discussion § I.B, which would have preserved those claims for appeal and possible reinstatement post-appeal. Instead, Plaintiffs took a calculated risk by trying to convince the Circuit that the aiding-and-abetting claims had been pleaded all along and that the Court had erroneously dismissed them—and/or by counting on the *Freeman II* and *Bowman* motions to dismiss to be resolved in time for the three cases to be joined on appeal—thereby foregoing the opportunity to ensure the inclusion of aiding-and-abetting claims in the case by way of stipulation. That was a strategic choice, and one that backfired on Plaintiffs.

Thus, whether due to a purported "understanding with the Court," (Reply, Dkt. 279, at 8), or a "reasonable misunderstanding between Plaintiffs and the Court," (Mem., Dkt. 277-1, at 1),

the fact remains that Plaintiffs made a decision after the October 28, 2019 oral argument not to seek amendment of the SAC, despite knowing that the aiding-and-abetting claims were not in *Freeman I*. Any attempt to frame this decision as the Court's denial of an amendment request or "derailment of the amendment process," (Mem., Dkt. 277-1, at 24), is unsupported by the record.

### B. Plaintiffs' Refusal to Stipulate to Dismissal of Any Aiding-And-Abetting Claims to Facilitate *Freeman II* and *Bowman* Consolidation for Appeal

Finally, to the extent any doubt remains regarding Plaintiffs' role in creating these "unique" circumstances, this is put to rest by the consolidation negotiations between the parties that followed the October 28, 2019 oral argument. During the oral argument, the Court advised the parties that, if they could "come to some agreement about a stipulated dismissal . . . solely for purposes of allowing all three cases to go before the Circuit at the same time, [the Court] would certainly do that." (10/28/2019 Hr'g Tr., Dkt. 248, at 62:20–23.) While the Court provided Plaintiffs with guidance "in terms of conserving . . . resources," (*id.* at 64:6–7), the Court left it to the parties to decide on the next steps. The Court also tolled the time for Plaintiffs to notice their appeal to November 27, 2019, to facilitate this negotiation. (10/28/2019 Min. Entry.)[27]

But the parties failed to reach agreement. In a letter jointly submitted to the Court on November 27, 2019, Defendants described the impasse thus:

> Unlike the *Freeman I* action, the complaints in *Bowman* and *Freeman II* both expressly plead aiding[-]and[-]abetting claims against all Defendants. Defendants agree with Plaintiffs that this Court's reasoning in the September 16 Order and this Court's denial of reconsideration in *Freeman I* should lead to dismissal of all claims in *Freeman II* and *Bowman* for failure to state a claim and, in addition, with respect to Count 6 of the *Freeman II* Amended Complaint and *Bowman* Complaint, for lack of personal jurisdiction. *However, because aiding*[-]*and*[-]*abetting claims were*

---

[27] As explained *supra*, *Deng* foreclosed the Court's ability to toll the time for the *Freeman I* parties to notice their appeal. *See Deng*, 783 F. App'x at 72–73 (noting that, except for motions specified in Fed. R. App. P. 4(a)(5) and (6), "a notice of appeal 'must be filed with the district clerk within 30 days after entry of the judgment or order appealed from'" (citing Fed. R. App. P. 4(a)(1)(A)).

> *never properly asserted in Freeman I and thus not addressed in the Court's September 16 Order, Defendants proposed to Plaintiffs a form of stipulation and dismissal order for Freeman II and Bowman that would make express the reasons for dismissing aiding[-]and[-]abetting claims in those cases.* Specifically, and as set forth in [SCB's] opposition to the *Freeman I* [P]laintiffs' motion for reconsideration, Plaintiffs' aiding[-]and[-]abetting claims fail to state any claim for relief under *Linde v. Arab Bank*, 882 F.3d 314, 329–31 (2d Cir. 2018) and *Siegel v. HSBC N. Am Holdings, Inc.*, 933 F.3d 217, 224–25 (2d Cir. 2019)[.] . . . Plaintiffs declined to agree to the proposed stipulation and dismissal order.

(11/27/2019 Joint Letter, Dkt. 247, at 3 (emphasis added) (record citations omitted).)  In effect, despite now claiming to have believed that the Court had dismissed Plaintiffs' aiding-and-abetting claims from the bench such that seeking leave to add these would have been "futile," Plaintiffs refused to stipulate to that very fact—a refusal that cost them the consolidated appeal they sought.

Plaintiffs now argue, in effect, that the Court is to blame for the "procedural quagmire that left the *Freeman I* [P]laintiffs without the aiding[-]and[-]abetting claims they understood they could argue on appeal."  (Mem., Dkt. 277-1, at 15; *see also id.* at 3, 14 (arguing that despite "[Plaintiffs] urg[ing] the Court on multiple occasions to dismiss *Freeman II* and *Bowman* quickly so that the Circuit could still consolidate the three cases into 'one' appeal," the Court failed to act with the alacrity Plaintiffs wanted, and "did not rule on the motion to dismiss until June 5, 2020," which "created yet another [un]usual procedural dilemma" for Plaintiffs).)  This argument is entirely misplaced.  It is true that, had the Court ruled on the *Freeman II* and *Bowman* motions to dismiss on *Plaintiffs' desired timeline*, the three cases theoretically *could have* been consolidated for appeal.  But that would not have solved the fundamental problem Plaintiffs faced in *Freeman I* with respect to any aiding-and-abetting theory of liability.  There is no reason to believe that the Circuit would have found differently than it did in the *Freeman Appeal*, namely, that there were no aiding-and-abetting claims in *Freeman I*.  So, a ruling on those claims in *Freeman II* and *Bowman* would not have altered the result on appeal for the *Freeman I* Plaintiffs.  Furthermore,

the Court has no obligation to comply with a litigant's desired schedule, and the timing of the Court's decisions in related cases that Plaintiffs' counsel *chose* to bring does not constitute "extraordinary circumstances." *See Andrulonis v. United States*, 26 F.3d 1224, 1235 (2d Cir. 1994) ("[W]hen a party makes a deliberate, strategic choice . . ., [it] cannot be relieved of such a choice merely because [its] assessment of the consequences was incorrect." (quoting *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994)). Even more so here, where Plaintiffs could have synchronized the three appeals—by stipulating to the dismissal of the aiding-and–abetting claims—but *chose* not to.

\*        \*        \*

"[F]ree, calculated, deliberate choices are not to be relieved from." *Ackermann*, 340 U.S. at 198; *see United Airlines, Inc. v. Brien*, 588 F.3d 158, 176 (2d Cir. 2009) (noting "that Rule 60 does 'not allow district courts to indulge a party's discontent over the effects of its bargain'" (quoting *Andrulonis*, 26 F.3d at 1235)). Plaintiffs must now face the consequences of their many choices—namely, the Circuit finding that Plaintiffs had never asserted aiding-and-abetting claims in *Freeman I*. Perhaps Plaintiffs thought they might achieve different results in the different complaints. Perhaps they thought they could get another proverbial bite at the apple after seeing whether any of their original *Freeman I* claims survived appeal. Perhaps they failed to understand or believe that they were foregoing amendment by not acting before appeal. Regardless, and putting Plaintiffs' sense of grievance aside, the "procedural quagmire" resulting from the interplay between the progression of this case and that of *Freeman II* and *Bowman* is one of Plaintiffs' own making. (Mem., Dkt. 277-1, at 15.) Plaintiffs could have easily avoided this quagmire by seeking to amend in *Freeman I* after Judge Pollak found that there were no aiding-and-abetting claims in the case, or even later, after this Court issued a ruling dismissing the entire case without discussing

27

aiding-and-abetting liability. They cannot now reinvent history and claim that they never had an opportunity to assert those claims—Plaintiffs did have that opportunity, several times over. By choosing not to, they *lost* their opportunities to do so. The Court declines to reopen this case, after the Circuit's full review, to relieve Plaintiffs of the consequences of their choices.

## II.    Even Looking Ahead to Amendment, *Vacatur* is Not Required

Plaintiffs also argue that this Court would not "contravene[] Rule 60(b) merely by *considering* a movant's desire to amend [their] complaint" and that "a district court is free to cite Rule 15 and acknowledge amendment-related considerations, such as whether a movant has had the opportunity to amend, and the amendment standard that the party will eventually have to meet if the Rule 60(b) motion is granted." (Pls.' 6/18/2025 Letter, Dkt. 282, at 1 (quoting *BLOM*, 145 S. Ct. at 1621).) Having found that Plaintiffs have failed to meet Rule 60(b)'s standard, the Court need not do a Rule 15 analysis. However, for the sake of completeness, the Court briefly addresses Plaintiffs' amendment arguments.

First, for the reasons discussed *supra*, the Court finds that Plaintiffs clearly had the *opportunity* to amend the complaint in this case to add aiding-and-abetting claims after JASTA was passed and before Plaintiffs' appeal of the dismissal. Even with the benefit of hindsight, Plaintiffs cannot now justify their failure to amend to add these claims, which was ultimately the product of their own litigation decisions. This consideration supports denial of leave to amend.

Second, at this point, any motion to amend to add aiding-and-abetting claims would be denied as futile. The Court has already dismissed the aiding-and-abetting claims in *Freeman II* and *Bowman, Freeman II Dismissal*, 465 F. Supp. 3d at 225–26, which are based on the same or similar allegations and are against the same Defendants as in *Freeman I*. Although Plaintiffs note that "there *is* newly discovered evidence," (Mem., Dkt. 277-1, at 17 n.10)—which would purportedly support *vacatur* under "Rule 60(b)(2), although that [was] not the basis for" Plaintiffs'

28

motion for reconsideration, (*id.*)—Plaintiffs know that they cannot use this evidence in this case because of a protective order that applies to this evidence in another case in which Plaintiffs are a party, *see Freeman II*, No. 18-CV-7359, Quash Order, Dkt. 136, at 10 (noting that the *Freeman II* plaintiffs "are prohibited from using the information" they sought "for the purpose of amending their complaint"). Without evidence that renders more plausible the allegations already dismissed, Plaintiffs' amendment to add aiding-and-abetting claims would fail for futility. And, given the pending motion to dismiss plaintiffs' Third Amended Complaint in *Freeman II*, restarting briefing in *Freeman I* would perpetuate the very disjointed procedural posture between two significantly related actions that Plaintiffs claim constitutes a "procedural quagmire" worthy of being deemed "extraordinary circumstances." The Court declines to deliberately wade back into such a quagmire.

## CONCLUSION

Accordingly, the Court denies Plaintiffs' Motion to Vacate the Court's dismissal of the SAC and the attendant judgment, (Pl. Mot. to Vacate, Dkt. 277), for the purpose of filing an amended complaint. This action remains closed.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 30, 2025
       Brooklyn, New York